IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Smentek, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | No. 09-cv-529 |
| *-vs-* | ) | |
| | ) | *(Judge Lefkow)* |
| Sheriff of Cook County and Cook | ) | |
| County, Illinois | ) | *(Magistrate Judge Brown)* |
| | ) | |
| *Defendants.* | ) | |

# PLAINTIFFS' MOTION TO COMPEL

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, plaintiffs move the Court to compel defendants to produce the following:

A) Identifying information about persons processed into the Cook County Jail after July 20, 2011, and

B) Documents prepared in connection with budget requests for dental services at the Cook County Jail and/or Cermak Health Services for each year from 2006 to the present.

Grounds for these requests are as follows:

## I. Background

This case is proceeding as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Pursuant to the district

court's order of November 18, 2010 (attached as Exhibit 1), the (b)(2) class consists of

> All persons presently confined at the Cook County Jail who are experiencing dental pain and who have waited more than seven days after making a written request for treatment of that pain without having been examined by a dentist.

The district court defined the (b)(3) class as follows (Mem.Op. August 16, 2011 at 11, attached as Exhibit 2):

> All inmates housed at Cook County Department of Corrections on or after January 1, 2007, who made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment.

## II. The Discovery Requests

### A. Supplemental Identifying Data

On February 19, 2013, plaintiffs requested defendants to produce electronically stored information about persons processed into the Cook County Jail after July 20, 2011.[1] (Supplemental Production Request, attached as Exhibit 3.) Defendants have refused to produce this information, asserting that the request should be limited to class members.[2] (Letter, Hannon and Gallagher to Morrissey and Flaxman, March 26, 2013, attached as Exhibit 4.)

---

[1] Defendants produced this ESI for persons processed into the Jail through July 20, 2011 in the property class action, *Elizarri v. Sheriff*, 07-cv-2427.

[2] Defendants, however, are unable to identify which detainees are class members. *See infra* at 4.

## B. Budget Requests

In late 2006, defendants reduced the budget for dental services at the Cook County Jail; the result was that the "entire dental program was going to be dismantled and reduced to one dentist and two assistants providing emergent care only." *Everett v. Cook County*, 655 F.3d 723, 725 (7th Cir. 2011). Defendants justified this reduction in dental services on the assertion that "the dental care requirements for jails were minimal." *Id.*

Plaintiff requested defendants to produce "all documents prepared in connection with budget requests for dental services at the Cook County Jail and/or Cermak Health Services [for each year from 2006 to the present]." (Production Request 16, Exhibit 5.) Defendants have refused to produce any budget requests, asserting "that any pre-budget documents, even if they existed, would be privileged as part of the deliberative process of a governmental entity and are exempt from disclosure under state law, 5 ILCS 140/7(f)." (Letter, Hannon and Gallagher to Morrissey and Flaxman, March 26, 2013, par. 4, attached as Exhibit 4.)

## C. Attempts to Resolve Discovery Disputes

After exchanging letters setting out their respective positions, counsel for the parties engaged in a lengthy telephone conference on March 27, 2013 from 9:15 a.m. to 9:45 a.m. Counsel agreed during that conference that they were unable to resolve their disputes about the two matters set out

above; the parties are continuing to seek to resolve the other matters referred to in Exhibit 4.

## III. The Court Should Compel Defendants to Produce Updated Identifying Data

Membership in either the (b)(2) or the (b)(3) class turns on the making of a written request for dental care.[3] Plaintiffs requested production of all such written requests in paragraph one of their "Amended and Supplemental Request for Production of Documents," attached as Exhibit 5. Defendants objected to this request, representing that they do not maintain health service requests in a centralized file, but place each request into the detainee's medical records. Thus, to produce all of the written requests for dental care would require the manual search of several hundred thousand medical records. Rather than engage in this manual search, plaintiffs asked defendants to produce information about all potential class members whose claims accrued after July 20, 2011.

Defendants do not contend that it would be burdensome to update the ESI. Defendants' only objection is that producing the updated ESI "is overly broad when the potential class members during the relevant time period numbers in the hundreds." (Letter, Exhibit 5 at 3.) Defendants, however, are unable to explain their estimate of the number of potential

---

[3] The class definitions are set out above at 2.

class members — based on letters and telephone calls from class members, class counsel estimate that the class consists of more than 5000 persons.

Nor are defendants able to explain any alternative method through which the parties may identify potential class members: plaintiffs agree that it would be unduly burdensome to review several hundred thousand medical records to locate written requests for dental treatment.

There is nothing unusual about providing class counsel with the identity of all potential class members in a case arising out of the Cook County Jail. For example, *Jackson v. Sheriff*, 06-cv-493, involved male detainees who were subjected to a STD test; the total number of persons tested was known to be 16,000 (from the number of STD kits used). It was impossible, however, to determine which detainees had been subjected to the test and defendants provided class counsel with information about the identity of all male detainees who entered the jail during the relevant period. Similarly, the class in *Parish v. Sheriff*, 07-cv-4369, consists of persons who were taking prescription medication for a serious medical need when they entered the Jail, who advised intake personnel of their need for that medication, and who did not receive that medication within 24 hours after entering the Jail. Again, defendants provided class counsel with information about the identity of all potential class members. Finally, the class in *Elizarri v. Sheriff*, 07-cv-2427, consists of persons who made a timely but

unsuccessful demand for return of personal property seized upon their entry to the Jail. As in *Jackson* and *Parish*, defendants produced ESI about all potential class members.

Plaintiffs seek the updated ESI about potential class members to investigate the viability of the Rule 23(b)(2) class claim for prospective injunctive relief. Only by gathering information from persons who were recently in the Jail may plaintiffs assess the need for prospective injunctive relief.

Plaintiffs also seek the updated ESI to secure information about the extent of defendants' liability for inadequate dental services at the Jail. Although the level of dental care may have improved from 2007, class counsel have an obligation to investigate the extent to which class members were injured by the challenged policies after July 20, 2011. The Court should order defendants to produce the updated ESI.

## IV. The Court Should Compel Defendants to Produce Budget Documents

One way in which plaintiffs intend to establish deliberate indifference is to show that defendants reduced the availability of dental services at the Jail, knowing that the reductions would result in gratuitous pain. As in *United States v. Cook County*, 761 F.Supp. 794 (N.D.Ill. 2011) (three judge court), plaintiffs intend to show that "[t]hese unacceptable conditions

are actionable constitutional violations because they are consequences of deliberate decisions."[4] *Id.* at 798. Budget data publicly available on Cook County's website supports this theory.[5]

Plaintiffs expect that documents prepared in connection with budget requests for dental services at the Jail would be helpful to prove their claim of deliberate indifference. Defendants do not dispute the critical relevancy of these documents, but ask the Court to apply to federal law the state FOIA privilege contained in 5 ILCS 140/7(f). (Letter at 2, par. 4, Exhibit 5 at 2.) The Court should follow the Illinois Supreme Court and refuse to apply to civil litigation the state FOIA privilege.

In *People ex rel. Burkett v. City of Chicago*, 184 Ill.2d 521, 705 N.E.2d 48 (1998), the Illinois Supreme Court rejected the argument that the Illinois FOIA exemption for predecisional materials should be recognized as an evidentiary privilege. The Court held, *inter alia*, that "it is unjust to afford the government the benefit of withholding relevant evidence

---

[4] The County's public budget for 2010 recognizes that "[t]he population of Cermak experiences a greater than average need for dental care, based on patient histories that repeatedly show neglect and because of illness and conditions that require strict adherence to good dental hygiene." (Exhibit 6 at 12.)

[5] The budget data shows the Jail employed 4 full time dentists from 2001 through 2006, and that the Jail employed only 1 dentist in 2007. Exhibit 6 at 1-8, attached. The Jail gradually increased its budget and staffing, but did not return to the pre-2007 budget until 2010. Exhibit 6 at 13.

while requiring its opponent to adhere to the established rules of open discovery." 184 Ill.2d at 529, 705 N.E.2d at 52.

Defendants' citation of the Illinois FOIA exemption for predecisional materials may be an attempt to invoke the "deliberative process privilege." The Court should reject any such claim.

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8 (2001), quoting *N.L.R.B. v. Sears, Roebuck *& Co.*, 421 U.S. 132, 150 (1975).

This Court considered the "deliberative process privilege" in four cases involving claims against former Commander Burge, *Howard v. City of Chicago*, 2006 WL 2331096 (N.D.Ill. 2006), *Hobley v. Burge*, 445 F.Supp.2d 990 (N.D.Ill. 2006), *Orange v. Burge*, 2006 WL 2331147 (N.D.Ill. 2006), and *Patterson v. Burge*, 451 F.Supp.2d 947 (N.D.Ill. 2006), *rev'd on other grounds*, 2007 WL 1498974 (N.D.Ill. 2007). The Court agreed with the analysis of the privilege in *Evans v. City of Chicago*, 231 F.R.D. 302 (N.D.Ill. 2005), and rejected the claim of privilege in each of the four cases.

The Court in *Evans* followed the two-part analysis set out in *Ferrell v. U.S. Dept. of Housing and Urban Development*, 177 F.R.D. 425, 428 (N.D.Ill. 1998):

> First, the court must decide whether the government has shown that the privilege applies to the documents the government seeks to protect. Then, if the government meets its threshold burden of showing that the privilege applies, the litigant has the burden of showing that it has a particularized need for the documents.

The *Evans* court also adopted the three-part test set out in *Ferrell* to determine if the privilege applied, 231 F.R.D. at 316:

> In deciding whether the government has made a *prima facie* showing that the privilege applies, three things must happen: (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents. *Ferrell*, 177 F.R.D. at 428.

*Evans* explained that the requirement that the claim of privilege be made by the department head originated with the formulation of "executive privilege" in *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) ("There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.") Defendants have utterly failed to assert such a formal claim of privilege and the Court should reject any belated

attempt to invoke the "deliberative process privilege." Defendants have completely failed to meet their "burden of proving what deliberative process was involved and what role the document played in that process." *King v. Internal Revenue Service*, 684 F.2d 517, 519 (7th Cir. 1982). The Court should reject any claimed privilege.

## V. Conclusion

For the reasons above stated, the Court should order defendants to produce the requested information specified above.

Respectfully submitted,

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 1240
Chicago, Illinois 60604
(312) 427-3200

Thomas G. Morrissey.
10249 S Western Ave
Chicago, Illinois 60643
(773) 233-7900
*Attorneys for Plaintiff*

# INDEX TO EXHIBITS

Memorandum Opinion, November 18, 2010 (certifying case as
Rule 23(b)(2) class action..........................................................................1

Memorandum Opinion, August 16, 2011 (certifying case as
Rule 23(b)(3) class action..........................................................................2

Request for Supplemental Production of Electronical (sic)
Stored Information ................................................................................. 3

Letter, Hannon and Gallagher to Morrissey and Flaxman,
March 26, 2013 ......................................................................................... 4

Plaintiffs' Amended and Supplemental Request for Production
of Documents ........................................................................................... 5

Compilation of Public Budget Data ................................................................. 6

**Exhibit 1**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN SMENTEK, MALCOLM PATTON, MELVIN PHILLIPS, RODELL SANDERS, and FRANK POWICKI, individually and for all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 529 |
| SHERIFF OF COOK COUNTY, and COOK COUNTY, ILLINOIS, | ) ) ) ) | Judge Joan H. Lefkow |
| Defendants. | ) | |

**OPINION AND ORDER**

John Smentek, Malcolm Patton, Melvin Phillips, Rodell Sanders, and Frank Powicki (collectively, "plaintiffs") filed a putative class action against the Sheriff of Cook County and Cook County (collectively, "defendants"), alleging that defendants, in violation of 42 U.S.C. § 1983, maintain a policy of deliberate indifference to the plaintiffs' right to receive timely and appropriate dental care while confined at the Cook County Jail ("the jail"). Before the court is plaintiffs' motion to certify two classes pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3). For the following reasons, the motion [#50] is granted in part and denied in part.

**BACKGROUND**

In 2006, four dentists and eight dental assistants served the approximately 10,000 detainees held at the jail. In 2007, this number was reduced, leaving only one dentist to serve the inmate population. Dental services were also limited to extractions. Over 200 inmates filed grievances regarding dental care in 2007. Since this time, the number of dentists has gradually

increased, with two dentists serving the jail population in 2008. In July 2008, the U.S. Department of Justice concluded that the jail was not adequately providing dental services to its population. In March 2010, defendants entered into an agreed order with the United States to "ensure that inmates receive adequate dental care, and follow up, in accordance with generally accepted correctional standards of care." Ex. 8 to Defs.' Resp. at 37. Under the order, dental care is not to be limited to extractions, and defendants are to ensure that dental staffing is adequate to avoid treatment delays.

While confined at the jail, plaintiffs all experienced dental pain and significant delays in treatment, if treated at all. Smentek was housed at the jail between September 22, 2007 and March 14, 2008. He began to experience severe tooth pain about two weeks after entering the jail. He requested dental services several times but never received attention before he was transferred to the custody of the Illinois Department of Corrections ("IDOC"). While in IDOC custody, he had fourteen or fifteen teeth extracted. Patton has been housed at the jail since November 17, 2008. He experienced severe tooth pain and bleeding gums, for which he submitted over ten requests to see a dentist between January and April 2009. He then submitted grievances requesting dental services and only saw a dentist after he joined this suit. Phillips has been confined at the jail since February 12, 2008. Beginning in March 2009, upon experiencing severe tooth pain due to a loose filling, he submitted over ten requests and three grievances to see a dentist. He was only examined by a dentist in July 2009, after he sought to join this suit. Although the dentist concluded that two extractions were necessary, it took two additional months before this was done. Sanders was admitted to the jail on May 18, 2007 and remains confined there. He began experiencing tooth pain in fall 2008 and subsequently filed various

requests and grievances requesting to see a dentist. In early 2009, with a swollen jaw and infected gums, he met with a doctor, who concluded that Sanders needed to see a dentist. On May 4, 2009, a dentist told Sanders that he needed a root canal and filling, but that he could only perform extractions. Powicki has been housed at the jail since February 24, 2010.[1] Shortly thereafter, he requested to see a dentist for a cracked tooth causing him pain on the right side of his head. He filed grievances on March 28, 2010 and May 8, 2010, complaining that his tooth was causing him earaches, headaches, and extreme pain. As of May 17, 2010, Powicki had not seen a dentist for this pain.

Plaintiffs argue that defendants' decision to decrease the number of dentists from four to one in 2007 caused them to experience unnecessary pain and unreasonable treatment delays. Plaintiffs seek to certify two classes. The first class, under Rule 23(b)(2), is defined as "[a]ll persons presently confined at the Cook County Jail who are experiencing dental pain and who have waited for more than seven days after having complained about that pain without having been examined by a dentist." Pls.' Mot. for Class Certification at 1. The second class, under Rule 23(b)(3), is defined as "[a]ll persons who, while confined at the Cook County Jail on and after January 1, 2007, made a request for treatment of dental pain and were not examined by a dentist within 7 days of that request." *Id.*

## LEGAL STANDARD

A party seeking to certify a class action must meet two conditions. First, the movant must show the putative class satisfies the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a);

---

[1] An inmate query indicates that Powicki has since been transferred to IDOC custody.

**Plaintiffs' Exhibit 1**      **Page 3**

*Oshana* v. *Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Rosario* v. *Livaditis*, 963 F.2d

1013, 1017 (7th Cir. 1992). Second, the action must qualify under at least one of the three

subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario*, 963 F.2d at 1017; *Hardin* v.

*Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). Here, plaintiffs seek certification under

Rule 23(b)(2) and (3). Rule 23(b)(2) requires a finding that "the party opposing the class has

acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ.

P. 23(b)(2). Rule 23(b)(3) requires a finding that "questions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy." Fed. R. Civ. P. 23(b)(3).

 Courts retain broad discretion in determining whether a proposed class meets the Rule 23

certification requirements. *Keele* v. *Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The moving

party bears the burden of showing that the requirements for class certification have been met.

*Hardin*, 814 F. Supp. at 706. The requirements of Rule 23 should be liberally construed to

support the policy favoring the maintenance of class actions. *King* v. *Kansas City S. Indus.*,

519 F.2d 20, 25–26 (7th Cir. 1975), .

## ANALYSIS

## I. Collateral Estoppel

 Two courts in this district have already denied certification of a Rule 23(b)(3) class in the

same or very similar circumstances as presented here. Defendants argue that these adverse

decisions bar certification of plaintiffs' proposed classes. For collateral estoppel to apply, the

**Plaintiffs' Exhibit 1**       **Page 4**

following four conditions must be met: "(1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action." *Adair* v. *Sherman*, 230 F.3d 890, 893 (7th Cir.2000).

### A.     Prior Cases

In *Smith* v. *Sheriff of Cook County*, the court declined to certify a class of "all persons who, while confined at the Cook County Jail on and after June 29, 2005, made a request for treatment of dental pain and did not receive timely treatment of a dentist." No. 07 C 3659, 2008 WL 1995059, at *1 (N.D. Ill. May 6, 2008), *and reconsideration denied*, 2008 WL 4866071 (N.D. Ill. July 16, 2008). In its initial opinion on the issue, the court concluded that the class did not satisfy the commonality and typicality requirements, as proving deliberate indifference is fact specific and requires each individual plaintiff to show that he required dental care, did not receive adequate dental care, and suffered significant injury due to the inadequate care. 2008 WL 1995059, at *2. Plaintiffs then sought reconsideration, arguing that they were challenging the "systemic inadequacy of dental services at the Cook County Jail," an issue common to all members of the proposed class. 2008 WL 4866071, at *1. While acknowledging that system-wide indifference could potentially be established in one proceeding, the court declined to reconsider its order, finding that causation and the impact of the systematic indifference would still vary from one plaintiff to another, raising concerns of predominance and superiority. *Id.* at *1–2. After the Seventh Circuit declined to review the district court's decision, the individual plaintiffs' claims were settled and dismissed with prejudice. No. 07 C 3659, Docket No. 53.

5

Subsequently, in *Wrightsell* v. *Sheriff of Cook County*, the court denied certification of a class of "[a]ll persons who, while confined at the Cook County Jail on and after September 23, 2006, made a request for treatment of dental pain and were not examined by a dentist within 7 days of that request." No. 08 CV 5451, 2009 WL 482370, at *1 (N.D. Ill. Feb. 19, 2009). Relying on the reasoning in *Smith*, the court found that "[i]ndividual – not common – issues predominate in the case, and a class action would not be a superior means of resolving the alleged Eighth Amendment claim regarding dental care at the Cook County Jail." *Id.* at *3. Although the class definition had been modified from that proposed in *Smith* by specifying that untimely treatment meant an inmate not being examined by a dentist within seven days of requesting treatment of dental pain, the court concluded that this limitation could be unreasonable for certain dental emergencies but reasonable for minor problems. *Id.* The court also concluded that the Seventh Circuit's decision in *Arreola* v. *Godinez*, "that the need for individual damages determinations does not, in and of itself, require denial of [a] motion for certification," 546 F.3d 788, 801 (7th Cir. 2008), did not require certification. 2009 WL 482370, at *4. As in *Smith*, the Seventh Circuit declined Wrightsell's petition for leave to appeal pursuant to Rule 23(f). Wrightsell subsequently accepted defendants' offer of judgment and relinquished any right to appeal the class certification denial. Nonetheless, he filed a notice of appeal, which defendants moved to dismiss. Smentek sought to intervene in the Seventh Circuit, acknowledging that "Wrightsell may not have standing to seek review of the district court's adverse class determination for the unnamed members of the class." *Wrightsell* v. *Sheriff of Cook County*, 599 F.3d 781, 784 (7th Cir. 2010) (internal quotation marks omitted). The Seventh Circuit determined that Wrightsell could not pursue the appeal and that, in order to

6

intervene and pursue the appeal, Smentek would have had to have moved to intervene in the district court within the time allowed for filing a notice of appeal. *Id.* As Smentek had not done this and could not offer an excuse for failing to do so, the Seventh Circuit denied his motion to intervene. *Id.*

### B.    Application to This Action

#### 1.    Representation in the Prior Action

Although plaintiffs were not named parties in *Smith* or *Wrightsell*, they are bound by the court's decisions denying class certification if they were adequately represented by the named litigants and class counsel. *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 768–69 (7th Cir. 2003); *see also Taylor* v. *Sturgell*, 533 U.S. 880, 884, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) ("In a class action, for example, a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation."). "Just as [unnamed class members] receive the fruits of victory, so an adverse decision is conclusive against them." *In re Bridgestone/Firestone*, 333 F.3d at 768. Plaintiffs do not challenge the adequacy of representation in the previous actions. In fact, it would be anomalous for them to do so, as counsel for plaintiffs in this case also represented the plaintiffs in *Smith* and *Wrightsell*.

#### 2.    Same Issue

In this case, plaintiffs seek certification of two classes, one for injunctive relief under Rule 23(b)(2) and one for monetary relief under Rule 23(b)(3). The Rule 23(b)(3) class that plaintiffs seek to certify is nearly identical to that in *Wrightsell*, the only difference being that the beginning date for plaintiffs' proposed class is approximately three months later than that

7

proposed in *Wrightsell*. *Wrightsell*, 599 F.3d at 782. Plaintiffs have not attempted to correct the flaws identified in *Wrightsell* by amending the class definition. *Cf. Oshana* v. *Coca-Cola Bottling Co.*, 225 F.R.D. 575, 579 (N.D. Ill. 2005) (collateral estoppel was not appropriate where the plaintiff proposed a class that "on its face" sought to correct the flaws that a previous district court found warranted denial of class certification). Their arguments for certification of this class are basically recycled from previous attempts at certification. This leaves no doubt that the issue sought to be precluded is the same as that involved in *Wrightsell*, namely, certification of a class of inmates at the jail who have requested treatment of dental pain but have not been examined within seven days of that request.[2]

This is, however, the first attempt at certifying a class for injunctive relief. Thus, *Wrightsell* does not preclude certification of the proposed 23(b)(2) class, although its reasoning, and that of *Smith*, as to satisfaction of the Rule 23(a) requirements may be considered persuasive authority.

### 3.     Final Judgment

A final judgment, for purposes of collateral estoppel, "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *In re Bridgestone/Firestone*, 333 F.3d at 767 (quoting Restatement (Second) of Judgments § 13 (1980)). In determining whether a judgment is final, the court may consider "the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and

---

[2] The class definition in *Smith* was slightly different, as plaintiffs there did not place a time limit on how long an inmate would have had to wait after making a request for treatment before being considered a class member, instead leaving open the interpretation of "timely treatment." The change in class definition from *Smith* to *Wrightsell* to specify that a seven day delay in receiving treatment would be considered untimely presumably made collateral estoppel not applicable in *Wrightsell* and makes *Wrightsell*, and not *Smith*, the opinion on which this court would base a finding of collateral estoppel.

**Plaintiffs' Exhibit 1**                                                                 **Page 8**

the opportunity for review," along with whether the court's decision was supported by a reasoned opinion. *Miller Brewing Co.* v. *Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) (quoting *Zdanok* v. *Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964)).

The Seventh Circuit initially denied Wrightsell's petition for leave to appeal and dismissed his subsequent appeal after Wrightsell settled the case and waived his right to appeal. The fact that the Seventh Circuit did not review the merits of the denial of class certification does not render collateral estoppel inapplicable, as plaintiffs argue, for a judgment need not have been appealed or reviewed by the appellate court for it to be given preclusive effect. *See Old Republic Ins. Co.* v. *Chuhak & Tecson, P.C.* 84 F.3d 998, 1000–01 (7th Cir. 1996) ("The doctrine of collateral estoppel . . . requires only a judgment that is final in the court rendering it, and not a judgment that is final after exhaustion of appellate remedies . . . ." (citing *Prymer* v. *Ogden*, 29 F.3d 1208, 1213 n.2 (7th Cir. 1994), and *Williams* v. *Comm'r*, 1 F.3d 502, 504 (7th Cir. 1993)). The district court's decision is "immune, as a practical matter, to reversal or amendment." *Miller Brewing Co.*, 605 F.2d at 996. Both sides had more than an adequate opportunity to present their positions on whether certification of a class was appropriate. The court supported its decision with a reasoned opinion, incorporating *Smith*'s reasoning and explaining its rejection of Wrightsell's arguments for why *Smith* should not apply to his case.

### 4. Issue Actually Litigated and Essential to the Final Judgment

There is no question that the appropriateness of class certification was actually litigated in the *Wrightsell* case. As in *Wrightsell*, plaintiffs argue that defendants' actions in 2007 in reducing the number of dentists at the jail to one caused them to suffer unnecessarily and amounts to deliberate indifference. The *Wrightsell* court found that certification was

9

inappropriate because individual issues predominated over the common issue of whether the dental staff size was inadequate and a class action would not be "a superior means of resolving the alleged Eighth Amendment claim regarding dental care at the Cook County Jail." *Wrightsell*, 2009 WL 482370, at *3. The issue was litigated as vigorously in that case as in the present, and the court's conclusion with respect to predominance and superiority was essential to the denial of class certification. In such a situation, where the requirements of collateral estoppel are met, counsel is not entitled "to treat the resolution as irrelevant and start anew" in front of a different judge in the hopes of obtaining a different resolution. *In re Bridgestone/Firestone*, 333 F.3d at 767. Although not precluded from proceeding individually, plaintiffs have lost the right to proceed on their claims as representatives of the Rule 23(b)(3) class. "[T]hat's the upshot of a fully contested litigation in which every potential class member was adequately represented on this issue." *Id.* at 769.

## II.      Rule 23(b)(2) Class

Defendants initially argue that plaintiffs' proposed class for injunctive relief is barred by a recent consent order in *United States of America* v. *Cook County*, No. 10 C 2946, Docket No. 13 (N.D. Ill. May 26, 2010). The order is intended to "protect the constitutional rights of the inmates detained at the [Jail]." *Id.* at 3. With respect to dental care, the order provides:

> a. Cermak [the health services provider at the Jail] shall ensure that inmates receive adequate dental care, and follow up, in accordance with generally accepted correctional standards of care. Such care should be provided in a timely manner, taking into consideration the acuity of the problem and the inmate's anticipated length of stay. Dental care shall not be limited to extractions.

**Plaintiffs' Exhibit 1**                                                                 **Page 10**

b. Cermak shall ensure that adequate dentist staffing and hours shall be provided to avoid unreasonable delays in dental care.

*Id.* at 37.  Although the United States may seek enforcement of the order if it determines defendants are not in substantial compliance, the order makes clear that no other party, such as plaintiffs here, may enforce its terms.  *Id.* at 53–54.  Further, the order provides that "no person or entity may assert any claim or right as a beneficiary or protected class under this Agreed Order" and that it "is not intended to impair or expand the right of any person or organization to seek relief against Defendants or their officials, employees, or agents for their conduct."  *Id.* at 2. Because the order makes clear that it is not barring an individual housed at the jail from bringing a class action for injunctive relief, defendants' argument to that effect fails.

Defendants then argue that the court should not certify the Rule 23(b)(2) class because there is no longer a need for injunctive relief, as the jail "currently provides both adequate and timely care to the detainees."  Defs.' Resp. at 11.  While the affidavit submitted by Dr. Townsend suggests that improvements have been made in dental services at the jail, it is not the court's role at this stage to determine the merits of the claim.  "If the prerequisites and conditions of Fed. R. Civ. P. 23 are met, a court may not deny class status because there is no 'need' for it." *Fujishima* v. *Bd. of Educ.*, 460 F.2d 1355, 1360 (7th Cir. 1972).  The court will therefore turn to whether the requirements of Rule 23 are met.

## A.    Sufficiently Defined Class

Defendants contend that the proposed class definition does not set forth an identifiable class because "dental pain" is too vague a concept to allow the court to determine who is included in the class.  The court need not consider the various diagnoses that the term "dental pain" encompasses or the various treatments that could result, however, for plaintiffs are

11

generally challenging the alleged substandard level of dental services available at the jail. Regardless of the various causes of dental pain, putative class members included those who complained about any type of dental pain and have waited more than seven days for necessary treatment. Plaintiffs make clear that their reference to complaints about dental pain means formal complaints memorialized in written documents, such as a detainee health service request form or a grievance form. *See* Pls.' Reply at 8. This makes the class readily ascertainable. To make it explicitly clear who is a class member, however, the court will modify the class definition so that it reads: "All persons presently confined at the Cook County Jail who are experiencing dental pain and who have waited for more than seven days after *making a written request for treatment of that pain* without having been examined by a dentist."

Defendants also argue that certifying this class would make failure to render dental treatment within seven days actionable by detainees. Including such a time period in a class definition does not equate to a finding that a delay of seven days in providing treatment is automatically unreasonable and actionable. Plaintiffs will still have to establish the underlying elements of a constitutional violation to prevail on their claim. While the "proposed time period could be inconsistent in some cases with the constitutional requirement," *Wrightsell*, 2009 WL 482370, at *3, this is an issue that influences whether the Rule 23(b)(3) requirement of predominance is met or whether plaintiffs can prevail on their claim but does not affect whether the class is ascertainable.

12

### B.    Rule 23(a) Requirements

Defendants challenge plaintiffs' ability to meet the requirements of commonality, typicality, and adequacy of representation.  Those plaintiffs who remain in the jail's custody, specifically Malcolm Patton, Melvin Phillips, and Rodell Sanders, are adequate representatives for the Rule 23(b)(2) class.  Plaintiffs have also met the low hurdles of establishing commonality and typicality.  *See Gaspar* v. *Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) ("[T]he typicality requirement is liberally construed."); *Scholes* v. *Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) ("[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted.").  They claim that inmates with dental pain are suffering unnecessary and prolonged pain due to defendants' decision to reduce dental services at the jail, particularly in reducing the number of dentists employed there to one.  Whether this decision has caused unnecessary pain and delay is a question common to the class and based on the same conduct of defendants.  *See Tylka* v. *Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D. Ill. 1998) (noting that if at least one question of law or fact is common to the class, commonality is satisfied).  Plaintiffs, along with the unnamed class members, are all subject to the same alleged practice.  Although differences in plaintiffs' and the class members' injuries and treatment times are undeniable, this is not fatal to a finding of typicality as "[t]ypical does not mean identical." *Gaspar*, 167 F.R.D. at 57.  Where injunctive relief alone is at issue, individualized issue should be minimal.

Defendants, relying on *Smith*, argue that the need to consider individual issues defeats commonality and typicality.  The denial of class certification in *Smith*, although initially framed as a failure to meet the commonality and typicality requirements, is better read as finding that

predominance and superiority, requirements for a Rule 23(b)(3) class, were not met. *See Smith*, 2008 WL 4866071, at *2. Such an interpretation is supported by the Seventh Circuit's recent cases decertifying Rule 23(b)(3) classes regarding the amount of time that is reasonable for a detainee to be held after posting bond. *See Portis* v. *City of Chicago*, 613 F.3d 702 (7th Cir. 2010); *Harper* v. *Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009). In these cases, the court held that common questions do not predominate "[b]ecause reasonableness is a standard rather than a rule, and because one detainee's circumstances differ from another's." *Portis*, 613 F.3d at 705; *Harper*, 581 F.3d at 515; *see also McGowan* v. *Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("Delay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment."). The court does not read these decisions, which did not address Rule 23(a), as importing the analysis of whether common issues predominate over individual ones into the inquiry into commonality and typicality. Indeed, while the Rule 23(b)(3) class in *Portis* was decertified, the Seventh Circuit left open the possibility that a class for injunctive relief could be certified based on a claim that defendant had a policy of deliberate delay. *Portis*, 613 F.3d at 705–06. As plaintiffs here argue that delay in treatment occurred because of a deliberate choice to decrease the availability of dental services, certification of a class for injunctive relief to counter that alleged policy is appropriate.[3] Whether plaintiffs will be able to demonstrate a policy of

---

[3] Defendants do not argue that plaintiffs cannot meet Rule 23(b)(2)'s requirement that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). An injunction ordering defendants to increase the number of dentists employed to treat the jail's inmate population would generally address plaintiffs' complaints.

14

deliberate delay and prevail on their claim for injunctive relief are issues the court need not address today.

## CONCLUSION AND ORDER

For the foregoing reasons, plaintiffs' motion for class certification [#50] is granted in part and denied in part. The court certifies a class under Rule 23(b)(2) defined as: All persons presently confined at the Cook County Jail who are experiencing dental pain and who have waited more than seven days after making a written request for treatment of that pain without having been examined by a dentist. This case will be called for status on December 16, 2010 at 8:30 a.m. Plaintiffs' counsel will be expected to report on what relief he believes would be availale that has not been achieved in *United States* v. *Cook County,* Case No.10 C 2946.

Dated: November 18, 2010                  Enter:_____

                                                    JOAN HUMPHREY LEFKOW
                                                    United States District Judge

**Plaintiffs' Exhibit 1**                                      **Page 15**

**Exhibit 2**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOHN SMENTEK, MALCOLM PATTON, MELVIN PHILLIPS, RODELL SANDERS, and FRANK POWICKI, individually and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHERIFF OF COOK COUNTY, and COOK COUNTY, ILLINOIS,<br><br>Defendants. | No. 09 C 529<br><br>Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs seek reconsideration of the portion of this court's November 18, 2010 opinion and order denying certification of a Rule 23(b)(3) class. The court's denial was based on a finding that collateral estoppel precluded certification of a Rule 23(b)(3) class. That finding relied on *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 768–69 (7th Cir. 2003), in which the Seventh Circuit held that an unnamed putative class member is bound by a decision denying class certification in a prior action if he or she was adequately represented by the named litigant and class counsel. The Supreme Court recently abrogated this holding in *Smith* v. *Bayer Corp.*, --- U.S. ----, 131 S. Ct. 2368, 2380–81, 180 L. Ed. 2d 341 (2011). This change in the law warrants reconsideration of the appropriateness of certifying a Rule 23(b)(3) class.

Defendants concede that, under *Smith*, class certification is not barred by collateral estoppel. They argue that the court should nonetheless follow the court's decisions in *Smith* v.

*Sheriff of Cook County*, No. 07 C 3659, 2008 WL 1995059 (N.D. Ill. May 6, 2008),

*reconsideration denied*, 2008 WL 4866071 (N.D. Ill. July 16, 2008), and *Wrightsell* v. *Sheriff of*

*Cook County*, No. 08 CV 5451, 2009 WL 482370 (N.D. Ill. Feb. 19, 2009), and deny plaintiffs'

latest attempt at certification. While not bound by this court's conclusions in *Smith* or

*Wrightsell, see Midlock* v. *Apple Vacations West, Inc.*, 406 F.3d 453, 457–58 (7th Cir. 2005), the

court will take those decisions into account as persuasive authority. *See Bayer Corp.*, 131 S. Ct.

at 2382 ("[W]e would expect federal courts to apply principles of comity to each other's class

certification decisions when addressing a common dispute.").

In their motion for reconsideration, plaintiffs have again altered their proposed Rule

23(b)(3) class definition. Whereas plaintiffs previously sought to certify a class of individuals

who requested treatment of dental pain and were not examined by a dentist within seven days of

the request, they now propose the following class:

> Any person who, while confined at the Cook County Jail on and after January 1,
> 2007, made a request for treatment of dental pain, was not examined by a health
> care professional authorized to dispense pain medication within 24 hours after
> making that request, and thereby endured pain.

This change does not affect the court's prior conclusion that Rule 23(a)'s requirements are met.[1]

Thus, the court need only address Rule 23(b)(3)'s requirements.

## A.   Predominance of common issues

Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common

---

[1] Defendants note that they do not concede that the commonality requirement is met, particularly in light of *Wal-Mart Stores, Inc.* v. *Dukes*, --- U.S. ----, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). That case involved a putative class of 1.5 million employed at 3,400 stores and had many difficult issues not present here.

**Plaintiffs' Exhibit 2**                                                                        **Page 2**

to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To determine whether predominance and superiority are satisfied, courts examine "the substantive elements of plaintiffs' claims, the proof necessary for those elements, and the manageability of trial on those issues." *Reed* v. *Advocate Health Care*, No. 06-c-3337, 2009 WL 3146999, at \*4 (N.D. Ill. Sept. 28, 2009) (citing *Simer* v. *Rios*, 661 F.2d 655, 672–73 (7th Cir. 1981)).

"Although related to Rule 23(a)'s commonality requirement, 'the predominance inquiry is far more demanding.' To satisfy this aspect of Rule 23(b)(3), 'the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims.'" *Pavone* v. *Aegis Lending Corp.*, No. 05-c-1529, 2006 WL 2536632, at \*4 (N.D. Ill. Aug. 31, 2006) (quoting, *inter alia*, *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 623–24, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997)). Plaintiffs need only show that common proof will predominate with respect to their claims. *Driver* v. *AppleIllinois, LLC*, 265 F.R.D. 293, 311 (N.D. Ill. 2010)

The central issue will be whether defendants' reduction (or, as plaintiffs characterize it, "obliterat[ation]") of dental services at the Cook County Jail resulted in a constitutional violation, or deliberate indifference, causing class members to suffer prolonged and unnecessary pain. Deliberate indifference may be established by "proving that there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Wellman* v. *Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983) (quoting *Ramos* v. *Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). The information

submitted on the motion, including a report of the United States Department of Justice into the

Jail's failure to provide dental care[2] leaves little dispute that the reduction in dental staff at the

Jail caused treatment delays. Such delays in treatment may constitute deliberate indifference.

*See McGowan* v. *Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Berry* v. *Peterman*, 604 F.3d 435,

441 (7th Cir. 2010).

Courts routinely certify classes under Rule 23(b)(3) challenging uniform policies related

to conditions of confinement. *See Flood* v. *Dominguez*, No. 2:08 CV 153 PPS PRC, 2011 WL

238265, at *3 (N.D. Ind. Jan. 21, 2011) (collecting cases from district courts in the Seventh

Circuit); *Streeter* v. *Sheriff of Cook County*, 256 F.R.D. 609, 614 (N.D. Ill. 2009) ("When a

proposed class challenges a uniform policy, the validity of that policy tends to be the

predominant issue in the litigation."); *Calvin* v. *Sheriff of Will County*, No. 03 C 3086, 2004 WL

1125922, at *4 (N.D. Ill. May 17, 2004). On the other hand, *Smith* and *Wrightsell* concluded

that individual issues would predominate over the policy issue, on the basis that proof of liability

would require each plaintiff, as well as each class member, to show "[first,] that he had a

condition that required dental care; second, that he did not receive adequate dental care; third,

that he suffered significant injury or harm; and fourth, that the injury or harm was causally

related to the inadequate care." *Smith*, 2008 WL 1995059, *2; *see Wrightsell*, 2009 WL 482370,

at *3 ("The reasonableness of the time of treatment measured from seven days of a detainee's

request could be unreasonable for a very obvious and serious painful dental emergency requiring

---

[2] The Department of Justice issued a report in July 2008 finding broad deficiencies in dental services after a June 2007 on-site visit to the Jail, including "that the [sole] dentist [for 10,000 inmates] typically was unable to treat inmates with serious or urgent dental needs." Ex. 2 to Dkt. No. 13 at 57–58. It continued, "Despite having Cermak [Hospital] physicians treat these serious dental emergencies, inmates continue to suffer needlessly because they do not receive appropriate follow-up care." *Id.*

4

immediate treatment. Conversely, treatment for a minor dental problem could be adequate even if provided two weeks or more from the date of the request."). But individualized issues of causation do not necessarily preclude class certification. *See Pella Corp.* v. *Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

Although reluctant to give plaintiffs' counsel yet another bite at the class issue when he failed to persuade Judge Leinenweber in *Smith* and Judge Darrah in *Wrightsell*, this court is convinced that the common issue does predominate. This case is better understood as requiring the plaintiff to prove that a condition of confinement–near elimination of dental care–is one of deliberate indifference to serious medical need, as illustrated by the representative plaintiffs and other witnesses who were not promptly treated after seeking medical treatment for dental pain. Yes, each named plaintiff would have to give evidence supporting the claim. But if liability is established based on the evidence presented by representative plaintiffs, the outcome for members of the class is a different question. *See, e.g., Memisovski* v. *Maram*, No. 92 C 1982, 2004 WL 1878332, at *1 (N.D. Ill. Aug. 23, 2003) (trial of class action against Illinois for injunctive relief brought on behalf of minor children for failing to provide early diagnostic services required under federal Medicaid Act). In other words, the principal issue of causation is the systemic one–adequacy of medical staffing–not the variations in the need claimed by individual inmates.

Defendants cite *Harper* v. *Sheriff of Cook Co.*, 581 F.3d 511, in which the court held that class certification was not proper where the plaintiff challenged unreasonable delays in processing detainees who had been admitted to bail in court but had to return to jail to have bond posted. The court decided that common issues did not predominate over individual issues

5

because determining a reasonable time would entail many variables, such as "what justifications there might be for the delay on that particular day or for that particular detainee–the time of day, whether the jail was processing an unusually large number of detainees at that time, whether other events occurring at the jail legitimately slowed processing times, whether the detainee's lack of cooperation delayed processing, etc." *Id.* at 515. Moreover, the court was unconvinced that plaintiffs had even identified a common issue that was central to the litigation. *Id.* Similarly in *Portis* v. *City of Chicago*, 613 F.3d 702 (7th[th] Cir. 2010), the court rejected the district court's certification of a class of arrestees who were detained more than two hours after being admitted to bail, first because the class definition imposed a rule that could not apply to all members of the class since a reasonable time in one instance might be unreasonable in another. The court left open the possibility that class treatment might be appropriate if the class sought to establish a policy of deliberate delay, as such a policy could be ended by an injunction. *Id.* at 705; *see County of Riverside* v. *McLaughlin*, 500 U.S. 44, 59, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991) ("Needless delay, or delay for delay's sake–or, worse, delay deliberately created so that the process becomes the punishment–violates the fourth amendment.").

Although this court has already certified a (b)(2) class in light of this statement, as *Harper* and *Portis* clearly do not exclude a class action for injunctive relief, the cases are more fundamentally distinguishable because plaintiffs here are attacking a policy of deliberate indifference by reducing staff to a level making it a virtual certainly that adequate care will not be provided, as opposed to a situation where an adequately staffed facility allegedly fails to treat some individuals as promptly as it should.

It should go without saying that determination of class appropriateness is not a question

6

of available relief. Each of the individuals in the putative class could file his own law suit and if

he proved that the policy resulted in deliberate indifference to his need, he could recover

damages. If a class is proper, and the class representatives prove a policy of deliberate

indifference, members of the class are not limited to injunctive relief. They may prove up their

damages by showing injury resulting from the policy. This is what occurs in class actions

alleging defective medical devices or drugs. Causation may be clear but damages are different

for individual class members.

The court in *Flood* v. *Dominguez*, No. 08 CV 153, 2011 WL 238265 (N. D. Ind. Jan. 21,

2011), rejected the argument defendants make here in a challenge to a variety of conditions of

confinement, including lack of bedding, cold temperatures, lack of hygiene items, lack of

exercise, and small meal portions "as a result of uniform policies or practices by the Jail." *Id.* at

*2:

> [The Jail contends that] the Plaintiffs can't prove liability without individual
> determinations as to whether the conditions of confinement caused the different
> physical injuries asserted by the Plaintiffs. And, so the argument goes, if these
> individual determinations are permitted, common issues will not predominate.
>
> I disagree. First, if a detainee suffered an injury because of a condition of
> confinement common to all class members, he may recover for that injury.

*Id.* at *3.[3] Although that court in its original opinion distinguished *Smith* and *Wrightsell* on the

---

[3] He reiterated,

[T]he conditions of confinement that were common to all detainees held in the Jail's
holding cells were the result of the Jail's uniform policies and practices. Liability will
not be determined by analyzing the individual physical injuries suffered by each plaintiff,
but rather by assessing the constitutionality of the policies or practices uniformly applied
to all class members. So these common conditions predominate. And while the
Plaintiffs will eventually have to tie their injuries to the common conditions of
confinement, this does not prevent a jury from finding on a class-wide basis that these
same conditions are unconstitutional.

7

basis that claims involving denial of medical care are particularly fact specific and generally unsuitable for class certification, 270 F.R.D. at 413, its reasoning applies as well to policies of deliberate indifference to medical care:

> [M]any of the variations in the detainees' conditions of confinement differ by a matter of degree, rather than kind. These factual variations . . . speak only to damages, not liability. And differences in damages alone will not defeat class certification. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. I may, for example, divide the class into subclasses to determine damages. In any event, because common issues predominate, the need for individual damages determinations will not defeat class certification.

*Id.* at 422; *see Arreola* v. *Godinez*, 546 F.3d 788, 800 (7th Cir. 2008) (remanding denial of class certification for prisoners challenging rule denying crutches where prison argued that each prisoner's case would be different and noting, "even if each damages calculation will be fact-bound to some degree, many of the issues involved in this case, as we have noted already, would be common among all potential class members"); *Mejdrech* .v *Met-Coil Systems Corp,* 319 F.3d 910, 911–12 (7th Cir. 2003) (affirming certification of a 1,000 plaintiff "mass tort" case in which the district court reserved for individual hearings whether a particular class member suffered any legally compensable harm and if so in what amount). Because the common issue of liability is whether reduction of dental services was deliberate indifference to dental patients needing urgent care, the plaintiffs have satisfied the predominance factor.

## B.   Superiority of class action.

Neither party devotes attention to the question of superiority of the class action device. In

---

2011 WL 238265, at *5.

8

considering the satisfaction of the superiority requirement, the court will look at "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b). As Judge Posner stated in *Mejdrich*,

> If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.

319 F.3d at 911. The court's staff attorneys report that from January 2010 to date, nineteen *pro se* cases were filed in this court against the Sheriff or the Cook County Department of Corrections alleging deliberate indifference to need for acute dental care. Twelve are still pending.[4] Three of the cases, in which all three were represented by counsel, settled. The litigation of separate law suits arising from the same policy is wasteful of pro bono counsel's time and the resources of this court.

According to *Smith*, more than 200 grievances were produced concerning denial of dental care during 2007, suggesting a substantial but not overwhelming number of class members. The

---

[4] *See Smith* v. *Dart*, No. 10 C 99 (settled in conjunction with *Smith* v. *Dart*, No. 10 C 312); *McRoy* v. *Dart*, No. 10 C 421; *Hernandez* v. *Ronald*, No. 10 C 1529 (settled); *Martin* v. *Cook County Dep't of Corr.* (CCDOC), No. 10 C 2162; *Jackson* v. *Dart*, No. 10 C 2263; *Guider* v. *Dart*, No. 10 C 2336; *Velazquez* v. *CCCDOC*, No. 10 C 2497 (settled); *Patten* v. *Dart*, No. 10 C 4964 (dismissed for failure to cure filing deficiencies); *Williams* v. *CCDOC*, No. 10 C 5482 (dismissed for failure to pay filing fee); *Peterson* v. *Dart*, No. 10 C 5681; *Brown* v. *Dart*, No. 10 C 7711; *Martinez* v. *Prozoxsky*, No. 10 C 7792; *Curtis* v. *Dart*, No. 11 C 933; *Morris* v. *Dart*, No. 11 C 934 (dismissed); *Wofford* v. *Dart*, No. 11 C 1397; *Pitts* v. *Dart*, No. 11 C 1661 (settled); *Townes* v. *Prozoxski*, No. 11 C 1876; *Rounds* v. *Dart*, No. 11 C 4247; *Rodriguez* v. *CCDOC*, No. 11 C 4593.

parties have reported that, as a result of the Department of Justice investigation, services have improved since this law suit was filed. This means that the number of claimants will not be overwhelming so as to make the case unmanageable.

Another factor to consider is whether the individual class members would prefer to control their individual claims. The reality is that most of the detainees are indigent. Unlike non-prisoners, they must exhaust their administrative remedies and pay a $350 filing fee, albeit in installments, in order to file a case in this court. Once released from custody, the requirement is not lifted. Few are fortunate to be represented by retained or pro bono counsel so must proceed *pro se* if at all, with neither the skill nor resources to litigate. Obviously, the obstacles deter all but the determined.

A class action, on the other hand, would provide class members an opportunity to present their claims with representation by knowledgeable counsel who can marshal the resources to effectively present the case while those who have and prefer other counsel may opt out. As the court stated in *Flood*,

> [T]his dispute contains a set of legal and factual issues that are shared by the members of the class, and class certification is more efficient than multiple individual suits at dealing with these common questions. Indeed, requiring each class member to bring individual actions would waste time and money. Also, because many of the potential class members would likely recover very little in damages, they are unlikely to prosecute individual claims without the cost-sharing efficiencies offered by a class action. Accordingly, a class action is a superior method of litigating this case.

270 F.R.D. at 422. Likewise, a class action in this situation is superior to proceeding with individual claims.

## C.    Class Definition

As indicated at the outset, plaintiffs have redefined the class as "any person who, while

10

confined at the Cook County Jail on and after January 1, 2007, made a request for treatment of dental pain, was not examined by a health care professional authorized to dispense pain medication within 24 hours after making that request, and thereby endured pain." *Harper* and *Portis* teach that the court should not define a class by setting a "reasonable" time within which treatment must be given, although a time period might be used as a rebuttable presumption. *Portis*, 613 F.3d at 705 (citing *McLaughlin*, 500 U.S. at 59). To address this issue, the court certifies a class of "all inmates housed at Cook County Department of Corrections on or after January 1, 2007, who have made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment." In identifying the class the court will establish a 36-hour threshold. This will be a vehicle for identifying the class and will shift the burden to the defendants to demonstrate existence of a *bona fide* reason for delay in treatment. *See Portis*, 613 F. 3d at 705. Damages issues can be addressed on an individualized basis if the case is resolved in favor of the plaintiff class and if damages cannot be resolved for the class as a whole, as is typical in cases of this sort.

## ORDER

The motion for certification of a class under Rule 23(b)(3) is granted. This case will be called for a status hearing and scheduling conference on September 8, 2011 at 8:30. The parties should have a proposed class notice prepared and a schedule that is focused on bringing this aging case to as expeditious a conclusion as practicable.

Dated: August 17, 2011                    Enter: _Joan H. Lefkow_

JOAN HUMPHREY LEFKOW
United States District Judge

11

**Exhibit 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Smentek, Malcolm Patton, and Melvin Phillips, | ) ) ) | |
| *Plaintiffs,* | ) ) | No. 09-529 |
| *-vs-* | ) ) | *(Judge Lefkow)* |
| Sheriff of Cook County and Cook County, Illinois | ) ) ) | |
| *Defendants.* | ) | |

# REQUEST FOR SUPPLEMENTAL PRODUCTION
# OF ELECTRONICAL STORED INFORMATION

Defendants are requested to produce in computer readable form the following

information for all persons processed into the Cook County Jail from July 21, 2011 to

December 31, 2012:

1. Inmate ID
2. Booking Number
3. First Name
4. Last Name
5. Address
6. City
7. State
8. Zip
9. Date of Birth
10. Home Phone
11. SS Number
12. Book Date
13. Release Date
14. Release Reason

_____

Kenneth N. Flaxman
200 S Michigan Ave, Ste 1240
Chicago, IL 60604
(312) 427-3200

Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, IL. 60643
(773) 233-7900
*Attorneys for the Plaintiff*

**Exhibit 4**



## OFFICE OF THE STATE'S ATTORNEY
COOK COUNTY, ILLINOIS

**ANITA ALVAREZ**
STATE'S ATTORNEY

**MAUREEN O. HANNON**
ASSISTANT STATE'S ATTORNEY
Supervisor, CONFLICTS COUNSEL UNIT

WRITER'S E-MAIL ADDRESS:
Maureen.hannon@cookcountyil.gov

**69 W. Washington Street**
Suite 2030
CHICAGO, ILLINOIS 60602
Facsimile (312) 603-9616

WRITER'S DIRECT LINE:
(312) 603-1424

March 26, 2013

Thomas G. Morrissey, Ltd.
10249 S. Western Avenue
Chicago, Illinois 60643

Kenneth Flaxman, Esq.
200 S. Michigan Ave. Suite 2010
Chicago, Illinois 60604

Re: *Smentek v. Dart    09 C 00529*

Dear Counsel:

In anticipation for our meet and confer by telephone on Wednesday March 27th, 2013 at 9:15 please consider the following Response to your correspondence of March 22, 2013.

1. I don't think the County is late on any discovery. I am not opposed to continue discovery 45 days to finish the discovery that is outstanding. Then we will need to complete expert discovery shortly thereafter.

2. I have recently been informed by the Sheriff's Office that as of September 2011, they no longer store, generate, or produce the "monthly report sorted by division subject matter" for detainee grievances. I was also informed that after September 2011, there is no Electronically Stored Data (ESI) in the Sheriff's possession that contains detainee grievances delineated by the grievance subject matter. As a result, Defendant Dart objects to Plaintiffs' request for all detainee dental grievances from September 2011 until the present as overly broad and unduly burdensome considering such a request would require an individual search of tens of thousands of CCDOC detainee files to determine if the individual filed a grievance and whether that grievance pertained to an alleged lack of dental care.

3. I believe the discrepancy in the ESI pertaining to all dental appointments since the records and system became electronic is that the request for this data is not a record regularly kept in the course of business, and therefore, creating an electronic record to suit your litigation request is difficult. We are continuing to work on that for you but I am unable to give you a firm date on a new set of ESI data regarding scheduling for

the following reasons.

The electronic scheduling system is set up through an application on the Cerner system which purges the scheduling data after two years. So the paper records you have are not "bogus" as you suggest but more likely indicative of the actual appointment that was scheduled for those detainees. Conversely, the notes and records of each detainee's care is maintained through a power chart application which is never erased and therefore the medical, dental, and mental health notes of each detainee are always accessible.

Apparently, when we received the electronic scheduling data in February 2013, and I forwarded this list of names of scheduled patients, I was unaware of the fact that scheduling data is purged and therefore not fully accurate. The best and most reliable method of when a patient has been treated, scheduled for next treatment, and the details of his or her care, will always be the electronic data and medical file that is kept by the medical records division of Cermak that is accessed through the individuals.

*μ H* 4. By way of a Request for Amended and Supplemental Production of Documents you asked for "[e]ach year from 2006 to the present, all documents prepared in connection with budget requests for dental services at the Cook County Jail and/or Cermak Health Services." I provided you with the details of the budget for Cook Cermak and specifically for Dental Services in the Cook County Department of Corrections from years 2006 through 2012. You can see the fact that the budget for dental services was reduced to $ 260,0550.00 in 2007 and gradually increased each year to $1,364,319.00 in 2012 for dental services alone.

I objected to the request for other documents pertaining to the pre-budget decisions based on relevance. I also want to point out that any pre- budget documents, even if they existed, would be privileged as part of the deliberative process of a governmental entity and are exempt from disclosure under state law, 5 ILCS 140/7(f).

The case you referenced, *Everett v. Cook County,* can be found in the Pacer system as case no 07 C 5440. The plaintiff in that case, Carol Everett, filed a lawsuit because she was not one of the dentists retained in the 2007 cutbacks. I do not understand what documents from the *Everett* case you are seeking and I don't think the issue in that case: why they let some dentists stay and others go, is germane to the issues in this class action : whether the cuts in dental caused a constitutional deprivation to real individuals resulting in real injuries.

*μ G* 5. Defendant Dart objects to Plaintiffs' document request for all ESI information for "persons who entered the jail after July 20, 2011 until December 31, 2012." Plaintiffs' claim that similar material was produced by Defendant in *Jackson v.*

*Sheriff,* 06-cv-493 (class action on behalf of detainees swabbed and tested for HIV upon admission to CCDOC), *Parish v. Sheriff,* 07-cv-4369 (class action on behalf of detainees screened by mental health specialist upon admission to CCDOC), and *Elizarri v. Sheriff,* 07-cv-2427 (class action on behalf of detainees that inventoried personal property upon admission to CCDOC) is both inaccurate and irrelevant. The material produced in the above class-actions were arguably relevant because the purported classes included *all detainees* processed and detained in the Jail during the relevant time period. Considering each and every detainee was either swabbed, screened, or stored personal property upon admission into the Jail, Defendant provided *limited* information regarding those class members. In stark contrast, the current class only includes detainees that experienced acute dental pain and made a written request for dental treatment but were not seen by a dentist within 36 hours. As discovery has suggested, the current class consists of hundreds of potential class members, not hundreds of thousands as with *Jackson, Parish* and *Elizarri.* Plaintiffs request for documentation for approximately 150,000 detainees is the definition of overly broad when the potential class members during the relevant time period numbers in the hundreds.

I assume that Mike and I will call Ken Flaxman's office tomorrow morning. If that is incorrect and I should be calling some other number please let me know.

Sincerely,

Maureen O. Hannon
*Counsel for Cook County*

Michael Gallagher, A.S.A.
*Counsel for Cook County Sheriff*

**Exhibit 5**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Smentek, et al, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | No. 09-529 |
| *-vs-* | ) | |
| | ) | *(Judge Lefkow)* |
| Sheriff of Cook County and Cook | ) | |
| County, Illinois | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFFS' AMENDED AND SUPPLEMENTAL
## REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants are hereby requested to produce the following:

1.  All Detainee Health Service Request forms received on and after January 1, 2007 concerning dental problems by persons confined at the Cook County Jail, including complaints about dental pain, delays in obtaining treatment, delays in obtaining analgesic relief before seeing a dentist, and delays in obtaining follow-up care after an initial visit to the dental clinic.

2.  All grievances received on and after January 1, 2007 concerning dental problems by persons confined at the Cook County Jail, including complaints about dental pain, delays in obtaining treatment, delays in obtaining analgesic relief before seeing a dentist, and delays in obtaining follow-up care after an initial visit to the dental clinic.

3.  All appointment logs for dental services at the Cook County Jail on and after January 1, 2007. These documents should be produced in computer readable format for any period of time when they were maintained in the ordinary course of business.

4.  All records describing by name, jail identification number, date and type of service, names of person or persons providing service for all persons who received treatment from a dentist on and after January 1, 2007 at the Cook County Jail. These documents should be produced in computer

readable format for any period of time when they were maintained in the ordinary course of business.

5. Any and all documents pertaining to defendants' practice and/or policies for collecting, processing and responding to detainee grievances and health service requests, hereafter referred to as "written requests" during the class period.

6. Any and all documents pertaining to defendants' practice and/or policies of scheduling detainees for dental appointments after a detainee submits a written request for dental care.

7. For the period from January 1, 2007 to the present, any and all records, documents, and/or statistical data concerning written requests received from detainees seeking dental services.

8. For the period from January 1, 2007 to the present, any and all records, documents, and/or statistical data concerning the number of detainees provided dental services.

9. For the period from January 1, 2007 to the present, any and all records, documents, and/or statistical data concerning the treatment of detainees for acute dental pain by medical providers at Cermak outside of the dental clinics.

10. For the period from January 1, 2007 to the present, any and all documents identifying the names of Cermak employees responsible for scheduling detainees for dental services.

11. For the period from January 1, 2007 to the present, any and all documents, logs, records, schedules, appointment books and/or waiting lists concerning detainees seeking dental services.

12. For the period from January 1, 2007 to the present, any and all documents, records or logs concerning the staffing of dentist, dental assistants, administrative assistants, and dental hygienist within the dental clinics. This request includes but is not limited to any and all payroll records, assignment sheets or any other records which reflect the number of employees providing dental services to detainees during each time period.

2

13. For the period from January 1, 2007 to the present, any and all documents, records, memorandums, statistical data or e-mails concerning the appropriation of funds for medical and/or dental services at the Cook County Jail.

14. Any and all documents which state the policy and/or procedures for providing dental care to detainees and for maintaining complete, accurate and accessible dental records.

15. Any and all documents, memorandums, e-mails, or letters pertaining to the delivery and/or lack of delivery of dental care to detainees. Included in this request are any internal reports, quality assurance reviews or performances reviews undertaken by Cermak regarding dental care for the period from 2005 to the present.

16. For each year from 2006 to the present, all documents prepared in connection with budget requests for dental services at the Cook County Jail and/or Cermak Health Services.

Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, IL 60643
*an attorney for the plaintiff class*

## CERTIFICATE OF SERVICE

Thomas G. Morrissey, states that on July 27, 2012 he served the foregoing
**Plaintiff's Production Request** by Facsimile and U.S. Mail to the attorney listed
below:


Mr. Michael Gallagher
Assistant States Attorney
50 W. Washington St.
Suite 500
Chicago, IL 60602

Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, IL 60643
(773) 233-7900
an attorney for the plaintiff class

4

**Exhibit 6**

# PERSONAL SERVICES  -  SUMMARY OF POSITIONS

## Department  240  Cermak Health Services of Cook County

| JOB CODE AND TITLE | | GRADE | 01 APPROPRIATION | | APPROVED & ADOPTED | |
|---|---|---|---|---|---|---|
| | | | POSITIONS | SALARIES | POSITIONS | SALARIES |
| 1961 | Attendant Patient Care | CD | | | 1 | 24,180 |
| | | | 14 | 494,494 | 24 | 1,047,683 |
| **06  DIVISION X - 2400929** | | | | | | |
| 1966 | Licensed Practical Nurse II | PN2 | 9 | 350,714 | 8 | 312,172 |
| 1942 | Clinical Nurse II | FB | | | 1 | 67,771 |
| 1954 | Tour Supervisor | NS1 | 1 | 74,510 | | |
| 1950 | Nurse Coordinator | NS1 | 1 | 74,510 | | |
| | | | 11 | 499,734 | 9 | 379,943 |
| **07  DIVISION XI - 2400930** | | | | | | |
| 1966 | Licensed Practical Nurse II | PN2 | 2 | 51,058 | 6 | 215,336 |
| 1941 | Clinical Nurse I | FA | 2 | 121,952 | 2 | 101,426 |
| 0908 | Ward Clerk | CE | | | 1 | 26,970 |
| 1961 | Attendant Patient Care | CD | 2 | 49,500 | | |
| | | | 6 | 222,510 | 9 | 343,732 |
| **08  RU-PSYCH - 2400931** | | | | | | |
| 1966 | Licensed Practical Nurse II | PN2 | 8 | 279,399 | 4 | 152,524 |
| 1943 | Nurse Clinician | FC | 1 | 67,155 | | |
| 1941 | Clinical Nurse I | FA | 3 | 155,400 | 4 | 216,133 |
| 1950 | Nurse Coordinator | NS1 | 1 | 74,510 | 2 | 131,166 |
| 0908 | Ward Clerk | CE | 2 | 52,912 | 2 | 53,426 |
| 1961 | Attendant Patient Care | CD | | | 1 | 24,686 |
| | | | 15 | 629,376 | 13 | 577,935 |
| **09  RU-MED - 2400932** | | | | | | |
| 1966 | Licensed Practical Nurse II | PN2 | 11 | 385,068 | 8 | 293,209 |
| 1942 | Clinical Nurse II | FB | 2 | 135,542 | | |
| 1941 | Clinical Nurse I | FA | 2 | 110,763 | 2 | 114,428 |
| 1954 | Tour Supervisor | NS1 | 1 | 74,510 | | |
| 1950 | Nurse Coordinator | NS1 | 1 | 74,510 | | |
| 0908 | Ward Clerk | CE | 1 | 25,803 | | |
| | | | 18 | 806,196 | 10 | 407,637 |
| **10  EMERGENCY MEDICAL TECHNICIANS** | | | | | | |
| **01  EMERGENCY SERVICES - 2400933** | | | | | | |
| 2067 | Correctional Medical Technician V | 017 | 5 | 233,071 | 5 | 240,470 |
| 2068 | Emergency Response Technician | 016 | 8 | 334,733 | 8 | 324,768 |
| 1919 | Correctional Medical Technician IV | 016 | 1 | 47,897 | 1 | 47,897 |
| 0048 | Administrative Assistant III | 016 | 2 | 91,166 | 2 | 92,096 |
| 1918 | Correctional Medical Technician III (Paramedic) | 014 | 3 | 122,614 | 3 | 125,052 |
| 2063 | Correctional Medical Technician II (Intermediate) | 012 | 39 | 1,227,259 | 39 | 1,249,967 |
| 0906 | Clerk IV | 009 | 2 | 54,610 | 2 | 54,610 |
| | | | 60 | 2,111,350 | 60 | 2,134,860 |
| **11  DENTAL CLINIC** | | | | | | |
| **01  DENTAL SERVICES - 2400934** | | | | | | |
| 2094 | Dental Hygienist | 017 | 1 | 44,192 | 1 | 46,378 |
| 0047 | Administrative Assistant II | 014 | 1 | 40,065 | 1 | 40,065 |
| 1910 | Dental Technician | 013 | 1 | 30,264 | 1 | 31,802 |
| 1500 | Dental Assistant - CCH | 013 | 7 | 239,229 | 7 | 246,625 |
| 2015 | Chief Of Dental Services | K3 | 1 | 103,574 | 1 | 98,836 |
| 1836 | Dentist I | K1 | 3 | 211,192 | 3 | 198,664 |
| | | | 14 | 668,516 | 14 | 662,370 |

# PERSONAL SERVICES - SUMMARY OF POSITIONS

## Department 240 Cermak Health Services of Cook County

| JOB CODE AND TITLE | | GRADE | 02 APPROPRIATION FTE POSITIONS | SALARIES | APPROVED & ADOPTED FTE POSITIONS | SALARIES |
|---|---|---|---|---|---|---|
| 1966 | Licensed Practical Nurse II | PN2 | 13.0 | 451,960 | 12.8 | 453,075 |
| 1950 | Nurse Coordinator | NS1 | 1.0 | 74,510 | 0.8 | 45,564 |
| 1961 | Attendant Patient Care | CD | 1.0 | 24,180 | 1.0 | 24,686 |
| | | | 24.0 | 1,047,683 | 23.6 | 1,037,094 |
| **06 DIVISION X - 2400929** | | | | | | |
| 1942 | Clinical Nurse II | FB | 1.0 | 67,771 | 1.0 | 67,771 |
| 1966 | Licensed Practical Nurse II | PN2 | 8.0 | 312,172 | 8.0 | 302,432 |
| | | | 9.0 | 379,943 | 9.0 | 370,203 |
| **07 DIVISION XI - 2400930** | | | | | | |
| 1941 | Clinical Nurse I | FA | 2.0 | 101,426 | 2.0 | 105,370 |
| 1966 | Licensed Practical Nurse II | PN2 | 6.0 | 215,336 | 6.0 | 209,838 |
| 0908 | Ward Clerk | CE | 1.0 | 26,970 | 1.0 | 26,456 |
| | | | 9.0 | 343,732 | 9.0 | 341,664 |
| **08 RU-PSYCH - 2400931** | | | | | | |
| 1941 | Clinical Nurse I | FA | 4.0 | 216,133 | 4.0 | 221,683 |
| 1966 | Licensed Practical Nurse II | PN2 | 4.0 | 152,524 | 4.0 | 141,489 |
| 1950 | Nurse Coordinator | NS1 | 2.0 | 131,166 | 2.0 | 145,468 |
| 0908 | Ward Clerk | CE | 2.3 | 53,426 | 2.0 | 52,912 |
| 1961 | Attendant Patient Care | CD | 1.0 | 24,686 | 1.0 | 24,686 |
| | | | 13.3 | 577,935 | 13.0 | 586,238 |
| **09 RU-MED - 2400932** | | | | | | |
| 1941 | Clinical Nurse I | FA | 2.0 | 114,428 | 2.0 | 116,280 |
| 1966 | Licensed Practical Nurse II | PN2 | 8.0 | 293,209 | 8.0 | 296,744 |
| | | | 10.0 | 407,637 | 10.0 | 413,024 |
| **10 EMERGENCY MEDICAL TECHNICIANS** | | | | | | |
| **01 EMERGENCY SERVICES - 2400933** | | | | | | |
| 2067 | Correctional Medical Technician V | 017 | 5.0 | 240,470 | 5.0 | 254,692 |
| 0048 | Administrative Assistant III | 016 | 2.0 | 92,096 | 1.0 | 48,142 |
| 1919 | Correctional Medical Technician IV | 016 | 1.0 | 47,897 | 1.0 | 50,076 |
| 2068 | Emergency Response Technician | 016 | 8.0 | 324,768 | 8.0 | 346,504 |
| 1918 | Correctional Medical Technician III (Paramedic) | 014 | 3.0 | 125,052 | 3.0 | 130,743 |
| 2063 | Correctional Medical Technician II (Intermediate) | 012 | 39.0 | 1,249,967 | 39.0 | 1,314,041 |
| 0906 | Clerk IV | 009 | 2.6 | 54,610 | 1.0 | 27,494 |
| 0941 | Clerk Typist Senior | 009 | | | 0.5 | 11,956 |
| 0927 | Administrative Aide (CCU) | CE | | | 1.0 | 25,320 |
| | | | 60.6 | 2,134,860 | 59.5 | 2,208,968 |
| **11 DENTAL CLINIC** | | | | | | |
| **01 DENTAL SERVICES - 2400934** | | | | | | |
| 2094 | Dental Hygienist | 017 | 1.0 | 46,378 | 1.0 | 48,487 |
| 0047 | Administrative Assistant II | 014 | 3.0 | 40,065 | 1.0 | 41,890 |
| 1500 | Dental Assistant - CCH | 013 | 7.0 | 246,625 | 7.0 | 255,623 |
| 1910 | Dental Technician | 013 | 1.0 | 31,802 | 1.0 | 34,849 |
| 2015 | Chief Of Dental Services | K3 | 1.0 | 98,836 | 1.0 | 103,333 |
| 1837 | Dentist II | K2 | | | 3.0 | 253,893 |
| 1836 | Dentist I | K1 | 3.0 | 198,664 | | |
| | | | 16.0 | 662,370 | 14.0 | 738,075 |

# PERSONAL SERVICES  -  SUMMARY OF POSITIONS

## Department  240  Cermak Health Services of Cook County

| JOB CODE AND TITLE | | GRADE | 03 APPROPRIATION | | APPROVED & ADOPTED | |
|---|---|---|---|---|---|---|
| | | | FTE POSITIONS | SALARIES | FTE POSITIONS | SALARIES |
| 1918 | Correctional Medical Technician III (Paramedic) | 014 | 3.0 | 130,743 | 3.0 | 136,014 |
| 2063 | Correctional Medical Technician II (Intermediate) | 012 | 39.0 | 1,314,041 | 38.0 | 1,354,389 |
| 0907 | Clerk V | 011 | | | 2.0 | 57,313 |
| 0941 | Clerk Typist Senior | 009 | 0.5 | 11,956 | | |
| 0906 | Clerk IV | 009 | 1.0 | 27,494 | | |
| 0927 | Administrative Aide (CCU) | CE | 1.0 | 25,320 | | |
| | | | 59.5 | $2,208,968 | 57.0 | $2,235,834 |
| **11  DENTAL CLINIC** | | | | | | |
| **01  DENTAL SERVICES - 2400934** | | | | | | |
| 2015 | Chief Of Dental Services | K3 | 1.0 | 103,333 | 1.0 | 112,651 |
| 1837 | Dentist II | K2 | 3.0 | 253,893 | 3.0 | 256,084 |
| 2094 | Dental Hygienist | 017 | 1.0 | 48,487 | 1.0 | 52,934 |
| 0047 | Administrative Assistant II | 014 | 1.0 | 41,890 | 1.0 | 44,009 |
| 1910 | Dental Technician | 013 | 1.0 | 34,849 | | |
| 1500 | Dental Assistant - John H. Stroger Hospital | 013 | 7.0 | 255,623 | 8.0 | 307,160 |
| | | | 14.0 | $738,075 | 14.0 | $772,838 |
| GRAND TOTAL | | | 483.3 | $22,916,223 | 485.1 | $24,599,574 |
| TURNOVER ADJUSTMENT | | | | (687,487) | | (771,331) |
| OPERATING FUNDS | | | 483.3 | $22,228,736 | 485.1 | $23,828,243 |

**Plaintiffs' Exhibit 6**

# PERSONAL SERVICES  -  SUMMARY OF POSITIONS

**Department   240  Cermak Health Services of Cook County**

| JOB CODE AND TITLE | | GRADE | 04 APPROPRIATION | | APPROVED & ADOPTED | |
|---|---|---|---|---|---|---|
| | | | FTE POS. | SALARIES | FTE POS. | SALARIES |
| **11  DENTAL CLINIC** | | | | | | |
| **01  DENTAL SERVICES - 2400934** | | | | | | |
| 2015 | Chief Of Dental Services | K3 | 1.0 | $80,996 | 1.0 | $117,909 |
| 1837 | Dentist II | K2 | 3.0 | $265,690 | 3.0 | $267,900 |
| 2094 | Dental Hygienist | 017 | 1.0 | $52,933 | 1.0 | $53,502 |
| 0047 | Administrative Assistant II | 014 | 1.0 | $44,008 | 1.0 | $44,009 |
| 1500 | Dental Assistant - John H. Stroger Hospital | 013 | 8.0 | $321,245 | 8.0 | $315,428 |
| | | | **14.0** | **$764,872** | **14.0** | **$798,748** |
| **OPERATING FUNDS TOTAL** | | | **485.1** | **$24,812,661** | **464.4** | **$24,039,539** |

# PERSONAL SERVICES  -  SUMMARY OF POSITIONS

## Department   240  Cermak Health Services of Cook County

| JOB CODE AND TITLE | GRADE | 2005 APPROPRIATION FTE POS. | SALARIES | APPROVED & ADOPTED FTE POS. | SALARIES |
|---|---|---|---|---|---|
| | | 22.2 | $1,074,905 | 21.0 | $1,087,412 |
| **06 DIVISION X - 2400929** | | | | | |
| 1942  Clinical Nurse II | FB | 1.0 | 73,954 | | 1 |
| 1966  Licensed Practical Nurse II | PN2 | 8.0 | 313,767 | 8.0 | 318,136 |
| | | 9.0 | $387,721 | 8.0 | $318,137 |
| **07 DIVISION XI - 2400930** | | | | | |
| 1941  Clinical Nurse I | FA | 2.0 | 114,283 | 2.0 | 119,969 |
| 1966  Licensed Practical Nurse II | PN2 | 6.0 | 237,231 | 6.0 | 240,876 |
| 0908  Ward Clerk | CE | 0.2 | 6,655 | 1.0 | 26,931 |
| | | 8.2 | $358,169 | 9.0 | $387,776 |
| **08 RU-PSYCH - 2400931** | | | | | |
| 1941  Clinical Nurse I | FA | 4.0 | 238,816 | 4.0 | 246,524 |
| 1966  Licensed Practical Nurse II | PN2 | 3.5 | 140,656 | 4.0 | 162,147 |
| 1950  Nurse Coordinator | NS1 | 2.0 | 150,036 | 2.0 | 151,896 |
| 0908  Ward Clerk | CE | 2.0 | 58,395 | 2.0 | 58,670 |
| 1961  Attendant Patient Care | CD | 1.0 | 26,021 | 1.0 | 26,455 |
| | | 12.5 | $613,924 | 13.0 | $645,692 |
| **09 RU-MED - 2400932** | | | | | |
| 1941  Clinical Nurse I | FA | 2.2 | 128,046 | 2.0 | 119,121 |
| 1966  Licensed Practical Nurse II | PN2 | 8.0 | 325,707 | 8.0 | 330,093 |
| | | 10.2 | $453,753 | 10.0 | $449,214 |
| **10 ADMINISTRATIVE AIDES/WARD CLERKS - 2400935** | | | | | |
| 0048  Administrative Assistant III | 016 | 1.0 | 49,072 | 1.0 | 50,081 |
| 0927  Administrative Aide (CCU) | CE | 9.0 | 259,332 | 8.0 | 233,267 |
| | | 10.0 | $308,404 | 9.0 | $283,348 |
| **10 CORRECTIONAL  MEDICAL TECHNICIANS** | | | | | |
| **01 EMERGENCY SERVICES - 2400933** | | | | | |
| 0846  Director Of Administrative Operations | 021 | | | 1.0 | 59,216 |
| 2067  Correctional Medical Technician V | 017 | 5.0 | 271,941 | 5.0 | 274,686 |
| 0048  Administrative Assistant III | 016 | 1.0 | 50,081 | 1.0 | 50,081 |
| 2068  Emergency Response Technician | 016 | 8.0 | 385,788 | 7.0 | 339,783 |
| 1918  Correctional Medical Technician III (Paramedic) | 014 | 3.0 | 136,014 | 3.0 | 136,014 |
| 2063  Correctional Medical Technician II (Intermediate) | 012 | 32.9 | 1,196,617 | 34.5 | 1,250,655 |
| 0907  Clerk V | 011 | 1.0 | 32,394 | 1.0 | 32,916 |
| | | 50.9 | $2,072,835 | 52.5 | $2,143,351 |
| **11 DENTAL CLINIC** | | | | | |
| **01 DENTAL SERVICES - 2400934** | | | | | |
| 2015  Chief Of Dental Services | K03 | 1.0 | 117,909 | 1.0 | 117,909 |
| 1837  Dentist II | K02 | 3.0 | 267,900 | 4.0 | 379,576 |
| 2094  Dental Hygienist | 017 | 1.0 | 53,502 | 1.0 | 53,970 |
| 0047  Administrative Assistant II | 014 | 1.0 | 44,009 | 1.0 | 44,009 |
| 1500  Dental Assistant - John H. Stroger Hospital | 013 | 8.0 | 315,428 | 8.0 | 319,084 |
| | | 14.0 | $798,748 | 15.0 | $914,548 |
| **TOTAL SALARIES AND POSITIONS** | | 464.4 | $24,039,539 | 468.2 | $24,607,030 |

# PERSONAL SERVICES  -  SUMMARY OF POSITIONS BY BUSINESS UNIT AND JOB CODE

**Department   240  Cermak Health Services of Cook County**

| JOB CODE AND TITLE | GRADE | 2006 APPROPRIATION FTE POS. | SALARIES | APPROVED & ADOPTED FTE POS. | SALARIES |
|---|---|---|---|---|---|
| 1942 Clinical Nurse II | FB | 1.0 | $73,712 | 1.0 | $77,847 |
| 1966 Licensed Practical Nurse II | PN2 | 1.0 | $43,610 | 1.0 | $45,378 |
| | | **9.0** | **$556,484** | **9.0** | **$570,775** |
| **05 DIVISION IV - 2400928** | | | | | |
| 1941 Clinical Nurse I | FA | 8.0 | $516,800 | 2.0 | $148,503 |
| 1942 Clinical Nurse II | FB | 1.0 | $75,186 | 1.0 | $79,402 |
| 1966 Licensed Practical Nurse II | PN2 | 11.0 | $420,091 | 7.0 | $279,872 |
| 1950 Nurse Coordinator | NS1 | 1.0 | $75,334 | | |
| 1961 Attendant Patient Care | CD | | $1 | | $1 |
| | | **21.0** | **$1,087,412** | **10.0** | **$507,778** |
| **06 DIVISION X - 2400929** | | | | | |
| 1941 Clinical Nurse I | FA | | | 1.0 | $74,250 |
| 1942 Clinical Nurse II | FB | | $1 | | |
| 1966 Licensed Practical Nurse II | PN2 | 8.0 | $318,136 | 5.0 | $212,021 |
| 1950 Nurse Coordinator | NS1 | | | 1.0 | $77,141 |
| | | **8.0** | **$318,137** | **7.0** | **$363,412** |
| **07 DIVISION XI - 2400930** | | | | | |
| 1941 Clinical Nurse I | FA | 2.0 | $119,969 | 2.0 | $108,496 |
| 1966 Licensed Practical Nurse II | PN2 | 6.0 | $240,876 | 8.0 | $337,036 |
| 0908 Ward Clerk | CE | 1.0 | $26,931 | 1.0 | $28,172 |
| | | **9.0** | **$387,776** | **11.0** | **$473,704** |
| **08 RU-PSYCH - 2400931** | | | | | |
| 1941 Clinical Nurse I | FA | 4.0 | $246,524 | 2.0 | $129,508 |
| 1966 Licensed Practical Nurse II | PN2 | 4.0 | $162,147 | 3.0 | $131,679 |
| 1950 Nurse Coordinator | NS1 | 2.0 | $151,896 | 1.0 | $81,042 |
| 0908 Ward Clerk | CE | 2.0 | $58,670 | 2.0 | $61,044 |
| 1961 Attendant Patient Care | CD | 1.0 | $26,455 | | $1 |
| | | **13.0** | **$645,692** | **8.0** | **$403,274** |
| **09 RU-MED - 2400932** | | | | | |
| 1941 Clinical Nurse I | FA | 2.0 | $119,121 | 4.0 | $236,340 |
| 1966 Licensed Practical Nurse II | PN2 | 8.0 | $330,093 | 7.0 | $309,373 |
| | | **10.0** | **$449,214** | **11.0** | **$545,713** |
| **10 ADMINISTRATIVE AIDES/WARD CLERKS - 2400935** | | | | | |
| 0048 Administrative Assistant III | 16 | 1.0 | $50,081 | | |
| 0927 Administrative Aide (CCU) | CE | 8.0 | $233,267 | 8.0 | $242,750 |
| | | **9.0** | **$283,348** | **8.0** | **$242,750** |
| **10 CORRECTIONAL  MEDICAL TECHNICIANS** | | | | | |
| **01 EMERGENCY SERVICES - 2400933** | | | | | |
| 0846 Director Of Administrative Operations | 21 | 1.0 | $59,216 | | $1 |
| 2067 Correctional Medical Technician V | 17 | 5.0 | $274,686 | 3.0 | $164,585 |
| 2068 Emergency Response Technician | 16 | 7.0 | $339,782 | 7.0 | $345,470 |
| 0048 Administrative Assistant III | 16 | 1.0 | $50,081 | | |
| 1918 Correctional Medical Technician III (Paramedic) | 14 | 3.0 | $136,014 | 3.0 | $141,525 |
| 2063 Correctional Medical Technician II (Intermediate) | 12 | 34.5 | $1,250,655 | 32.0 | $1,205,529 |
| 0907 Clerk V | 11 | 1.0 | $32,916 | | |
| | | **52.5** | **$2,143,351** | **45.0** | **$1,857,110** |
| **11 DENTAL CLINIC** | | | | | |
| **01 DENTAL SERVICES - 2400934** | | | | | |
| 2015 Chief Of Dental Services | K03 | 1.0 | $117,909 | | |

# PERSONAL SERVICES - SUMMARY OF POSITIONS BY BUSINESS UNIT AND JOB CODE

## Department 240 Cermak Health Services of Cook County

| JOB CODE AND TITLE | GRADE | 2006 APPROPRIATION | | APPROVED & ADOPTED | |
|---|---|---|---|---|---|
| | | FTE POS. | SALARIES | FTE POS. | SALARIES |
| 1837 Dentist II | K02 | 4.0 | $379,576 | 1.0 | $94,952 |
| 2094 Dental Hygienist | 17 | 1.0 | $53,970 | | |
| 0047 Administrative Assistant II | 14 | 1.0 | $44,009 | | |
| 1500 Dental Assistant - John H. Stroger Hospital | 13 | 8.0 | $319,084 | 2.0 | $86,157 |
| | | **15.0** | **$914,548** | **3.0** | **$181,109** |
| **12 JUVENILE TEMPORARY DETENTION CENTER MEDICAL DEPARTMENT** | | | | | |
| **01 JTDC MEDICAL ADMINISTRATION - 2402030** | | | | | |
| 4621 Director of Medical Care/JTDC | 24 | | | 1.0 | $94,000 |
| 3990 APN-Nurse Practitioner | FF | | | | $1 |
| 1644 Medical Division Chairman 7 | K07 | | | 1.0 | $168,776 |
| 1652 Attending Physician Senior 6 | K06 | | | 1.0 | $155,376 |
| 1634 Attending Physician 4 | K04 | | | 2.0 | $244,920 |
| 1837 Dentist II | K02 | | | 1.0 | $79,449 |
| 1951 Registered Nurse I | FA | | | 5.0 | $375,699 |
| 1941 Clinical Nurse I | FA | | | 6.0 | $406,789 |
| 1942 Clinical Nurse II | FB | | | 2.0 | $157,249 |
| 1615 Psychologist V | 22 | | | | $1 |
| 1607 Clinical Psychologist III | 21 | | | | |
| 2610 Supervisor Of Casework Services, LCSW (JTDC) | 21 | | | | |
| 0252 Business Manager II | 20 | | | | $1 |
| 0051 Administrative Assistant V | 20 | | | | $1 |
| 1945 Nurse Associate | FE | | | | $1 |
| 2007 Medical Records Unit Manager | 18 | | | | $1 |
| 1613 Psychologist III | 18 | | | | |
| 0936 Stenographer V | 13 | | | 1.0 | $37,530 |
| 1963 Dental Assistant | 14 | | | 1.0 | $37,898 |
| 2063 Correctional Medical Technician II (Intermediate) | 12 | | | 1.0 | $39,306 |
| 0907 Clerk V | 11 | | | | $2 |
| 1966 Licensed Practical Nurse II | PN2 | | | 1.0 | $43,410 |
| 1844 Medical Technologist II | T16 | | | 1.0 | $54,170 |
| 1950 Nurse Coordinator | NS1 | | | 1.0 | $72,290 |
| 1955 Administrative Supervisor II | NS2 | | | | $1 |
| | | | | **25.0** | **$1,966,871** |
| **TOTAL SALARIES AND POSITIONS** | | **468.2** | **$24,607,030** | **423.2** | **$23,354,458** |
| **SALARY ADJUSTMENT** | | | | | **($618,866)** |
| **OPERATING FUNDS TOTAL** | | **468.2** | **$24,607,030** | **423.2** | **$22,735,592** |

# PERSONAL SERVICES - SUMMARY OF POSITIONS

## Department   240  Cermak Health Services of Cook County

| JOB CODE AND TITLE | GRADE | 2007 APPROPRIATION | | DEPARTMENT REQUEST | | PRESIDENT'S RECOMMENDATION | |
|---|---|---|---|---|---|---|---|
| | | FTE POS. | SALARIES | FTE POS. | SALARIES | FTE POS. | SALARIES |
| 1950  Nurse Coordinator | NS1 | 1.0 | $81,042 | 1.0 | $85,141 | 1.0 | $85,141 |
| 0908  Ward Clerk | CE | 2.0 | $61,044 | 2.0 | $64,864 | 2.0 | $64,864 |
| 1961  Attendant Patient Care | CD | | $1 | | | | |
| | | 8.0 | $403,274 | 8.0 | $415,600 | 8.0 | $415,600 |
| **09 RU-MED - 2400932** | | | | | | | |
| 1941  Clinical Nurse I | FA | 4.0 | $236,340 | 3.0 | $201,840 | 3.0 | $201,840 |
| 1966  Licensed Practical Nurse II | PN2 | 7.0 | $309,373 | 6.0 | $282,065 | 6.0 | $282,065 |
| | | 11.0 | $545,713 | 9.0 | $483,905 | 9.0 | $483,905 |
| **10 ADMINISTRATIVE AIDES/WARD CLERKS - 2400935** | | | | | | | |
| 0927  Administrative Aide (CCU) | CE | 8.0 | $242,750 | 8.0 | $257,872 | 8.0 | $257,872 |
| | | 8.0 | $242,750 | 8.0 | $257,872 | 8.0 | $257,872 |
| **10 CORRECTIONAL  MEDICAL TECHNICIANS** | | | | | | | |
| **01 EMERGENCY SERVICES - 2400933** | | | | | | | |
| 0846  Director of Administrative Operations | 21 | | $1 | | | | |
| 0051  Administrative Assistant V | 20 | | | 1.0 | $71,673 | 1.0 | $71,673 |
| 2067  Correctional Medical Technician V | 17 | 3.0 | $164,585 | 3.0 | $172,912 | 3.0 | $172,912 |
| 2068  Emergency Response Technician | 16 | 7.0 | $345,470 | 7.0 | $387,309 | 7.0 | $387,309 |
| 1918  Correctional Medical Technician III (Paramedic) | 14 | 3.0 | $141,525 | 3.0 | $150,186 | 3.0 | $150,186 |
| 2063  Correctional Medical Technician II (Intermediate) | 12 | 32.0 | $1,205,529 | 32.0 | $1,303,774 | 32.0 | $1,303,774 |
| 0907  Clerk V | 11 | | | | | | |
| | | 45.0 | $1,857,110 | 46.0 | $2,085,854 | 46.0 | $2,085,854 |
| **11 DENTAL CLINIC** | | | | | | | |
| **01 DENTAL SERVICES - 2400934** | | | | | | | |
| 2015  Chief of Dental Services | K04 | | | 1.0 | $123,875 | 1.0 | $123,875 |
| 1837  Dentist II | K02 | 1.0 | $94,952 | 3.0 | $273,737 | 3.0 | $273,737 |
| 1500  Dental Assistant - John H. Stroger Hospital | 13 | 2.0 | $86,157 | 4.0 | $158,438 | 3.0 | $114,500 |
| 0907  Clerk V | 11 | | | 1.0 | $28,729 | 1.0 | $28,729 |
| | | 3.0 | $181,109 | 9.0 | $584,779 | 8.0 | $540,841 |
| **12 JUVENILE TEMPORARY DETENTION CENTER MEDICAL DEPARTMENT** | | | | | | | |
| **01 JTDC MEDICAL ADMINISTRATION - 2402030** | | | | | | | |
| 3990  APN-Nurse Practitioner | FF | | $1 | | | | |
| 4621  Director of Medical Care/JTDC | 24 | 1.0 | $94,000 | | | | |
| 1644  Medical Division Chairman 7 | K07 | 1.0 | $168,776 | | | | |
| 1652  Attending Physician Senior 6 | K06 | 1.0 | $155,376 | | | | |
| 1651  Attending Physician Senior 5 | K05 | 2.0 | $286,648 | | | | |
| 1634  Attending Physician 4 | K04 | 2.0 | $244,920 | | | | |
| 1837  Dentist II | K02 | 1.0 | $79,449 | | | | |
| 1941  Clinical Nurse I | FA | 6.0 | $406,789 | | | | |
| 1951  Registered Nurse I | FA | 5.0 | $375,699 | | | | |
| 1942  Clinical Nurse II | FB | 2.0 | $157,249 | | | | |
| 1615  Psychologist V | 22 | | $1 | | | | |
| 0051  Administrative Assistant V | 20 | | $1 | | | | |
| 0252  Business Manager II | 20 | | $1 | | | | |
| 1945  Nurse Associate | FE | | $1 | | | | |
| 2007  Medical Records Unit Manager | 18 | | $1 | | | | |
| 0936  Stenographer V | 13 | 1.0 | $37,530 | | | | |
| 1963  Dental Assistant | 14 | 1.0 | $37,898 | | | | |
| 2063  Correctional Medical Technician II (Intermediate) | 12 | 1.0 | $39,306 | | | | |
| 0907  Clerk V | 11 | 1.0 | $35,606 | | | | |
| 1966  Licensed Practical Nurse II | PN2 | 1.0 | $43,410 | | | | |

# PERSONAL SERVICES - SUMMARY OF POSITIONS BY BUSINESS UNIT AND JOB CODE

Department    240  Cermak Health Services of Cook County

| JOB CODE AND TITLE | GRADE | 2008 APPROPRIATION | | APPROVED & ADOPTED | |
|---|---|---|---|---|---|
| | | FTE POS. | SALARIES | FTE POS. | SALARIES |
| **08 RU-PSYCH - 2400931** | | | | | |
| 1966  Licensed Practical Nurse II | PN2 | 4.0 | $179,078 | 5.6 | $243,459 |
| 1950  Nurse Coordinator | NS1 | 1.0 | $87,485 | 1.0 | $87,627 |
| 1941  Clinical Nurse I | FA | 2.0 | $142,621 | 3.4 | $200,191 |
| 4828  Ward Clerk | CF | | | 2.0 | $68,431 |
| 0908  Ward Clerk | CF | 2.0 | $68,428 | | |
| 1967  Transporter -  John H. Stroger Hospital | CC | | | 0.8 | $23,036 |
| | | 9.0 | $477,611 | 12.8 | $622,744 |
| **09 RU-MED - 2400932** | | | | | |
| 1966  Licensed Practical Nurse II | PN2 | 8.0 | $392,644 | 8.0 | $392,659 |
| 1941  Clinical Nurse I | FA | 3.0 | $211,317 | 3.0 | $215,030 |
| | | 11.0 | $603,961 | 11.0 | $607,689 |
| **10 ADMINISTRATIVE AIDES/WARD CLERKS - 2400935** | | | | | |
| 0927  Administrative Aide (CCU) | CE | 8.0 | $271,943 | 9.0 | $305,045 |
| 0912  Administrative Aide | CD | | | 2.4 | $69,108 |
| | | 8.0 | $271,943 | 11.4 | $374,153 |
| **11 RCDC PATIENT CARE SERVICES - 2400937** | | | | | |
| 1950  Nurse Coordinator | NS1 | | | 0.8 | $53,215 |
| 2067  Correctional Medical Technician V | 17 | | | 1.8 | $119,977 |
| 2068  Emergency Response Technician | 16 | | | 2.0 | $113,850 |
| 1918  Correctional Medical Technician III (Paramedic) | 14 | | | 2.0 | $103,058 |
| 2063  Correctional Medical Technician II (Intermediate) | 12 | | | 8.8 | $365,335 |
| | | | | 15.4 | $755,435 |
| **10 CORRECTIONAL  MEDICAL TECHNICIANS** | | | | | |
| **01 EMERGENCY SERVICES - 2400933** | | | | | |
| 1955  Administrative Supervisor II | NS2 | | | 0.8 | $56,654 |
| 0051  Administrative Assistant V | 20 | 1.0 | $74,655 | | |
| 2067  Correctional Medical Technician V | 17 | 3.0 | $179,450 | 2.0 | $120,505 |
| 2068  Emergency Response Technician | 16 | 7.0 | $401,781 | 5.0 | $290,071 |
| 1918  Correctional Medical Technician III (Paramedic) | 14 | 3.0 | $157,242 | 2.0 | $104,830 |
| 2063  Correctional Medical Technician II (Intermediate) | 12 | 32.0 | $1,365,506 | 25.8 | $1,048,411 |
| | | 46.0 | $2,178,635 | 35.6 | $1,620,471 |
| **11 DENTAL CLINIC** | | | | | |
| **01 DENTAL SERVICES - 2400934** | | | | | |
| 2015  Chief of Dental Services | K04 | 1.0 | $127,284 | 2.4 | $281,274 |
| 4880  Dentist IV | K04 | | | 3.6 | $368,081 |
| 1837  Dentist II | K02 | 3.0 | $276,480 | | |
| 1500  Dental Assistant - John H. Stroger Hospital | 13 | 3.0 | $137,492 | 6.2 | $245,849 |
| 0907  Clerk V | 11 | 1.0 | $41,739 | | |
| | | 8.0 | $582,995 | 12.2 | $895,204 |
| **TOTAL SALARIES AND POSITIONS** | | 392.0 | $23,416,200 | 445.2 | $25,795,548 |
| TURNOVER ADJUSTMENT | | | ($1,550,900) | | ($1,031,628) |
| OPERATING FUNDS TOTAL | | 392.0 | $21,865,300 | 445.2 | $24,763,920 |

## Department Mission

To provide constitutionally required medical and mental health care to detainees in the Cook County Department of Corrections and Juvenile Temporary Detention Center in accordance with acceptable community standards of care, accreditation and regulatory requirements.

## Goals and Objectives

- To reach agreement on a remedial plan with the U.S. Department of Justice and establish a plan for compliance.
- To identify all deficiencies preventing accreditation with the National Commission on Correctional Health Care (NCCHC) and establish a remedial plan to address all deficiencies.
- To successfully go-live with the Cerner electronic medical record.
- To initiate the use of Pyxis pharmacy system in key areas of service.
- To successfully consolidate laboratory services at Stroger Hospital.

## Summary of Operations

Cermak Health Services of Cook County provides a comprehensive range of health care services to detainees in the Cook County Department of Corrections. Services include primary care, chronic care management, mental health services, dental, laboratory, radiology, pharmacy, and rehabilitative care. Specialty clinics and dialysis are provided on-site. Cermak provides a required role in public health which includes screening for and managing tuberculosis infection, managing sexually transmitted diseases including HIV, and coordinating, reporting and follow up treatment with the Chicago Department of Health.

## Major Accomplishments

- Applied for NCCHC accreditation.
- Successfully complete design phase of new RU/RCDC building.
- Re-opened two dental clinics.
- Re-established inventory system of archival records in accordance with Illinois Records Act; removed all archival material to warehouses and destroyed aged records as permitted.
- Successfully transitioned to a new management team.

## Key Initiatives

- Completed personnel recommendations necessary to reach readiness for accreditation.
- Complete roll out of Cerner electronic medical records system.
- Complete consolidation of laboratory services to Stroger Hospital.
- Complete and implement 4 key initiatives and process re-design for compliance with the U.D. DOJ including:
  a) Intake redesign
  b) Implementation of electronic medical records
  c) Re-design of medication administration
  d) Re-design of sick call procedures
- Initiate lean process improvement methodology.

# Programs

## Dental Care Services

The population of Cermak experiences a greater than average need for dental care, based on patient histories that repeatedly show neglect and because of illness and conditions that require strict adherence to good dental hygiene.

| Appropriations ($ thousands) | | | |
| --- | --- | --- | --- |
| Fund Category | 2008 Adopted | 2009 Adopted | 2010 Approved and Adopted |
| General | 31,044.1 | 35,705.1 | 41,278.5 |
| Total | 31,044.1 | 35,705.1 | 41,278.5 |
| | Adopted | Adopted | Adopted |
| FTE Positions | 392.0 | 445.2 | 486.5 |



**Plaintiffs' Exhibit 6**                                                                                           **Page 10**

PERSONAL SERVICES - SUMMARY OF POSITIONS BY BUSINESS UNIT AND JOB CODE

DEPARTMENT 240 - CERMAK HEALTH SERVICES OF COOK COUNTY

| Job Code | Title | Grade | 2009 Appropriation | | Approved & Adopted | |
|---|---|---|---|---|---|---|
| | | | FTE Pos. | Salaries | FTE Pos. | Salaries |
| 2067 | Correctional Medical Tech V | 17 | 2.0 | 121,770 | 2.0 | 122,594 |
| 2068 | Emergency Resp. Technician | 16 | 5.0 | 289,817 | 5.0 | 290,349 |
| 1918 | Correctional Medical Tech. III | 14 | 2.0 | 105,876 | 2.0 | 105,878 |
| 2063 | Correctional Medical Tech II | 12 | 25.8 | 1,058,829 | 27.0 | 1,104,961 |
| 1955 | Administrative Supervisor II | NS2 | 0.8 | 56,654 | 1.0 | 70,714 |
| | | | 35.6 | $1,632,946 | 37.0 | $1,694,496 |
| 11 Dental Clinic | | | | | | |
| 01 Dental Services - 2401101 | | | | | | |
| 4880 | Dentist IV | K04 | 3.6 | 517,136 | 4.0 | 519,462 |
| 1500 | Dental Assistant | 13 | 6.2 | 246,858 | 7.0 | 289,944 |
| 2015 | Chief Dental Services | K04 | 2.4 | 187,516 | 3.0 | 369,522 |
| | | | 12.2 | $951,510 | 14.0 | $1,178,928 |
| Total Salaries and Positions | | | 445.2 | $26,602,951 | 486.5 | $28,707,375 |
| Turnover Adjustment | | | | | | (236,476) |
| Operating Funds Total | | | 445.2 | $26,602,951 | 486.5 | $28,470,899 |

**Plaintiffs' Exhibit 6**

## Department Mission

To provide constitutionally required medical and mental health care to detainees in the Cook County Department of Corrections and Juvenile Temporary Detention Center in accordance with acceptable community standards of care, accreditation and regulatory requirements.

## Goals and Objectives

- To reach agreement on a remedial plan with the U.S. Department of Justice and establish a plan for compliance.
- To identify all deficiencies preventing accreditation with the National Commission on Correctional Health Care (NCCHC) and establish a remedial plan to address all deficiencies.
- To successfully go-live with the Cerner electronic medical record.
- To initiate the use of Pyxis pharmacy system in key areas of service.
- To successfully consolidate laboratory services at Stroger Hospital.

## Summary of Operations

Cermak Health Services of Cook County provides a comprehensive range of health care services to detainees in the Cook County Department of Corrections. Services include primary care, chronic care management, mental health services, dental, laboratory, radiology, pharmacy, and rehabilitative care. Specialty clinics and dialysis are provided on-site. Cermak provides a required role in public health which includes screening for and managing tuberculosis infection, managing sexually transmitted diseases including HIV, and coordinating, reporting and follow up treatment with the Chicago Department of Health.

## Major Accomplishments

- Applied for NCCHC accreditation.
- Successfully complete design phase of new RU/RCDC building.
- Re-opened two dental clinics.
- Re-established inventory system of archival records in accordance with Illinois Records Act; removed all archival material to warehouses and destroyed aged records as permitted.
- Successfully transitioned to a new management team.

## Key Initiatives

- Completed personnel recommendations necessary to reach readiness for accreditation.
- Complete roll out of Cerner electronic medical records system.
- Complete consolidation of laboratory services to Stroger Hospital.
- Complete and implement 4 key initiatives and process re-design for compliance with the U.D. DOJ including:
  a) Intake redesign
  b) Implementation of electronic medical records
  c) Re-design of medication administration
  d) Re-design of sick call procedures
- Initiate lean process improvement methodology.

# Programs

## Dental Care Services

The population of Cermak experiences a greater than average need for dental care, based on patient histories that repeatedly show neglect and because of illness and conditions that require strict adherence to good dental hygiene.

| Appropriations ($ thousands) | | |
|---|---|---|
| Fund Category | 2008 Adopted | 2009 Adopted | 2010 Approved and Adopted |
| General | 31,044.1 | 35,705.1 | 41,278.5 |
| Total | 31,044.1 | 35,705.1 | 41,278.5 |
| | Adopted | Adopted | Adopted |
| FTE Positions | 392.0 | 445.2 | 486.5 |



Annual Appropriation ■ Salaries ◆ FTEs

Plaintiffs' Exhibit 6

PERSONAL SERVICES - SUMMARY OF POSITIONS BY BUSINESS UNIT AND JOB CODE

DEPARTMENT 240 - CERMAK HEALTH SERVICES OF COOK COUNTY

| Job Code | Title | Grade | 2009 Appropriation | | Approved & Adopted | |
|---|---|---|---|---|---|---|
| | | | FTE Pos. | Salaries | FTE Pos. | Salaries |
| 2067 | Correctional Medical Tech V | 17 | 2.0 | 121,770 | 2.0 | 122,594 |
| 2068 | Emergency Resp. Technician | 16 | 5.0 | 289,817 | 5.0 | 290,349 |
| 1918 | Correctional Medical Tech. III | 14 | 2.0 | 105,876 | 2.0 | 105,878 |
| 2063 | Correctional Medical Tech II | 12 | 25.8 | 1,058,829 | 27.0 | 1,104,961 |
| 1955 | Administrative Supervisor II | NS2 | 0.8 | 56,654 | 1.0 | 70,714 |
| | | | 35.6 | $1,632,946 | 37.0 | $1,694,496 |
| 11 Dental Clinic | | | | | | |
| 01 Dental Services - 2401101 | | | | | | |
| 4880 | Dentist IV | K04 | 3.6 | 517,136 | 4.0 | 519,462 |
| 1500 | Dental Assistant | 13 | 6.2 | 246,858 | 7.0 | 289,944 |
| 2015 | Chief Dental Services | K04 | 2.4 | 187,516 | 3.0 | 369,522 |
| | | | 12.2 | $951,510 | 14.0 | $1,178,928 |
| Total Salaries and Positions | | | 445.2 | $26,602,951 | 486.5 | $28,707,375 |
| Turnover Adjustment | | | | | | (236,476) |
| Operating Funds Total | | | 445.2 | $26,602,951 | 486.5 | $28,470,899 |

**Plaintiffs' Exhibit 6**　　　　　　　　　　　　　　　　　　　　**Page 13**

| Job Code | Title | Grade | 2011 Appropriation FTE Pos. | 2011 Appropriation Salaries | Approved & Adopted FTE Pos. | Approved & Adopted Salaries |
|---|---|---|---|---|---|---|
| | 44 PCS - Acute Medical  - 2401930 | | | | | |
| 1941 | Clinical Nurse I | FA | | | 9.0 | 673,676 |
| 1966 | Licensed Practical Nurse II | PN2 | | | 9.0 | 434,458 |
| 1950 | Nurse Coordinator | NS1 | | | 1.0 | 89,395 |
| 1961 | Attendant Patient Care | CD | | | 11.0 | 353,742 |
| | | | | | 30.0 | $1,551,271 |
| | 45 PCS - Acute Mental Health  - 2401931 | | | | | |
| 1941 | Clinical Nurse I | FA | | | 7.0 | 554,819 |
| 1966 | Licensed Practical Nurse II | PN2 | | | 1.0 | 41,192 |
| | | | | | 8.0 | $596,011 |
| | 46 PCS - MH Step Down - 2401932 | | | | | |
| 1941 | Clinical Nurse I | FA | | | 3.0 | 243,674 |
| 1966 | Licensed Practical Nurse II | PN2 | | | 7.0 | 339,814 |
| | | | | | 10.0 | $583,488 |
| | 47 PCS - MH Dementia  - 2401933 | | | | | |
| 1966 | Licensed Practical Nurse II | PN2 | | | 2.0 | 99,950 |
| 1961 | Attendant Patient Care | CD | | | 6.0 | 190,015 |
| | | | | | 8.0 | $289,965 |
| 11 Dental Clinic | | | | | | |
| | 01 Dental Services - 2401101 | | | | | |
| 5435 | Correctional Chief of Dental Services | K06 | | | 1.0 | 150,859 |
| 4880 | Dentist IV | K04 | 7.0 | 933,106 | 6.0 | 810,674 |
| 2094 | Dental Hygienist | 17 | | | 2.0 | 104,204 |
| 1500 | Dental Assistant - CCH | 13 | 7.0 | 292,441 | 7.0 | 298,582 |
| | | | 14.0 | $1,225,547 | 16.0 | $1,364,319 |
| Total Salaries and Positions | | | 516.0 | $33,813,873 | 527.0 | $35,006,169 |
| Turnover Adjustment | | | | | | (40) |
| Operating Funds Total | | | 516.0 | $33,813,873 | 527.0 | $35,006,129 |

**Plaintiffs' Exhibit 6**　　　　　**Page 14**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April, 2013 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Maureen O. Hannon, ASA, 69 W Washington Street, Ste 2030, Chicago, IL 60602 and Michael Gallagher, ASA, 50 W Washington Street, Ste 500, Chicago, IL 60602 and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 1240
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiffs*