**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN SMENTEK, et al.,** | ) | |
| **Plaintiffs,** | ) | **Case No. 09 C 529** |
| | ) | |
| **v.** | ) | **District Judge Joan H. Lefkow** |
| | ) | |
| **SHERIFF OF COOK COUNTY and** | ) | **Magistrate Judge Geraldine Soat Brown** |
| **COOK COUNTY, ILLINOIS,** | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

Plaintiffs' Renewed Motion to Extend the Discovery Cutoff Date (Pls.' Mot.) [dkt 210], and Defendant Cook County's Motion to Stay Compliance with Requests for Medical Records (Def.'s. Mot.) [dkt 226] are before the court.[1] Defendant Cook County opposes plaintiffs' motion and requests that plaintiffs be barred from seeking additional dental records except as provided in the court's October 30, 2013 order regarding the production of dental and medical records. Cook County's motion asks that the County not be required to comply with requests for inmates' medical records that plaintiffs' counsel has sent directly to Cermak Health Services ("Cermak"). For the following reasons, plaintiffs' motion is granted in part and denied in part as detailed below. Cook

[1] The plaintiffs' motion is styled as "renewed" because the original motion was denied without prejudice due to the failure of plaintiffs' counsel to comply with Local Rule 37.2, which requires counsel to provide a statement about attempts to resolve discovery disputes before seeking court intervention. [Dkt. 209.]

County's motion is granted on an interim basis and otherwise taken under advisement pending further briefing. In addition, in a footnote in Cook County's response, its counsel states that she believes that Mr. Smentek has passed away. If Mr. Smentek is deceased, his counsel must file a suggestion of death. *See* Fed. R. Civ. P. 25(a).

## **Background**

*The certified classes*

In this class action case, plaintiffs allege that defendants reduced dental staff at the Cook County Jail to a level that made it a virtual certainty that inmates would not receive adequate dental care. (Mem. Op. and Order, Aug. 17, 2011 at 6.) [Dkt 93.] The District Judge held that, to prevail on this claim, plaintiffs must "prove that a condition of confinement–near elimination of dental care–is one of deliberate indifference to serious medical need, as illustrated by the representative plaintiffs and [others] who were not promptly treated after seeking medical treatment for dental pain." (*Id*. at 5.)

The Fed. R. Civ. P. 23(b)(2) class consists of "[a]ll persons presently confined at the Cook County Jail who are experiencing dental pain and who have waited more than seven days after making a written request for treatment of that pain without having been examined by a dentist." (Mem. Op. and Order, Nov. 18, 2010 at 15.) [Dkt 68.] The Rule 23(b)(3) class is defined as "all inmates housed at Cook County Department of Corrections on or after January 1, 2007, who made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment." (Mem. Op. and Order, Aug. 17, 2011 at 11.) [Dkt 93.] When certifying the plaintiff classes, the District Judge stated that "[d]amages issues can be addressed on

an individualized basis if the case is resolved in favor of the plaintiff class and if damages cannot be resolved for the class as a whole, as is typical in cases of this sort." (*Id.*)

*Discovery deadlines*

Because plaintiffs are requesting a further extension of fact discovery, it is necessary to review the number of times fact discovery has been extended in this case. On July 30, 2012, the District Judge ordered fact discovery to close on April 12, 2013. [Dkt 119.] The District Judge later referred the case to this court for discovery supervision and discovery motions [dkt 127], and on March 28, 2013, granted the plaintiffs' oral motion to extend fact discovery to June 28, 2013. [Dkt 141.] After the District Judge expanded the referral to allow this court to determine discovery cutoff dates [dkt 160], on June 13, 2013, this court struck the June 28, 2013 fact discovery cutoff and ordered the parties to propose a plan to complete discovery. [Dkt 164.] On July 17, 2013, this court ordered that "[a]ll fact discovery shall be noticed in time to be completed by 12/20/13. FIRM DATE." [Dkt 170.]

*The additional dental and medical records*

When the current discovery cutoff was set, the Sheriff was in the process of producing additional inmate grievances relating to dental care. Counsel for the Sheriff advised the court that 2000 grievances had been produced and that the Sheriff expected to produce an additional 500 grievances by July 31, 2013. (*Id.*) Plaintiffs were ordered to request any additional medical records relating to the dental grievances by August 30, 2013. (*Id.*) Plaintiffs requested dental treatment records for an additional 195 inmates. (Mem. Opinion and Order, October 30, 2013 at 3.) [Dkt

202.] After discussions with defendants, plaintiffs reduced this request to dental records for 167 of those inmates, but this court ordered the defendants to produce both medical and dental records for an additional 34 inmates. (*Id.* at 3, 6-7.)[2] Plaintiffs have appealed that ruling to the District Judge whose decision on that is currently pending.

During a status hearing the following day, defendants' counsel discussed the upcoming "end of the year cutoff for the fact discovery." (Oct. 31, 2013, Tr. at 3.) Defendants' counsel reported that plaintiffs had noticed seven depositions and that dates had been set for five of them but there would not be a problem with completing the last two before the cutoff. (*Id.*) Plaintiffs' counsel voiced a concern that he needed the medical records the court had ordered defendants to produce in order to complete those depositions. (*Id.* at 4-5.) Notably, plaintiffs' counsel did *not* suggest that any further discovery was going to be served. The court said that it would entertain requests to adjust the schedule into January if necessary but rejected an open-ended discovery extension, explaining:

> If for reasons outside anybody's control that some discovery previously noticed can't be completed by [the end of the year] deadline, then a motion to extend the time for specific discovery is certainly appropriate, but what I will not do is I will not allow people to start renoticing things and serving new discovery after the cutoff date. This is to conclude previously noticed discovery that for good reasons could not be completed during the discovery cutoff. That's what it's for. And then that puts a fence around it.

(*Id.* at 5-6, 8.) According to the plaintiffs, 33 of the 34 medical and dental records were produced on December 3, 2013. (Pls.' Reply at 3.) [Dkt. 223.] The fate of the 34th record is unclear.

---

[2] Defendants had previously produced dental and medical records for the named plaintiffs and 91 other inmates. (Order, Oct. 30, 2013 at 2.)

*Plaintiffs' motion to extend the discovery cutoff*

Despite the "FIRM" discovery cutoff date [dkt 170] and the discussion at the October 31 status hearing about completing final fact discovery by the cutoff date, the plaintiffs served a new round of discovery the following week, including notices of depositions for 25 potential witnesses who had been identified in defendants' Rule 26(a)(1) disclosures in December 2012, and a request for the dental and appointment records related to each of 276 grievances that were filed from March 14, 2013, to October 24, 2013. (Pls.' Mot. ¶¶ 5-7.)[3] Plaintiffs now request an extension until March 20, 2014, in order to complete that discovery, and also argue that an extension is required because they do not want to take the depositions until the District Judge rules on the objections to the October 30, 2013 order. In response, Cook County stresses that plaintiffs received the names of the 25 dental employees almost a year ago, in December 2012, and argue that it is unreasonable for plaintiffs to request depositions of these individuals on the eve of the discovery close. (Def.'s Resp. at 2.) It also argues that plaintiffs do not need additional dental or medical records to support their class claims because "policies, procedures, number of patients seen daily in the clinics, and all of that general information should be unaffected by receipt of detainee medical records." (*Id*. at 3-4.) Next, Cook County objects that plaintiffs continue to ask for more records even though they have received extensive numbers of inmate medical records and the court recently limited their request for production of records. (*Id*. at 4-5.)

*Cook County's Motion to Stay Compliance with Requests for Medical Records*

---

[3] Cook County states that the deposition notice for the 25 dental employees results in the addition of 19 more depositions (Def.'s Resp. at 1) [dkt 216], presumably because some of these individuals were among the deponents previously scheduled.

Plaintiffs' counsel has recently served requests for inmates' medical records directly on the Cermak's Medical Records Department without notifying counsel for the defendants. (*See* Def.'s Resp., Ex. E (letters to Cermak Medical Records Department requesting medical record for approximately 75 detainees).) Cook County objects strongly to that practice in its response to plaintiffs' motion. (Def.'s Resp. at 5.) Plaintiffs respond to that objection in their reply, observing that Cook County should make that objection in a separate motion. (Pls.' Reply at 4 n. 3.) Cook County has now filed its own motion for a protective order to stay any obligation to produce the medical records. (Def.'s Mot.)

## Discussion

I. Plaintiff's motion

*Plaintiffs' request for time to obtain additional medical records*

Plaintiffs' motion is premised on their belief that their request for injunctive relief entitles them to pursue discovery regarding the dental treatment of any Cook County Jail inmate who has experienced dental pain and waited more than seven days to see a dentist or made a written request for dental care due to acute pain and suffered prolonged and unnecessary pain due to the lack of treatment. According to plaintiffs, as long as inmates continue to file dental grievances, they are entitled to discovery relating to those grievances because plaintiffs have requested injunctive relief on behalf of all inmates who have received unconstitutionally subpar dental treatment at the Cook County Jail. Plaintiffs also assert that they are entitled to receive dental records relating to all known dental grievances before deposing individuals who provided dental care at the Jail, because they wish to question the deponents about the records. (Pls.' Mot. at ¶¶ 5-7.)

Greek mythology teaches that Sisyphus was condemned to roll a heavy boulder up a hill, only to have it roll down every time it neared the top. Plaintiffs' view of discovery is Sisyphean: they seek dental records for finite groups of inmates based on those inmates' dental grievances but as the top of the hill nears (because defendants produce the records or the court resolves motions about the scope of discovery), they start over again with additional requests for records based on newly submitted dental grievances. The loop is never ending because as time passes, more dental grievances are filed so plaintiffs seek more dental records. Plaintiffs want records for every inmate who has submitted a dental grievance, and posit that they cannot complete oral fact discovery until they first receive all of the requested records.

The solution to this problem is to recognize that liability in this case does not turn on an analysis of the specific dental care provided to each and every class member. As the District Judge explained:

> This case is better understood as requiring the plaintiff to prove that a condition of confinement–near elimination of dental care–is one of deliberate indifference to serious medical need, as illustrated by the representative plaintiffs and other witnesses who were not promptly treated after seeking medical treatment for dental pain. Yes, each named plaintiffs would have to give evidence supporting the claim. But if liability is established based on the evidence presented by the representative plaintiffs, the outcome for members of the class is a different question . . . . In other words, the principal issue of causation is the systemic one–adequacy of medical staffing–not the variations in the need claimed by the individual inmates.

(Mem. Op. and Order, Aug. 17, 2011 at 5.)

Plaintiffs have already received extensive dental and medical records.[4] Plaintiffs' argument that they are entitled to grievances and records for each inmate is incorrect because to establish liability, plaintiffs must present representational evidence, not evidence for each class member. They do not explain why they need hundreds more records on the eve of the discovery cutoff for purposes of the liability determination. Nor do they explain how, under their view of discovery, the cycle of requesting and producing grievances and records would ever end.

This court has previously determined that the more than 100 inmate dental and medical records plaintiffs have now obtained are sufficient for the purposes of liability discovery. In this court's view, plaintiffs have not demonstrated that they are entitled to extend discovery to obtain additional dental and medical records for this phase of the litigation.

*The depositions of additional dental employees*

Cook County states that plaintiffs have deposed nine of defendants' employees, and defendants previously agreed to produce five more employees. (Def.'s Resp. at 3.) The dispute concerns the 19 dental employees whose depositions plaintiffs first sought in November 2013. Plaintiffs do not explain why they seek to depose these additional 19 dental employees on the eve of the discovery cutoff, except to say that they are entitled to depose treaters about the dental care that they provided to class members, and they need a complete set of medical records before they can do so. (Pls.' Reply at 5.) Again, as explained above, this is incorrect for the same reason that the

[4] Plaintiffs continue to assert that their requests are narrowly tailored because they have merely requested dental, not medical, records. The court, however, has previously held that the medical records are necessary because they "may also contain information about dental care that will be necessary for a complete picture of inmates' dental care." (Order, Oct. 30, 2013 at 5.)

plaintiffs are not entitled to medical and dental records for every inmate who has submitted a dental grievance: the class claims for deliberate indifference turn on representational evidence, not evidence for each class member.

Moreover, plaintiffs have not presented any reason why they waited until November 2013 to seek to depose dental employees who were disclosed as potential witnesses in December 2012. The July 2013 order setting the current cutoff stated that "discovery shall be *noticed in time to be completed* by December 20, 2013. FIRM DATE." (Order, July 17, 2013, emphasis added.) It is particularly disturbing that when the topic of depositions was discussed at the October 31 status hearing, plaintiffs' counsel made no mention of serving any additional deposition notices, yet less than a week later served a notice for 25 depositions.

At that October 31 status hearing, the parties informed the court that they were trying to get dates before the cutoff for the two remaining deponents. Plaintiffs' counsel could not in good faith have believed that depositions for an additional 19 deponents noticed on November 6 would be "completed" by December 20. *See Finwall v. City of Chicago*, 239 F.R.D. 494, 498-99 (N.D. Ill. 2006) (explaining that under Local Rule 16.1 discovery must be *completed* before the discovery closing date). Plaintiffs' Notice of Depositions included nominal dates for the depositions to conclude by December 20, but that schedule (which shows three depositions being taken on some days) was clearly impossible when plaintiffs' counsel served it. (Def.'s Resp., Ex. A.)

These are not newly discovered witnesses. Plaintiffs do not even attempt to argue (as is often argued with eleventh-hour discovery requests) that recent developments revealed the role of a dental employee whose importance as a witness could not have been realized earlier. Instead, plaintiffs simply waited until the last minute to notice the depositions of defendants' witnesses. Plaintiffs had

ample opportunity to notice their depositions in time to comply with the order but instead waited until compliance with the order was a functional impossibility. They did so at their own peril. *See Davis Cos., Inc. v. Emerald Casino, Inc.*, No. 99 C 6822, 2000 WL 33956686 at *1-3 (N.D. Ill. June 6, 2000) (rejecting "eleventh hour attempt" to depose a witness and finding "no reason why this facet of discovery could not have been initiated long ago rather than on the eve of discovery cutoff when it will likely entail an extension of discovery"). Accordingly, the court declines to extend the discovery deadline to allow the plaintiffs to depose all 25 of the dental employees.

Plaintiffs did, however, notice five of these depositions in a timely manner and the parties have been attempting to schedule these depositions. Plaintiffs' objections to this court's October 30, 2013 order limiting discovery are currently under advisement before the District Judge. [Dkt 221.] As stated at the October 31 status hearing, an extension to complete specific, previously noticed discovery would be entertained. The court "has substantial discretion in managing discovery, including whether or not to modify the discovery schedule." *Rizza v. Underwriters*, No. 09 CV 687, 2011 WL 867492 at *2 (N.D. Ill. Mar.11, 2011). Accordingly, plaintiffs may proceed to take those five depositions. In light of the pending objections to the previous order limiting production of requested medical records, to conserve the parties' resources in the event that the District Judge sustains the objections, the parties may schedule the depositions after the District Judge rules, even if that occurs after the discovery cutoff. They are directed to do so promptly following the District Judge's ruling.

II. Cook County's motion to stay compliance with requests for medical records

In its response to the motion for an extension of the discovery cutoff and its motion, Cook County asserts that plaintiffs' counsel is improperly serving document requests directly on the Cermak Medical Records Department without notifying counsel for defendants. (Def.'s Resp., Ex. E.) It appears that plaintiffs' counsel has tendered to Cermak what are represented to be waivers to release medical records for approximately 75 persons, and demanded that Cermak release "all medical records for the dates provided on the waivers." (*Id.*) Plaintiffs contend that the requests are proper under 735 Ill. Comp. Stat. § 5/8-2001 and 45 C.F.R. § 164.524(a). (Pls.' Reply at 4.)

Plaintiffs' actions raises serious questions, including the following:

Cook County suggests that plaintiffs' actions are an intentional effort to circumvent this court's ruling limiting the medical and dental records defendants are required to produce. The statute and regulation plaintiffs cite do not appear to contemplate this sort of mass production of records as a substitute for ordinary discovery in litigation. Do plaintiffs have authority to support the use of the statute and regulation for that purpose?

One of the factors this court considered in ordering sampling of inmate records was weighing the burden of production against the benefit for the litigation. The 75 requests plaintiffs have already sent could impose a significant burden on the Cermak. The regulations require that the person requesting the records pay the reasonable expenses of producing and copying the requested records. 735 Ill. Comp. Stat § 5/8-2001(d); 45 C.F. R. § 164.524(c)(4). Have plaintiffs tendered payment of the expenses to Cermak?

What provisions have plaintiffs' counsel made for maintaining the privacy of those records? Are plaintiffs' counsel planning to disclose any of them to defendants' counsel? If so, do they intend to disclose all of them or only selected records?

In light of these considerations, Cook County's motion will be granted on an interim basis pending the filing of a response by plaintiffs that includes addressing the questions raised above and includes a sample of a waiver submitted to Cermak. Cook County may file a reply in support of its motion. The motion is taken under advisement.

## Conclusion

For the foregoing reasons, Plaintiffs' Renewed Motion to Extend the Discovery Cutoff is granted in part and denied in part. Specifically:

(1) Plaintiffs' request to extend discovery so plaintiffs can obtain dental (and medical) records relating to the 276 grievances filed from March 14, 2013, through October 24, 2013, is denied;

(2) Plaintiffs' request to extend the discovery deadline to allow plaintiffs to depose all 25 of the dental employees is denied, but the court will allow plaintiffs to proceed with the five timely noticed defendants' employee depositions. They are directed to schedule the depositions promptly after the District Judge rules on plaintiffs' objections to this court's October 30, 2013 order, even if this occurs after the discovery cutoff; and

(3) If Mr. Smentek is deceased, his counsel must file a suggestion of death. *See* Fed. R. Civ. P. 25(a). If appropriate, plaintiffs' counsel shall file, by January 10, 2014, a suggestion of death and a brief memorandum advising the court whether a representative intends to file a motion to substitute.

Cook County's Motion to Stay Compliance with Requests for Medical Records is granted on an interim basis. Cermak Medical Services is not required to produce any medical records pursuant to the waivers submitted with the request of plaintiffs' counsel until further order of the

court. Plaintiffs' response to that motion must be filed by January 10, 2014. Defendant Cook County may file a reply in support by January 17, 2014. The motion is taken under advisement and ruling will be by mail.

Geraldine Soat Brown

Geraldine Soat Brown
United States Magistrate Judge

Dated: December 19, 2013