IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Smentek, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | No. 09-529 |
| *-vs-* | ) | |
| | ) | *(Judge Lefkow)* |
| Sheriff of Cook County and Cook County, Illinois | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S APPLICATION FOR ENTRY OF A PRELIMINARY INJUNCTION AND TO SCHEDULE HEARING ON PERMANENT INJUNCTION

The plaintiff class, by counsel, moves the Court to enter a preliminary injunction to require defendants

1. To screen health service requests complaining about dental pain on a daily basis,

2. To provide a procedure for detainees complaining about dental pain to obtain prompt access to pain reduction medicine (e.g., ibuprofen), and

3. To maintain records of requests for dental treatment, including dates inmates are scheduled to be examined by dental personnel, dates inmates are actually examined by dental personnel, and documentation of cancellation or failure to appear for dental treatment or examination.

Plaintiffs also request that the Court order defendants to produce the dental treatment records of the 53 class members identified in Exhibit 11 and set the case for a hearing on a permanent injunction.

Grounds for these requests are as follows:

## I. Background Facts

This case is pending as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. The (b)(2) class is defined as (ECF #68):

> All persons presently confined at the Cook County Jail who are experiencing dental pain and who have waited for more than seven days after making a written request for treatment of that pain without having been examined by a dentist.

Detainees make a written request for treatment of dental pain by filing a "health service request." Exhibit 1 is a health service request form submitted by class member Larry Williams on Tuesday, March 2, 2010. Defendants assert that they do not maintain a separate file for health service requests, but place each request into the detainee's medical records.[1]

Health service requests are reviewed by a nurse, who may examine the detainee and prescribe pain medication, schedule the detainee for sick call, or request that the detainee be scheduled to see a health care provider. Exhibit 1 shows that on Thursday, March 4, 2010, a nurse asked that Williams be "scheduled for dental ASAP." The nurse did not examine Williams. Nor did the nurse provide Williams with any pain medication. And a dentist did not see Williams until May 5, 2010, 64 days after his initial request. (Exhibit 2.)

---

[1] Defendants produced on July 10, 2013 the entirety of Williams' medical records.Less than 25 of the 449 pages produced relate to dental issues.

A detainee who is not seen by a health care provider may continue to submit health service requests. Class member Williams submitted health care requests on March 6, 2010 (Exhibit 3), March 7, 2010 (Exhibit 4), March 30, 2010 (Exhibit 5), and April 24, 2010. (Exhibit 6.) Williams clearly described his dental pain:

> Please, please help. My teeth are bleeding. I can't eat. My gums are swollen. My jaw has swollen. I can't brush my teeth on the right side of my mouth. I can't chew. I have requested to go to the dentist over a dozen times. Please send me to the dentist. I hardly can talk. Send me ASAP. (Exhibit 3.)

> Attn nurse. My teeth are bleeding. It feels like I'm going to die. My [illegible] is unbearable, please Help. I fear for my life. (Exhibit 4.)

> Emergency situation! Dentist! Dentist! Dentist! Dentist! ASAP! ASAP! Please! Please! I can't eat, I can't brush, teeth are bleeding, mouth is swollen, feels like I'm going to die. (Exhibit 5.)

None of these health service requests resulted in an examination by a heath care provider, a referral to sick call, or pain medication.

A detainee who is not satisfied with the response to a "health service request" may file a grievance. Williams filed a grievance on March 16, 2010 (Exhibit 7), and a second grievance on April 28, 2010. (Exhibit 8.)

The Jail processed Williams' first grievance on March 24, 2010. The persons who reviewed the first grievance concluded that the matter was not an emergency and that Williams' complaints would be satisfied at his scheduled appointment on May 5, 2010. (Exhibit 7.)

Williams received dental treatment on May 5, 2010 (Exhibit 2), when a dentist prescribed a one week supply of antibiotic and pain medication.[2] (Exhibit 9.)

Class members continue to endure the gratuitous pain experienced by Williams. Between March 14, 2013 and October 24, 2013, 199 detainees filed 276 grievances about untreated dental pain. (Exhibit 10.) As of December 11, 2013, 88 of these persons were confined at the Jail.[3] Mindful of *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), class counsel communicated with these class members to obtain information about the delay in obtaining treatment for dental pain.

Class counsel has obtained information from 53 class members who continue to be confined at the Jail.[4] (Exhibit 11.) Each attests to unconscionable delays before the Jail responded to their complaint of dental pain. Each declarant waited more than a month before receiving any treatment for dental pain. Twenty-five detainees waited four or more months before receiving treatment

---

[2] Williams was not called back for a follow-up visit, but received a second prescription for antibiotics and pain medication (also for one week) on August 25, 2010. Williams was treated at the Emergency Room for a dental abscess on September 2, 2010, when he was given another one week prescription for antibiotics and pain medication. This was followed by a third prescription of a one week supply of pain medication on September 29, 2010. Williams was transferred to the Illinois Department of Corrections on January 31, 2011.

[3] Information about persons presently confined at the Jail is publicly available at http://www2.cookcountysheriff.org/search2/ (visited January 2, 2014).

[4] To date, four letters have been returned with an indication that the class member is no longer at the Cook County Jail.

for dental pain. Four detainees (Kamal Albitar, Quintin Scott, Kenneth Weatherspoon, and Derrick White) report that they are continuing to experience untreated dental pain.

Plaintiffs will ask the Court to require defendants to hire additional dentists as part of a permanent injunction.[5] To maintain the status quo and to minimize harm to the plaintiff class, plaintiffs request that Court grant preliminary relief and compel defendants to provide the pain relief they promised to provide in *United States v. Cook County*, 10-cv-2946.[6]

## II. The Consent Decree in *United States v. Cook County*

In May of 2010, defendants entered into a consent decree with the United States in *United States v. Cook County*, 10-cv-2946. Paragraph 58 of the decree (reproduced *infra* as Exhibit 12 at 1), contains two provisions relating to dental care:[7]

58. Dental Care
    a. Cermak shall ensure that inmates receive adequate dental care, and follow up, in accordance with generally accepted correctional

---

[5] The Jail now employs 5 dentists to care for 10,000 detainees, or one dentist for every 2000 detainees. Appropriate staffing for a jail is one dentist for every 850 detainees. N.S. Makrides et al., *Correctional Dental Services* in M. Puisis, CLINICAL PRACTICE IN CORRECTIONAL MEDICINE 557 *(*2d ed. 2006).

[6] The settlement agreement is denominated as an "Agreed Order," but was described by the three-judge court in *United States v. Cook County*, 761 F.Supp.2d 794 (N.D.Ill. 2011) as a "consent decree." *Id.* at 796.

[7] Plaintiffs do not seek to enforce the consent decree, but refer to the decree and its implementation as the status quo to be preserved by a preliminary injunction in this case. *See infra* at 1.

standards of care. Such care should be provided in a timely manner, taking into consideration the acuity of the problem and the inmate's anticipated length of stay. Dental care shall not be limited to extractions.

b. Cermak shall ensure that adequate dentist staffing and hours shall be provided to avoid unreasonable delays in dental care.

## 1. Observations by Dr. Shansky about Dental Care

The consent decree provided for the appointment of "monitors" to assess compliance with the decree. Dr. Ronald Shansky, the original medical monitor,[8] submitted his first report on September 24, 2010. (10-cv-2946, ECF #35.) Dr. Shansky made the following findings about defendants' compliance with the dental care provision of the consent decree (10-cv-2946, ECDF #35 at 46-47, Exhibit 12 *infra* at 2-3):

> The dental program, which was virtually obliterated a few years ago, is in the process of being rebuilt. We were told that there are currently 4.0 dentist equivalents, along with three dental assistants. There are plans to add two more dentists and four dental assistants, which should result in a total dental staffing of six dentists and seven assistants. However, at the time of this visit, there were only four dentists and we were told that Division X in particular had had significant delays in dental services. We reviewed the records of 10 patients scheduled to see the dentist on 4/18/10 in Division X. On average, these patients had waited between two and three months and some, as long as five months since requesting services for pain. However, we were told that just recently the dental staffing in Division X had increased significantly. At this point, since dental staffing is in transition, going from a low of one dentist and two assistants in 2007, to the current situation of four dentists and three

---

[8] Dr. Shansky resigned as monitor on July 23, 2013. (10-cv-2946, ECFD #192 at 7, reproduced *infra* as Exhibit 15. The docket entries for *United States v. Cook County*, 10-cv-2946, do not show the appointment of a replacement for Dr. Shansky.

assistants, it is very difficult to determine whether the staffing, which has not yet been implemented, will in fact be adequate. We are also concerned that, given the shortage of dental resources, the currently broken sick call system exacerbates the dental problems. At Cermak, it is expected that the nurse sick call process will be the first line of response to patients with dental problems. The goal is for these nurses to provide temporary analgesia while the patient is waiting to be assessed. With that process remaining to be fixed, it is clear that the dental program is currently unable to provide timely service.

Dr. Shansky made two recommendations (10-cv-2946, ECF #35 at 47, Exhibit 12 at 3):

1. Cermak must find a way to provide timely analgesia and screening assessment for patients requesting dental services.
2. We recommend that the proposed dental staffing be implemented as soon as possible.

Defendant Cook County responded to this recommendation on December 10, 2010 (10-cv-2946, ECF #45 at 60-61, reproduced *infra* as Exhibit 12 at 4-5) as follows (10-cv-2946, ECF #45 at 61, Exhibit 12 at 5):

*Cermak intends to ensure timely screening and analgesia through nursing triage of dental complaints.* Referral to a provider may be required. In regards to implementation of the staffing plan, Cermak administrators are pleased to report that dental staff have now been hired and are working. (emphasis supplied)

Dr. Shansky stated in a subsequent report detailing his visit of June, 2011 that Cermak had not implemented this goal of "ensur[ing] timely screening and analgesia through nursing triage of dental complaints. (10-cv-2946, ECF #111 at 59, reproduced *infra* as Exhibit 12 at 6.) As Dr. Shansky explained (10-cv-2946, ECF #111 at 91, Exhibit 12 at 8):

We learned that because of the breakdown in the collection, triaging and consistency of response to sick call requests, there is an impact felt on the dental program, in that patients whose complaint is dental pain may have their assessment by a nurse delayed for a period of days, thus patients are incurring avoidable suffering.

This "avoidable suffering" had not been corrected when Dr. Shansky visited the Jail in November of 2011. (10-cv-2946, ECF #113.) Dr. Shansky found that "[f]ollowing triage of health requests, nurses sometimes do not see patients at all, instead making direct referrals to providers." (10-cv-2946, ECF #113 at 62, reproduced *infra* as Exhibit 12 at 9.) Dr. Shansky made the specific finding:

In Division IV, we found 51 dental requests had accumulated in the dental referral box from Monday 11/10 to Thursday 11/14 without the patients being seen by a nurse or dental staff. These findings were consistent with inmate feedback that it often took weeks to be seen for health service requests.
10-cv-2946, ECF #113 at 62, Exhibit 12 at 9.

Dr. Shansky provided further details about these requests at page 66 of his report:

Several of the requests were from patients complaining of moderate-severe dental pain and/or infection. During interviews inmates reported that nurses do not pick up the forms daily and that they are typically seen two to three weeks after submission of their complaints, if at all.
10-cv-2946, ECF #113 at 62, Exhibit 12 at 10.

Dr. Shansky made additional findings in his final report, filed on August 30, 2013.[9] (10-cv-2946, ECF #190-1, ECF #190-2.) Dr. Shansky reported (10-cv-2946, ECF #190-1 at 24, reproduced *infra* as Exhibit 12 at 11):

> We interviewed inmates in the tiers whose primary concern was that once they submitted an HSR, it took weeks to be seen. Many inmates also complained about lack of timely access to dental services.

Dr. Shansky also found that detainees who filed health care requests were not seen at nurse sick call, but were given an appointment for a future date. (10-cv-2946, ECF #190-1 at 26, Exhibit 12 at 13.) Dr. Shansky identified one detainee who submitted a health service request on April 19, 2013, was not seen by a nurse at sick call, but scheduled for a dental appointment two months in the future, on June 19, 2013. *Id.* (These delays are similar to those experienced by Williams in 2010. *See ante* at 2-4.) Dr. Shansky concluded that there "many opportunities for improvement" with dental care at the Jail. (10-cv-2946, ECF #190-1 at 55, Exhibit 12 at15):

> We again, with the dental leadership, went through several dental requests and identified many opportunities for improvement. The first one is that although some Divisions time and date stamp the receipt of the requests, other Divisions do not. This should be a universal process. Secondly, we found the language of urgent appointments not consistent with the way it is being used. In fact,

---

[9] The docket for 10-cv-2946 refers to the report of November, 2011 (filed on May 14, 2012) as report number 4, and identifies Dr. Shansky's final report (filed on August 30, 2013) as "Monitor Shansky's 7th Report." The docket does not show the filing of either Report 5 or Report 6.

we came across a case in which a patient deemed urgent was scheduled for two weeks later. This is particularly problematic, in that under the current arrangement, patients with dental pain are ordinarily supposed to see a nurse within one day of receipt by nursing of the request. However, the nurses are still not able to provide temporary analgesic relief for these patients who are describing pain. This is completely unacceptable. We had a meeting with all of the stakeholders, including the pharmacy director, and clearly indicated that this problem of timely access to analgesia for patients waiting to be seen for dental or any other pains must be resolved prior to our next visit. We were informed of a strategy of providing the newly packaged meds through the in-house pharmacy or by contracting with an outside vendor. The mechanism is unimportant to us; this problem must be resolved. We also believe that the current language used for urgency of scheduling is inconsistent with normal language use. "Urgent" might be within a few days but certainly not within a week or two. We discussed the possibility of instead of titles such as "urgent," using "within one week" or "two weeks" or "four weeks," as the language to be used by the schedulers and the dental service.

We have to comment on one case in which a patient submitted his request and it was received on 4/20/13. This patient described his face being swollen and his tooth decayed to the root. The patient's request slip apparently went directly to dental without a nurse face-to-face visit and with this description on the slip, the patient was scheduled for 5/9, almost three weeks later. This also is unacceptable. There is a substantial journey that the dental program and nursing have to take before these problems are resolved.

## 2. The Latest Position of the Parties in *United States v. Cook County* to Dr. Shansky's Concerns about Dental Care at the Jail

Cook County filed its response to Dr. Shansky's final report on September 18, 2013. (10-cv-2946, ECF #202, reproduced *infra* as Exhibit 13.) The County did not address any of Dr. Shansky's concerns about the "substantial journey that the dental program and nursing have to take." (Exhibit 13 at 15.)

The Sheriff filed his response to Dr. Shansky's final report on August 30, 2013. (10-cv-2946, ECF #194, reproduced *infra* as Exhibit 14.) The thrust of the Sheriff's response is that the County, rather than the Sheriff, was responsible for curing any problems that Dr. Shansky had identified.

The Department of Justice also responded to Dr. Shansky's final report on August 30, 2013. (10-cv-2946, ECF #194, reproduced *infra* as Exhibit 15.) As in the documents filed by the County and the Sheriff, the Department of Justice did not address any of Dr. Shansky's concerns about dental care, but noted that "the process of selecting and integrating a new monitor may delay the next compliance assessment of the medical provisions of the Agreed Order." (Exhibit 15 at 7.)

### III. The Court Should Grant a Preliminary Injunction

More than three years ago, defendants announced their intent "to ensure timely screening and analgesia through nursing triage of dental complaints." (10-cv-2946, ECF #45 at 61, Exhibit 12 at 5.) The Rule 23(b)(2) plaintiff class asks this Court to grant a preliminary injunction to require defendants to provide this level of care and "ensure timely screening and analgesia through nursing triage of dental complaints."

Plaintiffs are unable to enforce the consent decree in *United States v. Cook County*, 10-cv-2946.[10] In addition, plaintiffs are not bound by the decision of the United States to afford a low priority to dental care issues in that case.[11] As set out above, the (b)(2) class continues to suffer irreparable harm because defendants have failed "to ensure timely screening and analgesia through nursing triage of dental complaints." Plaintiffs therefore ask this Court to grant a preliminary injunction to require defendants "to ensure timely screening and analgesia through nursing triage of dental complaints."

This Court recently summarized the standards for the grant of a preliminary injunction in *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. McDougall v. Lewis*, 871 F.Supp.2d 771 (N.D.Ill. 2012):

> A party seeking a preliminary injunction must demonstrate that (1) its claim has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) absent injunctive relief, it will suffer irreparable harm in the period prior to final resolution of its claim. *Girl Scouts of Manitou Council v. Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party satisfies these threshold requirements, the court must balance the threatened injury to the moving party with the threatened harm

---

[10] "[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975).

[11] CRIPA did not repeal the private right of action available under 42 U.S.C. §1983. *Cf. General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 325-26 (1980) (1972 amendments to Title VII did not eliminate private right of action).

the injunction may inflict on the nonmovant. *Id.* The court also must consider the public interest in either the grant or denial of the injunctive relief. *Id.* In applying these criteria, the court uses a "sliding scale" approach: if a claim is very likely to succeed on the merits, less harm to the plaintiff will be required to justify injunctive relief and vice versa. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

The (b)(2) plaintiff class has a very strong likelihood of prevailing on the merits.[12] Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection. *Board v. Farnham*, 394 F.3d 469, 480-81 & n. 4, 482-83 (7th Cir. 2005). Dental pain is an "objectively serious medical condition." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). As the Court made plain in *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010), "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Id.* at 640. Or, as the Court reaffirmed in *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012), [e]ven a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Id.* at 1040.

There are no legal remedies to undo the harm of gratuitous and readily treatable dental pain. Absent equitable relief, the (b)(2) plaintiff class will continue to suffer what Dr. Shansky described as "completely unacceptable"

---

[12] Plaintiffs need only demonstrate a "better than negligible" likelihood of success. *Meridian Mut. Ins. Co. v. Meridian Ins. Grp.*, 128 F.3d 1111, 1114 (7th Cir. 1997).

situation in which "nurses are still not able to provide temporary analgesic relief for these patients who are describing pain." (Exhibit 12 at 15.)

The appropriate relief on a preliminary injunction is to require defendants

1.  To screen health service requests complaining about dental pain on a daily basis, and
2.  To provide a procedure for detainees complaining about dental pain to obtain prompt access to pain reduction medicine (e.g., ibuprofen).

Defendants would not be prejudiced by these requirements, which are precisely what they promised to do in December of 2010 in *United States v. Cook County*. (Exhibit 12 at 5.) Moreover, to allow plaintiffs to monitor defendants' compliance with the preliminary injunction, the Court should order defendant to maintain (and to produce to plaintiffs on a weekly basis), records of requests for dental treatment, including dates inmates are scheduled to be examined by dental personnel, dates inmates are actually examined by dental personnel, and documentation of cancellation or failure to appear for dental treatment or examination. Defendants currently maintain these records in a manner which makes it impossible to review the disposition of requests for dental treatment, and would not be prejudiced by an order to maintain those same records in a decipherable manner.

Plaintiffs also ask the Court to set the case for a hearing on a permanent injunction and, so that plaintiffs may prepare for that hearing, to require defendants to produce the dental treatment records of the 53 class members

identified in Exhibit 11.[13] To allow a prompt hearing on a permanent injunction, plaintiffs request the Court to vacate the referral of discovery matters to the Magistrate Judge.

## IV. Conclusion

For the reasons above stated, the (b)(2) plaintiff class requests that the Court enter a preliminary injunction as described above, order defendants to produce the dental treatment records of the 53 class members identified in Exhibit 11, and set the case for a hearing on a permanent injunction.

Respectfully submitted,

/s/  Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC No. 08830399
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200

Thomas G. Morrissey
Patrick W. Morrissey
10249 S. Western Ave.
Chicago, IL. 60643
(773) 233-7900
*Attorneys for the Plaintiff Class*

---

[13] Plaintiffs made a timely production request for the dental treatment records of the 199 persons who filed grievances between March 14, 2013 and October 24, 2013.

# INDEX TO EXHIBITS

**EX   DESCRIPTION**

1   Health Service Request Form, Larry Williams, 3/2/10

2   Dental Examination, Larry Williams, 5/5/10

3   Health Service Request Form, Larry Williams, 3/6/10

4   Health Service Request Form, Larry Williams, 3/7/10

5   Health Service Request Form, Larry Williams, 3/30/10

6   Health Service Request Form, Larry Williams, 4/24/10

7   Grievance, Larry Williams, 3/6/10

8   Grievance, Larry Williams, 4/28/10

9   Prescription Order, Larry Williams, 5/5/10

10   Dental Grievances Filed 3/14/13-10/24/13

11   Class Member Declarations

12   Excerpts of Reports, *United States v. Cook County*, 10-cv-2946

13   Cook County's Response to Monitors' Reports, *United States v. Cook County*, 10-cv-2946 (ECF #202)

14   Cook County Sheriff Thomas Dart's Position Paper Regarding Monitors' Reports, *United States v. Cook County*, 10-cv-2946 (ECF #194)

15   United States' Position Paper Regarding Monitoring Reports and Status of Compliance, *United States v. Cook County*, 10-cv-2946 (ECF #192)

**Exhibit 1**



Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

BK 8-26-09

## DETAINEE HEALTH SERVICE REQUEST FORM

Mark box ☒ on the left of answers or print in space provided.
Side 1 - English

Name: _Larry Williams_      Today's Date: _3-2-10_

ID #: _2009-0056879_ Division: _10_ Tier: _3c_ Birth Date: _Aug-7-▮_
  (Booking Year)   (Number)

**FOR A MEDICAL / DENTAL / MENTAL HEALTH PROBLEM <u>USE A SEPARATE REQUEST FORM FOR EACH PROBLEM.</u> EACH FORM WILL BE SENT TO THE APPROPRIATE HEALTH SERVICE PROVIDER.**

☐ I want information about HIV / AIDS

Describe your problem: _I have a request to see the Dentist my teeth are_
_bleeding & wisdom teeth are coming in & my teeth are causing_
_bad breath, I have been in Madia Pain for months now_
_Please respond ASAP_

How long have you had this problem? _3_ days / weeks / (months) (circle one)
Next Court Date: _3-3-10_

## !!!STOP!!!  DO <u>NOT</u> WRITE BELOW THIS LINE

Referred to: ☐ Medical ☐ Dental ☐ Mental Health ☐ Health Educator ☐ DOC   Date:

**<u>Initial</u> <u>Provider</u> Note:** _Please schedule for Dental ASAP_

Signature/Title: _J. Hull_     Date _3/4/10_ Time: _2100_

**<u>Secondary</u> <u>Disposition</u>:** (as indicated): Recommended Follow-up: ☐ Sick Call    ☐ PRN

Signature/Title:_____ Date:_____ Time:_____

**<u>Appointment</u> <u>Scheduler</u>:**

Appointment Date:_____

Signature/Title:_____

Date:_____ Time:_____

PATIENT LABEL

Form#: 86322  Rev: March 2006



Larry Williams Produced 07/10/13, Page 259 of 449

**Exhibit 2**

Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

# DENTAL EXAMINATION

| Examination | Check on Number for Problem | | |
|---|---|---|---|
| 1. Blood Pressure | **Soft Tissue** | **Occlusion** | **Smile Evaluation** |
| 2. Pulse | 7. Lips | 15. Angle class | 23. Abrasions |
| 3. Habitus | 8. Buccal mucosa | 16. Overjet | 24. Recession |
| 4. Head and Neck | 9. Hard Palate | 17. Overbite | 25. Incisal wear |
| 5. TMJ's | 10. Soft plate | 18. Occlusal plane | 26. Tooth shape |
| 6. Masticatory Muscles | 11. Pharynx | 19. CR-CO | |
| | 12. Floor of mouth | 20. Crowding | |
| | 13. Tongue | 21. Contacts | |
| | 14. Alveolar ridge | 22. Overhangs | |
| Comments: | | | |

| Peridontal Classification | | | | |
|---|---|---|---|---|
| **Gingivitis I** | **Slight II** | **Moderate III** | **Severe IV** | **Retractive V** |
| 3mm or less | 3-4mm | | 8mm & greater | |

## General Consent To Dental Treatment

I *Larry Williams* do hereby consent to general dental treatment.
A diagnosis of my condition as _____

_____

has been explained to me by Dr. _*Taylor*_____

and the following course of treatment explained to me : _____

_____

The following alternative course(s) of treatment have been discussed with
me by said dentist: _____

_____

No guarantee or assurances have been given me as to any result to be
Obtained. I have been advised only that the course of treatment explained
To me and hereby consented to represents the sound dental judgment of

Dr. _*B Tay*_____

_*Larry Williams*_____
**(Patient or person legally authorized to sign consent)**

_____
**(Witness)**



### GENERAL ORAL CONDITION
DIAGNOSTICS
NEEDED

| | Slight | Moderate | Heavy | Severe |
|---|---|---|---|---|
| Plaque | 1 | 2 | 3 | 4 |
| Inflammation | 1 | 2 | 3 | 4 |
| Calculus | 1 | 2 | 3 | 4 |
| Stain | 1 | 2 | 3 | 4 |
| Oral Hygiene Deficiencies | 1 | 2 | 3 | 4 |

### Dental Treatment Notes

| Date | Tooth | Surf | Notations |
|---|---|---|---|
| 5/5/10 | all | | Had UK NOF, OHI's |
| | | | X-rays, 3 DAC, |
| | | | Sensitive, bleedee |
| | | | gums. RTK/week |
| | | | Hygiene |
| | | | B Tayler |

Dr. Signature: _*B Tayler Larne*_ Date/Time: _5/5/10_
Patient Name: _*Williams Larne*_
CCDOC #: _2009005 6872_ DOB: _8-28_
Location : _D.V 10-3c_ MR # _____



**Exhibit 3**



Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

# DETAINEE HEALTH SERVICE REQUEST FORM

Mark box ☒ on the left of answers or print in space provided.
Side 1 - English

Name: _Larry Williams_        Today's Date: _3-6-10_

ID #: _2009-005687_ Division: _10_ Tier: _3c_ Birth Date: _8-7▮_
   (Booking Year)   (Number)

**FOR A MEDICAL / DENTAL / MENTAL HEALTH PROBLEM <u>USE A SEPARATE REQUEST FORM FOR EACH PROBLEM.</u>** EACH FORM WILL BE SENT TO THE APPROPRIATE HEALTH SERVICE PROVIDER.

☐ I want information about HIV / AIDS

Describe your problem: _Please Help, my teeth are bleeding. I can't eat, my Gums are swollen my Jaw has swollen, I can't brush my teeth on the Right side of my Mouth, I can't chew. I have Requested to go to the dentist over A Dozen times please send me to the Dentist. I hardly can Talk, send me ASAP_

How long have you had this problem? _4_ days / weeks / (months) (circle one)
Next Court Date: _3-22-10_

## !!!STOP!!!   DO <u>NOT</u> WRITE BELOW THIS LINE

Referred to: ☐ Medical  ☐ Dental  ☒ Mental Health  ☐ Health Educator  ☐ DOC  Date:

**Initial Provider Note:** _____

_____

_____

_____

_____

Signature/Title: _____ Date: _____ Time: _____

**Secondary Disposition:** (as indicated): Recommended Follow-up: ☐ Sick Call  ☐ PRN

Signature/Title: _____ Date: _____ Time: _____

**Appointment Scheduler:**

Appointment Date: _____

Signature/Title: _____

Date: _____ Time: _____

PATIENT LABEL

Form # 99322   Rev: March 2006

Larry Williams Produced 07/10/13, Page 258 of 449

**Exhibit 4**



**Cermak Health Services of Cook County**
2800 S. California Avenue
Chicago, IL 60608

# DETAINEE HEALTH SERVICE REQUEST FORM

Mark box ☒ on the left of answers or print in space provided.
Side 1 - English

Name: _Larry Williams_          Today's Date: _3-7-10_

ID #: _2009-005689_ (Booking Year) (Number)   Division: _10_   Tier: _3c_   Birth Date: _8-7-_ ▮▮▮

**FOR A MEDICAL / DENTAL / MENTAL HEALTH PROBLEM <u>USE A SEPARATE REQUEST FORM FOR EACH PROBLEM.</u>  EACH FORM WILL BE SENT TO THE APPROPRIATE HEALTH SERVICE PROVIDER.**

☐ I want information about HIV / AIDS

Describe your problem: _Attn' Nurse, My teeth are bleeding it feels like I'm going to die. My Jaw has swelt up My breath is unbearable, please help, I fear for My life._

How long have you had this problem? _4_ days / weeks / (months) (circle one)

Next Court Date:

## !!!STOP!!!   DO <u>NOT</u> WRITE BELOW THIS LINE

Referred to:  ☐ Medical  ☐ Dental  ☐ Mental Health  ☐ Health Educator  ☐ DOC   Date:

<u>Initial</u> <u>Provider</u> <u>Note</u>: _____

_____

_____

_____

_____

Signature/Title:_____ Date:_____ Time:_____

<u>Secondary</u> <u>Disposition:</u> (as indicated): Recommended Follow-up:  ☐ Sick Call  ☐ PRN

Signature/Title:_____ _____ Date:_____ Time:_____

<u>Appointment</u> <u>Scheduler:</u>

Appointment Date:_____

Signature/Title:_____

Date:_____ Time:_____

PATIENT LABEL

Rev: March 2006

**Exhibit 5**



Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

## DETAINEE HEALTH SERVICE REQUEST FORM

Mark box ☒ on the left of answers or print in space provided.
Side 1 - English

Name: Larry Williams                    Today's Date: 3-30-10

ID #: 20 09 -- 00 5 6879 Division: 10   Tier: 3C   Birth Date ▉-08-77
(Booking Year)  (Number)

**FOR A MEDICAL / DENTAL / MENTAL HEALTH PROBLEM <u>USE A SEPARATE REQUEST FORM FOR EACH PROBLEM.</u>** EACH FORM WILL BE SENT TO THE APPROPRIATE HEALTH SERVICE PROVIDER.

☐ I want information about HIV / AIDS

Describe your problem: Emergency situation! Dentist! Dentist! Dentist! Dentist! ASAP! ASAP! please! please! I cant eat I cant brush, Teeth are bleeding, Mouth is swollen, Feels like I'm going to die

How long have you had this problem? __6__ days / weeks / (months) (circle one)
Next Court Date: 4-21-10

## !!!STOP!!!   DO <u>NOT</u> WRITE BELOW THIS LINE

Referred to:   ☐ Medical   ☐ Dental   ☐ Mental Health   ☐ Health Educator   ☐ DOC   Date:

**Initial Provider Note:** _____

_____

_____

_____

_____

Signature/Title:_____ Date:_____ Time:_____

**Secondary Disposition:** (as indicated): Recommended Follow-up:   ☐ Sick Call   ☐ PRN
Signature/Title:_____ _____ Date:_____ Time:_____

**Appointment Scheduler:**

Appointment Date:_____

Signature/Title:_____

Date:_____ Time:_____

PATIENT LABEL

Rev: March 2006

**Exhibit 6**

*Handwritten at top:* 578326

*Handwritten:* BK 8-26-09

Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

# DETAINEE HEALTH SERVICE REQUEST FORM

Mark box ☒ on the left of answers or print in space provided.
Side 1 - English

Name: Larry Williams                     Today's Date: 4-24-10

ID #: 2 0 0 9 - 0 0 5 6 8 9   Division: 10   Tier: 3C   Birth Date: 8-7-▮
(Booking Year)   (Number)

FOR A MEDICAL / DENTAL / MENTAL HEALTH PROBLEM **USE A SEPARATE REQUEST FORM FOR EACH PROBLEM.** EACH FORM WILL BE SENT TO THE APPROPRIATE HEALTH SERVICE PROVIDER.

☐ I want information about HIV / AIDS

Describe your problem: My tooth keeps hurting me and I need it pulled out.

How long have you had this problem? 7 days / weeks / (months) (circle one)
Next Court Date: 6-1-10

## !!!STOP!!!   DO **NOT** WRITE BELOW THIS LINE

Referred to:   ☐ Medical   ☐ Dental   ☐ Mental Health   ☐ Health Educator   ☐ DOC   Date:

**Initial Provider Note:** _____

Signature/Title: _____ Date: _____ Time: _____

**Secondary Disposition:** (as indicated): Recommended Follow-up:   ☐ Sick Call   ☐ PRN
Signature/Title: _____ Date: _____ Time: _____

**Appointment Scheduler:**
Appointment Date: _____

Signature/Title: _____

Date: _____ Time: _____

*Barcode:* CH 8 8 3 2 2

PATIENT LABEL

Rev: March 2006

**Exhibit 7**

Prove as Grievance Please.

10-20

Part-A / Control #: 2010X 0779

Referred To: CERMAK.

☐ Processed as a request.

Pr 9H 1... 1F (14)

# COOK COUNTY DEPARTMENT OF CORRECTIONS
## DETAINEE GRIEVANCE

Detainee Last Name: Williams          First Name: Larry

ID #: 2009 - 0056879   Div.: Ten   Living Unit: 3-c   Date: 3 /16 / 10

BRIEF SUMMARY OF THE COMPLAINT: In the period of three to four mouths my requirements about my Physical Conditions Relating toward none treatment in Division Ten, Health Care Unit about my tooth, also. my mouth has been bleeding. Also when I take my Medication. I Let the Medical Staff know, I can't eat, also bite down on the right side, of my jaw", and the back side bottom row, when ever I try to chew and sometimes, more blood starts, projecting out of my gums I have been requesting for the Dentist, Department, never, been call-down for treatment. According to Rules of Cook County Jail. as a detainee.

NAME OF STAFF OR DETAINEE(S) HAVING INFORMATION REGARDING THIS COMPLAINT: Nurse Bo Bo, also, C/O Brown, also C/O Garcia

ACTION THAT YOU ARE REQUESTING: Administration Help, to see the Dentist, Please, at Cook County Jail

DETAINEE SIGNATURE: Larry Williams

C.R.W.'S SIGNATURE: J. Q. M....         DATE C.R.W. RECEIVED: 3, 24, 10

Please note: Decisions of the "Detainee Disciplinary Hearing Board" cannot be grieved or appealed through the use of a grievance form.
All appeals must be made in writing and directly submitted to the Superintendent.

(WHITE COPY - PROG. SERV.)   (YELLOW COPY - C.R.W.)   (PINK COPY - DETAINEE)   (GOLDENROD COPY - DIVISION/SUPT.) SHERIFF 3246

Part B / Control # 020/0X 0779

## C.C.D.O.C. DETAINEE GRIEVANCE / REFERRAL & RESPONSE

*EMERGENCY GRIEVANCES ARE THOSE INVOLVING AN IMMEDIATE THREAT TO THE WELFARE OR SAFTEY OF A DETAINEE*

Detainee's Last Name: __Williams__        First Name: __Larry__        ID# __2009. 0056879__

Is This Grievance An **Emergency**?        YES ☐        NO ☒

C.R.W.'S Summary Of The Complaint: __Detainee alleges lack of Dental Treatment.__

C.R.W. Referred Griev. To: __Cermak.__        Date Referred: __3 / 24 / 10__

**Response Statement:**

__Per Scheduling, Patient has an appointment with Dental on 5/5/10.__

__C Smith__        __CS____        Date: __5, 4 /10__ Div./Dept __CHS__
(print- name of individual responding to this griev.)    (signature of individual responding to this griev.)

__H. Alvarez *P5__        __/P5__        Date: __5 / 13/ 10__ Div./Dept __10__
(print - name of Supt. / Designee / Dept. Admin.)    (signature of Supt. / Designee / Spt. Admin.)

__J. Mueller__        __ML__        Date: __5 / 5/10__
(print - name of Prog. Serv. Admin./ Asst. Admin.)    (signature of Prog. Serv. Admin / Asst. Admin.)

Date Detainee Received Response: __5 / 14/10__ Detainee Signature: __Larry Williams__

### REQUEST FOR AN APPEAL

*APPEALS MUST BE MADE WITHIN 14 DAYS OF THE DATE THE DETAINEE RECEIVED THE RESPONSE*

Date Detainee Request For An Appeal: __5 / 14/10__

Detainee's Basis For An Appeal: __The Doo Dendist didn't do Anything when I saw Them 5-5-10. They told me they would call me back but they haven't and I still have the same Problem__

Appeal Board's Acceptance Of Detainee's Request:        YES ☒        NO ☐

Appeal Board's Reasoning / Decision / Recommendation To The Superintendent Or Administrator:
__CHS admin, please ensure that this issue has or is being addressed adequately.__

Appeal Board's Signatures / Dates: _____        __MWell__        __7/16/10__

Date Detainee Rec.'d the Appl. Bd.'s Response: __8 / 3 / 10__ Detainee Signature: __Larry Williams__

GRIEVANCE CODE(S): (_____) (_____) (_____) (_____)

(WHITE COPY – PROG. SERV.)   (YELLOW COPY – C.R.W.)   (PINK COPY – DETAINEE)   (GOLDENROD COPY – DIVISION/SUPT. OFFICE)

SHERIFF 3247

**Exhibit 8**

2nd Grievance Not as a request Do not process

Part-A / Control #: 2010X 1265

Referred To: CERMAK.

☐ Processed as a request.

Div 80N #-5C

91F

# COOK COUNTY DEPARTMENT OF CORRECTIONS
## DETAINEE GRIEVANCE

Detainee Last Name: Williams        First Name: Larry

ID #: 2009-0056879 Div.: 10  Living Unit: 3C  Date: 4 /28 / 10

BRIEF SUMMARY OF THE COMPLAINT: I have submitted multiple medical requests and grieved this issue previously and have received no relief. I have two teeth in my mouth which require immediate attention from a dentist. I believe that I may have an absess in one or both locations. I have repetedly asked for help and have only received what can only be percieved as deliberate ~~indifference~~ indifference. I am currently spitting blood and cannot eat without extreme pain

NAME OF STAFF OR DETAINEE(S) HAVING INFORMATION REGARDING THIS COMPLAINT:
Nurse Bobo   c/o Brown   c/o Garcia

ACTION THAT YOU ARE REQUESTING:
Medical attention

DETAINEE SIGNATURE: Larry Willams

C.R.W.'S SIGNATURE: D. A. Mac      DATE C.R.W. RECEIVED: S /12/ 10

*Please note: Decisions of the "Detainee Disciplinary Hearing Board" cannot be grieved or appealed through the use of a grievance form. All appeals must be made in writing and directly submitted to the Superintendent.*

(WHITE COPY – PROG. SERV.)   (YELLOW COPY – C.R.W.)   (PINK COPY – DETAINEE)   (GOLDENROD COPY – DIVISION/SUPT. OFFICE)

SHERIFF 3248

Part – B / Control # _2010_ X _1265_

## C.C.D.O.C.  DETAINEE GRIEVANCE / REFERRAL & RESPONSE

*EMERGENCY GRIEVANCES ARE THOSE INVOLVING AN IMMEDIATE THREAT TO THE WELFARE OR SAFETY OF A DETAINEE*

Detainee's Last Name: _Williams_     First Name: _Larry_     ID#: _2009-0056879_

Is This Grievance An **Emergency**?     YES ☐     NO ☒

C.R.W.'S Summary Of The Complaint: _Detainee alleges lack of Dental attention._

C.R.W. Referred Griev. To: _CERMAK_     Date Referred: _5_ / _12_ / _10_

Response Statement: _Dental Appt 5/5/10_

_____ Date: _6_ /_A_ / _10_ Div./Dept. _____
(print name of individual responding to this griev.)     (signature of individual responding to this griev.)

_____ Date: _6_ / _8_ / _0_ Div./Dept. _Cedoc_
(print name of Supt. / Designee / Dept. Admin.)     (signature of Supt. / Designee / Dept. Admin.)

_Mueller_ _____ Date: _6_ / _4_ / _10_
(print - name of Prog. Serv. Admin./ Asst. Admin.)     (signature of Prog. Serv. Admin./ Asst. Admin.)

Date Detainee Received Response: _6_ / _9_ / _2010_ Detainee Signature: _Larry Williams_

## REQUEST FOR AN APPEAL

*APPEALS MUST BE MADE WITHIN 14 DAYS OF THE DATE THE DETAINEE RECEIVED THE RESPONSE*

*Date Detainee Request For An Appeal:* _6_ / _9_ / _2010_

*Detainee's Basis For An Appeal:* _I was seen last Month, but the doctor did not_
_treat me he said he would rescheduling me to be treated. I am_
_in Severe Pain in my tooth please Can I see a dentist_

*Appeal Board's Acceptance Of Detainee's Request:*     YES ☒     NO ☐

*Appeal Board's Reasoning / Decision / Recommendation To The Superintendent Or Administrator:*
_CHS admin, please ensure that this issue has or is being_
_addressed adequately._

*Appeal Board's Signatures / Dates:*
_____ _____ _7/16/10_

Date Detainee Rec'd the Appl. Bd.'s Response: _7_ / _30_ / _10_ Detainee Signature: _Larry Williams_

GRIEVANCE CODE(S): (_____) (_____) (_____) (_____)

(WHITE COPY – PROG. SERV.)   (YELLOW COPY - C.R.W.)   (PINK COPY - DETAINEE)   (GOLDENROD COPY - DIVISION/SUPT. OFFICE)

SHERIFF 3249

**Exhibit 9**

**Cermak Health Services of Cook County**
2800 S. California Avenue
Chicago, IL 60608

## Prescription Order
### Medical Record Copy

Last Name: _Williams_   First Name: _LARRY_   Date / Time : _5/5/10_

DOC# _2009 0056879_   D.O.B. _8/7/■_   Location: _10-3C_

MR # _____   Allergy: _____   Weight: _____   ☐ Renewal

Diagnosis: _____   ☐ Non-formulary completed

| | | | | |
|---|---|---|---|---|
| **Checked** | 1. | Motrin 600 ╯ 56h PRN | # _14_ ☐Given | |
| | 2. | Amoxicillen 500g TID | # _21_ ☐Given | |
| | 3. | | # _____ ☐Given | |
| | 4. | | # _____ ☐Given | |
| **Filled** | 5. | | # _____ ☐Given | |
| | 6. | | # _____ ☐Given | |
| | 7. | | # _____ ☐Given | |
| **Data Entry** | 8. | | # _____ ☐Given | |
| | 9. | | # _____ ☐Given | |
| | 10. | | # _____ ☐Given | |

Special Instructions

MD / PA Stamp/ Signature

DEA #                    Pager #

Form #: 853.01 Rev: March 2009
Pink Copy: Pharmacy   White Copy: Medical Records   Green Copy: Nursing/CMT/Dialysis   Yellow Copy: Patient



Larry Williams Produced 07/10/13, Page 173 of 449



**Exhibit 10**

Dental Grievances Filed 3/14/2013-10/24/2013

| | Grievance # | Written | Last Name | First Name | CCDOC # |
|---|---|---|---|---|---|
| 1 | 13X0803 | 3/14/2013 | WILLIAMS | BURNELL | 2008-0074134 |
| 2 | 13X0819 | 3/14/2013 | GRAY | DAVYATTA | 2013-0307162 |
| 3 | 13X0837 | 3/17/2013 | GARRETT | CLARK | 2012-1110010 |
| 4 | 13X0881 | 3/20/2013 | WADE | STEVEN | 2011-1231011 |
| 5 | 13X0881 | 3/20/2013 | WADE | STEVEN | 2011-1231011 |
| 6 | 13X0885 | 3/19/2013 | CONYERS | BLAKE | 2012-0227094 |
| 7 | 13X0919 | 3/17/2013 | SMITH | KIDONNIE | 2012-0905109 |
| 8 | 13X0920 | 3/21/2013 | STANLEY | KEVIN | 2009-0052491 |
| 9 | 13X0966 | 3/25/2013 | MEJIA | GUAN | 2012-0614148 |
| 10 | 13X0981 | 3/18/2013 | ROBINSON | DONALD | 2012-1006005 |
| 11 | 13X0983 | 3/29/2013 | WILLIAMS | DAVID | 2012-0620160 |
| 12 | 13X0985 | 3/31/2013 | FIELDS | PIERRE | 2012-1214054 |
| 13 | 13X0987 | 3/28/2013 | DILWORTH | CHRISTOPHER | 2012-1113057 |
| 14 | 13X0988 | 3/28/2013 | DIAZ | EDWIN | 2011-1103084 |
| 15 | 13X0989 | 3/26/2013 | DIXON | LIONEL | 2013-0312116 |
| 16 | 13X1014 | 3/30/2013 | DICKERSON | DAUNTE | 2013-0329186 |
| 17 | 13X1020 | 4/3/2013 | JOHNSON | TIMOTHY | 2013-0219137 |
| 18 | 13X1052 | 4/6/2013 | ALLEN | ORLANDO | 2013-0128051 |
| 19 | 13X1067 | 3/26/2013 | KEMPSKI | JOHN | 2012-1124063 |
| 20 | 13X1069 | 4/4/2013 | GARNETT | STEVEN | 2012-1202102 |
| 21 | 13X1077 | 3/24/2013 | SLOAN | TERRY | 2011-0728136 |
| 22 | 13X1106 | 4/8/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 23 | 13X1106 | 4/8/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 24 | 13X1114 | 4/4/2013 | LOVE | RODNEY | 2012-0618083 |
| 25 | 13X1116 | 4/10/2013 | SIMS | DANNY | 2011-1129019 |
| 26 | 13X1153 | 4/11/2013 | RICE | LATOYA | 2013-0123155 |
| 27 | 13X1157 | 4/9/2013 | ROBINSON | EDDIE | 2013-0125087 |
| 28 | 13X1161 | 4/2/2013 | HERNANDEZ | MIGUEL | 2011-1015067 |
| 29 | 13X1181 | 4/2/2013 | HERNANDEZ | OMAR | 2012-0330155 |
| 30 | 13X1183 | 4/14/2013 | CRENSHAW | BERNARD | 2012-0306099 |
| 31 | 13X1185 | 3/20/2013 | COLEMAN | DARRYL | 2013-0131244 |
| 32 | 13X1216 | 4/17/2013 | STANLEY | KEVIN | 2009-0052491 |
| 33 | 13X1220 | 4/12/2013 | STRICKLAND | JOHN | 2012-1118067 |
| 34 | 13X1230 | 4/14/2013 | BUTLER | LLOYD | 2013-0212038 |
| 35 | 13X1233 | 4/18/2013 | YORK | CARL | 2013-0210109 |
| 36 | 13X1239 | 4/18/2013 | GARCIA | LUIS | 2012-0221089 |
| 37 | 13X1243 | 4/8/2013 | MCDONALD | NOAH | 2012-1004241 |
| 38 | 13X1270 | 4/18/2013 | TURNER | MARK | 2010-1202066 |
| 39 | 13X1271 | 4/18/2013 | HOLT | LARON | 2013-0405009 |
| 40 | 13X1277 | 4/21/2013 | CLAXTON | NICHOLAS | 2012-0806075 |
| 41 | 13X1284 | 4/16/2013 | NEAL | DEON | 2013-0316039 |
| 42 | 13X1292 | 4/17/2013 | RUEDA | JUSTINE | 2010-0909037 |
| 43 | 13X1353 | 4/1/2013 | EDWARDS | LEE | 2012-1029126 |
| 44 | 13X1359 | 4/22/2013 | COREY | LIVSEY | 2013-0123212 |
| 45 | 13X1368 | 4/24/2013 | JACKSON | ROBERT | 2013-0207168 |

Dental Grievances Filed 3/14/2013-10/24/2013

| | Grievance # | Written | Last Name | First Name | CCDOC # |
|---|---|---|---|---|---|
| 46 | 13X1390 | 4/28/2013 | WRIGHT | RONALD | 2013-0315253 |
| 47 | 13X1398 | 4/28/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 48 | 13X1398 | 4/28/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 49 | 13X1402 | 4/28/2013 | OLDEN | TERRANCE | 2012-0708114 |
| 50 | 13X1409 | 4/24/2013 | MEJIA | JUAN | 2012-0614148 |
| 51 | 13X1432 | 4/28/2013 | GILLESPIE | DEON | 2013-0209089 |
| 52 | 13X1434 | 5/3/2013 | JOHNSON | TIMOTHY | 2013-0219137 |
| 53 | 13X1461 | 4/30/2013 | EVANS | BORIS | 2011-1223073 |
| 54 | 13X1470 | 5/3/2013 | ANDINO | ROBERTO | 2013-0221116 |
| 55 | 13X1472 | 5/4/2013 | HAMMOND | JAMES | 2013-0409187 |
| 56 | 13X1496 | 5/2/2013 | LOVE | RODNEY | 2012-0618083 |
| 57 | 13X1501 | 5/8/2013 | HARKINS | JAQUAN | 2012-0905189 |
| 58 | 13X1502 | 5/2/2013 | REED | JERMAINE | 2011-0411078 |
| 59 | 13X1503 | 5/8/2013 | CALHOUN | DIONTAIE | 2011-0127135 |
| 60 | 13X1503 | 5/8/2013 | CALHOUN | DIONTAIE | 2011-0127135 |
| 61 | 13X1503 | 5/8/2013 | CALHOUN | DIONTAIE | 2011-0127135 |
| 62 | 13X1518 | 5/8/2013 | WILLIS | ANTHONY | 2013-0328253 |
| 63 | 13X1534 | 5/9/2013 | VANDYKE | WALTER | 2013-0110063 |
| 64 | 13X1576 | 5/7/2013 | JACKSON | EDDIE | 2013-0309134 |
| 65 | 13X1577 | 5/15/2013 | WASHINGTON | PERRENCE | 2012-0720112 |
| 66 | 13X1588 | 5/15/2013 | PRUITT | TIMOTHY | 2012-0405108 |
| 67 | 13X1627 | 5/18/2013 | WARE | KATO | 2012-0927229 |
| 68 | 13X1644 | 5/19/2013 | CORREA | PLACIDO | 2013-0221205 |
| 69 | 13X1652 | 5/10/2013 | JACKSON | STEVIE | 2012-1004161 |
| 70 | 13X1653 | 5/11/2013 | EDWARDS | LEE | 2012-1029126 |
| 71 | 13x1659 | 5/16/2013 | COLEMAN | SUNCERRAY | 2013-0127092 |
| 72 | 13X1668 | 5/19/2013 | FIELDS | PIERRE | 2012-1214054 |
| 73 | 13X1699 | 5/23/2013 | TURNER | TOMMIE | 2012-0823130 |
| 74 | 13X1703 | 5/22/2013 | OLDEN | TERRANCE | 2012-0708114 |
| 75 | 13X1703 | 5/22/2013 | OLDEN | TERRANCE | 2012-0708114 |
| 76 | 13X1704 | 5/22/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 77 | 13X1704 | 5/22/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 78 | 13X1705 | 5/28/2013 | HARRIS | JAMES | 2012-1009092 |
| 79 | 13X1732 | 5/23/2013 | WARD | SHAWN | 2013-0129107 |
| 80 | 13X1738 | 5/3/2013 | CARMOND | GREGORIO | 2013-0120031 |
| 81 | 13X1817 | 5/20/2013 | RENCHER | AARON | 2012-1207076 |
| 82 | 13X1833 | 5/24/2013 | WEATHERSPOON | KENNETH | 2012-0327170 |
| 83 | 13X1837 | 5/25/2013 | CONWELL | DONALD | 2012-0607038 |
| 84 | 13X1860 | 6/4/2013 | SMITH | BRUCE | 2010-0528206 |
| 85 | 13X1870 | 5/31/2013 | GARNETT | STEVEN | 2012-1202102 |
| 86 | 13X1905 | 5/29/2013 | MARTINEZ | ELIAS | 2013-0401172 |
| 87 | 13X1905 | 5/29/2013 | MARTINEZ | ELIAS | 2013-0401172 |
| 88 | 13X1908 | 6/5/2013 | BROWN | EXCELL | 2013-0409095 |
| 89 | 13X1910 | 6/5/2013 | SAIGER | JOHN | 2013-0313060 |

Dental Grievances Filed 3/14/2013-10/24/2013

|  | Grievance # | Written | Last Name | First Name | CCDOC # |
|---|---|---|---|---|---|
| 90 | 13X1910 | 6/5/2013 | SAIGER | JOHN | 2013-0313060 |
| 91 | 13X1911 | 6/5/2013 | HILL | DEANDRE | 2012-1211157 |
| 92 | 13X1917 | 6/6/2013 | DIAZ | EDWIN | 2011-1103084 |
| 93 | 13X1951 | 6/10/2013 | VAUGHN | THOMAS | 2013-0409093 |
| 94 | 13X1971 | 6/9/2013 | WARE | KATO | 2012-0927229 |
| 95 | 13X1977 | 6/9/2013 | CATENA | ANTHONY | 2012-0112075 |
| 96 | 13X1979 | 6/10/2013 | ARMSTRONG | ANDRE | 2012-0719001 |
| 97 | 13X2005 | 6/10/2013 | FOSTER | STANFORD | 2013-0427159 |
| 98 | 13X2045 | 5/28/2013 | CARMONA | GREGARIO | 2013-0120031 |
| 99 | 13X2087 | 6/13/2013 | WARE | KATO | 2012-0927229 |
| 100 | 13X2134 | 6/20/2013 | VASQUEZ | RAYMOND | 2013-0528121 |
| 101 | 13X2137 | 5/30/2013 | WINSTON | TORIANO | 2013-0327119 |
| 102 | 13X2144 | 6/6/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 103 | 13X2144 | 6/6/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 104 | 13X2157 | 6/19/2013 | GILET | DARTIGUE | 2013-0408149 |
| 105 | 13X2157 | 6/19/2013 | GILET | DARTIGUE | 2013-0408149 |
| 106 | 13X2160 | 6/21/2013 | WILLIAMS | TIERRA | 2013-0430221 |
| 107 | 13X2170 | 6/22/2013 | JOHNSON | TIMOTHY | 2013-0219137 |
| 108 | 13X2173 | 6/22/2013 | SOLOMAN | TODD | 2013-0503014 |
| 109 | 13X2196 | 6/26/2013 | BRANKIN | BRENDEN | 2012-1216063 |
| 110 | 13X2218 | 6/24/2013 | JONES | TRUVOY | 2012-1002076 |
| 111 | 13X2219 | 6/27/2013 | PERIZ | DAVID | 2013-0506076 |
| 112 | 13X2222 | 6/24/2013 | PETTIES | TERRANCE | 2013-0415102 |
| 113 | 13X2238 | 6/26/2013 | GRIFFIN | TIM | 2013-0326138 |
| 114 | 13X2276 | 6/29/2013 | CRENSHAW | BERNARD | 2012-0306099 |
| 115 | 13X2278 | 6/28/2013 | WILLIAMS | KENSEAN | 2012-0901199 |
| 116 | 13X2310 | 6/25/2013 | TURNER | MARK | 2010-1202066 |
| 117 | 13X2324 | 7/1/2013 | RIVERA | HECTOR | 2013-0221073 |
| 118 | 13X2327 | 6/25/2013 | EDWARDS | LEE | 2012-1029126 |
| 119 | 13X2345 | 6/23/2013 | CONWELL | DONALD | 2012-0607038 |
| 120 | 13X2348 |  | SALZMANN | GREG | 2013-0318223 |
| 121 | 13X2385 | 6/28/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 122 | 13X2385 | 6/28/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 123 | 13X2413 | 7/9/2013 | ALFORD | LYNELL | 2013-0405064 |
| 124 | 13X2442 | 7/1/2013 | SMITH | BRUCE | 2010-0528206 |
| 125 | 13X2474 | 7/10/2013 | ALIBITAR | KAMAL | 2013-0614124 |
| 126 | 13X2479 | 7/10/2013 | HILL | DEANDRE | 2012-1211157 |
| 127 | 13X2479 | 7/10/2013 | HILL | DEANDRE | 2012-1211157 |
| 128 | 13X2502 | 7/10/2013 | VAUGHN | THOMAS | 2013-0409093 |
| 129 | 13X2519 | 7/8/2013 | WILLIAMS | ROBERT | 2013-0603147 |
| 130 | 13X2524 | 7/3/2013 | WHIRLEY | TERRY | 2012-0104023 |
| 131 | 13X2525 | 7/11/2013 | MOORE | ROBERT | 2013-0412059 |
| 132 | 13X2534 | 7/5/2013 | RIVERA | HECTOR | 2013-0221073 |
| 133 | 13X2535 | 7/9/2013 | BESS | GREGORY | 2013-0528231 |
| 134 | 13X2578 | 7/16/2013 | PADIN | LUIS | 2012-0224079 |

Dental Grievances Filed 3/14/2013-10/24/2013

| | Grievance # | Written | Last Name | First Name | CCDOC # |
|---|---|---|---|---|---|
| 135 | 13X2593 | 7/12/2013 | SLYSZ | DAWID | 2012-0924064 |
| 136 | 13X2629 | 7/17/2013 | ROMAN | JOSEPH | 2013-0319124 |
| 137 | 13X2630 | 7/16/2013 | GILLESPIE | DEON | 2013-0209089 |
| 138 | 13X2631 | 7/15/2013 | KEMPSKI | JOHN | 2012-1124063 |
| 139 | 13X2647 | 7/16/2013 | JACKSON | STEVIE | 2012-1004161 |
| 140 | 13x2705 | 7/20/2013 | RUSHING | JERALD | 2013-0318062 |
| 141 | 13X2726 | 7/20/2013 | IRVIN | DEMECO | 2013-0524068 |
| 142 | 13X2746 | 7/16/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 143 | 13X2771 | 7/23/2013 | HENDRICKS | MILUS | 2012-0708129 |
| 144 | 13X2806 | 7/26/2013 | MANNING | JOSHUA | 2013-0722096 |
| 145 | 13X2831 | 7/29/2013 | UNGUREANU | NICHOLAS | 2013-0328035 |
| 146 | 13X2831 | 7/29/2013 | UNGUREANU | NICHOLAS | 2013-0328035 |
| 147 | 13X2832 | 7/30/2013 | WILSON | JERMAINE | 2013-0711011 |
| 148 | 13X2848 | 7/29/2013 | FORD | PRINCE | 2013-0222250 |
| 149 | 13X2855 | 7/29/2013 | MALDONADO | NILANI | 2012-1017010 |
| 150 | 13X2859 | 7/29/2013 | YOUNGER | CHRISTOPHER | 2013-0329158 |
| 151 | 13X2892 | 7/31/2013 | WHITE | DERRICK | 2013-0217147 |
| 152 | 13X2905 | 7/28/2013 | BAILEY | DUNMERRIL | 2013-0511102 |
| 153 | 13X2914 | 8/3/2013 | SYKES | MARVIN | 2013-0517113 |
| 154 | 13X2917 | 7/31/2013 | MANNING | JOSHUA | 2013-0720096 |
| 155 | 13X2927 | 7/14/2013 | RIOS | ALEJANDRO | 2011-1118042 |
| 156 | 13X2929 | 7/30/2013 | ADAMS | RICHARD | 2013-0618237 |
| 157 | 13X2937 | 8/2/2013 | DAVIS | THOMAS | 2013-0304070 |
| 158 | 13X2973 | 8/2/2013 | SMITH | LAMAR | 2012-0718246 |
| 159 | 13X2977 | 8/1/2013 | ARZUAGA | TOMAS | 2013-0422090 |
| 160 | 13X2988 | 8/2/2013 | TURNER | MICHAEL | 2013-0313054 |
| 161 | 13X3016 | 7/28/2013 | WHITE | DERRICK | 2013-0217147 |
| 162 | 13X3018 | 8/3/2013 | KING | APRIL | 2007-0090752 |
| 163 | 13X3027 | 8/6/2013 | HILL | JAMES | 2013-0308135 |
| 164 | 13X3060 | 8/2/2013 | HAYNES | MICHAEL | 2012-1020119 |
| 165 | 13X3152 | 8/12/2013 | ELLISON | HUSON | 2009-0009252 |
| 166 | 13X3214 | 8/2/2013 | REGNIER | JAMES | 2012-0505119 |
| 167 | 13X3214 | 8/2/2013 | REGNIER | JAMES | 2012-0505119 |
| 168 | 13X3214 | 8/2/2013 | REGNIER | JAMES | 2012-0505119 |
| 169 | 13X3214 | 8/2/2013 | REGNIER | JAMES | 2012-0505119 |
| 170 | 13X3227 | 8/20/2013 | VASQUEZ | RAYMOND | 2013-0528121 |
| 171 | 13X3229 | 7/19/2013 | MARTIN | ERNEST | 2013-0617115 |
| 172 | 13X3244 | 8/17/2013 | BENNETT | ROOSEVELT | 2013-0805099 |
| 173 | 13X3261 | | PEREA | ALEJANDRO | 2013-0511210 |
| 174 | 13X3270 | 8/12/2013 | HORSTEADTER | MICHAEL | 2013-0628215 |
| 175 | 13X3275 | 8/9/2013 | ALMARU | HANI | 2013-0618171 |
| 176 | 13X3333 | 8/24/2013 | STARKS | JASON | 2013-0621080 |
| 177 | 13X3333 | 8/24/2013 | STARKS | JASON | 2013-0621080 |
| 178 | 13X3341 | 8/22/2013 | BROWN | EMMANUEL | 2013-0611231 |
| 179 | 13X3341 | 8/22/2013 | BROWN | EMMANUEL | 2013-0611231 |

Plaintiffs' Exhibit 10

Dental Grievances Filed 3/14/2013-10/24/2013

| | Grievance # | Written | Last Name | First Name | CCDOC # |
|---|---|---|---|---|---|
| 180 | 13X3351 | 8/25/2013 | WILSON | JERMAINE | 2013-0711011 |
| 181 | 13X3376 | 8/28/2013 | WATSON | THEOWANNIS | 2013-0507094 |
| 182 | 13X3384 | 8/26/2013 | WREN | TABITHA | 2013-0717085 |
| 183 | 13X3425 | 8/16/2013 | ROMAN | LUIS | 2013-0621241 |
| 184 | 13X3426 | 8/26/2013 | HARRIS | DARRELL | 2010-0317257 |
| 185 | 13X3427 | 8/27/2013 | THOMPSON | STANDFORD | 2013-0722110 |
| 186 | 13X3427 | 8/27/2013 | THOMPSON | STANDFORD | 2013-0722110 |
| 187 | 13X3468 | 9/4/2013 | WHITE | AARON | 2013-0511216 |
| 188 | 13X3483 | 9/3/2013 | CATENA | ANTHONY | 2012-0112075 |
| 189 | 13X3493 | 9/4/2013 | JILTON | SHERMAN | 2013-0615121 |
| 190 | 13X3500 | 9/6/2013 | BELL | ANTHONY | 2012-0912065 |
| 191 | 13X3514 | 9/1/2013 | DAVIS | PETE | 2013-0706049 |
| 192 | 13X3515 | 9/8/2013 | WALKER | LESHAWN | 2013-0602261 |
| 193 | 13X3527 | 9/8/2013 | BENNETT | MICHAEL | 2013-0630176 |
| 194 | 13X3528 | 9/8/2013 | CLONEY | KEVIN | 2013-0707136 |
| 195 | 13X3539 | 8/28/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 196 | 13X3539 | 8/28/2013 | MCCASKILL | STEPHEN | 2012-1120056 |
| 197 | 13X3551 | 8/30/2013 | RICE | RANDY | 2006-0077556 |
| 198 | 13X3578 | 9/2/2013 | CONWEL | DONALD | 2012-0607038 |
| 199 | 13X3582 | 9/1/2013 | GARFIELD | MARION | 2013-0703031 |
| 200 | 13X3590 | 8/31/2013 | LAKSONEN | DAVID | 2013-0210209 |
| 201 | 13X3605 | 9/10/2013 | MCCOY | IRAN | 2013-0606178 |
| 202 | 13X3612 | 9/6/2013 | CURRY | LEON | 2013-0810120 |
| 203 | 13X3641 | 8/29/2013 | COMMON | DONALD | 2013-0329153 |
| 204 | 13X3655 | 9/11/2013 | BRANKIN | BRENDEN | 2012-1216063 |
| 205 | 13X3698 | 9/12/2013 | DAVIS | PETE | 2013-0706049 |
| 206 | 13X3699 | 9/13/2013 | BROWN | EMMANUEL | 2013-0611231 |
| 207 | 13X3699 | 9/13/2013 | BROWN | EMMANUEL | 2013-0611231 |
| 208 | 13X3709 | 9/12/2013 | WILSON | DOMINIQUE | 2013-0314228 |
| 209 | 13X3720 | 9/11/2013 | SCOTT | QUINTIN | 2013-0624121 |
| 210 | 13X3739 | 9/17/2013 | MOORE | LAWRENCE | 2013-0225014 |
| 211 | 13X3768 | 9/17/2013 | BALDERAS | FRANCISCO | 2013-0506132 |
| 212 | 13X3769 | 9/18/2013 | WILLIAMS | ROBERT | 2013-0603147 |
| 213 | 13X3774 | 9/13/2013 | KEARNEY | MACK | 2013-0517149 |
| 214 | 13X3775 | 9/13/2013 | JACKSON | LEON | 2013-0724252 |
| 215 | 13X3782 | 9/18/2013 | PAREDES-MEDINA | ISRAEL | 2013-0407103 |
| 216 | 13X3783 | 9/18/2013 | COFFELT | MICHAEL | 2013-0718216 |
| 217 | 13X3793 | 9/17/2013 | HARNETT | MARTIN | 2013-0801119 |
| 218 | 13X3811 | 9/19/2013 | BIRKS | MICHAEL | 2012-0530014 |
| 219 | 13X3824 | 9/13/2013 | TUCKER | HOWARD | 2013-0822153 |
| 220 | 13X3826 | 9/17/2013 | POWELL | ROOSEVELT | 2013-0720185 |
| 221 | 13X3840 | 9/19/2013 | FAVIAN | GUSTAVO | 2013-0609028 |
| 222 | 13X3860 | 9/23/2013 | MYRICK | DAVID | 2013-0424070 |
| 223 | 13X3867 | 9/19/2013 | HORTON | DUANE | 2013-0614008 |

Dental Grievances FIled 3/14/2013-10/24/2013

| | Grievance # | Written | Last Name | First Name | CCDOC # |
|---|---|---|---|---|---|
| 224 | 13X3969 | 9/25/2013 | JACKSON | EARL | 2013-0821100 |
| 225 | 13X4002 | 9/21/2013 | WILLIAMS | JONATHAN | 2010-0211113 |
| 226 | 13X4002 | 9/21/2013 | WILLIAMS | JONATHAN | 2010-0211113 |
| 227 | 13X4040 | 9/23/2013 | RADJA | JASON | 2013-0607199 |
| 228 | 13X4040 | 9/23/2013 | RADJA | JASON | 2013-0607199 |
| 229 | 13X4056 | 9/20/2013 | WEATHERSPOON | KENNETH | 2012-0327170 |
| 230 | 13X4061 | 9/29/2013 | GRIFFIN | TIM | 2013-0326138 |
| 231 | 13X4073 | 9/28/2013 | BROOKS | JERMAINE | 2011-0407064 |
| 232 | 13X4073 | 9/28/2013 | BROOKS | JERMAINE | 2011-0407064 |
| 233 | 13X4096 | 9/27/2013 | ANTHONY | ALVIN | 2013-0819158 |
| 234 | 13X4096 | 9/27/2013 | ANTHONY | ALVIN | 2013-0819158 |
| 235 | 13X4099 | 9/29/2013 | COMMON | DONALD | 2013-0329153 |
| 236 | 13X4139 | 9/29/2013 | WOOTEN | DA'VPMM | 2013-0914169 |
| 237 | 13X4141 | 9/26/2013 | PHILLIPS | EUGENE | 2013-0712089 |
| 238 | 13X4142 | 9/30/2013 | POWELL | ROOSEVELT | 2013-0720185 |
| 239 | 13X4159 | 10/2/2013 | WILKINS | JEROME | 2013-0616142 |
| 240 | 13X4160 | 10/1/2013 | RODRIGUEZ | ROMAN | 2013-0521038 |
| 241 | 13X4166 | 10/2/2013 | WOULARD | DONJEY | 2013-0827096 |
| 242 | 13X4170 | 9/30/2013 | FORD | PRINCE | 2013-0222250 |
| 243 | 13X4190 | 9/30/2013 | WISZ | STANLEY | 2013-0614037 |
| 244 | 13X4195 | 10/4/2013 | HAMPTON | RYAN | 2012-0128073 |
| 245 | 13X4198 | 10/2/2013 | RIVERA | HECTOR | 2013-0221073 |
| 246 | 13X4221 | 10/1/2013 | GREEN | MARCUS | 2013-0817109 |
| 247 | 13X4222 | 10/7/2013 | LANE | JAMES | 2013-0511190 |
| 248 | 13X4224 | 8/7/2013 | SMITH | COOLIDGE | 2012-0510204 |
| 249 | 13X4251 | 10/5/2013 | OLDEN | TERRANCE | 2012-0708114 |
| 250 | 13X4275 | 10/3/2013 | PERKINS | NESHAWN | 2013-0621211 |
| 251 | 13X4369 | 10/13/2013 | CASTANEDA | MIGUEL | 2013-0501093 |
| 252 | 13X4378 | 10/7/2013 | NAVEJAS | MARIA | 2013-0910204 |
| 253 | 13X4431 | 10/9/2013 | WHITE | LIONEL | 2012-1214198 |
| 254 | 13X4431 | 10/9/2013 | WHITE | LIONEL | 2012-1214198 |
| 255 | 13X4439 | 10/16/2013 | CARTER | LOMA | 2013-0822061 |
| 256 | 13X4457 | 10/8/2013 | JONES | CALVIN | 2013-0806154 |
| 257 | 13X4457 | 10/8/2013 | JONES | CALVIN | 2013-0806154 |
| 258 | 13X4458 | 10/11/2013 | VELLEFF | TED | 2013-0925133 |
| 259 | 13X4458 | 10/11/2013 | VELLEFF | TED | 2013-0925133 |
| 260 | 13X4463 | 10/13/2013 | HOBEL | STEPHEN | 2013-0609026 |
| 261 | 13X4486 | 9/6/2013 | BRADLEY | GERALD | 2013-0725018 |
| 262 | 13X4489 | 8/13/2013 | LONG | KEVIN | 2010-0430042 |
| 263 | 13X4490 | 9/12/2013 | LARD | COREY | 2013-0606117 |
| 264 | 13X4535 | 10/14/2013 | ALDRIDGE | BOBBY | 2013-0719169 |
| 265 | 13X4536 | 10/12/2013 | BAUTISTA | JOSE | 2012-0703184 |
| 266 | 13X4537 | 10/13/2013 | OSORIO | THOMAS | 2013-0506105 |
| 267 | 13X4540 | 10/20/2013 | KNICKREHM | JASON | 2013-1001009 |

Plaintiffs' Exhibit 10

Dental Grievances FIled 3/14/2013-10/24/2013

| | Grievance # | Written | Last Name | First Name | CCDOC # |
|---|---|---|---|---|---|
| 268 | 13X4552 | 10/18/2013 | SLOAN | TERRY | 2011-0728136 |
| 269 | 13X4566 | 10/15/2013 | HARRIS | JAMES | 2012-1009092 |
| 270 | 13X4576 | 10/4/2013 | GOGINS | DORVELL | 2013-0714001 |
| 271 | 13X4596 | 10/18/2013 | FERRELL | THERESA | 2013-1013013 |
| 272 | 13x4615 | 10/19/2013 | ALEXANDER | TOMMIE | 2013-0408117 |
| 273 | 13X4626 | 10/19/2013 | JOHNSON | HENRY | 2013-0903201 |
| 274 | 13X4636 | 10/21/2013 | CONCEPCION | MEINARDO | 2013-0709167 |
| 275 | 13X4660 | 10/22/2013 | CONTRERAS | JAVIER | 2013-1008188 |
| 276 | 13X4662 | 10/20/2013 | MULLINS | CHRISTOPHER | 2013-0825029 |

**Exhibit %%**

# INDEX TO DECLARATIONS

**Name**                                                        **Page**

Adams, Richard ......................................................................... 1

Albitar, Kamal ......................................................................... 2

Allen, Orlando J ......................................................................... 3

Anthony, Alvin ......................................................................... 4

Balderas, Francisco ......................................................................... 5

Bautista, Jose ......................................................................... 6

Bell, Anthony ......................................................................... 7

Birks, Michael ......................................................................... 8

Brankin, Brenden P ......................................................................... 9

Brooks, Jermaine ......................................................................... 10

Calhoun, Diontae ......................................................................... 11

Castaneda, Miguel ......................................................................... 12

Conmcepcion, Meinardo ......................................................................... 13

Conwell, Donald ......................................................................... 14

Conyers, Blake ......................................................................... 15

Crenshaw, Bernard ......................................................................... 16

Edwards, Lee A ......................................................................... 17

Favian, Gustavo ......................................................................... 18

Fields, Pierre R ......................................................................... 19

Garnett, Steven James ......................................................................... 20

Gogins, Dorvell ......................................................................... 21

Hendricks, Milus ......................................................................... 22

Knickrehm, Jason D ......................................................................... 23

Lard, Corey ......................................................................... 24

Long, Kevin ......................................................................... 25

Love, Rodney K ......................................................................... 26

| **Name** | **Page** |
|---|---|
| Mejia, Juan A | 27 |
| Mullins, Christopher | 28 |
| Myrick, David | 29 |
| Olden, Terrance | 30 |
| Powell, Roosevelt | 31 |
| Radja, Jason | 32 |
| Regnier, James | 33 |
| Rios, Alejandro | 34 |
| Roman, Joseph A | 35 |
| Saiger, John | 36 |
| Scott, Quintin | 37 |
| Sloan, Terry | 38 |
| Smith, Lamar | 39 |
| Thompson, Stanford | 40 |
| Velleff, Ted | 41 |
| Walker, Leshawn L | 42 |
| Ward, Shawn T | 43 |
| Ware, Kato V | 44 |
| Washington, Perrence D | 45 |
| Weatherspoon, Kenneth | 46 |
| Whirley, Terry | 47 |
| White, Derrick | 48 |
| Williams, Johnathan C. | 49 |
| Williams, Kensean T | 50 |
| Wilson, Dominique | 51 |
| Wilson, Jermaine | 52 |
| Wright, Ronald L | 53 |

## DECLARATION OF Richard Adams

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Richard Adams. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0618237.

2.     I filed a grievance on 07/30/13 complaining about untreated dental pain.

5.     Before I filed the grievance, I submitted __ health service requests about dental pain.  I first began to complain about dental pain on 6 -20 - 2013

6.     It took about 2.5 months from my first complaint until I received any treatment for my dental pain. .


Dated: December 2, 2013

_____
signature

## DECLARATION OF Kamal Albitar

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Kamal Albitar. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0614124.

2.     I filed a grievance on 07/10/13 complaining about untreated dental pain.

7.     Before I filed the grievance, I submitted **7** health service requests about dental pain. I first began to complain about dental pain on <u>MID. JUNE</u> .

8.     It took about ____**4**____ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16 2013

_signature_

P.S. For your Information As of 12-16-13 My Dental problem Still has not BEEN taken Care of anD I am Still experiencing SEVERE PAIN. KA.

# DECLARATION OF Orlando J Allen

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.      My name is Orlando J Allen. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0128051.

2.      I filed a grievance on 04/06/13 complaining about untreated dental pain.

11.     Before I filed the grievance, I submitted _5_ health service requests about dental pain.  I first began to complain about dental pain on _during Intake_ 1-28-13

12.     It took about _4_ months from my first complaint until I received any treatment for my dental pain. .


Dated: December 16, 2013

_Orlando Allen_____
*signature*

# DECLARATION OF ALVIN ANTHONY

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is ALVIN ANTHONY. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0819158.

2.     I filed a grievance on 09/27/13 complaining about untreated dental pain.

3.     Before I filed the grievance, I submitted 5 health service requests about dental pain.  I first began to complain about dental pain on 8/2( )013.

4.     It took about ___2___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16, 2013

_alvin anthony_
*signature*

## DECLARATION OF Francisco Balderas

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Francisco Balderas. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0506132.

2.     I filed a grievance on 09/17/13 complaining about untreated dental pain.

19.     Before I filed the grievance, I submitted 3 health service requests about dental pain.  I first began to complain about dental pain on 6-8-13.

20.     It took about ___4___ months from my first complaint until I received any treatment for my dental pain. .


Dated: December 16, 2013

*Francisco Balderas.*
*signature*

# DECLARATION OF Jose Bautista

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.      My name is Jose Bautista. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0703184.

2.      I filed a grievance on 10/12/13 complaining about untreated dental pain.

21.      Before I filed the grievance, I submitted _3_ health service requests about dental pain.  I first began to complain about dental pain on ~~cccccccc~~ .

22.      It took about _____3_____ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _17_, 2013

_____
signature

## DECLARATION OF Anthony Bell

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Anthony Bell. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0912065.

2.     I filed a grievance on 09/06/13 complaining about untreated dental pain.

23.     Before I filed the grievance, I submitted 3 health service requests about dental pain.  I first began to complain about dental pain on Nov 17 2012    .

24.     It took about Sept 6, 2013 months from my first complaint until I received any treatment for my dental pain. .


Dated: December 16, 2013

_Authony Bell_
_signature_

## DECLARATION OF Michael Birks

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is Michael Birks. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0530014.

2.    I filed a grievance on 09/19/13 complaining about untreated dental pain.

25.    Before I filed the grievance, I submitted _3_ health service requests about dental pain. I first began to complain about dental pain on _October 3 2013_.

26.    It took about _2_ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _26_, 2013

_Michael Birks_
signature

## DECLARATION OF BRENDEN P BRANKIN

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is BRENDEN P BRANKIN. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-1216063.

2.     I filed a grievance on 06/26/13, 09/11/13 complaining about untreated dental pain.

15.     Before I filed the grievance, I submitted ⁀ at least 5 ⁀ health service requests about dental pain.  I first began to complain about dental pain on Jan, 2012.

16.     It took about ___6___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 17, 2013

signature

## DECLARATION OF JERMAINE BROOKS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is JERMAINE BROOKS. I was a detainee at the Cook County Jail in 2013, as inmate number 2011-0407064.

2. I filed a grievance on 09/28/13 complaining about untreated dental pain.

17. Before I filed the grievance, I submitted 3 health service requests about dental pain. I first began to complain about dental pain on July 2013

18. It took about ___2/2___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 13, 2013

signature

## DECLARATION OF DIONTAE CALHOUN

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is DIONTAE CALHOUN. I was a detainee at the Cook County Jail in 2013, as inmate number 2011-0127135.

2.     I filed a grievance on 05/08/13 complaining about untreated dental pain.

27.    Before I filed the grievance, I submitted _3_ health service requests about dental pain. I first began to complain about dental pain on _4-2-13_ .

28.    It took about __2__ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _17_, 2013

_signature_

## DECLARATION OF MIGUEL CASTANEDA

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.  My name is MIGUEL CASTANEDA. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0501093.

2.  I filed a grievance on 10/13/13 complaining about untreated dental pain.

31.  Before I filed the grievance, I submitted _2_ health service requests about dental pain. I first began to complain about dental pain on _10/12/13_ .

32.  It took about ___1___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _16_ 2013

_miguel Castanedo_
*signature*

## DECLARATION OF Meinardo Conmcepcion

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is Meinardo Conmcepcion. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0709167.

2. I filed a grievance on 10/21/13 complaining about untreated dental pain.

39. Before I filed the grievance, I submitted _7_ health service requests about dental pain. I first began to complain about dental pain on _9 - 15 - 13_.

40. It took about ~~_____~~ 2 months 10 Days months from my first complaint until I received any treatment for my dental pain. .

Dated: December _15_, 2013

_signature_

I have asked numerous times About tooth Pain As well As trying to get A Denture Fixed. But All I Am told is they have no glue.

## DECLARATION OF Donald Conwell

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Donald Conwell. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0607038.

2.     I filed a grievance on 05/25/13, 06/23/13, 09/02/13 complaining about untreated dental pain.

43.     Before I filed the grievance, I submitted __ health service requests about dental pain. I first began to complain about dental pain on August, 2012.

44.     It took about 13 months from my first complaint until I received any treatment for my dental pain. .

Dated: December 25, 2013

signature

## DECLARATION OF Blake Conyers

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.      My name is Blake Conyers. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0227094.

2.      I filed a grievance on 03/19/13 complaining about untreated dental pain.

45.     Before I filed the grievance, I submitted 17 health service requests about dental pain. I first began to complain about dental pain on 10/10/2012 .

46.     It took about ten (10) months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16, 2013

signature

## DECLARATION OF Bernard Crenshaw

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.      My name is Bernard Crenshaw. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0306099.

2.      I filed a grievance on 04/14/13, 06/29/13 complaining about untreated dental pain.

47.     Before I filed the grievance, I submitted 13 health service requests about dental pain. I first began to complain about dental pain on July 28, 2012 and July 29, 2012

48.     It took about ___6___ months from my first complaint until I received any treatment for my dental pain. .


Dated: December 16, 2013

Bernard Crenshaw
*signature*

## DECLARATION OF LEE A EDWARDS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is LEE A EDWARDS. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-1029126.

2.     I filed a grievance on 04/01/13, 05/11/13, 06/25/13 complaining about untreated dental pain.

51.     Before I filed the grievance, I submitted 9 *or more* health service requests about dental pain. I first began to complain about dental pain on Oct-29-12.

52.     It took about 6 *to 7* months from my first complaint until I received any treatment for my dental pain. .

Dated: December 19, 2013

Lee Edwards
*signature*

## DECLARATION OF Gustavo Favian

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Gustavo Favian. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0609028.

2.     I filed a grievance on 09/19/13 complaining about untreated dental pain.

57.     Before I filed the grievance, I submitted __ health service requests about dental pain.  I first began to complain about dental pain on July 2013

58.     It took about _3_ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16, 2013

GuالسTavo FariAv
*signature*

## DECLARATION OF PIERRE R FIELDS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is PIERRE R FIELDS. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-1214054.

2.     I filed a grievance on 03/31/13, 05/19/13 complaining about untreated dental pain.

53.     Before I filed the grievance, I submitted *6* health service requests about dental pain. I first began to complain about dental pain on _3-9-13_.

54.     It took about __*2*___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December *14*, 2013

_signature_

## DECLARATION OF Steven James Garnett

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is Steven James Garnett. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-1202102.

2. I filed a grievance on 04/04/13, 05/31/13 complaining about untreated dental pain.

*HOW MANY*

61. Before I filed the grievance, I submitted ⌐3 health service requests about dental pain. I first began to complain about dental pain on

*date ➤ MARCH 2ND or 3Rd*

*HOW LONG BEFORE SEEING YOU*

62. It took about __*4*__ months from my first complaint until I received any treatment for my dental pain. .

Dated: December *16* 2013

*Steven Garnett*

*signature*

## DECLARATION OF DORVELL GOGINS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is DORVELL GOGINS. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0714001.

2. I filed a grievance on 10/04/13 complaining about untreated dental pain.

59. Before I filed the grievance, I submitted 4 health service requests about dental pain. I first began to complain about dental pain on 7/30/13 .

60. It took about 3 to 4 months from my first complaint until I received any treatment for my dental pain. .

Dated: December 13, 2013

_signature_

## DECLARATION OF Milus Hendricks

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is Milus Hendricks. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0708129.

2.    I filed a grievance on 07/23/13 complaining about untreated dental pain.

77.    Before I filed the grievance, I submitted 3 or 4 health service requests about dental pain. I first began to complain about dental pain on _____ 2012 .

78.    It took about 4 to 6 or 8 months from my first complaint until I received any treatment for my dental pain. .

Dated: December __, 2013

_Milus Hendricks_
signature

## DECLARATION OF JASON D KNICKREHM

The undersigned, under penalties of perjury, certifies that the follow-ing statements are true:

1.     My name is JASON D KNICKREHM. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-1001009.

2.     I filed a grievance on 10/20/13 complaining about untreated dental pain.

79.     Before I filed the grievance, I submitted 4 health service re-quests about dental pain. I first began to complain about dental pain on 10/12/13 .

80.     It took about 2 – 2 1/2 and current months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16, 2013

signature

## DECLARATION OF Corey Lard

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Corey Lard. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0606117.

2.     I filed a grievance on 09/12/13 complaining about untreated dental pain.

83.     Before I filed the grievance, I submitted _3 or 4_ health service requests about dental pain.  I first began to complain about dental pain on _9-12-13_ .

84.     It took about _2 months_ months from my first complaint until I received any treatment for my dental pain. .


Dated: December _12_, 2013

_Corey V Lard_

*signature*

## DECLARATION OF Kevin Long

The undersigned, under penalties of perjury, certifies *to the Best of his ABILITY* that the following statements are true:

1.    My name is Kevin Long. I was a detainee at the Cook County Jail in 2013, as inmate number 2010-0430042.

2.    I filed a grievance on 08/13/13 complaining about untreated dental pain.

85.    Before I filed the grievance, I submitted 2 health service requests about dental pain. I first began to complain about dental pain ~~on~~ iN MID-JULY, 2013.

86.    It took about _3_ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 13, 2013

_____
signature

# DECLARATION OF RODNEY K LOVE

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is RODNEY K LOVE. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0618083.

2. I filed a grievance on 04/04/13, 05/02/13 complaining about untreated dental pain.

81. Before I filed the grievance, I submitted 10ᵗʰ health service requests about dental pain. I first began to complain about dental pain on Dec.7 2012 .

82. It took about 6 or 7 months from my first complaint until I received any treatment for my dental pain. .


Dated: December 16 2013

Mr. Rodney Love Jr.
*signature*

## DECLARATION OF JUAN A MEJIA

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is JUAN A MEJIA. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0614148.

2.    I filed a grievance on 03/25/13, 04/24/13 complaining about untreated dental pain.

93.    Before I filed the grievance, I submitted __ health service requests about dental pain. I first began to complain about dental pain on 3-25-13.

94.    It took about N I N E __ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 13, 2013

_____
signature

63

## DECLARATION OF CHRISTOPHER MULLINS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.      My name is CHRISTOPHER MULLINS. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0825029.

2.      I filed a grievance on 10/20/13 complaining about untreated dental pain.

95.     Before I filed the grievance, I submitted *2* health service requests about dental pain.  I first began to complain about dental pain on *About 9/1/13 or so*

96.     It took about ___*2*___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December *16*, 2013

_signature_

## DECLARATION OF DAVID MYRICK

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is DAVID MYRICK. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0424070.

2. I filed a grievance on 09/23/13 complaining about untreated dental pain.

97. Before I filed the grievance, I submitted _7_ health service requests about dental pain. I first began to complain about dental pain on _4/24/13 they gave me Aspirin_

98. It took about _3 -for pain pills_ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 13, 2013

_signature_

## DECLARATION OF TERRANCE OLDEN

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is TERRANCE OLDEN. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0708114.

2.     I filed a grievance on 04/28/13, 05/22/13, 10/05/13 complaining about untreated dental pain.

101.   Before I filed the grievance, I submitted 12 health service requests about dental pain. I first began to complain about dental pain on _9/26/12_.

102.   It took about __4__ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 19, 2013

_Terrance Olden_
*signature*

## DECLARATION OF Roosevelt Powell

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is Roosevelt Powell. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0720185.

2.    I filed a grievance on 09/17/13, 09/30/13 complaining about untreated dental pain.

111.    Before I filed the grievance, I submitted _4_ health service requests about dental pain. I first began to complain about dental pain on _8-13-13_.

112.    It took about __2__ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _19_ 2013

_signature_

## DECLARATION OF JASON RADJA

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is JASON RADJA. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0607199.

2.    I filed a grievance on 09/23/13 complaining about untreated dental pain.

113.    Before I filed the grievance, I submitted __ health service requests about dental pain. I first began to complain about dental pain on June 13, 2013

114.    It took about ___4___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16, 2013

Jasun Radj
*signature*

## DECLARATION OF JAMES REGNIER

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is JAMES REGNIER. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0505119.

2.    I filed a grievance on 08/02/13 complaining about untreated dental pain.

115.    Before I filed the grievance, I submitted _12_ health service requests about dental pain.  I first began to complain about dental pain on _6 - 0 - 12_ .

116.    It took about _12_ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _18_, 2013

_James Regnier_
signature

## DECLARATION OF ALEJANDRO RIOS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is ALEJANDRO RIOS. I was a detainee at the Cook County Jail in 2013, as inmate number 2011-1118042.

2.     I filed a grievance on 07/14/13 complaining about untreated dental pain.

117.     Before I filed the grievance, I submitted **4** health service requests about dental pain. I first began to complain about dental pain on 2012 Not Serident date

118.     It took about _____5_____ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _16_ 2013

_____
signature

## DECLARATION OF JOSEPH A ROMAN

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is JOSEPH A ROMAN. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0319124.

2.     I filed a grievance on 07/17/13 complaining about untreated dental pain.

119.     Before I filed the grievance, I submitted **2** health service requests about dental pain. I first began to complain about dental pain on ___May___.

120.     It took about __2__ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 15, 2013

_Joseph Roman_
signature

## DECLARATION OF John Saiger

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.  My name is John Saiger. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0313060.

2.  I filed a grievance on 06/05/13 complaining about untreated dental pain.

133.  Before I filed the grievance, I submitted *6* health service requests about dental pain. I first began to complain about dental pain on 3-13-13 .

134.  It took about ___*6*___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16 2013

signature

## DECLARATION OF Quintin Scott

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is Quintin Scott. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0624121.

2.    I filed a grievance on 09/11/13 complaining about untreated dental pain.

135.    Before I filed the grievance, I submitted _1_ health service requests about dental pain.  I first began to complain about dental pain on Or about 7-5-2013

136.    It took about _1 week_ ~~months~~ from my first complaint until I received any treatment for my dental pain. .

I was referred to Oral Surgeon at Strogers Hostpial and took x rays of the bad tuotho and sent back to the County Jail. Here it is 12.16-2013 and still no word Or news on when I'm getting it pulled. mean while still in pain and suffering.

Dated: December __, 2013

_Quintin Scott_
signature

## DECLARATION OF Terry Sloan

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Terry Sloan. I was a detainee at the Cook County Jail in 2013, as inmate number 2011-0728136.

2.     I filed a grievance on 03/24/13, 10/18/13 complaining about untreated dental pain.

137.     Before I filed the grievance, I submitted **3** health service requests about dental pain. I first began to complain about dental pain on I believe it was the month of January or February 2012

138.     It took about **7** months from my first complaint until I received any treatment for my dental pain. . I have not recieved any pain Medicine or X ray,

Dated: December **16**, 2013

_____
signature

## DECLARATION OF LAMAR SMITH

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is LAMAR SMITH. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0718246.

2.    I filed a grievance on 08/02/13 complaining about untreated dental pain.

129.    Before I filed the grievance, I submitted __ health service requests about dental pain. I first began to complain about dental pain on ~~JUNE~~ middle of June

130.    It took about __1½ - 1¾__ months from my first complaint until I received any treatment for my dental pain. .

Dated: December ~~21~~, 2013

_John Mar Smith_
*Signature*

## DECLARATION OF Stanford Thompson

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is Stanford Thompson. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0722110. *Yes true*

2.    I filed a grievance on 08/27/13 complaining about untreated dental pain. *Yes true*

139.    Before I filed the grievance, I submitted *7* health service requests about dental pain. I first began to complain about dental pain on *8/4/13* .

140.    It took about ___*1*___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December *17*, 2013

*Stanford Thompson*
signature

## DECLARATION OF Ted Velleff

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is Ted Velleff. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0925133.

2. I filed a grievance on 10/11/13 complaining about untreated dental pain.

143. Before I filed the grievance, I submitted 4 health service requests about dental pain. I first began to complain about dental pain on 9/27/2013.

144. It took about 1 1/2 months from my first complaint until I received any treatment for my dental pain. .

Dated: December 19, 2013

Ted Velleff
_signature_

## DECLARATION OF LESHAWN L WALKER

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is LESHAWN L WALKER. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0602261.

2.    I filed a grievance on 09/08/13 complaining about untreated dental pain.

145.   Before I filed the grievance, I submitted _10_ health service requests about dental pain. I first began to complain about dental pain on _6/18/13_ .

146.   It took about ___4___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 16, 2013

_LeShawn Walker_
*signature*

## DECLARATION OF SHAWN T WARD

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is SHAWN T WARD. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0129107.

2. I filed a grievance on 05/23/13 complaining about untreated dental pain.

147. Before I filed the grievance, I submitted ⊥ health service requests about dental pain. I first began to complain about dental pain on 4-17-13 .

148. It took about TWO months from my first complaint until I received any treatment for my dental pain. .


Dated: December 15, 2013

signature    *Shawn Ward*
             UCC, 1-308

## DECLARATION OF KATO V WARE

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.  My name is KATO V WARE. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0927229.

2.  I filed a grievance on 05/18/13, 06/09/13, 06/13/13 complaining about untreated dental pain.

149.  Before I filed the grievance, I submitted __ health service requests about dental pain. I first began to complain about dental pain on April 15, 2013.

150.  It took about ___8___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 15, 2013

_Kato Ware_
_signature_

## DECLARATION OF PERRENCE D WASHINGTON

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is PERRENCE D WASHINGTON. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0720112.

2.    I filed a grievance on 05/15/13 complaining about untreated dental pain.

151.    Before I filed the grievance, I submitted *3* health service requests about dental pain. I first began to complain about dental pain on *12 / 12*.

152.    It took about *7* months from my first complaint until I received any treatment for my dental pain. .

Dated: December *16* 2013

*Perrence Washington*
signature

## DECLARATION OF KENNETH WEATHERSPOON

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is KENNETH WEATHERSPOON. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0327170.

2. I filed a grievance on 05/24/13, 09/20/13 complaining about untreated dental pain.

153. Before I filed the grievance, I submitted 4 health service requests about dental pain. I first began to complain about dental pain on FEbUARY, 2013 .

154. It took about _____ months from my first complaint until I received any treatment for my dental pain. .

I shll have not received any treatment for my dental pain. I was tokd twice After filing grievances that I would be schedule for ORAL surgery. Here it is 10 months After my first complaint And I shll have not received treatment. I shll have the same pain.

Dated: December 15, 2013

Kenneth Weatherspoon
*signature*

# DECLARATION OF TERRY WHIRLEY

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.   My name is TERRY WHIRLEY. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0104023.

2.   I filed a grievance on 07/03/13 complaining about untreated dental pain.

155.   Before I filed the grievance, I submitted _9_ health service requests about dental pain.  I first began to complain about dental pain on _4-30-13_.

156.   It took about ___3___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _18_, 2013

_Terry W Whirley_
signature

## DECLARATION OF DERRICK WHITE

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.      My name is DERRICK WHITE. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0217147.

2.      I filed a grievance on 07/31/13, 07/28/13 complaining about untreated dental pain.

157.    Before I filed the grievance, I submitted _3_ health service requests about dental pain. I first began to complain about dental pain on *Around May 1, 2013*.

158.    It took about ⨉ months from my first complaint until I *I NEVER RECEIVED any treatment for Dental pain.* received any treatment for my dental pain. .

Dated: December __, 2013

*Derrick White*
*signature*

## DECLARATION OF Johnathan C. Williams

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is Johnathan C. Williams. I was a detainee at the Cook County Jail in 2013, as inmate number 2010-0211113.

2.    I filed a grievance on 09/21/13 complaining about untreated dental pain.

*may be 4 or 5*

171.    Before I filed the grievance, I submitted ↑ health service requests about dental pain. I first began to complain about dental pain on

*Before 6-3-10/ I've been Complaining ever since! As far as 2013 I don't remember How many request forms I filed, but it's a l.*

172.    It took about ___Sec below___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December 23, 2013

_____
*See below*
*signature*

## DECLARATION OF KENSEAN T WILLIAMS

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is KENSEAN T WILLIAMS. I was a detainee at the Cook County Jail in 2013, as inmate number 2012-0901199.

2.     I filed a grievance on 06/28/13 complaining about untreated dental pain.

163.   Before I filed the grievance, I submitted _4_ health service requests about dental pain. I first began to complain about dental pain on _4-28-13_.

164.   It took about _two_ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _16_, 2013

_Kensean Williams_
*signature*

## DECLARATION OF DOMINIQUE WILSON

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.  My name is DOMINIQUE WILSON. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0314228.

2.  I filed a grievance on 09/12/13 complaining about untreated dental pain.

165.  Before I filed the grievance, I submitted _2_ health service requests about dental pain. I first began to complain about dental pain on _7-23-2013_.

166.  It took about ___3___ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _13_ 2013

_Dominique Wilson_
signature

## DECLARATION OF Jermaine Wilson

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.     My name is Jermaine Wilson. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0711011.

2.     I filed a grievance on 07/30/13, 08/25/13 complaining about untreated dental pain.

173.     Before I filed the grievance, I submitted *10* health service requests about dental pain.  I first began to complain about dental pain on _7/14/13_ .

174.     It took about ___*3*___ months from my first complaint until I received any treatment for my dental pain. .


Dated: December 16, 2013

_____
*signature*

## DECLARATION OF Ronald L Wright

The undersigned, under penalties of perjury, certifies that the following statements are true:

1.    My name is Ronald L Wright. I was a detainee at the Cook County Jail in 2013, as inmate number 2013-0315253.

2.    I filed a grievance on 04/28/13 complaining about untreated dental pain.

175.   Before I filed the grievance, I submitted $20$ health service requests about dental pain. I first began to complain about dental pain on _3-17-2013_.

176.   It took about _4 to 6_ months from my first complaint until I received any treatment for my dental pain. .

Dated: December _13_, 2013

Ronald L Wright
*signature*

**Exhibit 12**

outside specialty care, including the date of the referral, the date the appointment was scheduled, the date the appointment occurred, the reason for any missed or delayed appointments, and information on follow-up care, including the dates of any future appointments.

e.     Cermak shall ensure that pregnant inmates are provided adequate pre-natal care. Cermak shall develop and implement appropriate written policies and protocols for the treatment of pregnant inmates, including appropriate screening, treatment, and management of high risk pregnancies.

58.   Dental Care

a.     Cermak shall ensure that inmates receive adequate dental care, and follow up, in accordance with generally accepted correctional standards of care. Such care should be provided in a timely manner, taking into consideration the acuity of the problem and the inmate's anticipated length of stay. Dental care shall not be limited to extractions.

b.     Cermak shall ensure that adequate dentist staffing and hours shall be provided to avoid unreasonable delays in dental care.

## D.   MENTAL HEALTH CARE

59.   Assessment and Treatment

a.     Results of mental health intake screenings (see provision 45.c, "Intake Screening") will be reviewed by Qualified Mental Health Staff for appropriate disposition.

b.     Cermak shall develop and implement policies and procedures to assess inmates with mental illness; and to evaluate inmates' mental health needs. Said policies shall include definitions of emergent, urgent, and routine mental health needs, as well as timeframes for the provision of services for each category of mental health needs.

c.     Cermak shall ensure that any inmate who screens positively for mental illness or suicidal ideation during the intake screening process, through a mental health assessment, or who is otherwise referred for mental health services, receives a clinically appropriate mental health evaluation in a timely manner, based on emergent, urgent, and routine mental health needs, from a Qualified Mental

37

offsite clinics. Because of this, we were told that clinicians may have their decisions regarding a referral influenced by the limited availability. With the limited transport capability, 122 patients were cancelled due to lack of transport staff in the past year. In addition, it is not uncommon for patients to arrive late for their appointments and have their appointments be cancelled as a result. The Cermak Health Services must provide CCDOC with the minimal number of transports needed per day in order to adequately serve the patient population. When the patients were transported timely, we found the services were accessible timely and the reports are generally available in the electronic medical record. We reviewed seven records and in all of those, the reports were available and in all but one, follow up did occur after the visit occurred.

**Monitor's Recommendations:**

1. Cermak is to provide to the CCDOC the estimated minimum number of appointments needed offsite on a daily basis in order to adequately serve the population. This should enable the CCDOC to project the number of resources needed in order to assure timely access.

2. The quality assurance program should at some point monitor the follow up provided onsite by the primary care clinicians after scheduled offsite services have been provided.

## 58. Dental Care

    a. Cermak-Timely, Adequate Care

    b. Cermak-Sufficiency of Staff and Hours

**Compliance Status**: Partial compliance.

**Findings**

    **Status Update:** None submitted.

    **Monitor's Findings:**

    The dental program, which was virtually obliterated a few years ago, is in the process of being rebuilt. We were told that there are currently 4.0 dentist equivalents, along with three dental assistants. There are plans to add two more dentists and four dental assistants, which should result in a total dental staffing of six dentists and seven assistants. However, at the time of this visit, there were only four dentists and we were told that Division X in particular had had significant delays in dental services. We reviewed the records of 10 patients scheduled to see the dentist on 4/18/10 in Division X. On average, these patients had waited between two and three months and some, as long as five months since requesting services for pain. However, we were told that just recently the dental staffing in Division X had increased significantly. At this point, since dental staffing is in transition, going from a low of one dentist and two assistants in 2007, to the current situation of four dentists and three assistants, it is very difficult to determine whether the staffing, which has not yet been implemented, will in fact be adequate. We are also concerned that, given the shortage of dental resources, the currently broken sick

45

call system exacerbates the dental problems. At Cermak, it is expected that the nurse sick call process will be the first line of response to patients with dental problems. The goal is for these nurses to provide temporary analgesia while the patient is waiting to be assessed. With that process remaining to be fixed, it is clear that the dental program is currently unable to provide timely service.

**Monitor's Recommendations:**

1. Cermak must find a way to provide timely analgesia and screening assessment for patients requesting dental services.

2. We recommend that the proposed dental staffing be implemented as soon as possible.

## 86. Quality Management

      a. Develop and Implement Policies and Procedures

      b. Address and Correct Deficiencies

      c. CCDOC-Participation in Health Care Quality Improvement Committee

      d. Cermak-Participation in Health Care QI Committee

      e. DFM-Health Care QI Committee

**Compliance Status**: Partial compliance.

**Findings**

      **Status Update:** None submitted.

      **Monitor's Findings:**

      A multidisciplinary quality improvement committee has been created. There is an excellent quality improvement draft plan which appears to move the program in a very positive direction. There have been recent quality improvement committee meetings on a monthly basis. There appears to have been relatively good staff participation at the quality improvement committee meetings. There is a draft of excellent chronic disease quality indicators for use in measuring a variety of chronic disease outcomes. Thus, there is and has been a significant amount of productive infrastructural quality improvement activity. However, challenges remain. The quality improvement committee, at this point, does not include participation by custody which truly is a necessity. There also has not been a jointly established healthcare quality improvement committee that includes CCDOC, Cermak and the Department of Facilities Management. There were discussions during the time of our visit about creating such a committee. However, the current committee also can be substantially improved. Other opportunities for improvement include, in addition to the participation of non-healthcare staff, the integration of the four process improvement team activities into the quality improvement committee meetings. There are currently process improvement teams regarding medication management, access

**Findings**

**Status Update:** None submitted.

**Monitor's Findings:**

The Cermak specialty referrals offsite are currently limited by the number of available escorts provided by the Department of Corrections. Approximately 10-14 patients per day are able to go to offsite clinics. Because of this, we were told that clinicians may have their decisions regarding a referral influenced by the limited availability. With the limited transport capability, 122 patients were cancelled due to lack of transport staff in the past year. In addition, it is not uncommon for patients to arrive late for their appointments and have their appointments be cancelled as a result. The Cermak Health Services must provide CCDOC with the minimal number of transports needed per day in order to adequately serve the patient population. When the patients were transported timely, we found the services were accessible timely and the reports are generally available in the electronic medical record. We reviewed seven records and in all of those, the reports were available and in all but one, follow up did occur after the visit occurred.

**Monitor's Recommendations:**

1.  Cermak is to provide to the CCDOC the estimated minimum number of appointments needed offsite on a daily basis in order to adequately serve the population. This should enable the CCDOC to project the number of resources needed in order to assure timely access.

2.  The quality assurance program should at some point monitor the follow up provided onsite by the primary care clinicians after scheduled offsite services have been provided.

**COUNTY RESPONSE:**

**Cermak is now tracking all appointments recommended for transportation to CCDOC. Cermak is then adjusting the number of appointments unable to be taken by prioritizing to the number of available movement slots.**

---

**58. Dental Care**
   *a. Cermak-Timely, Adequate Care*

   *b. Cermak-Sufficiency of Staff and Hours*

**Compliance Status**: Partial compliance.

**Findings**

60

**Status Update:**  None submitted.

**Monitor's Findings:**

The dental program, which was virtually obliterated a few years ago, is in the process of being rebuilt. We were told that there are currently 4.0 dentist equivalents, along with three dental assistants. There are plans to add two more dentists and four dental assistants, which should result in a total dental staffing of six dentists and seven assistants. However, at the time of this visit, there were only four dentists and we were told that Division X in particular had had significant delays in dental services. We reviewed the records of 10 patients scheduled to see the dentist on 4/18/10 in Division X. On average, these patients had waited between two and three months and some, as long as five months since requesting services for pain. However, we were told that just recently the dental staffing in Division X had increased significantly. At this point, since dental staffing is in transition, going from a low of one dentist and two assistants in 2007, to the current situation of four dentists and three assistants, it is very difficult to determine whether the staffing, which has not yet been implemented, will in fact be adequate. We are also concerned that, given the shortage of dental resources, the currently broken sick call system exacerbates the dental problems. At Cermak, it is expected that the nurse sick call process will be the first line of response to patients with dental problems. The goal is for these nurses to provide temporary analgesia while the patient is waiting to be assessed. With that process remaining to be fixed, it is clear that the dental program is currently unable to provide timely service.

**Monitor's Recommendations:**

1.  Cermak must find a way to provide timely analgesia and screening assessment for patients requesting dental services.

2.  We recommend that the proposed dental staffing be implemented as soon as possible.

**COUNTY RESPONSE**:

**Cermak intends to ensure timely screening and analgesia through nursing triage of dental complaints.  Referral to a provider may be required.  In regards to implementation of the staffing plan, Cermak administrators are pleased to report that dental staff have now been hired and are working.**

61

sore on his leg. The nurse did not perform an assessment, rather simply noted that she gave the patient a band aid. Another staff member failed to assess a patient who complained of having a fractured hand that had not properly healed.

In Division IV, the Unit Manager's Daily Report contains data showing data regarding health care service utilization, including the number of health care requests collected and their disposition. Data from 6/1 to 6/6 showed that 136 health requests had been collected, but only 34 (25%) requests resulted in a face-to-face assessment. When we asked to see the pending health request forms, we were told there were none, which was surprising given these data. While it would be expected that some requests would not result in a face-to-face encounter (e.g. medication refills, non-urgent mental health, etc.), these data indicate that patients are not seen in a timely manner. For example, according to the report, on Wednesday 6/1/, 32 health requests were collected and nursing staff did not see any patients on this day. On Friday 6/3, 54 requests were collected and nurses saw only 10 patients.

In discussions with nursing staff, we learned that many health requests are forwarded directly to a provider. For example, a 45-year-old woman with a history of COPD, myocardial infarction, heart failure and stroke complained of having COPD and needed her inhaler. The nurse did not conduct a patient assessment but instead documented that the patient had a pending chronic disease appointment in 11 days. In another example, a 30-year-old HIV patient complained of peripheral neuropathy and the LPN did not assess the patient and a provider did not see the patient for 30 days. Nursing staff also reported that they forward health requests of patients with dental pain directly to dental staff without assessing patients and providing analgesia. This is not timely access to care and results in unnecessary pain and suffering.

In Division IX, an improvement made since the December site visit is the addition of a registered nurse responsible for the triage of HSRs as well as the face to face assessment. This nurse is a transfer resulting from closure of the Oak Forest Hospital and has extensive emergency room experience. Another improvement is that all health care staff assists with the assessment of these complaints, after completing other duties, and the result is that the response to HSRs is timelier than it was at the last site visit.

In April 2011, the registered nurse and CMT began conducting face-to-face assessments of inmates with health complaints in the housing unit. We observed the nurse performing face-to-face assessments on two of the housing units in Division IX. The nurse has a cart that has been supplied with blank HSRs, examination equipment and other medical supplies. She informed the officer whom she wanted to see and the officer escorted the inmate into the vestibule. The nurse interviewed the inmate, collected vital signs and assessed the inmate's complaint. She was observed to use a small interview room off the vestibule to examine three inmates. One had a dental complaint, another was having some numbness after an orthopedic

in which a nurse sees the patient on return from the offsite visit and facilitates continuity with the primary care clinician. Currently, almost all of these patients are seen by an emergency room doctor and many of those visits may be unnecessary. We discussed with the medical leadership a more effective strategy of utilizing a nurse in the emergency room to see these patients on return from the offsite and that nurse would review the clinical records and the patient would only be referred to the emergency room doctor if a new order was needed. Otherwise, the nurse could e-mail the primary care clinician or schedule an appointment with the primary care clinician. The medical leadership team indicated that under power notes a template could be created which would require the clinician to document a discussion of findings and plan. This may solve this problem quite effectively.

**Monitor's Recommendations:**

1. Reestablish an orthopedics clinic onsite so as to diminish the transport burden on CCDOC.

2. Develop a procedure utilizing a nurse in the emergency room to facilitate continuity with the primary care clinician.

3. Develop a strategy to insure that the primary care clinician, when seeing the patient in follow up, documents a discussion regarding the findings and plan.

## 58. Dental Care

a. Cermak shall ensure that inmates receive adequate dental care, and follow up, in accordance with generally accepted correctional standards of care. Such care should be provided in a timely manner, taking into consideration the acuity of the problem and the inmate's anticipated length of stay. Dental care shall not be limited to extractions.

b. Cermak shall ensure that adequate dentist staffing and hours shall be provided to avoid unreasonable delays in dental care.

**Compliance Status:** Partial compliance.

**Findings**

**Status Update:**

**Monitor's Findings:**

This element requires that inmates receive adequate dental care and follow up with generally accepted correctional standards of care. The dental care should not be limited to extractions. We had an opportunity to review every dental clinic in each Division and with the exception of Division I where there are clearly major environmental problems, most other clinic spaces were adequate. We learned that because of the breakdown in the collection, triaging and consistency of response to sick call requests, there is an impact felt on the dental program, in that patients whose complaint is dental pain may have their assessment by a nurse delayed for a period of days, thus patients are incurring avoidable suffering. We also attempted to look at timeliness of dental assessment from initiation of request until dental visit. We did our study in Divisions IV and IX. We got conflicting results from Division IV, whereas in Division IX, most patients were seen within two weeks of the request.

With regard to dental staffing, we are aware that there is one dental position yet to be filled, but an applicant has been selected and there should be a start date very soon. This dental presence should have an impact on the timeliness of services. In general, the dental programs seem professionally run, including the infection control aspects, and clearly provide an array of services beyond simple extractions.

**Monitor's Recommendations:**

1. Fill the remaining dental position.

2. The quality improvement program should perform more comprehensive studies within each Division of the timeframe between inmate initiating request and patient being seen for an initial assessment by the dentist.

## 68. Suicide Prevention Training

b. Within 24 months of the effective date of this Agreed Order, CCDOC shall train all CCDOC staff members who work with inmates on the Facility's suicide prevention program. Implementation of such training shall begin as soon as possible following the effective date of this Agreed Order. Staff shall demonstrate competency in the verbal and behavioral cues that indicate potential suicide, and how to respond appropriately. Initial and at least annual training shall be provided in accordance with generally accepted professional standards.

c. Within 12 months of the effective date of this Agreed Order, Cermak shall train all Cermak staff members who work with inmates on the Facility's suicide prevention program. Implementation of such training shall begin as soon as possible following the effective date of this Agreed Order. Staff shall

Following the triage of health requests, health care staff does not see patients in a timely manner. We reviewed Unit Manager Reports in Divisions IV and V that showed that the number of HSRs received each day exceeded the number processed and seen. In Division II, nursing staff reported collecting 400-560 HSRs per week, but seeing approximately 165 patients, with a high percentage being referred directly to a provider, often weeks in the future. While not all health service requests require a nursing evaluation, these data suggest that the demand for services exceeds what is provided. Inmate interviews with subsequent record reviews support that in some Divisions patients are not seen in a timely manner. The reasons for delays in access to care appear to be multifactorial, and include insufficient nurse staffing (Division II); inadequate tracking systems; limited nursing access to a medically equipped examination rooms during the workday (Divisions IV, V and X); and lack of adherence to the access to care policy. Lack of adequate patient tracking systems and nursing supervision at the Division level are also contributing factors.

Following triage of health requests, nurses sometimes do not see patients at all, instead making direct referrals to providers; however, the appointments are often scheduled to occur several weeks following the inmate's submission of the health request. In many cases, nurses piggy-back nursing sick call referrals onto previously scheduled provider appointments (e.g. chronic disease management), but there is currently no mechanism to notify the provider of the referral and the provider may or may not address the patients' sick call concern. In Division IV, we found 51 dental requests had accumulated in the dental referral box from Monday 11/10 to Thursday 11/14 without the patients being seen by a nurse or dental staff. These findings were consistent with inmate feedback that it often took weeks to be seen for health service requests.

When nurses do see patients, the quality of nursing assessments is highly variable and in many cases inadequate. This finding is likely related to the lack of training and nursing assessment and treatment protocols.

In September 2011, health care leadership implemented a new process for management of HSRs, initially rolling it out in four Divisions (I, V, VI and XI) and the remaining Divisions in November. At the time of our site visit, some staff was just becoming familiar with the new system. Significant changes from previous practice involved the more systematic use of the electronic medical record (EMR) to track, schedule and document patient evaluations. Limited data from the four Divisions showed that from early October to early November, the average time from the date the form was submitted until staff triaged it decreased from 65 hours to 31 hours, a significant improvement.

On 11/15/11, thirty-seven (37) forms had been collected and all had been date-stamped as received. The Monitor was informed that these forms would be triaged later that day. A further review of pending sick call request forms indicated 19 had been collected between 10/28 and 11/13; all had been date-stamped as received the same day or no later than the next. The "triage nurse" informed the monitor she had only been assigned for one week to review forms and evaluate inmates and, as a result, had a backlog. She further stated she is often "pulled" to perform other duties and when that occurs, the sick call request forms "sit" and are not processed. The monitor attempted to track a random selection of 10 of the 37 forms from 11/15 and 10 of the 19 forms from between 10/28 and 11/13 and was unable to track them from collection to triage to scheduling to evaluation. At this time Division II, dorm 2 is noncompliant with Provisions 54 a. and 54 b. due to lack of timely HSR triage with resulting delays in access to care and lack of adequate patient tracking systems. This finding appears to be in part related to lack of adequate staffing which delays the processing of health service requests.

At the time of our review Division III, Dorm 3 was only being utilized for intake overflow. Newly arriving inmates are housed in the area each evening and the next morning moved to permanent housing. As a result, no sick call was taking place in dorm 3. An EMT was available for emergencies and a very few medication administrations.

In Division IV, in a random inspection of tiers, we found that officers had blank health request forms available to distribute to inmates and sick call boxes contained completed tracking logs. A review of the Unit Managers Daily Report for the week of November 13 showed that from Sunday to Wednesday, there were 20, 31, 43 and 30 health services requests collected respectively, but the number of nurse face-to-face encounters was 12, 11, 20 and 25 respectively. Although not all requests require a nursing encounter, these data suggest that the number of encounters does not meet the demand for services. We also found that 51 dental requests had accumulated in the dental referral box from Monday 11/10 to Thursday 11/14 without the patient being seen by a nurse or dental staff. Several of the requests were from patients complaining of moderate-severe dental pain and/or infection. During interviews inmates reported that nurses do not pick up the forms daily and that they are typically seen two to three weeks after submission of their complaints, if at all. When seen, they report the nurses are professional in their approach. However, several inmates complained that a male physician does not listen to them, is dismissive of their concerns and does not reschedule them to discuss lab or diagnostic test results.

We interviewed a registered nurse who had just been assigned to conduct sick call the week of the site visit. We noted that for some requests she scheduled patients to coincide with a previously scheduled provider appointment two to four weeks in the

Division I is a maximum-security Division with a capacity of 1,245 inmates and a current population of 1,247.[5] The Division has health care staff present from 0700 to 1600. After 1600 when health care staff is no longer in the clinic, inmates obtain access to care by contacting a correctional officer who then notifies the Cermak emergency department for clinical guidance.

Access to care is problematic in Division I. Access to care data for March 2013 showed that the average length of time for a patient to be seen following receipt of an HSR was 7.6 days. The Nurse Coordinator personally conducted nurse sick call and determined that she could easily see 20 patients per day. She also noted that nursing staff on the unit was not as productive. She established a requirement that nurses see 20 patients a day and plans to reassess this in the near future. The Nurse Coordinator is able to view nurse sick call backlogs in the scheduling queue to monitor progress. She also stated that if a patient has submitted multiple HSRs with the same or various complaints, the nurse closes out only the most recent entry in the EHR, and that other HSR entries are not closed out.[6]

Review of April and March 2013 HSR tracking logs showed that, with rare exception, staff checked the sick call boxes daily to collect HSRs. We also noted, however, that there were stretches of days in which no HSRs were collected from the box. For example, on one tier there were no HSRs collected for 12 days, from March 18 to March 29, 2013. On another tier there were no HSRs collected from March 3 to March 14, 2013. In our experience, it is unusual to see such lengths of time without any submitted HSRs and raises questions about the availability of HSR forms on the tiers, and or timely collection.

We randomly inspected seven of 32 tiers and found that all tiers had lockable sick call boxes that were properly labeled for health care request forms. One tier had no HSRs available on the unit at the time of our tour. The remaining tiers had numbers ranging from 1 to >15 forms. We interviewed correctional officers about the process to obtain HSRs and the officers we spoke to indicated that it is health care staff's responsibility to make the forms available, and not an officer responsibility. One officer stated that each day health care staff brings forms but that inmates take them and hoard them in their cells to ensure that they have one when they need it. The hoarding of HSRs suggests that inmates do not feel confident that they can obtain an HSR form when they need them. We interviewed inmates in the tiers whose primary concern was that once they submitted an HSR, it took weeks to be seen. Many inmates also complained about lack of timely access to dental services. This is consistent with health care access data that we reviewed for Division I. At the time of the tour, the Nurse Coordinator reported that 203 patients that submitted HSRs were pending to be seen.

---

[5] See Cook County Jail Daily Count Sheet, 4/29/13.

[6] The failure to address or close out other HSRs that have been entered into the EHR adversely affects health care leadership's ability to collect and accurately evaluate access to care data.

Division II consists of dorms 1, 2, 3, 4 and the annex. The medical services for dorms 1, 3, 4 and the annex are provided on the first floor of dorm 1. Additionally, dorm 1 serves Division III, dorm 3. Dorm 1 health care staff collect HSRs for dorms 1, 3, 4, the annex and Division III, dorm 3. Interviews with staff indicated it requires approximately two hours daily to collect HSRs from the multiple locked drop-boxes located in these areas. Dorm 1 is now staffed on 7 a.m. to 3 p.m. and 3 p.m. to 11 p.m. shifts.

Medical services for dorm 2 are provided on the first floor. Division II dorm 2 medical staff collects the HSRs for dorm 2 only.

Since the November 2012 Monitor visit, an additional Nurse Coordinator was assigned part-time to assist the full-time Nurse Coordinator for Division II. The two Nurse Coordinators implemented the following changes to improve the overall operation of the Division.

- Both participate in a morning "huddle" consisting of the Division Superintendents, nursing administration, a rotating nursing manager, physicians, mental health, Cermak Director, pharmacy and Information Technology (IT).
- On April 1, 2013, nursing staff has begun using the electronic health record to schedule nurse sick call appointments.
- Nurse Coordinators have personally conducted nurse sick call.
- Nurse Coordinators have established an expectation that nurses assigned to sick call will evaluate 20 inmates per day.
- Nurse Coordinators monitor daily the number of inmates evaluated in nurse sick call.

Access to care data in Division II for March 2013 showed that the average length of time for a patient to be seen following receipt of an HSR was 6.0 days.

Dorm 1

Dorm 1 health care staff reported they collect a total of approximately 100 requests per day, which has increased approximately 20 per day from the November 2012 visit. This totals approximately 700 HSRs per week. Based upon this volume, even if 25% of the inmates did not require a nursing evaluation, nurses would still need to evaluate 575 inmates per week to not develop a backlog. Put another way, nurses would have to evaluate 75 inmates per day, seven days a week to remain current. Based upon an expectation of each nurse seeing 20 patients, this would require almost four registered nurses to perform sick call each day. On the day of the inspection, the Monitor was informed the backlog was 168.

The Monitor planned to interview nurses regarding the sick call process; however, two nurses called in sick. A nurse originally assigned to conduct sick call was reassigned to administer medication, which resulted in only one nurse to conduct sick call. As a result, when

the Monitor arrived at Dorm 1 at approximately 8:45 a.m., HSRs had not been collected from the other four buildings and sick call had not started. The charge nurse had reassigned staff to begin collecting HSRs but a second nurse had not yet been reassigned to conduct sick call.

Twenty-nine (29) detainees were scheduled for sick call. Both Nurse Coordinators assisted in reassigning a second nurse to conduct sick call in dorm 1.

A random review of five health service requests from April 29, 2013 showed that each had been date-stamped as received. The complaint and disposition of each was as follows:

- A patient with a mental health request that the nurse referred to mental health who evaluated the patient the same day.
- A patient with a genital rash that the nurse requested a provider appointment for 4/30 and the patient was scheduled for 5/2.
- A patient with Athlete's feet that the nurse requested a provider appointment for 4/30 and the patient was scheduled for 5/2.
- A patient with a dental complaint that the nurse referred to dental and the appointment was scheduled for 6/19/13.
- A patient with left arm numbness that the nurse piggybacked onto a provider appointment for 5/28/13. We referred this inmate to the Nurse Coordinator.

Thus in each case, the nurse did not schedule the patient for nurse sick call, but either referred the patient to mental health, dental or a medical provider.

Dorm 2

In dorm 2, the Monitor checked the Health Service Request box located on each of the three floors. None of the boxes contained any HSRs, but all had appropriately completed log sheets. The Nurse Coordinator reported approximately 50 HSRs per day are collected in dorm 2, and there was a backlog of 26 requests.

The Monitor met with the nurse assigned full-time to conducting nurse sick call. The nurse was new to CCJ and had only been on the job two weeks. As a result of the nurse being new, she was in the process of developing her own system to conduct and complete sick call per protocol. The nurse was computer literate and had no difficulty navigating the EHR.

A random review of six HSRs from March and April showed that all had been date-stamped as received. The complaint and disposition of each was as follows:

- A patient with complaint of a toothache of two weeks duration. On 4/15/13, the nurse evaluated the patient and requested a dental appointment for 5/2/13; however, the patient was scheduled for an appointment on 6/6/13.

are obtained and documented on a flow sheet in Cerner including a CBC, Rh factor, sickle cell trait, VDRL/RPR, hepatitis B antigen, and Chlamydia, gonorrhea and HIV antibody testing. Ultrasound testing is ordered and performed as clinically indicated. In all records we reviewed, patients were prescribed a prenatal vitamin, iron and calcium supplements. Prenatal care interval monitoring was in accordance with the treatment plan or with ACOG recommendations. Women are treated for sexually transmitted infections and enrolled and/or continued in methadone maintenance programs as clinically indicated.

We found minor delays in the performance of clinic visits but overall there were no significant issues. Due to continued physician shortages, Dr. Richardson has been assigned other clinical responsibilities that have impacted the frequency of quality improvement reviews.

**Monitor's Recommendations:**

1. Continue to perform ongoing continuous quality improvement reviews for pregnant women.

## 58. Dental Care

a. Cermak shall ensure that inmates receive adequate dental care, and follow up, in accordance with generally accepted correctional standards of care. Such care should be provided in a timely manner, taking into consideration the acuity of the problem and the inmate's anticipated length of stay. Dental care shall not be limited to extractions.

b. Cermak shall ensure that adequate dentist staffing and hours shall be provided to avoid unreasonable delays in dental care.

**Compliance Status:** Partial compliance.

**Findings**

**Status Update:** Received and reviewed.

**Monitor's Findings:**

The good news is that dental staffing for the existing housing areas is finally complete. There is onsite a Dental Director plus six dentists and two hygienists as well as seven dental assistants. There is a proposal for an additional dentist and two dental assistants for the December budget to provide services in the new RTU. I was able to meet with several of the

dentists who indicated that the use of the metric of ratios of restorations to extractions for all Divisions does not take into account the fact that length of stay in some Divisions is significantly longer than others and in those with shorter stays, for many patients, it may be difficult if not impossible to implement a treatment plan that includes restorations. I am sensitive to this concern and therefore will ask that with the continued monitoring of these ratios of restorations to extractions, I be provided with, by Division, the average length of stay. This will influence the assessment of the performance of each Division.

We again, with the dental leadership, went through several dental requests and identified many opportunities for improvement. The first one is that although some Divisions time and date stamp the receipt of the requests, other Divisions do not. This should be a universal process. Secondly, we found the language of urgent appointments not consistent with the way it is being used. In fact, we came across a case in which a patient deemed urgent was scheduled for two weeks later. This is particularly problematic, in that under the current arrangement, patients with dental pain are ordinarily supposed to see a nurse within one day of receipt by nursing of the request. However, the nurses are still not able to provide temporary analgesic relief for these patients who are describing pain. This is completely unacceptable. We had a meeting with all of the stakeholders, including the pharmacy director, and clearly indicated that this problem of timely access to analgesia for patients waiting to be seen for dental or any other pains must be resolved prior to our next visit. We were informed of a strategy of providing the newly packaged meds through the in-house pharmacy or by contracting with an outside vendor. The mechanism is unimportant to us; this problem must be resolved. We also believe that the current language used for urgency of scheduling is inconsistent with normal language use. "Urgent" might be within a few days but certainly not within a week or two. We discussed the possibility of instead of titles such as "urgent," using "within one week" or "two weeks" or "four weeks," as the language to be used by the schedulers and the dental service.

We have to comment on one case in which a patient submitted his request and it was received on 4/20/13. This patient described his face being swollen and his tooth decayed to the root. The patient's request slip apparently went directly to dental without a nurse face-to-face visit and with this description on the slip, the patient was scheduled for 5/9, almost three weeks later. This also is unacceptable. There is a substantial journey that the dental program and nursing have to take before these problems are resolved.

**Monitor's Recommendations:**

1. Continue to monitor the ratio of restorations to extractions but indicate by Division the average length of stay.

2. Resolve the language use associated with the scheduling urgency in a manner that is not inconsistent with normal language usage.

3. The dental QI program should begin monitoring a sample of health service requests from each Division from beginning to end, looking at requests that were received approximately 30 days prior to the review.

4. The nursing staff approach to analgesia relief must insure that during the face-to-face, the patient receives treatment sufficient to provide relief for several days. If resolution of this problem is delayed beyond our next visit, noncompliance will be assessed for this area.

## 68. Suicide Prevention Training

**Compliance Status:** Substantial compliance.

**Findings**

  **Status Update:** Received and reviewed.

  **Monitor's Findings:**

  Greater than 90% of nurses and officers have received the required training. This is the first report in which the nursing staff portion of this requirement has been achieved. Therefore, it moves to substantial compliance since all other staff are also in compliance

  **Monitor's Recommendations:**

1. The nursing training coordinator should report on a quarterly basis to the QI committee the rates of required training that have been met.

## H.    QUALITY MANAGEMENT AND PERFORMANCE MEASUREMENT

## 86. Quality Management and Performance Measurement

  a.    Defendants shall each develop and implement written quality management policies and procedures, in accordance with generally accepted correctional standards, to regularly assess, identify, and take all reasonable measures to assure compliance with each of the provisions of this Agreed Order applicable to that Defendant.

  b.    Defendants shall each develop and implement policies to address and correct deficiencies that are uncovered during the course of quality management

**Exhibit 13**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 C 2946 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| COOK COUNTY, ILLINOIS; | ) | |
| THOMAS DART, COOK COUNTY | ) | |
| SHERIFF; TONI PRECKWINKLE, | ) | |
| COOK COUNTY BOARD | ) | |
| PRESIDENT; COOK COUNTY | ) | |
| BOARD OF COMMISSIONERS, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO MONITORS' REPORTS

NOW COME the Defendants, TONI PRECKWINKLE, PRESIDENT OF THE COOK COUNTY BOARD OF COMMISSIONERS in her official capacity, and the COOK COUNTY BOARD OF COMMISSIONERS in their official capacities, by their attorney ANITA ALVAREZ, State's Attorney of Cook County, through Deputy State's Attorney Patrick T. Driscoll, Jr., and Assistant State's Attorney Donald J. Pechous, and respond to the Monitors' Reports.

## INTRODUCTION

Toni Preckwinkle, President of the Cook County Board of Commissioners and the Cook County Board of Commissioners ("the County"), continue to demonstrate their dedication to constitutionally sound conditions of pre-trial confinement at the

Cook County Department of Corrections ("CCDOC"). The County has constantly maintained and improved conditions of confinement at the CCDOC complex. Those efforts have been documented by the Monitors through their reports to the Court and are encouraging. The reports reveal that the County is either in substantial compliance, or in partial compliance and moving toward substantial compliance, in all regards.

### Facilities and Sanitation

The County is pleased to report that it has achieved, and importantly, is maintaining substantial compliance in all aspects of two major substantive portions of the Agreed Order according to the most recent report of Mr. Grenawitzke. The sprawling CCDOC complex presents an immense challenge in regards to maintenance issues. That challenge continues to be met. As Mr. Grenawitzke notes in his report detailing his observations during his site visit February 11-15, 2013, "[W]hen one considers the sheer number of provisions in the entire agreement and the complexity of solutions necessary to meet them, the progress to date is outstanding."

In July of 2012, the County achieved substantial compliance with a major substantive portion of the Agreed Order, i.e. § III.F: Fire and Life Safety. Moreover, in the Monitor's latest report of February 2013, the County achieved substantial compliance with a second major substantive portion of the Agreed Order, i.e., § III.G: Sanitation and Environmental Conditions.

2

The County anticipates that it will move to conclude those provisions after 18 months of substantial compliance as contemplated by the Agreed Order. *See Agreed Order, § VII.C.*

## Jail Population

The County recognizes a need to remain vigilant in regards to high detainee population levels at the Jail. While detainees have been provided with permanent beds either in a cell or in a dormitory setting for a number of years and have not been required to sleep on a mattress on the floor, high jail population levels negatively impact jail conditions.

President Preckwinkle submits that systemic problems in the circuit court lead to delays and lengthy and costly detention at the CCDOC. In response to these problems, President Preckwinkle has asked the Illinois Supreme Court to assign a judge who is not from Cook County to clear the backlog of criminal cases.

Moreover, to help craft long-term solutions, President Preckwinkle has also asked the Supreme Court to establish a reform commission, headed by one of the justices. President Preckwinkle would like to see that panel authorize and oversee an external audit of Cook County courts. President Preckwinkle envisions that the panel would seek data on pretrial services, how cases move through the system, and how probation is used.

3

The County, through its Justice Advisory Council ("JAC"), continues to proactively seek solutions to a persistently near-capacity Jail population. The JAC has been awarded a $450,000 grant from the MacArthur Foundation to improve the flow of verified information about defendants to judges sitting in bond court or hearing motions to reduce bond. The grant funds a team of county and contractual employees to interview defendants, family, friends, relatives and community members. The team will verify information about community ties and seek to improve the quality of representation regarding bonds. The grant includes an evaluation to be conducted by the Center for Public Safety and Justice, Institute of Government and Public Affairs, at the University of Illinois at Chicago. Dr. Laura Kunard will assess the effectiveness of the increased flow of information as a means of reducing the jail population.

The JAC has contracted with Professor Donald Steman, a nationally recognized expert of on prosecution and court processing to analyze data provided to the JAC by the Illinois Sentencing Policy Advisory Commission. His initial report indicates that the number of cases resolved within sixty days and six months has steadily and significantly declined. Thus, lower level felony cases that are proceeding more and more slowly, are contributing to lengthening jail stays and hence to overcrowding. Professor Stemen will produce quarterly reports.

On a recent visit to bond court in the Maywood Branch of the Circuit Court, JAC staff observed an especially well managed court call. The judge presiding

4

made frequent and specific references to risk assessments provided to her by the Pre Trial Services staff. When she relied on the risk assessment score in her ruling, she read the score into the record. A high percentage of defendants were released on I bonds or electronic monitoring. The visit underlined the fact that reliance on pretrial detention could be reduced within the existing structure if the judiciary is encouraged to follow the relevant Illinois statutes.

The JAC has observed that spikes in the jail population regularly occur during extended holiday weekends. Consequently, the JAC has written to Chief Judge Evans and suggested that additional court calls should be scheduled at the Leighton Courthouse before holidays. The JAC has not received a response to its suggestion. Unfortunately, the number of court calls has declined further.

## Physical and Mental Health Services

In response to concerns voiced by Drs. Shansky and Metzner last year regarding staffing levels at Cermak Health Services, an extensive revamping of the hiring process was undertaken. The hiring process was streamlined as much as possible. Certain delays are inevitable and unavoidable due to restraints imposed by collective bargaining agreements and compliance with the Shakman Consent Decree.

Nonetheless, since November of 2012, dramatic and undeniable progress has been made in filling open, budgeted positions at Cermak. Since November 1, 2012, one hundred twenty-nine (129) positions have been filled. Presently, there are only

5

twenty (20) open positions at Cermak. Ten (10) of those positions are in various stages of process and will be filled in the next ninety (90) days. Consequently, Cermak is comfortably below Dr. Shansky's benchmark goal of a 5% vacancy rate.

Recent, significant hiring includes a new Assistant Pharmacy Director who is scheduled to start on September 23, 2013. Moreover, a Chief Psychiatrist, Dr. David Kelner, was hired and has been performing his duties for the last several months.

The Court has toured the new 950 bed Residential Treatment Unit building. That building is currently occupied only with General Population detainees. While the building is presently capable of housing detainees, all of the medical equipment is not yet installed. This has caused some short-term problems, particularly when a "new" detainee who needs x-rays must be moved from the new intake area to the old intake area where the equipment is currently housed. Those problems are indeed short-term though as the new x-ray equipment is currently being installed.

Cermak staff anticipate that the new building will be able to accept medical and mental, intermediate level, detainees by mid-November of 2013. While some growing pains are anticipated in connection with the new building, its opening will significantly improve the delivery of health services to the jail population. Current struggles with overcrowding in the medical and mental health infirmaries should be eliminated. Additionally, housing for disabled detainees with mobility issues will be greatly improved.

6

Preparation for opening the new building includes plans to increase staffing levels at Cermak Health Services. Currently there are 541 budgeted positions at Cermak. Plans are in place to increase that number by approximately 15% to 618, an addition of 77 positions. Significantly, included in those 77 positions are 6 new psychiatrists and 3 new psychologists. Accordingly, a marked upgrade to the delivery of mental health service is anticipated. Nursing care is also expected to benefit greatly. A nurse supervisor, 24 RNs and sixteen 16 LPNs will be added. Also included in the 77 new positions are 1 physician and 4 physician assistants.

While the opening of the new building is an inordinate task, Cermak staff remain undaunted. Any disagreements that have arisen in the past in connection with taking the new building on-line have been resolved. Cermak staff meet and confer regularly with CCDOC staff and report excellent communication and cooperation with the Sheriff's Office.

Finally, the parties actively continue to search for a new Medical Monitor. The parties expect, without undue delay, to jointly agree on a candidate for the position and, as soon as possible, present that individual to the Court to approve the appointment.

## CONCLUSION

The Defendants, Toni Preckwinkle, President of The Cook County Board of Commissioners in her official capacity, and the Cook County Board of Commissioners in their official capacities, continue their dedication to achieving

7

substantial compliance with all aspects of the Agreed Order. The Defendants have consistently improved the delivery of health services, the facilities and the conditions of confinement for all detainees at the CCDOC.

The County is very pleased that it is in substantial compliance with the Agreed Order regarding the Jail facilities. The County remains committed, and is eager, to achieve substantial compliance with Order as it pertains to the delivery of health care.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:/S/*Donald J. Pechous*
Donald J. Pechous
Deputy Chief
Civil Actions Bureau
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-3378
#6201774

8

**Exhibit %(**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10 CV 2946 |
| | ) | |
| COOK COUNTY, ILLINOIS; | ) | Virginia M. Kendall, Judge |
| THOMAS DART, COOK COUNTY | ) | |
| SHERIFF; TONI PRECKWINKLE, | ) | |
| COOK COUNTY BOARD | ) | |
| PRESIDENT, COOK COUNTY | ) | |
| BOARD OF COMMISSIONERS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

## COOK COUNTY SHERIFF THOMAS DART'S
## POSITION PAPER REGARDING MONITORS' REPORTS

NOW COMES Defendant, THOMAS DART, in his official capacity as Cook County Sheriff, by and though his attorneys, Peterson, Johnson & Murray Chicago LLC, appointed as Special Assistant State's Attorneys, and for his Response to the Monitors' Report, states as follows:

### Introduction

Since the parties have entered into the Agreed Order, the defendants have made great strides to comply with the terms of the same. Taking into account the 138 provisions that are applicable to the Sheriff's Office, 96 of those provisions are in substantial compliance and 42 of the provisions are in partial compliance. Notably, there are no provisions of the agreed order that are deemed non-compliance. (Ex. 1, Compliance Statistics). However, there are some issues

1

with the provisions that in partial compliance that are out of the control and purview of the Sheriff, which are addressed below.

**I.    Report of Susan W. McCampbell.**

There are a total of 77 provisions addressed in Monitor Mc Campbell's report, 60 of which are in substantial compliance and 17 that are in partial compliance. 21 of the 60 provisions that have been in substantial compliance have been in that category for at least 18 months. The most notably aspect of Monitor Mc Campbell's report is that four sub-parts of Provision 38 (Inmate Grievance Process) has been placed back into the partial compliance category.   The Sheriff has overhauled the grievance process and the monitor has acknowledge that the work that has been done to "the grievance process will result in an effective outcomes." (Doc. No. 161, p. 44). Although the initial implementation of the new grievance procedure was not as smooth as the Sheriff's Office had hoped; however, the Sheriff has made significant strides in improving the grievance procedure. The Sheriff understands the commitment that is needed to change the grievance procedure and his staff will continue to refine the new process as needed to comply with the terms of the Agreed Order.

**II.    Report of Harry E. Grenawitzke.**

There are a total of 39 provisions addressed in Monitor Grenawitzke's report, all of which are in substantial compliance except for 6 provisions.   The Sheriff understands the challenges facing the CCDOC and is implementing polices to correct the deficiencies.   We are proud to report that the Jail has become a much cleaner and sanitary facility in the last 3 years. In fact, there is only one "sanitation" provision that is in partial compliance, and the Sheriff and Cermak are working diligently to address it.   One ongoing difficulty though is   changing the detainees' perception of the laundry system.   Detainees are reluctant to launder there personal

2

garments using the CCDOC laundry system and still choose to wash the same in their cells. In response the Sheriff has removed laundry detergent from commissary and continues to inform detainees about the risks associated with washing clothes in their cells. Monitor Grenawitzke has been helpful in providing direction in the partially compliant areas and the Sheriff is confident that compliance is attainable in the very near future.

###    III.    Report of Jeffrey L. Metzner.

There are a total of 13 provisions addressed in Monitor Dr. Metzner's report, five of which are in substantial compliance and 8 provisions remain in partial compliance. Dr. Metzner identified three primary areas that are impeding the ability of the Defendants to be substantially compliant, including 1) staffing vacancies and allocation issues, 2) physical plant limitations, and 3) institutional cultural issues. (Doc. No. 177, p. 18 of 21). He also identified other problems such as the vacancy of the chief psychiatrist, decreased numbers of mental health staff, and planning issues at the new RTU and RCDC. *Id*. at 17.

 Dr. Metzner also reported that some detainees complained about not receiving personal hygiene items in a timely manner and being treated rudely by staff. Regarding the former claim, the Sheriff has made significant improvements in ensuring the chain of distribution for personal hygiene supplies is more efficient and monitored. This will continue to be a priority of the Sheriff's Office. Regarding the claim about rude staff, the Sheriff demands that the staff, as a whole, treat detainees, whether they have mental health issues or not, respectfully and professionally. Although there were cites in the report to a few unspecified incidents where this did occur, the Sheriff believes strongly that these were exceptions to the rule and do not reflect the conduct and attitudes of a large majority of staff. . In fact, to ensure proper treatment of inmates with mental health problems, the Sheriff requires that every new officer receives **80**

3

**hours** of advanced mental health training before graduating from the Training Academy. In addition, the Sheriff has required the last few recruit classes to receive crisis intervention training (CIT), which helps officers react to and appropriately handle volatile situations involving inmates experiencing mental health problems. There is also a plan to offer these trainings for more senior officers who have not yet received advanced mental health and/or or CIT training.

Finally, the Sheriff would like to emphasize his commitment to improving the acute mental health tiers on the 2nd Floor of Cermak Health Services. This floor houses the most acutely mentally ill inmates/patients on the entire compound. It is an incredibly difficult environment to provide intensive mental health treatment and programming while still balancing the legitimate security concerns these inmates pose to staff and other inmates. Dr. Metzner has recently provided some valuable direction on how to improve these units, even making a special 2 day visit to observe the units over multiple shifts. The Sheriff has also enlisted the help of the former director of the Mental Health Unit at Cermak, Dr. Carl Alaimo, to assist Cermak and his staff to address the problems facing the 2nd floor. In addition to Dr. Alaimo's contributions, the CCDOC is confident that Cermak's ability to hire more mental staff, particularly psychologists and mental health specialists, and the CCDOC's improved practices and policies for the will bring noticeable improvement by the time Dr. Metzner visits in November.

### IV. Report of Dr. Ronald Shansky.

Although Dr. Shansky has resigned and the parties are in the process of moving forward with the selection of a new medical monitor, there were several aspects of the last report that the Sheriff must address. Currently there are 11 provisions in the substantial compliance category and 11 provisions in the partial compliance category. Many of the provisions apply to more than

4

one defendant; however, a distinction should be drawn between the parties and their respective levels of compliance.

Dr. Shansky has determined that provision 43 (Medical Facilities) is in partial compliance. Subpart A of that provision states,

a.    CCDOC will work with Cermak to provide sufficient clinical space, as identified by Cermak staff, to provide inmates with adequate health care to meet the treatment needs of detainees, including:

It is the Sheriff's position that he has fulfilled its obligations under this provision and his efforts should be deemed in substantial compliance. The report does not identify any such deficiency on the part of the Sheriff in this regard. Furthermore, subpart f of the same provision provides,

f.    CCDOC shall allow operationally for inmates' reasonable privacy in medical and mental health care, and shall respect the confidentiality of inmates' medical status, subject to legitimate security concerns and emergency situations. Reasonable privacy typically includes sight and hearing privacy from other inmates and hearing privacy from staff that are not providing health care.

The report is devoid of any reference to a deficiency on the part of the Sheriff's Office or its correctional staff, yet this portion of the provision is placed in the partial compliance category. It is the Sheriff's position that policies and practices have accomplished substantial compliance with this provision and yet there is no basis for the characterization. Dr. Shansky has explicitly stated the male intake "provides sufficient space and privacy." The female intake was also redesigned to create additional privacy. These actions are evidence of substantial compliance. More direction is needed then about what exactly the Sheriff's obligations are relative to this provision if it is to be deemed only partial compliance.

In addition, the report acknowledges that the Sheriff's Office has met its obligations under provision 44 (Staffing, Training, Supervision, and Leadership). This provision is only in

5

partial compliance; however, Dr. Shansky found that the "officers continue to receive the required training at a rate of greater than 90%. In addition, the snapshot we took of the training received by officers working on the mental health unit demonstrated that all of them had received the required advanced training." The Sheriff has been in substantial compliance for over two years and thus, should be separated from Cermak Health Services pursuant to Section VII(c) of the Agreed Order.

Similarly, the Sheriff should also be separated from Cermak Health Services with respect to Provision 53 (Treatment and Management of Communicable Disease). The only recommendation is that the CCDOC should continue its practice of issuing soap. There is no deficiency of the Sheriff's Office highlighted and the monitor's only recommendation is that the CCDOC should continue what it is already doing. This is consistent with a finding of substantial compliance on the part of the Sheriff. Next, Provision 54 has been deemed to be in partial compliance; however, the recommendations to the Sheriff are processes that have already been implemented. For example, the monitor notes that "CCDOC and Cermak should orient inmates regarding the access to care policy and procedure upon arrival." This recommendation ignores that this process is already performed through the inmate handbook and the orientation video, which is played on the living units every day. Indeed, Cermak assisted in the development of the section of the handbook that deals with this.

Moreover, Provision 55 (Follow-up Care) recommends that "[w]ith regard to CCDOC's responsibility for medication administration, recommendations are:

a. Issue a post order for correctional officers to coincide with the Interagency Directive.
b. Provide audit evidence that correctional officers have been trained to support and execute their responsibilities as listed in the Interagency Directive and post order."

This recommendation ignores the fact that the Sheriff has prepared a mouth check video for its officers, which is shown during roll call. Moreover, there is an interagency directive on

6

point, which is the equivalent of a post order or general order. This recommendation seeks nothing more than a redundant policy that is of no meaningful consequence. As such, the current training practices satisfy what is being asked of the CCDOC.

In conclusion, the Sheriff remains committed to becoming substantially compliant with the terms of the Agreed Order. Although there were some setbacks in certain areas of the Agreed Order, overall, the Sheriff has continued to make progress towards substantial compliance with all of the terms of the Agreed Order.

Thomas Dart, Cook County Sheriff

By: s/Paul O'Grady
One of its Attorneys

Paul O'Grady
Dominick L. Lanzito
Peterson, Johnson, & Murray – Chicago LLC
233 South Wacker Drive, Suite 8400
Chicago, Illinois 60606
(312)782-7150
pogrady@pjmlaw.com

7

**Exhibit 1)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil No. 10-C0-2946 |
| COOK COUNTY, ILLINOIS; | ) | |
| THOMAS DART, COOK COUNTY | ) | |
| SHERIFF (in his official capacity); | ) | Judge Virginia M. Kendall |
| TODD H. STROGER, COOK COUNTY | ) | |
| BOARD PRESIDENT (in his official | ) | |
| capacity); | ) | |
| COOK COUNTY BOARD OF | ) | |
| COMMISSIONERS (in their official | ) | |
| capacity); | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## UNITED STATES' POSITION PAPER REGARDING MONITORING REPORTS AND STATUS OF COMPLIANCE

The Cook County Sheriff, through the Cook County Department of Corrections ("CCDOC"), and Cook County, through Cermak Health Services ("Cermak") and the Department of Facilities Management ("DFM"), have made significant progress toward achieving substantial compliance with the Agreed Order the Court entered on May 26, 2010 to resolve this matter. ECF No. 13. The latest round of reports from the Court-appointed monitors found the Sheriff and the County in substantial compliance with the majority of the Agreed Order's provisions, and in partial compliance with the remaining provisions. *See* April 2013 Corrections Monitoring Report of Susan McCampbell, ECF No. 161("McCampbell Rpt."); May 2013 Environmental and Life Safety Monitoring Report of Harry Grenawitzke, ECF No. 164 ("Grenawitzke Rpt."); June 2013 Correctional Mental Health Report of Dr. Jeffrey Metzner,

ECF No. 177 ("Metzner Rpt."); and July 2013 Correctional Medical Report Dr. Ronald Shansky,

filing pending ("Shansky Rpt."). The monitors did not designate any provisions as "non-

compliant." Despite this progress, the United States has continued concern about the issues

noted below, which must be resolved before Defendants can achieve substantial and sustained

compliance with all the provisions the Agreed Order to ensure constitutional conditions at the

Cook County Jail ("Jail"). These ongoing issues are barriers to the ultimate dismissal of this

case. Below the United States discusses the areas of overcrowding, communication and

cooperation between the Defendants, transition to the new facility, and medical and mental

health staffing, and provides a status update on the parties' efforts to identify a new medical

monitor.

## I.      Overcrowding

As a three-judge panel in this matter has already held, "overcrowding is a primary cause

of unconstitutional conditions at the jail." *United States v. Cook County*, 761 F. Supp.2d 794,

797 (N.D. Ill. 2011). Each of the monitors confirmed that the increased Jail population is

jeopardizing compliance with the Agreed Order:

- "[C]rowding in the facilities jeopardized long-term sustainability of the changes

  made. This is particularly critical, as the County's criminal justice system seems

  unwilling to accept their responsibilities to address crowding." McCampbell Rpt.

  at i.

- "It is very difficult to *overstate* how this upward population spiral jeopardizes the

  accomplishments of CCDOC to reach compliance with the consent agreement,

  threatens Constitutional conditions of confinement, strains resources, costs real

dollars, and potentially derails many of the initiatives to adopt currently accepted correctional practice in the organization." McCampbell Rpt. at iv.

- "[O]vercrowding on the third floor of the Cermak inpatient unit continues to result in patients with high medical acuity being assigned to plastic boats on the floor." Shansky Rpt. at 5.

- "Patient privacy . . . continues to be compromised due to significant overcrowding." Shansky Rpt. at 14.

- "CCDOC and Cermak should collaborate to effectively address overcrowding in the Cermak infirmary as soon as possible." Shansky Rpt. at 15.

- "The treatment program in Division II has become much more problematic as compared to the previous site assessment related, in large part, to decrease mental health staffing and the significantly increased numbers of ICU inmates." Metzner Rpt. at 10.

- "[T]he ever increasing detainee population in the facility will make it difficult to effectively maintain many of the provisions in the consent agreement." Grenawitzke Rpt. at 4.

The Agreed Order entered by this Court resolves the United States' claims of unconstitutional conditions of confinement by laying out comprehensive reforms necessary to remedy the constitutional deficiencies at the Cook County Jail. ECF No. 13. While the Sheriff and Cook County have been making steady progress toward substantial compliance with the Agreed Order, overcrowding at the facility is a serious threat to compliance.

In order to address the jail population in an effective and long-lasting manner, the Sheriff, the Cook County Board of Commissioners, the Circuit Court judges, the Office of the State's Attorney, and Office of the Public Defender must work collaboratively on comprehensive reforms to the justice system in Cook County. Ninety percent of the Cook County Jail's population is pretrial detainees. According to a July 2012 report by the Cook County Justice Advisory Committee ("JAC"), over 66% of Cook County Jail's pretrial detainees have a cash bond set at the initial bond hearing. JAC Report: Examination of Cook County Bond Court, at 3 (July 12, 2012). If, in accordance with Illinois law, a pretrial defendant is eligible for bail, the government's "only interest is in preventing flight, [and] bail must be set by a court at a sum designed to ensure that goal, and no more." *U.S. v. Salerno*, 481 U.S. 739, 754 (1987); *Heikkinen v. U.S.*, 208 F.2d 738, 740 (7th Cir. 1953) ("Bail set at an amount higher than that reasonably calculated to insure that an accused will appear to stand trial and submit to sentence if convicted is excessive, and falls within the proscription of the Eighth Amendment of the Constitution of the United States."). If pre-trial services were improved, the United States believes that more pretrial detainees could be released on their own-recognizance, on electronic monitoring, through payment of bail set at an appropriate amount, or in accordance with other detention alternatives, such as structured mental health programs. In addition, Cook County should continue assessing other aspects of the criminal justice system through increased review of charges and cases brought and analysis of the length of time to trial.

Overcrowding delays, and indeed may prevent, the Sheriff and Cook County from achieving compliance with the Agreed Order and ensuring constitutional conditions of confinement at the Cook County Jail. To the extent that the United States can help facilitate

reform in Cook County to address overcrowding, we welcome the opportunity to continue to be a partner in such endeavors.

## II.     Communication and Cooperation between the Defendants

The Cook County Jail facilities are operated by the Sheriff, through CCDOC, but health care and facilities maintenance are directed by the County through Cermak and DFM.  As a result, the Sheriff and Cook County must work together to provide constitutional conditions of confinement to all inmates.  The division of authority between CCDOC, Cermak, and DFM has occasionally resulted in strife between the different entities and a lack of collaboration with regard to plans and practice within the Jail facilities.  This is not uncommon in correctional institutions with similar divisions of authority.  However, in some instances, it appears as if the lack of cooperation may be impeding the parties from achieving substantial compliance.  For example, it appears that, to some degree, lack of clear communication and cooperation between Cermak and CCDOC may have delayed the Defendants' ability to open and operate the new residential treatment unit in accordance with its intended use:  housing and treatment for prisoners with medical and mental health needs.  Shansky Rpt. at 5-6.  United States urges improved communication and collaborative planning between the leadership of CCDOC, Cermak, and DFM in order to better facilitate compliance across all areas of the Agreed Order.  The monitors have discussed this issue and are working with the parties to further improve communication.

## III.     Transition to the New Jail Facility

As mentioned above, Defendants opened a new and much anticipated building at the Jail complex in June of this year, which contains a new receiving and diagnostic center and a

residential treatment unit for prisoners with medical and mental health needs. While the new

building is a tremendous improvement over the old facilities, the monitors expressed concerns

regarding the pace and extent of transition planning for the new building, including preparation

of new policies and procedures and staffing plans. *See, e.g.*, August 2012 Corrections

Monitoring Report of Susan McCampbell, ECF No. 133, at v. During on-site tours of the new

building before it opened, the monitors also identified some potential design concerns and

operational issues. While Defendants have attempted to remedy any outstanding issues, and a

team from the National Institute of Corrections is reviewing the new facility in September to

provide further guidance, we urge Defendants to ensure that any prisoner safety risks are

minimized while the new building transitions to full operation.

## IV. Medical and Mental Health Staffing

As the Court is aware, delays in filling vacancies in medical and mental health staffing at

Cermak have impeded the County's compliance with the Agreed Order. This year, the County

has made great strides in streamlining the hiring process and increasing the Cermak staff.

Metzner Rpt. at 17; Shansky Rpt. at 18. Due to population increases, Cermak must include

additional staff in the next budget to properly operate the new Residential Treatment Unit and

house inmates with medical and mental health needs in the new building. Shansky Rpt. at 5-6.

In addition, Cermak must further augment the current mental health staff to achieve compliance

with the Agreed Order. Metzner Rpt. at 18. The County also must fill key leadership roles for

medical and mental health care. Shansky Rpt. at 18. Finally, we understand that the County

made a special effort to increase Cermak hiring due to the Agreed order. We urge the County to

ensure that practical measures are in place to facilitate reasonable recruiting and hiring practices going forward.

## V.      Resignation of the Medical Monitor

After providing excellent service for over three years, on July 23, 2013, Dr. Ronald Shansky resigned as medical monitor.  The parties are currently interviewing candidates to replace Dr. Shansky and hope to provide the Court with a proposed monitor as soon as possible.  However, we note that the process of selecting and integrating a new monitor may delay the next compliance assessment of the medical provisions of the Agreed Order.

Respectfully submitted,

FOR THE UNITED STATES:

GARY S. SHAPIRO                        JOCELYN SAMUELS
Acting United States Attorney          Acting Assistant Attorney General
Northern District of Illinois          Civil Rights Division


PATRICK JOHNSON                        ROY L. AUSTIN, JR
Assistant United States Attorney       Deputy Assistant Attorney General
Northern District of Illinois          Civil Rights Division
219 South Dearborn Street
Chicago, Illinois  60604
(312) 353-5327                         JONATHAN SMITH
patrick.johnson2@usdoj.gov             Chief
                                       Special Litigation Section


                                       SHELLEY R. JACKSON
                                       Deputy Chief
                                       Special Litigation Section

                                        s/ Kerry Krentler Dean
                                       KERRY KRENTLER DEAN
                                       Senior Trial Attorney
                                       U.S. Department of Justice
                                       Civil Rights Division
                                       Special Litigation Section
                                       950 Pennsylvania Avenue, NW
                                       PHB 5026
                                       Washington, D.C.  20530
                                       (202) 514-6255
                                       kerry.k.dean@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on August 30, 2013, I served a true and correct copy of the <u>United States' Position Paper Regarding Monitoring Reports and Status of Compliance</u> with Clerk of the Court using the CM/ECF system, which will provide notification to all counsel of record.

Respectfully submitted,

 *s/ Kerry Krentler Dean*
KERRY KRENTLER DEAN
Senior Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
PHB 5026
Washington, D.C.  20530
(202) 514-6255
kerry.k.dean@usdoj.gov
FOR THE UNITED STATES

# CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of January, 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Maureen O. Hannon, ASA, 69 W Washington Street, Ste 2030, Chicago, IL 60602 and Michael Gallagher, ASA, 50 W Washington Street, Ste 500, Chicago, IL 60602 and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 201
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiffs*