IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

John Smentek, et al.,            )
                                 )
            *Plaintiffs,*         )
                                 )      No. 09-529
       *-vs-*                     )
                                 )      *(Judge Lefkow)*
Sheriff of Cook County and Cook   )
County, Illinois                  )
                                 )
            *Defendants.*         )

## PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR ENTRY OF A PRELIMINARY INJUNCTION

Defendants produced with their response the medical records of 14 of the 53 class members whose declarations plaintiffs had submitted with their application for a preliminary injunction. Dr. Jay D. Shulman, an expert in correctional dentistry, has reviewed these records. Plaintiffs attach his report as Exhibit 1.

Dr. Shulman confirms the findings made by Dr. Shansky while serving as a monitor in *United States v. Cook County*, 10-cv-2946. Plaintiffs summarized Dr. Shansky's findings in their application for a preliminary injunction, ECF #236 at 6-10:

1.    Detainees at the Cook County Jail complaining about dental pain are not provided timely analgesia and screening assessment, and

2. The nurses who screen health care requests do not always engage in a face-to-face visit with the detainee before making a direct referral to dental care providers.

Dr. Shulman found delays ranging from 15 days (Diontae Calhoun, April 8, 2013 to April 23, 2013, Exhibit 1 at 9)) to 149 days (Michael Birks, May 7, 2013 to October 3, 2013, Exhibit 1 at 7-8) from when a detainee submitted a Health Service Request complaining of dental pain to when the detainee was seen by a dentist. None of these detainees consistently received pain medication while awaiting dental treatment. Untreated pain is important. As Dr. Shulman explains (Exhibit 1 at 1):

> Odontogenic pain, or toothache, is highly prevalent in correctional facilities. As in the non-incarcerated population, odontogenic pain can interfere with a prisoner's normal daily activities such as eating, sleeping, and concentrating. Pain that interferes with eating has the potential to interfere with proper glycemic control in diabetics. Moreover, odontogenic pain (like other pain) has the potential to magnify the symptoms of depression.

One detainee, Bernard Crenshaw waited for 95 days (September 20, 2012 to December 24, 2012, Exhibit 1 at 13) before seeing a dentist on a complaint of post-operative complications. Dr. Shulman states that "this type of complaint [should] … be promptly assessed by a dental examination because it may be an indication of a healing problem or a soft tissue infection."*Id.*

Two detainees (Meinardo Conmcepcion and Richard Adams) complained of denture related problems; Conmcepcion waited 44 days (from September 29, 2013 to November 23, 2013, Exhibit 1 at 10-11) before his denture was repaired. Adams waited for 50 days (from June 23, 2013 to August 23, 2013, Exhibit 1 at 3) before he was told that denture cement was available at the commissary. These delays establish denial of a serious medical need. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).

Dr. Shulman found that two of the fourteen detainees had been referred to Stroger Hospital for an extraction by an oral surgeon; one, Blake Conyers, remained at the Jail for 456 days (October 24, 2012 to January 23, 2014, Exhibit 1 at 11-12) without seeing an oral surgeon. A second, Anthony Bell, stayed at the Jail for 97 days (September 18, 2013 to December 24, 2013) without seeing an oral surgeon. (Exhibit 1 at 7.)

At least three class members continue to experience untreated dental pain. (Exhibit 2 at 2-5, Declarations of Kamal Albitar, David Myrick, and Kenneth Weatherspoon.)

Kamal Albitar complained about dental pain on September 10, 2012.[1] (Exhibit 1 at 4.) A nurse reviewed this request and scheduled Mr. Albitar for a dental appointment on October 2, 2013. *Id.* There is no indication in

---

[1] Albitar refused an extraction on July 24, 2013.

the medical records that the nurse examined Mr. Albitar or provided him with any pain medication. *Id.*

Mr. Albitar had scheduled dental appointments on September 12, 2013, October 2, 2013, and November 7, 2013. (Exhibit 1 at 4.) Each appointment was cancelled without explanation. *Id.* On October 31, 2013, a physician's assistant prescribed an analgesic (Naproxen 375 mg) for one month. *Id.*

Mr. Albitar was examined by a dentist on December 6, 2013, who prescribed a ten day supply of an antibiotic (Amoxicillin 500 mg), an analgesic (Motrin 600 mg), and a mouth rinse (Peridex). (Exhibit 1 at 4.) The dentist scheduled a return visit in seven days to extract tooth #28. *Id.* This appointment was changed without explanation to December 27, 2013 and then again to January 30, 2014. *Id.* Mr. Albitar states in his second declaration that he continues to be in pain. (Exhibit 2 at 3, par. 6.)

Defendants omit material facts (and include a typographical error) in their recitation of the facts about Mr. Albitar, stating (ECF #251 at 11):

> Mr. Albitar complained again of tooth pain for the same tooth in August and was seen by the Nurse and his vitals taken (Ex K at 15-16) He had pain medication and a dental appointment was made. On December 6, 2013 he again saw the Dentist and was given, Amoxicillin, Motrin, and a peridex rinse and scheduled for tooth extraction. (Ex. K pp 20-30) The tooth is scheduled to be pulled on January 30, 2013. (sic)

The prescription written on December 6, 2013 provided Mr. Albitar with a ten day supply of Motrin. (Exhibit 1 at 4.) Defendants do not contend that this prescription was renewed or that pain relief has otherwise been supplied to Mr. Albitar. There is no reason to question Mr. Albitar's initial declaration dated December 16, 2013 (ECF #236 at 59) that "I am still experiencing severe pain." Nor is there a basis to dispute Mr. Albitar's supplemental declaration (dated January 19, 2014 and provided to defendants on January 20, 2014 (Exhibit 2 at 3, par. 6) that:

> 6. I have not been called back to see the dentist. I continue to be in pain. The pain is constant. I have trouble closing my mouth. I have extreme pain when eating unless I puree my food. I have no idea when I will receive dental treatment.

While defendants may believe that dental care at the Jail "has been getting consistently better" (Def.Mem. at 6), the unrebutted evidence shows that "there is a continuing violation of federal law." *Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 894 (7th Cir. 2012). Defendants are unable to "raise genuine issues of material fact in response to a motion for a preliminary injunction," *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002), and the Court should grant a preliminary injunction without holding an evidentiary hearing. *Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010).

## I.     The Response to the Application for a Preliminary Injunction

Defendants seek to argue that dental pain is not a serious medical need protected by the Fourteenth Amendment. ((Def.Mem. 13-16.) Defendants advance this argument by disregarding the dental cases plaintiffs collected in their application for a preliminary injunction, ECF #236 at 13. These cases leave no doubt that the Seventh Circuit views "dental care as one of the most important medical needs of inmates." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005), citing *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). These cases also establish that dental pain is an "objectively serious medical condition." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010*)*, and that "'[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Moreover, the Seventh Circuit has made plain that "[e]ven a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

Rather than acknowledge the law of the circuit, defendants rely on their victory over a pro se plaintiff[2], cite cases that have nothing to do with untreated pain,[3] and discuss the predominance requirement of Rule 23(b)(3), (Def.Mem. 15-16), an odd response to a Rule 23(b)(2) class claim for prospective injunctive relief.

The other arguments offered by defendants are equally unavailing. Plaintiffs show below that the Court should overrule defendants' objections and grant a preliminary injunction to require defendants:

1.    To screen health service requests complaining about dental pain on a daily basis,

2.    To provide a procedure for detainees complaining about dental pain to obtain prompt access to pain reduction medicine (e.g., ibuprofen), and

3.    To maintain records of requests for dental treatment, including dates inmates are scheduled to be examined by dental personnel, dates inmates are actually examined by dental personnel, and documentation of cancellation or failure to appear for dental treatment or examination.

---

[2] The pro se plaintiff in *Papaleo v. Dart*, 09-cv-2218, complained about four discrete medical issues. (Mem.Op., 09-cv-2218, ECF #224 at 2-7.) In granting summary judgment, Judge Feinerman (whom defendants mistakenly identify as Judge Kennelly), concluded "that Papaleo cannot establish the subjective component of his deliberate indifference claim against the individual defendants." 09-cv-2218, ECF #224 at 8.

[3] Defendants rely on *Jackson v. Poullion*, 733 F.3d 786 (7th Cir. 2013), a case which reaffirmed that mere delay in providing medication, without any evidence of actual or probabilistic harm, is not a constitutional violation. *Id.* at 290. Nothing in *Jackson* undermines the rule that the Eighth and Fourteenth Amendments provide a remedy for delay in treatment which "'unnecessarily prolonged and exacerbated' [a] prisoner's pain," *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010), quoting *Williams v. Leifer*, 491 F.3d 710, 716 (7th Cir. 2007). The rule in this circuit is that gratuitous pain is actual harm.

## II.  The Plaintiff Class Has Standing to Seek Injunctive Relief for Detainees

Defendants disregard *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980) in asserting (Def.Mem. 2) that the plaintiff class lacks standing to seek injunctive relief for class members presently confined at the Cook County Jail.

The original plaintiff in *United States Parole Commission v. Geraghty, supra*, brought an action, individually and for a putative class, to challenge the Federal Parole Guidelines. The district court denied relief on Geraghty's individual claim and declined to certify a class. 429 F.Supp. 737 (1977). Geraghty appealed, individually and for the putative class, but he was released from custody while the case was pending on appeal. 455 U.S. at 394. The Court of Appeals held that the case was not moot, 579 F.2d 238 (3d Cir. 1978), and the Supreme Court granted certiorari. 445 U.S. at 390.

In holding that the claims of the putative class had not become moot with Geraghty's release from custody, the Supreme Court began with its decision in *Sosna v. Iowa*, 419 U.S. 393 (1975), "that mootness of the named plaintiff's individual claim *after* a class has been duly certified does not render the action moot." *Id.* at 397 (emphasis in original). The Court concluded "that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even

though class certification has been denied." *Id.* at 406. This rule is fully applicable here.

This case is proceeding as a class action under Rule 23(b)(2) pursuant to the Court's order of November 18, 2010.[4] (ECF #68.) The class consists of

> All persons presently confined at the Cook County Jail who are experiencing dental pain and who have waited more than seven days after making a written request for treatment of that pain without having been examined by a dentist.

Defendants are mistaken in arguing that the class claim for injunctive relief is moot because class representatives Patton, Phillips, and Powicki are no longer confined at the Jail and class representative Sanders, while still at the Jail, is not currently experiencing dental pain. (Def.Mem. at 2.)

An individual detainee's request for injunctive relief about jail conditions becomes moot when he (or she) is released from custody. *Martin v. Davis*, 917 F.2d 336, 339 (7th Cir. 1990). (Def.Mem. 2.) This case, however, is proceeding as a class action and the mootness question turns on whether "the claim is likely to recur with regard to the class." *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010).

---

[4] The Court allowed the case to also proceed under Rule 23(b)(3) in an order entered on August 17, 2011. (ECF #93.)

Plaintiffs filed 53 declarations with their application for a preliminary injunction. (ECF #236 at 47-100.) Each declarant stated, under penalties of perjury, that a significant amount of time – one to thirteen months -- elapsed from when he (or she) first complained about dental pain to the date the declarant received any treatment for that pain. At least three declarants (Kamal Albitar, David Myrick, and Kenneth Weatherspoon) stated that they were currently experiencing untreated dental pain.[5]

Defendants argue that injunctive relief for the class is unnecessary because "[a]ny detainee can also bring their own claim for injunctive relief or money damages at any time." (Def.Mem. 3.) This argument overlooks the fact that a claim of untreated dental pain is "inherently transitory," *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991). As in *Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010), the "fifty-three [declarations] outlining problems similar to complained of by [the named plaintiffs], makes it likely that [the Cook County Jail's] alleged practices of [denying timely attention to complaints of dental pain] will continue." *Id.* at 585.

------

[5] Class counsel visited these three class members at the Jail on January 19, 2014 and furnished defense counsel with their supplemental declarations in Rule 26 disclosures served on January 20, 2014. (Exhibit 2, attached.)

Defendants concede that the class representatives of the (b)(2) class —Patton, Phillips, Powicki, and Sanders — were experiencing untreated dental pain when they joined this case. The class representatives therefore have standing to represent the class in seeking prospective injunctive relief. *Robinson v. City of Chicago*, 868 F.2d 959, 965-68 (7th Cir. 1989); *Knox v. McGinnis*, 998 F.2d 1405, 1414-15 (7th Cir. 1993).

### III.    The Consent Decree in *United States v. Cook County* Does Not Bar Injunctive Relief

Defendants ask the Court to refrain from adjudicating the live controversy presented by the (b)(2) class because of the consent decree defendants entered into with the United States in May of 2010, *United States v. Cook County*, 10-cv-2946. (Def.Mem. 4-6.) The Court should reject this argument.

The consent decree was entered in response to a civil action filed by the Department of Justice pursuant to "CRIPA," 42 U.S.C. §1997 et seq.

42 U.S.C. §1997a authorizes the Attorney General to institute a civil action for injunctive relief in response to "egregious or flagrant conditions" at County Jails.[6] This provision, however, does not limit private actions. 42 U.S.C. §1997j provides as follows:

---

[6] 42 U.S.C. §1997a(a) provides as follows:

The provisions of this subchapter shall in no way expand or restrict the authority of parties other than the United States to enforce the legal rights which they may have pursuant to existing law with regard to institutionalized persons. In this regard, the fact that the Attorney General may be conducting an investigation or contemplating litigation pursuant to this subchapter shall not be grounds for delay of or prejudice to any litigation on behalf of parties other than the United State

The provisions of 42 U.S.C. §1997j show the folly of defendants' suggestion that plaintiffs should present their complaints about dental care at the Jail to the Department of Justice, rather than to this Court.[7]

(Def.Mem. 4-6.)

---

Whenever the Attorney General has reasonable cause to believe that any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State is subjecting persons residing in or confined to an institution, as defined in section 1997 of this title, to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party for such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of such rights, privileges, or immunities, except that such equitable relief shall be available under this subchapter to persons residing in or confined to an institution as defined in section 1997(1)(B)(ii) of this title only insofar as such persons are subjected to conditions which deprive them of rights, privileges, or immunities secured or protected by the Constitution of the United States.

[7] Defendants are unable to explain the failure of this decree to fix the problems with dental care at the Jail in the almost 4 years the decree has been effect.

## IV.    Plaintiffs Seek Very Narrow Preliminary Injunctive Relief

Plaintiffs ask the Court to require defendants:

1.    To screen health service requests complaining about dental pain on a daily basis,

2.    To provide a procedure for detainees complaining about dental pain to obtain prompt access to pain reduction medicine (e.g., ibuprofen), and

3.    To maintain records of requests for dental treatment, including dates inmates are scheduled to be examined by dental personnel, dates inmates are actually examined by dental personnel, and documentation of cancellation or failure to appear for dental treatment or examination.

Plaintiffs' first two requests are precisely what defendant Cook County stated in *United States v. Cook County* 10 C 2946, ECF #45 at 61, filed in this case as ECF #236 at 106, Exhibit 12 at 5):

> *Cermak intends to ensure timely screening and analgesia through nursing triage of dental complaints.* Referral to a provider may be required. In regards to implementation of the staffing plan, Cermak administrators are pleased to report that dental staff have now been hired and are working. (emphasis supplied)

The third request would require a minor change in the way in which defendants maintain appointment records by demanding documentation of cancellation or failure to appear for dental treatment or examination. These enhanced appointment records would show whether additional personnel are necessary to eliminate the continued problems in providing dental services or whether the delays in getting dental attention are caused by bad scheduling software or personnel, excessive absenteeism by

those providing dental care, by problems within the Jail of getting detainees to dental appointments, or some other problem. Plaintiffs do not ask the Court to order, on a preliminary injunction, that defendants hire additional staff. (Def.Mem. 7.) Plaintiffs' request is simply for enhanced record keeping so that the parties may assess the cause of the obvious problem in providing dental services to detainees at the Cook Count

Defendants are unable to justify their hyperbolic assertion that the preliminary relief sought by plaintiffs would "upset the status quo … in *United States v. Cook County* 10 C 2946. (Def.Mem. 2.) On the contrary, the relief sought by plaintiffs on a preliminary injunction would do little more than force the County to live up to the representations it made nearly four years in *United States v. Cook County.*

## V.  THE COURT SHOULD SET A SCHEDULE AND TRIAL DATE FOR A HEARING ON A PERMANENT INJUNCTION

Plaintiffs request that the Court set the case for a hearing on a permanent injunction in 90 days and set an appropriate schedule to allow this prompt hearing. Plaintiffs suggest the following schedule:

1.  The parties shall identify the witnesses they will call at the hearing within 14 days;

2.  The parties shall serve written summaries of the expected testimony of each witness within 28 days;

3.  Defendants shall make any expert disclosures for the permanent injunction hearing within 35 days;

4.   All depositions of witnesses to be called at the permanent injunction hearing shall be completed within 56 days; and

5.   Pre-hearing materials shall be filed within 70 days.

This case has been pending for nearly five years. While dental care at the Cook County Jail may be "improving," the record before this Court reflects a deplorable state of affairs. The Court should therefore set this matter for a prompt hearing on a permanent injunction.

## VI.     CONCLUSION

For the reasons above stated and those previously advanced, the Court should grant a preliminary injunction and set a schedule for a prompt hearing on issuance of a permanent injunction.

Respectfully submitted,

/s/  <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC No. 08830399
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200

Thomas G. Morrissey
Patrick W. Morrissey
10249 S. Western Ave.
Chicago, IL. 60643
(773) 233-7900
*Attorneys for the Plaintiff Class*

**Exhibit 1**

# EXPERT REPORT FOR
# APPLICATION FOR PRELIMINARY INJUNCTION

**PREPARED BY:**   JAY D. SHULMAN, DMD, MA, MSPH
9647 HILLDALE DRIVE
DALLAS, TX 75231

January 30, 2014

## I. STATEMENT OF OPINIONS

**A. Detainees at the Cook County Jail complaining about dental pain are not provided timely analgesia and screening assessment.**

**B. The nurses who screen health care requests do not always engage in a face-to-face visit with the detainee before making a direct referral to dental care providers.**

**C. There is a lack of documentation for the reason for rescheduling dental appointments.**

**D. There is a lack of documentation for delay in treatment of detainees referred to an oral surgeon.**

## II. ODONTOGENIC PAIN IN CORRECTIONAL SETTINGS[1]

Odontogenic pain, or toothache, is highly prevalent in correctional facilities. As in the non-incarcerated population, it can interfere with a prisoner's normal daily activities such as eating, sleeping, and concentrating. Pain that interferes with eating has the potential to interfere with proper glycemic control in diabetics. Moreover, odontogenic pain (like other pain) has the potential to magnify the symptoms of depression.

Among the possible non-traumatic causes of tooth pain are (a) tooth fractures (often, a tooth that has been weakened splits in the course of normal chewing), (b) pulpitis, (c) caries (decay) extending through the enamel into dentin, (d) dental (periapical or periodontal) abscess, and (e) cellulitis (a diffuse inflammation of the connective tissue caused by a spreading bacterial infection just below the skin surface).

---

[1] The bulk of the information in this section is excerpted from an article I co-authored, Shulman and Sauter, TREATMENT OF ODONTOGENIC PAIN IN A CORRECTIONAL SETTING, 18 Journal of Correctional Health Care 62 (2012). A copy of that article is attached to this report.

Pulpitis is an inflammation of the living tissue within the tooth. Reversible pulpitis will resolve when the source of irritation is treated or removed. Typically, reversible pulpitis is attributed to minor tooth fractures, caries, and occlusal (bite) discrepancies and can be treated with analgesics and a dental procedure. These procedures may include removing decay and inserting a new or replacement filling, adjusting the bite, and applying desensitizing agents.

When the inflamed living tissue inside the tooth (the pulp) swells and circulation is compromised, the pulpitis becomes irreversible. A tooth with irreversible pulpitis has a partially vital pulp with inflammation and degeneration that is not expected to improve. Once pulp death (necrosis) occurs, the tissue is vulnerable to attack by bacteria, leading to infection at the apex of the tooth. Eventually this infection spreads by resorbing bone and supporting structures. Left untreated, it may develop into a serious systemic infection.

Tooth fractures involving the pulp will show symptoms of irreversible pulpitis. Probing the area around the tooth will indicate depth of fracture. If the fracture is below the level of the tissue attachment, it is likely the tooth will require extraction. Periodontal (gum) infections can also cause a toothache. Acute periodontal infections include gingival abscess, periodontal abscess, necrotizing periodontal disease, herpetic gingivostomatitis, periocoronal abscess (pericoronitis), and combined periodontal–endodontic lesions. Resolution of these painful conditions requires the physical removal of infectious material or necrotic tissue by a dentist. Antibiotics are not a substitute for this care but may be a component of the overall treatment.

The best practice for management of odontogenic infections is to remove the source of the infection, which is commonly a necrotic pulp or a deep periodontal pocket. Any successful therapy must include drainage of accumulated pus and necrotic debris Moreover, the source of the infection should be removed while the patient has a therapeutic blood level of an effective antibiotic.

If the tooth is to be salvaged, it should be opened and the pulp removed (establishing drainage through the tooth) and, on occasion, an incision and drainage procedure should be performed. Otherwise, the tooth should be extracted as soon as possible

Antibiotics given to a patient with an odontogenic infection do not resolve the underlying problem (i.e., the infected tooth). Consequently, "[a]ntibiotic therapy should be used as an adjunct to dental treatment and never used alone as a first line of care" (Swift & Gulden, 2002). A clear indication for antibiotic use is the presence of fever or

-2-

extraoral swelling. However, dealing with the source of the infection (extraction or root canal therapy) should occur promptly.

## III. INFORMATION CONSIDERED AND BASIS AND REASONS FOR OPINIONS

I reviewed the medical records for the 14 persons identified in Exhibit 1. Counsel had affixed a page number to the bottom of each page of each medical record. I also reviewed the medical records for Larry Williams, two declarations signed by Kamal Albitar, and an affidavit of Brenda Taylor (which is marked as Document #251-9)

I was also provided with information about dental appointments for these 15 persons. I reviewed the grievances filed by Mr. Williams and the records about the grievances filed by the 14 persons identified in Exhibit 1. I was informed by attorney Flaxman that the actual grievances have not been produced.

I am assuming, based on information I received from counsel, that Health Services Requests are reviewed by a registered nurse.

### 1. Richard Adams

Richard Adams's complaint is about getting denture adhesive.

The records pertaining to Mr. Adams show that he submitted three Health Service Requests seeking denture adhesive starting on June 23, 2013. (Adams at 1, 2, and 21.) When Mr. Adams saw a dentist on August 12, 2013 (Adams at 28), he was told that he could obtain fixadent (a brand of denture adhesive), from the commissary. There is no reason why the nurses who reviewed the Health Service Requests Mr. Adams filed on June 23, 2013, June 26, 2013, and July 1, 2013 did not provide this information. It is also noteworthy that Mr. Adams was not informed about the availability of fixadent until after he filed a grievance on July 30, 2013. (Grievance 13X2929.)

### 2. Kamal Albitar

Kamal Albitar complained of tooth pain on July 13, 2013. (Albitar at 26-27.) He was apparently given a single dose of Tylenol as pain relief. (The Health Service Report recites that "Pt given Tylenol 650 mg" but there is no prescription for an analgesic.) Based on my review of all of these records, my understanding is that a prescription is written whenever more than a single dose of analgesic is prescribed. The appointment records show that Mr. Albitar had been scheduled for a dental appointment on July 18, 2013. A note in a Health Service Request filed on July 19, 2013 (Albitar at 8) recites "Was called for dental appt. on 7/18/13 and was never seen by doctor. Was sent back." (Albitar at 8.) The nurse who saw Mr. Albitar on July 19, 2013 notes "Tylenol 650 mg."

(Albitar at 29-30.) Again, there is no record of a prescription for an analgesic. Mr. Albitar was seen by a dentist on July 24, 2013 and refused an extraction.

Mr. Albitar submitted another Health Service Request on August 23, 2013, complaining of major pain. (Albitar at 9.) There is no indication in the medical records that Mr. Albitar was examined by a nurse or that any analgesic was provided to him.

Mr. Albitar submitted another Health Service Request on September 10, 2012. (Albitar at 10, 39.) A nurse reviewed this request and scheduled Mr. Albitar for a dental appointment on October 2, 2013. There is no indication in the medical records that the nurse examined Mr. Albitar or that any analgesic was provided to him.

Mr. Albitar had scheduled dental appointments on September 12, 2013, October 2, 2013, and November 7, 2013. Each appointment was cancelled without explanation.

On October 31, 2013, a physician's assistant prescribed an analgesic (Naproxen 375 mg) for 1 month. (Albitar at 49.)

Mr. Albitar was examined by a dentist on December 6, 2013 (Albitar at 46), who prescribed a ten day supply of an antibiotic (Amoxicillin 500 mg) an analgesic (Motrin 600 mg), and a mouth rinse (Peridex). (Albitar 46, 48-49.) The dentist scheduled a return visit in seven days to extract tooth #28. (Albitar 46.) This appointment was changed without explanation to December 27, 2013 and then again to January 30, 2014. (Albitar at 59.) Mr. Albitar states in his second declaration that he continues to be in pain.

### 3. Orlando J. Allen

Orlando Allen submitted a Health Service Request on March 19, 2013, complaining about wisdom tooth pain. (Allen at 6.) The medical records show that a nurse reviewed the request on March 23, 2013 (Allen at 37). There is no indication that the nurse examined Mr. Allen or provided him with any analgesic on that date.

Mr. Allen submitted another Health Service Request on April 2, 2013. (Allen at 38.) Again, there is no indication a nurse examined Mr. Allen or provided him with pain medication. The records show that the nurse requested a dental appointment for Mr. Allen on April 24, 2013. (Allen 38.)

The grievance records show that Mr. Allen submitted a grievance on April 6, 2013, which was reviewed by C. Smith on April 8, 2013. I did not review the grievance.

Mr. Allen submitted another Health Service Request on April 8, 2013, again complaining of wisdom tooth pain. (Allen at 7.) As with the previous Health Service Request, the records do not show any examination. Nor do the records show that Mr.

Allen was provided with pain medication. The records show a request for a dental appointment on April 10, 2013. (Allen at 40.)

Mr. Allen was finally seen by a dentist on May 23, 2013. (Allen at 22-23, 49.) The dental record states that Mr. Allen has been experiencing pain for the past four to five months. (Allen 49.) A dentist extracted tooth number 17 and prescribed pain medication (Motrin 600 mg). (Allen at 49.)

### 4. Alvin Anthony

Alvin Anthony submitted a Health Service Request on September 4, 2013, complaining about bleeding from the mouth. (Anthony at 1.) He submitted a second Health Service Request on September 12, 2013 stating that his teeth hurt and that he bleeds everything he brushes his teeth. (Anthony at 3.) Mr. Anthony submitted his third Health Service about dental pain on September 18, 2013. (Anthony at 2.) There is no indication that a nurse examined Mr. Anthony or provided him with any analgesic in response to any of these complaints of dental pain.

On October 3, 2013, in response to the Health Service Request Mr. Anthony had submitted on September 18, 2013, a nurse requested a dental appointment for October 10, 2013. (Anthony at 25.)

Mr. Anthony filed a grievance on September 27, 2013, 13X4096. This grievance, which was not provided to me, was processed on October 11, 2013. The records do not contain any indication of what action, if any, was taken in response to this grievance.

Mr. Anthony filed another Health Service Request on October 1, 2013, complaining about a toothache. (Anthony at 23.) There is no indication that a nurse examined Mr. Anthony or provided him with any pain medication on that date.

The medical records show an order on October 3, 2013 referring Mr. Anthony to the dental clinic. (Anthony at 56.) The records do not show that Mr. Anthony was provided with any pain medication on that date.

Mr. Anthony was seen by a dentist on October 4, 2013. (Anthony at 5, 27.) A notation on the consent to dental treatment bears the notation "Div-08-RTU Grievance." (Anthony at 27.)

### 5. Francisco Balderas

Francisco Balderas submitted a Health Service Request on September 6, 2013. (Balderas at 4.) Three days later, he was apparently seen by a physician's assistant, who prescribed an antibiotic (Amoxicillin 500 mg) for 1 week and pain medication

-5-

(Ibuprofen, 800 mg) for three weeks. (Balderas at 175, 180.) The physician's assistant also referred Mr. Balderas to the dental clinic with an "urgent" notation. (Balderas at 200.)

The appointment records show that Mr. Balderas was scheduled to see the dentist on September 12, 2013 and that this appointment was canceled. The appointment records do not provide any reason for cancellation.

Mr. Balderas filed a grievance on September 17, 2013, 13X3768. The grievance, which was not provided to me, was reviewed on September 23, 2013 and Mr. Balderas was treated by a dentist on September 25, 2013. (Balderas at 7, 34, 292.)

### 6. Jose Bautista

Jose Bautista submitted a Health Service Request on July 15, 2013 complaining about dental pain. (Bautista at 4.) The records show that the request was faxed to dental. *Id.* The first record of a dental appointment for Mr. Bautista is on October 22, 2013 (Bautista at 6), after Mr. Bautista had filed a grievance, 13X4536, on October 12, 2013. I have not had an opportunity to review this grievance.

Mr. Bautista was not provided any analgesics in response to his Health Service Request of July 15, 2013. (Bautista at 5.) He filed a second Health Service Request on July 16, 2013. (Bautista at 49.) The notation on that record is that Tylenol was provided to Mr. Bautista, although there is no record of a prescription having been written for any analgesic. (Bautista at 49.)

Mr. Bautista submitted another Health Service Request on September 27, 2013. (Bautista at 5, 52.) There is no indication that he was examined by a nurse. Nor is there any indication that he was provided with any pain medication. On September 30, 2013, Mr. Bautista was referred to the dental clinic, with an appointment for December 12, 2013. (Bautista at 75.)

Mr. Bautista filed a grievance on October 12, 2013, 13X4536 and was seen by a dentist on October 22, 2013. (Bautista at 6, 54.) This grievance has not been provided to me. A tooth was extracted on October 22, 2013 (Bautista at 6) and the dentist wrote a prescription for a 4 day supply of pain medication (Ibuprofen 600 mg). (Bautista at 65.)

### 7. Anthony Bell

Anthony Bell filed a grievance on February 14, 2013, 12x0304. I have not been provided with a copy of that grievance. Bell was scheduled to see a dentist that same day, as a "priority." (Bell at 106.) This appointment was changed to February 13, 2013, then to April 16, 2013, and then to March 19, 2013. (Bell at 106.) Bell was examined by a dentist

-6-

on March 28, 2013 (Bell at 8, 10, 39), when he refused to consent to an extraction of tooth number 5. (Bell at 8.)

The dental records for September 18, 2013 recite that Mr. Bell was referred to Stroger Hospital for extraction of tooth number 32. (Bell at 50.) There is no indication that Mr. Bell was seen at Stroger. He saw a dentist on October 30, 2013 (Bell at 59), and was prescribed an antibiotic (Amoxicillin 500 mg), pain medication (Motrin 600 mg), and a mouth rinse (Peridex). (Bell at 59, 112.) Mr. Bell filed two dental grievances, 13X0304 and 13X3500. I do not know what the subject was of either grievance. The appointment records show that Mr. Bell was scheduled to see a dentist on October 30, 2013. There is no record provided to me showing whether or not this appointment was kept and, if so, of the services provided. Class counsel has informed me that Mr. Bell was transferred to the Illinois Department of Corrections on December 24, 2013.

### 8.   Michael Birks

Michael Birks submitted a Health Service Request on May 7, 2013, complaining of a toothache.  (Birks at 6.) There is no indication that a nurse examined Mr. Birks or provided him with any pain medication on that date, although the Health Service Requests bears the handwritten notation "emergency." Mr. Birks submitted another Health Service Request the next day, also complaining about a toothache. (Birks at 35.) This request was treated as "routine," with a dental appointment requested for May 15, 2013. *Id.* As with the previous Health Service Request, there is no indication that a nurse examined Mr. Birks or provided him with any pain medication on May 15, 2013.

Mr. Birks' dental appointment was reset to June 4, 2013 and then to July 22, 2013. (Birks at 54.) There is no indication in the records for the reason for changing the appointment.

Mr. Birks submitted a Health Service Request on August 27, 2013, stating that he had been scheduled to see a dentist on July 22, 2013, but had not been called for his appointment. (Birks at 8.) Mr. Birks stated in this Health Service Request that "[m]y tooth is aching. *Id.* As with the previous Health Service Requests, there is no indication that a nurse examined Mr. Birks or provided him with any pain medication.

Mr. Birks submitted another Health Service Request on August 27, 2013, again complaining of dental pain. (Birks at 39.) Again, there is no indication that a nurse examined Mr. Birks or provided him with any pain medication. The nurse who reviewed this complaint of pain requested a dental appointment for Mr. Birks on September 10, 2013. (Birks at 39.)

-7-

Mr. Birks filed a grievance on September 19, 2013, 13X3811. I have not had an opportunity to read the grievance. The grievance was processed on October 1, 2013, and Mr. Birks was seen by a dentist on October 3, 2013. (Birks at 41.)

Mr. Birks filed another health services request on October 8, 2013, stating that his face was swollen and that he could not open his mouth. (Birks at 9.) He also stated that the right side of his face hurts when he eats anything. *Id.* Inability to open the mouth (trismus) as the result of an infection of dental origin warrants prompt attention by a clinician since it could be a sign of a life-threatening infection of the fascial spaces of the neck that can cause airway obstruction.

Mr. Birks was next seen by a dentist on November 20, 2013. (Birks at 45.) Nothing in his records shows any examination or treatment between October 8, 2013 and November 20, 2013.

### 9. Jermaine Brooks

Jermaine Brooks submitted a health services request on July 4, 2011, reporting tooth pain. (Brooks at 3.) There is no indication that a nurse examined Mr. Brooks or provided him with any pain medication.

Mr. Brooks submitted a second health services request on July 26, 2011, reporting that he had experienced dental pain for three weeks. (Brooks at 2.) Again, there is no indication that a nurse examined Mr. Brooks or provided him with any pain medication.

Mr. Brooks was seen by a dentist on August 3, 2011. (Brooks at 150.) The dentist performed an examination and, I presume, diagnosed an infection, since he prescribed a course of antibiotic (Amoxicillin 500 mg) therapy. (Brooks at 152.)

Mr. Brooks filed a health services request on November 27, 2012, asking that a tooth be pulled. (Brooks at 32.) He was examined by a dentist on November 30, 2012 (Brooks at 319), and a dentist extracted tooth number 32 on December 5, 2012. (Brooks at 674.)

Mr. Brooks complained about "pain due to holes in my teeth" on July 26, 2013. (Brooks at 44.) There is no indication that a nurse examined Mr. Brooks or provided him with any pain medication.

Mr. Brooks submitted a second Health Service Request about this dental pain on August 11, 2013 (Brooks at 47). Mr. Brooks wrote: "I'm having bad pain with my teeth. I need to see Dental ASAP. This is the second dental request I've put in to see Dental. My teeth are hurting real bad. I need dental ASAP." *Id.* There is no indication that a

nurse examined Mr. Brooks or provided him with any pain medication in response to this request.

Mr. Brooks submitted additional Health Service Requests about his tooth pain on August 13, 2013 (Brooks at 397), August 15, 2013 (Brooks at 400), August 21, 2013, and September 26, 2013. (Brooks at 48.) There is no indication that a nurse examined Mr. Brooks or provided him with any pain medication in response to any of these requests.

Mr. Brooks filed a grievance on September 28, 2013, 13X4073. Mr. Brooks was seen by a dentist on September 30, 2013. (Brooks at 418.) The dentist extracted two teeth and provided Mr. Brooks with a course of an antibiotic (Clindamycin 300 mg) and pain medication (Motrin 600 mg and Tylenol 325 mg). (Brooks at 418, 695.)

### 10. Diontae Calhoun

Diontae Calhoun entered the jail on January 27, 2011. Counsel has asked me to limit my summary of Mr. Calhoun's complaints of dental pain to those made in 2013.

On April 8, 2013, Mr. Calhoun submitted a health services request stating that his face was swollen and that he could not open his mouth. (Calhoun at 25, 234.) There is no indication that a nurse examined Mr. Calhoun or provided him with any pain medication in response to this request. Inability to open the mouth (trismus) as the result of an infection of dental origin warrants prompt attention by a clinician since it could be a sign of a life-threatening infection of the fascial spaces of the neck that can cause airway obstruction.

Mr. Calhoun submitted a second Health Service Request on April 21, 2013, complaining of a toothache. (Calhoun at 240.) The nurse who examined Mr. Calhoun noted that he reported pain of seven out of ten and provided him with Tylenol "per protocol." *Id.* I do not know what this protocol is. The records show that the nurse provided him with Tylenol, from which I infer that she provided him with a single dose.

Mr. Calhoun submitted a third Health Service Request on April 22, 2013 (Calhoun at 27, 243), again complaining of a toothache. This request resulted in an examination by a dentist on April 23, 2013. (Calhoun at 245.)

### 11. Miguel Castenada

Miguel Castenada submitted a Health Service Request on October 14, 2013, complaining about pain from a broken tooth. (Castanada at 40.) There is no indication that a nurse examined Mr. Castenada or provided him with any pain medication in response to this request.

-9-

Mr. Castenada submitted a second Health Service Request about dental pain on October 16, 2013. (Castenada at 117.) This request was referred to dental. *Id.* There is no indication that a nurse examined Mr. Castenada or provided him with any pain medication in response to this request.

Mr. Castenada submitted another Health Service Request complaining about toothache from recent trauma on October 20, 2013. (Castenada at 44, 126.) One of the requests dated October 20, 2013 bears the notation that Mr. Castenada was seen in "PCE." Other than the reference to "PCE," there is no indication that a nurse examined Mr. Castenada or provided him with any pain medication in response to this request.

Mr. Castenada submitted a fourth Health Service Request on October 21, 2013. (Castenada at 43, 124.) The request was reviewed on October 23, 2013 (Castenada at 43), and resulted in a request for a "routine" dental appointment on October 24, 2013. (Castenata at 124.) A physician's assistant provided Mr. Castenada with a month prescription of ibuprofen on October 23, 2013. (Castenada at 154, 184.) Mr. Castenada was seen by a dentist on October 31, 2013.

### 12. Meinardo Conmcepcion

Meinardo Conmcepcion complained about delay in repair of his denture. He submitted a Health Service Requests on September 29, 2013, October 2, 2013, October 3, 2013, and October 4, 2013. (Conmcepcion at 13, 81, 12, 11.) Mr. Conmcepcion complained that his face was swollen and that he was unable to eat. (Conmcepcion at 11.) Nothing in the record shows that a nurse examined Mr. Conmcepcion or provided him with any pain medication in response to this complaint. Moreover, there is no record of his being offered a soft diet so Mr. Conmcepcion could eat properly.

Mr. Conmcepcion was examined by a dentist on October 7, 2013, who noted that the upper denture was broken in two places and "need some crazy glue to put them back together." (Conmcepcion at 83.) There is no record of his being offered a soft diet so Mr. Conmcepcion could eat properly. The glue had not been obtained by October 11, 2013, when Mr. Conmcepcion returned to the dental clinic. (Conmcepcion at 85.)

Mr. Conmcepcion submitted a Health Service Request on October 21, 2013, complaining that "I can't eat right" and requesting that his denture be repaired. (Conmcepcion at 18.) A handwritten note on the Request states "Have dental appt. Given to dental 10-22-13." *Id.* Mr. Conmcepcion also submitted a grievance on October 21, 2013, 13X4636. I have not been provided with a copy of the grievance. There is no record of his being offered a soft diet so Mr. Conmcepcion could eat properly.

-10-

Mr. Conmcepcion submitted a Health Service Request on October 31, 2013, repeating his complaint that "I need to fix my denture. I can't eat well." (Conmcepcion at 20.) A handwritten note on the Request stated "Have Dental appt." There is no record of his being offered a soft diet so Mr. Conmcepcion could eat properly.

A dentist repaired Mr. Conmcepcion's denture on November 12, 2013. (Conmcepcion at 106.)

### 13. Blake Conyers

Blake Conyers complained about dental pain in a health services request dated October 11, 2012. (Conyers at 33.) There is no indication that a nurse examined Mr. Conyers or provided him with any pain medication in response to this complaint.

The records provided to me show that on October 24, 2012, Mr. Conyers was referred to Stroger Hospital for removal of tooth number 17. (Conyers at 155.) The records describe this as an "urgent" matter. (Conyers at 215.) A one week supply of pain medication (Ibuprofen 600 mg) and an antibiotic (Amoxicillin 500 mg) was prescribed for Mr. Conyers on October 24, 2012. (Conyers at 229, 233, 262.)

On December 17, 2012, Mr. Conyers filed a health services request. (Conyers at 37.) A dentist examined Mr. Conyers on December 21, 2012, and again referred him to Stroger Hospital for removal of partially bony impacted tooth number 17. (Conyers at 167.) The dentist provided Mr. Conyers with a prescription for a 6 day supply of analgesic (Ibuprofen 600 mg). (Conyers at 233.)

Mr. Conyers was seen again by a dentist on January 8, 2013, who again referred Mr. Conyers to Stroger for an extraction. (Conyers at 175.)

Mr. Conyers filed a grievance on March 19, 2013, 13X0885. I have not been provided with a copy of this grievance. Dr. Rabin reviewed the grievance on April 3, 2013. A dentist saw Mr. Conyers on that day, and again prescribed pain medication (Motrin 600 mg) and referred Mr. Conyers to an oral surgeon for the extraction. (Conyers at 184.)

Mr. Conyers filed a Health Service Request on April 11, 2013, stating that he needed pain medication for his wisdom tooth and antibiotics for swelling. (Conyers at 38.) There is no indication that a nurse examined Mr. Conyers or provided him with any pain medication in response to this complaint.

On April 26, 2013, Dr. Townsend prescribed an analgesic (Ibuprofen 600 mg) for Mr. Conyers. (Conyers at 237.) A physician's assistant wrote another prescription for pain medication (Acetaminophen 650 mg) on May 20, 2013. (Conyers at 229.) Another

prescription for pain medication (Ibuprofen 600 mg) was written on August 30, 2013. (Conyers at 429.)

Mr. Conyers submitted a Health Service Request on August 30, 2013, complaining that he had not received any of the medication prescribed on August 30, 2013. (Conyers at 46.) There is no indication that a nurse examined Mr. Conyers or provided him with any pain medication in response to this complaint.

Mr. Conyers submitted another Health Service Request on September 2, 2013. (Conyers at 198.) Again, there is no indication that a nurse examined Mr. Conyers or provided him with any pain medication in response to this complaint. The records show that on September 25, 2013, Mr. Conyers was referred to a dentist for a "routine" appointment on November 6, 2013. (Conyers at 198.) A physician's assistant wrote a prescription for a 4 week supply of pain medication (Ibuprofen 800 mg) on September 3, 2013. (Conyers at 234, 271.) The physician's assistant also wrote a prescription for an antibiotic (Amoxicillin 500 mg). (Conyers at 229.)

Mr. Conyers received a prescription for Ibuprofen 800 mg on September 28, 2013. (Conyers at 234, 275.) Nothing in the records shows that Mr. Conyers was ever treated by the oral surgeon for his extraction. Class counsel has informed me that Mr. Conyers was transferred to the Illinois Department of Corrections on January 23, 2014.

### 14. Bernard Crenshaw

Bernard Crenshaw complained of a toothache in a Health Service Request dated June 13, 2012. (Crenshaw at 28.) The request bears a notation that it was reviewed on June 13, 2012 and a dental appointment was requested for July 5, 2012. (Crenshaw at 104.) Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to this complaint.

Mr. Crenshaw submitted another Health Service Request on June 13, 2012. (Crenshaw 104.) Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to this complaint.

Mr. Crenshaw submitted a third Health Service Request on June 21, 2013. (Crenshaw at 105.) This complaint was referred to dental, with an appointment date of July 5, 2013, changed to July 13, 2013. (Crenshaw at 255.) Nothing in the record shows that a nurse examined Mr. Conyers or provided him with any pain medication in response to this complaint.

There is no record that Mr. Crenshaw was seen by a dentist on July 13, 2013.

-12-

Mr. Crenshaw filed another Health Service Request on July 28, 2012, complaining about a toothache related to a gaping hole in the bottom back tooth on his right hand side. (Crenshaw at 30.) Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to this complaint.

Mr. Crenshaw filed additional Health Service Requests about dental problems on July 29, 2012 (Crenshaw 30), August 25, 2012 (Crenshaw 33), and September 5, 2012. (Crenshaw at 35.) Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to any of these complaints.

Mr. Crenshaw was treated by a dentist on September 13, 2012. (Crenshaw at 68, 69, 117, 263, and 243.) A dentist extracted tooth number 31 (Crenshaw at 69, 117), and provided Mr. Crenshaw with a prescription for an analgesic (Ibuprofen 600 mg). (Crenshaw at 243.)

On September 20, 2012, Mr. Crenshaw filed a Health Service Request, complaining about a post-operative complication. (Crenshaw at 36.) It is important that this type of complaint (which Mr. Crenshaw described as "socket has not closed, is very painful and swollen and gum meat need to be stitched and cutoff," Crenshaw at 36) be promptly assessed by a dental examination because it may an indication of a healing problem or a soft tissue infection. There is no indication in the record that a dentist reviewed this complaint or provided any post-operative treatment to Mr. Crenshaw.

Mr. Crenshaw continued to complain about post-operative complications in Health Service Requests he submitted on October 7, 2012 (Crenshaw at 38, 39) and October 11, 2012. (Crenshaw at 129, 266.) The records do not show that either of these complaints resulted in any dental treatment.

Mr. Crenshaw complained of dental pain in a Health Service Request he submitted on December 18, 2012. (Crenshaw at 40, 41.) He was seen the next day by a nurse, who assessed Mr. Crenshaw's pain as level 5, and provided him with Tylenol "given per protocol." (Crenshaw at 135.) I do not know what this protocol requires. I was unable to find any prescription written on or about December 19, 2012 in the medical records for an analgesic. This Health Service Request resulted in a dental appointment for December 26, 2012 (Crenshaw at 138), which was subsequently changed to January 17, 2013, and then advanced to December 21, 2012. (Crenshaw at 268.)

Mr. Crenshaw was seen by a dentist on December 24, 2012 for follow-up concerning the extraction that had been performed on September 13, 2012. (Crenshaw 143.)

-13-

Mr. Crenshaw again complained of dental pain in a Health Service Request he filed on January 22, 2013. (Crenshaw at 45.) Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to this complaint. The records show that a dental appointment was scheduled for March 28, 2013. (Crenshaw at 45.)

On March 6, 2012, a physician's assistant wrote a prescription for a two week supply of pain medication (Ibuprofen 600 mg). (Crenshaw at 243.)

On March 30, 2013, Mr. Crenshaw submitted a Health Service Request stating that he had a painful broken upper left tooth. (Crenshaw at 50.) Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to this complaint. There is a notation that the complaint was reviewed on April 4, 2014, and an appointment scheduled for April 24, 2013. (Crenshaw at 50.)

Mr. Crenshaw submitted another Health Service Request on April 5, 2013, complaining about untreated dental pain. (Crenshaw at 51.) He wrote:

> Since July 5, 2010 my upper left tooth has been crooked and is causing me very bad pain. And I'd been putting medical forms in continuously about having the tooth extracted. On December 31, 2012, the Dentist looked at it but only said OK, but did not do anything. On March 30, 2013, my upper left tooth broke off and the parts of the tooth where the gaping hole was at are now in a plastic medicine bag. But there is still some of the tooth in my mouth/gums and it keeps chipping off and is causing me excruciating pain. The generic aspirin that were given to me in the dispensary on March 30, 2013 are not doing nothing to stop the pain! The tooth needs to be extracted. Immediately please.

Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to this Health Service Request.

Mr. Crenshaw submitted a grievance, 13X1183, on April 14, 2013. It was reviewed on April 16, 2013. I do not know what Mr. Crenshaw stated in the grievance.

Mr. Crenshaw submitted another Health Service Request on May 8, 2013, continuing to complain about his severe pain. (Crenshaw at 56.) He noted that he had been scheduled but not called for a dental appointment on April 24, 2013. *Id.* There is a notation in the medical records that Mr. Crenshaw had been seen in dental on May 10, 2013. *Id.* Mr. Crenshaw was treated by a dentist on May 10, 2013 who extracted an erupted tooth and received a prescription for a one week supply of analgesic (Ibuprofen 600 mg). (Crenshaw 70, 71, 169, 244, 278.) This is the first time that Mr. Crenshaw had seen a

dentist or received a prescription for pain medication since he began to complain about his painful broken tooth on March 30, 2013.

Mr. Crenshaw began to complain about pain in his upper left back tooth on May 24, 2013. (Crenshaw at 57.) Nothing in the record shows that a nurse examined Mr. Crenshaw or provided him with any pain medication in response to this complaint. The records show that a dental appointment was scheduled for June 7, 2013. (Crenshaw at 57.) The records show that Mr. Crenshaw was next seen by a dentist on July 15, 2013 (Crenshaw at 193, 253, 282), and that the dental treatment had been ordered by Dr. Townsend on July 3, 2013 (Crenshaw at 281) in response to a grievance, 13X2276, Mr. Crenshaw had filed on June 29, 2013. The record does not show that any pain medication was prescribed for Mr. Crenshaw from May 24, 2013 until he saw a dentist on July 15, 2013.

### 15. Larry Williams

Larry Williams complained about a toothache to a nurse on November 15, 2009. (Williams at 382.) The nurse's progress notes for that encounter state as follows (Williams at 382):

> "Meds today c/o toothache Tylenol 650 mg given. Asked about tooth cleaning; told patient only have extractions for emergencies …

Mr. Williams was again seen by a nurse on November 18, 2009. (Williams at 383.) The notes for that encounter recite that Mr. Williams complained about pain in teeth and asked about teeth cleaning. *Id.* The nurse provided Mr. Williams with Tylenol 650 mg. *Id.*

The next progress note is for January 20, 2010. (Williams at 246.) This note recites "Dental pain x2. Refer to dental." *Id.* A prescription for a four week supply of an analgesic (Naprosyn 375 mg) was written that day. (Williams at 178.)

The medical records show that on February 3, 2010, a consultation request was made for Mr. Williams for a toothache. (Williams at 277.) A prescription for Naprosyn 375 mg and a mouth rinse (Peridex) was written that same day. (Williams at 178.) These prescriptions were for a three week period. *Id.*

Mr. Williams submitted a Health Services Request on March 2, 2010, complaining that his teeth are bleeding, and that he was experiencing pain from wisdom teeth coming in. (Williams at 259.) Mr. Williams wrote in that Health Services Request that he had been in serious pain for months. *Id.* The provider notes for that Health Services Request state: "schedule dental ASAP 3/4/10." *Id.*

-15-

Mr. Williams submitted another Health Services Request on March 6, 2010, complaining that his teeth were bleeding, that he would not eat, that his gums were swollen, that he could not brush his teeth, and that he had difficulty in speaking. (Williams at 258.) There are no provider notes attached to this Health Services Request.

Mr. Williams submitted another Health Services Request on March 7, 2010, complaining that his teeth were bleeding, his jaw was swollen, and he felt "like he was going to die." (Williams at 257.) Mr. Williams wrote that he had endured this pain for four months. *Id.* There are no provider notes attached to this Health Services Request.

Mr. Williams filed a grievance on March 16, 2010. I was provided with a copy of this grievance, which indicated that Mr. Williams would be able to see a dentist on May 5, 2010. (Grievance 210X779.)

Mr. Williams submitted Health Services Requests on March 30, 2010 (Williams at 256) and April 24, 2010 (Williams at 225). Each Request complained about pain.

Mr. Williams filed a grievance on April 28, 2010, 2010x1265. I was provided with a copy of this grievance, which, like his earlier grievance, indicated that Mr. Williams would be able to see a dentist on May 5, 2010.

Mr. Williams received a dental examination from Brenda Taylor, DMD on May 5, 2010. (Williams at 281-82.) The Dental Treatment Note mentions "sensitive, bleeding gums" (although the diagnosis, of "aggressive gingivitis" is not mentioned) and recommended that return to the clinic in one week (Id. at 282.) Mr. Williams indicated on the Dental History Form that the reason for today's visit was "my tooth". (Williams at 450.) The tooth charting has no indication of any other dental problem including any mention of tooth #3. (Id. at 282.)

Dr. Taylor reports in the declaration filed as ECF #251-9 that she discovered on May 5, 2010 that Mr. Williams had aggressive Gingivitis. (Taylor Declaration, par. 6.) The medical records for May 5, 2010 show that Mr. Williams was to return to the dental clinic in one week. (Williams at 282.) This is consistent with the complaint Mr. Williams included on his appeal from the disposition of his grievance 2010x0779. In that appeal, dated May 14, 2010, Mr. Williams wrote the following:

> The Dentist didn't do anything when I saw them 5-5-10. They told me they would call me back but they have not and I still have the same problem.

Mr. Williams filed his third grievance on July 16, 2010. 2010x2044. The response to this grievance was that Mr. Williams was scheduled to see a dentist on August 16, 2010.

-16-

Mr. Williams filed his fourth grievance on August 10, 2010, 2010x2121, making the following complaint:

> To whom this may concern: I have put in a thousand amount of slips to the Dentist. And this does make sense for two months. I have been in pain I mean real pain. I have a broken tooth in my mouth that bleeds all the time. More so when I eat and it's hard to sleep at night and they won't give me pain pills only Tylenol's and they don't help. Please can you call me down A.S.A.P. Thank you very much.

The response to this grievance was that Mr. Williams had an appointment with dental on September 1, 2010.

Mr. Williams was seen by a dentist on August 25, 2010. (Williams at 280.) Dental radiographs were taken. (Williams at 278.) I have not been provided with an opportunity to review the radiographs. Mr. Williams received a prescription for a one week supply of Amoxicillin 500 mg  Ibuprofen 600 mg, and Peridex mouth rinse on August 25, 2010. (Williams at 165.)

On September 2, 2010, Mr. Williams was seen at the Emergency Room, where he was found to have a dental abscess on tooth number 3. (Williams at 20.) The ER record shows that the abscess was "resolving." This means that the abscess was getting better. It does not mean that the cause of the abscess had gone away or no longer required dental care. That same day Mr. Williams received a prescription for a one week supply of Amoxicillin 500 mg, Motrin 600 mg, and an oral rinse (Peridex). (Williams at 63-65.) Mr. Williams received a prescription for a one week supply of another analgesic, acetaminophen 650 mg, on September 29, 2010. (Williams at 54.)

I am aware that Dr. Taylor states in her declaration that "On information and belief, Mr. Williams [did not request to see the dentist after August 25, 2010.]" (Taylor Declaration, par. 7.) This belief is inconsistent with the emergency room visit on September 2, 2010 and the existence of a dental abscess on tooth number 3. In addition, counsel has informed me that, following his transfer to the Illinois Department of Corrections on January 31, 2011, Mr. Williams received dental care, including the extraction of tooth number 3.

## IV.   QUALIFICATIONS

I have been a dentist for over 40 years and have had careers in the military, dental education, and correctional dentistry consulting. I am certified by the American Board of Dental Public Health, one of the nine specialties recognized by the American Dental Association. Moreover, I have extensive experience auditing educational, military, and correctional programs. A true and correct copy of my curriculum vitae is attached.

-17-

During my 22-year military career, I had clinical, research, administrative, and command assignments in the United States, Okinawa, and Germany. Among my assignments, I served as the Army Surgeon General's Dental Public Health Consultant and wrote dental public health policy, procedures, and technical guidance. As Commander of the 86th Medical Detachment, I directed dental care delivery for the Army in North Central Germany and operated six clinics with 20 dentists and 60 ancillary personnel. I was responsible for the dental health of 25,000 soldiers and family members. I retired from the Army with the rank of Colonel.

I have written 55 peer-reviewed articles and three book chapters, have served as a reviewer for several dental journals, and I was on the editorial board of the Journal of Public Health Dentistry, the official journal of my specialty. Four publications relate to correctional dentistry, one of which involved the treatment of toothaches in a correctional setting. I was a full-time faculty member at Baylor College of Dentistry. In addition to providing clinical supervision to dental students, I was Director of the graduate program in Dental Public Health. I retired from my academic position after 15 years as a Professor with tenure. I remain on faculty as an Adjunct Professor in the Department of Periodontics.

I have served as a correctional dentistry consultant, court expert / representative, and expert witness several times since 2005. As a Court Expert in two major class action settlements involving prisoner dental care, I developed an audit process based on clinical records review and performed system-wide audits of programs in California (roughly 170,000 inmates in 33 institutions) and Ohio (roughly 50,000 inmates in 30 institutions) over a multi-year period. Among the clinical dimensions I audited was the treatment of dental infections. Moreover, I have performed clinical dentistry and supervised dental and dental hygiene students at the Dallas County Juvenile Detention Center. I have been an invited speaker on correctional dentistry at dental schools and schools of public health.

## V.   PREVIOUS TESTIMONY

I testified (at deposition) on June 5, 2008 in *Flynn v. Doyle* (E.D. WI 06-cv-537-RTR), a class action lawsuit challenging the constitutionality of health care provided at a Wisconsin women's prison. I also testified (at deposition) on February 1, 2013 in *Farmer v. Miles and Thomas* (N.D.Ill. 10-cv-5055).

## VI.   STATEMENT OF COMPENSATION

My fee schedule is as follows:

    Travel - $150 / hour

## VI.    STATEMENT OF COMPENSATION

My fee schedule is as follows:

Travel - $150 / hour

File review (on or off-site), research, report writing, telephonic and on-site consultation, trial or deposition preparation - $300 / hour

Deposition / trial - $500 / hour

Out-of-pocket expenses (*e.g.*, travel, meals, postage, and mailing) reimbursed as costs

I have to date worked 42.75 hours in this matter, including 13:00 hours specifically

directed towards the application for a preliminary injunction.

## VII.    REFERENCES

Shulman and Sauter, TREATMENT OF ODONTOGENIC PAIN IN A CORRECTIONAL SETTING, 18 Journal of Correctional Health Care 62 (2012).

## VIII.    CONCLUSION

All of my opinions contained herein are based upon my review of the pertinent medical records and depositions and my training, education and experience, and are offered to a reasonable degree of dental probability.

Dated: January 30, 2014

JAY D. SHULMAN, DMD, MA, MSPH

-17-

## UNSWORN DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the following statements are true:

1.     My name is Jay Shulman.

2.     The statements and opinion I set out in my foregoing report are, to the best of my knowledge, information, and belief, true and correct.

Executed on January 30, 2013

Jay D. Shulman

-18-

*Curriculum Vitae* Jay D. Shulman - Prepared January 30, 2014

# CURRICULUM VITAE - JAY D. SHULMAN

## PERSONAL INFORMATION

| | |
|---|---|
| Address: | 9647 Hilldale Drive, Dallas, Texas  75231 |
| Telephone: | (214) 923-8359 |
| E-mail: | jayshulman@sbcglobal.net |

## EDUCATION

| | |
|---|---|
| 1982 | Master of Science in Public Health<br>University of North Carolina |
| 1979 | Master of Arts in Education and Human Development<br>George Washington University |
| 1971 | Doctor of Dental Medicine<br>University of Pennsylvania |
| 1967 | Bachelor of Arts (Biology)<br>New York University |

## POSITIONS HELD

### Academic

| | |
|---|---|
| 2007 – | Adjunct Professor, Department of Periodontics<br>Baylor College of Dentistry |
| 2003 - 07 | Professor (Tenure), Department of Public Health Sciences<br>Baylor College of Dentistry (retired October, 2007) |
| 1993 - 03 | Associate Professor, Department of Public Health Sciences<br>Baylor College of Dentistry |

### Military

| | |
|---|---|
| 1971 - 93 | Active duty, U.S. Army. Retired July 1993 in grade of Colonel. |
| 1990 - 93 | Chief, Dental Studies Division & Interim Commander (1993),<br>US Army Health Care Studies and Clinical Investigation Activity<br><br>Directed Army Dental Corps' oral epidemiologic and health services research. Supervised a team of public health dentists, statisticians, and management analysts. Designed and conducted research in oral epidemiology, healthcare management and policy. |
| 1987 - 90 | Director, Dental Services Giessen (Germany) Military Community and Commander, 86th Medical Detachment. Public Health & Preventive Dentistry Consultant, US Army 7th Medical Command. |

Page **1** of **11**

*Curriculum Vitae* Jay D. Shulman - Prepared January 30, 2014

Directed dental care for Army in North Central Germany. Operated 6 clinics with 20 dentists and 60 ancillary personnel. Responsible for the dental health of 25,000 soldiers and family members and for providing dental services during wartime using portable equipment. Provided technical supervision of public health and preventive dentistry programs for the Army in Europe.

1984 - 87   Chief, Dental Studies Division US Army Health Care Studies & Clinical Investigation Activity. Public Health & Preventive Dentistry Consultant to Army Surgeon General.

Directed Army Corps' oral epidemiologic and health services research. Supervised a multi-disciplinary team of public health dentists, statisticians, and management analysts. Designed and conducted research in oral epidemiology, healthcare management and policy. Technical supervision of all Army public health and preventive dentistry programs worldwide.

1982 - 84   Assistant Director for Research, US Army Institute of Dental Research.

Responsible for Management of extramural research program, performing epidemiologic research, and teaching biostatistics and epidemiology to Walter Reed Army Medical Center dental residents.

1980 - 82   Full-time graduate student (Army Dental Public Health Training Fellowship) at the School for Public Health, University of North Carolina at Chapel Hill.

1976 - 80   Director, Dental Automation
US Army Tri-Service Medical Information Systems Agency
Walter Reed Army Medical Center, Washington, DC

Directed a team of computer scientists in the development of an automated management system for the Army dental clinics and upper management.

1975 - 76   Clinical Dentist, Pentagon Dental Clinic, Washington, DC

1974 - 75   Clinical Dentist, US Army Hospital Okinawa, Japan

1971 - 74   Clinical Dentist, US Army Dental, Clinic Fort McPherson, Georgia

## BOARD CERTIFICATION AND STATE LICENSE

### Dental Licensure.

Texas #17518 (retired)

### Board Certification.

Certified by the American Board of Dental Public Health since 1984 (active).

Plaintiffs' Exhibit 1

*Curriculum Vitae* Jay D. Shulman - Prepared January 30, 2014

## RESEARCH - AREAS OF INTEREST

Oral epidemiology, health services research, health policy, military and correctional health.

## RECENT FUNDED RESEARCH

2010 - 12    Instrument system and technique for minimally invasive periodontal surgery (MIS). National Institutes of Health SBIR Grant 2R44DE017829-02A1 ($368,270). Principal Investigator: Dr. Stephen Harrel. Role: Paid consultant.

## CURRENT SOCIETY AND ORGANIZATION MEMBERSHIPS

1982 –    American Association of Public Health Dentistry

2011 –    Texas Oral Health Coalition

## PROFESSIONAL ACTIVITIES

### Invited Presentations.

Apr 2012    Public Health, Public Policy, And Legal Issues Associated with Health Care in Prisons: A Dental Perspective. Presented at the University of Texas Health Science Center, San Antonio.

Apr 2009    Public Health, Public Policy, And Legal Issues Associated with Health Care in Prisons: A Dental Perspective. Presented at the University of Iowa.

Mar 2008    Public Health and Public Policy Issues Related to Dental Care in Prisons. Presented at University of North Carolina School of Public Health, Chapel Hill, NC.

Jun 2007    Characteristics of Dental Care Systems of State Departments of Corrections. Presented to annual meeting of Federal Bureau of Prisons dentists, Norman OK.

Jun 2006    Public Health Aspects of Correctional Dentistry. Presented to annual meeting of Federal Bureau of Prisons dentists, Fort Worth, TX.

Oct 2006    Opportunities for Dental Research Using the National Health and Nutrition Examination Survey. Indiana University School of Dentistry.

Aug 2006    Dental Public Health and Legal Issues Associated with Correctional Dentistry. Federal Bureau of Prisons.

Dec 2005    Opportunities for Faculty Research Using Secondary Data. Frontiers in Dentistry Lecture. University of the Pacific School of Dentistry.

Feb 2005    Advanced Education in Dental Public Health. University of Missouri, Kansas City, School of Dentistry.

*Curriculum Vitae* Jay D. Shulman - Prepared January 30, 2014

## Consultant Activities

| | |
|---|---|
| 2012 – | Expert Witness. *Parsons et al. v. Ryan et al.* 2:12-cv-00601-NVW (D. AZ). |
| 2012 – | Expert Witness. *Daryl Farmer v. Gwendolyn Miles, et al.* 10-cv-05055 (N.D. IL), Eastern Division. Deposed February 1, 2013. |
| 2012 – | Expert Witness. *John Smentek et al. v. Thomas Dart, Sheriff of Cook County et al.* 1:09-cv-00529 (N.D. IL). |
| 2012 – | Consultant. Quentin Hall et al. v. Margaret Mimms, Sheriff of Fresno County et al. 1:11-cv-02047-LJO-BAM (E.D. CA) |
| 2009 - 11 | Expert Witness. Inmates of the *Northumberland County Prison, et al. v. Ralph Reish, et al.* 08-CV-345 (M.D. PA). |
| 2007 - 09 | Expert Witness. *Flynn v. Doyle* 06-C-537-RTR (E.D.WI.) Deposed June 5, 2008. |
| 2006 - 12 | Rule 706 Expert (monitor) and Court Representative, *Perez v. Tilton* (*Perez v. Cate*) federal class action lawsuit settlement. C05-5241 JSW (N.D. CA). |
| | Responsible to *Perez* Court for coordinating remedies between dental (*Perez v. Tilton / Cate*), medical (*Plata v. Schwarzenegger*), and mental health (*Coleman v. Schwarzenegger*). Monitored compliance with *Perez* stipulated injunction. Monitoring completed June 2012. |
| 2005 - 10 | Rule 706 Expert (monitor), *Fussell v. Wilkinson* federal class action lawsuit settlement. 1:03-cv-00704-SSB (S.D. OH). |
| | Performed initial fact finding, provided dental input to stipulated injunction and monitored compliance. Monitoring completed October 2010. |
| 1999 - 03 | Editorial Board *Journal of Public Health Dentistry* |
| 1996 - 05 | Editorial Board, Mosby's Dental Drug Reference |
| 1993 - 07 | *Ad hoc* reviewer: Journal of Public Health Dent (10); Journal of American Dental Association (6); Journal of Dental Education (3); Pediatrics (1); Community Dentistry and Oral Epidemiology(3); Cleft Palate Craniofacial Journal (3); Pediatrics International (3); Journal of Dental Research (2); Caries Research (4); Oral Diseases (2); Journal of Oral Rehabilitation (2); British Dental Journal (3) |

## Teaching

<u>Predoctoral</u>

| | |
|---|---|
| 1993 - 2007 | Director, Principles of Biostatistics |
| 1993 - 2007 | Lecturer, Applied Preventive Dentistry |
| 1993 - 2007 | Clinical Supervisor, Preventive Dentistry |

Plaintiffs' Exhibit 1

*Curriculum Vitae* Jay D. Shulman - Prepared January 30, 2014

| 2006 - 2007 | Clinical Supervisor and Care Provider, Dallas County Juvenile Detention Center Dental Clinic |
| 1993 - 2005 | Director, Epidemiology & Prevention |
| 1995 - 2003 | Director, Dental Public Health |

Postdoctoral

| 2007 – | Research mentor, Department of Periodontics, Baylor College of Dentistry |
| 1994 - 2007 | Director, Dental Public Health Residency |
| 1994 - 2007 | Lecturer, Research Methods |
| 2001 - 2006 | Director, Applied Biostatistics |

## PUBLICATIONS

### Peer-Reviewed (55)

1. Bansal R, Bolin KA, Abdellatif HM, Shulman JD. Knowledge, Attitude and use of fluorides among dentists in Texas. *J Contemp Dent Pract* 2012;13(3):371-375.

2. Shulman JD, Sauter DT. Treatment of odontogenic pain in a correctional setting. *J Correctional Health Care* (2012) 18:1, 58 - 65.

3. Barker TS, Cueva MA, Rivera-Hidalgo F, Beach MM, Rossman JA, Kerns DG, Crump TB, Shulman JD. A comparative study of root coverage using two different acellular dermal matrix products. *J. Periodontology* (2010) 81:11, 1596-1603.

4. Maupomé G, Shulman JD, Medina-Solis CE, Ladeinde O. Is there a relationship between asthma and dental caries? A critical review of the literature. *Journal of the American Dental Association* 2010;141(9):1061-1074.

5. Puttaiah R, Shulman JD, Youngblood D, Bedi R, Tse E, Shetty S, Almas K, Du M. Sample infection control needs assessment survey data from eight countries. *Indian Dental Journal* 2009; 59, 271-276.

6. Fransen JN, He J, Glickman GN, Rios A, Shulman JD, Honeyman A. Comparative Assessment of ActiV GP/Glass Ionomer Sealer, Resilon/Epiphany, and Gutta-Percha/AH Plus Obturation: A Bacterial Leakage Study. *Journal of Endodontics* 2008; 34(6), 725-27.

7. Beach MM, Shulman JD, Johns G, Paas J. Assessing the viability of the independent practice of dental hygiene. *J Public Health Dent.2007;*67(4):250-4.

8. Blackwelder A, Shulman JD. Texas dentists' attitudes towards the dental Medicaid program. *Pediatr Dent* 2007;29:40-4.

9. Massey CC, Shulman JD. Acute ethanol toxicity from ingesting mouthwash in children younger than 6 years of age, 1989-2003. *Pediatr Dent*. 2006; 28:405-409.

*Curriculum Vitae* Jay D. Shulman - Prepared January 30, 2014

10. Shulman JD, Carpenter WM. Prevalence and risk factors associated with geographic tongue among US adults. *Oral Dis*. 2006;12:381-386.

11. Clark DC, Shulman JD, Maupomé G, Levy SM. Changes in dental fluorosis following cessation of water fluoridation. *Community Dent Oral Epidemiol*. 2006;34: 197-204.

12. Shulman JD, Sutherland JN. Reports to the National Practitioner Data Bank involving dentists, 1990-2004. *J Am Dent Assoc* 2006;137:523-528.

13. Holyfield LJ, Bolin KA, Rankin KV, Shulman JD, Jones DL, Eden BD. Use of computer technology to modify objective structured clinical examinations. *J Dent Educ* 2005;10:1133-1136.

14. Benson BW, Shulman JD. Inclusion of tobacco exposure as a predictive factor for decreased bone mineral content. *Nicotine Tob Res* 2005;719-724.

15. Shulman JD, Rivera-Hidalgo F, Beach MM. Risk factors associated with denture stomatitis in the United States. *J Oral Path Med* 2005;340-346.

16. Shulman JD. Is there an association between low birth weight and caries in the primary dentition? *Caries Res* 2005;39:161-167.

17. Shulman JD. The prevalence of oral mucosal lesions in U.S. children and youth. *Int J Pediatr Dent.*2005;15:89-97.

18. Bolin KA, Shulman JD. Nationwide dentist survey of salaries, retention issues, and work environment perceptions in community health centers. *J Am Dent Assoc* 2005;136 (2): 214-220.

19. Shulman JD. Recurrent herpes labialis in US children and youth. *Community Dent Oral Epidemiol* 2004; 32: 402-9.

20. Shulman JD. An exploration of point, annual, and lifetime prevalence in characterizing recurrent aphthous stomatitis in USA children and youth. *J Oral Path Med*. 2004;33: 558.66.

21. Shulman JD, Beach MM, Rivera-Hidalgo F. The prevalence of oral mucosal lesions in U.S. Adults: Data from the Third National Health and Nutrition Examination Survey. *J Am Dent Assoc* 2004;135:1279-86.

22. Bolin KA, Shulman JD. Nationwide survey of dentist recruitment and salaries in community health centers. *J. Health Care for the Poor and Underserved* 2004; 15:161-9.

23. Shulman JD, Maupomé G, Clark DC, Levy SM. Perceptions of tooth color and dental fluorosis among parents, dentists, and children. *J Am Dent Assoc* 2004;135(5):595-604.

24. Rivera-Hidalgo F, Shulman JD, Beach MM. The association of tobacco and other factors with recurrent aphthous stomatitis. *Oral Dis.* 2004;10:335-345.

Plaintiffs' Exhibit 1

25. Shulman JD, Peterson J. The association between occlusal characteristics and incisal trauma in individuals 8 - 50 years of age. *Dental Traumatology* 2004; 20: 67-74.

26. Buschang PH, Shulman JD. Crowding in treated and untreated subjects 17-50 years of age. *The Angle Orthodontist* 2003; 73(5):502-8.

27. Maupomé G, Shulman JD, Clark DC, Levy SM. Socio-demographic features and fluoride technologies contributing to higher TFI scores in permanent teeth of Canadian children. *Caries Res* 2003; 37(5):327-34.

28. Shulman JD, Nunn ME, Taylor SE, Rivera-Hidalgo F. The prevalence of periodontal-related changes in adolescents with asthma: Results of the Third Annual National Health and Nutrition Examination Survey. *Pediatr Dent* 2003; 25(3):279-84.

29. Makrides NS, Shulman JD. Dental health care of prison populations. *J Corr Health Care* 2002; 9(3):291-306.

30. Shulman JD, Ezemobi EE, Sutherland JN. Louisiana dentists' attitudes toward the Dental Medicaid program. *Pediatr Dent* 2001; 23(5):395-400.

31. Shulman JD, Taylor SE, Nunn ME. The association between asthma and dental caries in children and adolescents: A population-based case-control study. *Caries Res* 2001; 35:4:240-246.

32. Maupomé G, Shulman JD, Clark DC, Levy SM, Berkowitz J. Tooth-surface progression and reversal changes in fluoridated and no-longer-fluoridated communities over a 3-year period. *Caries Res* 2001; 35:2:95-105.

33. Trautmann G, Gutmann JL, Nunn ME, Witherspoon DE, Shulman JD. Restoring teeth that are endodontically treated through existing crowns. Part I: Survey of pulpal status on access. *Quintessence Int* 2000; 31(10):713-18.

34. Trautmann G, Gutmann JL, Nunn ME, Witherspoon DE, Shulman JD. Restoring teeth that are endodontically treated through existing crowns. Part II: Survey of restorative materials commonly used. *Quintessence Int* 2000; 31(10):719-28.

35. Lalumandier JA, McPhee SD, Riddle S, Shulman JD, Daigle WW. Carpal tunnel syndrome: Effect on Army dental personnel. *Milit Med* 165:372-78,May 2000.

36. McFadyen JA, Shulman JD**.** Orofacial injuries in youth soccer. *Pediatr Dent* 1999; 21:192-96.

37. Cederberg RA, Fredricksen NL, Benson BW, Shulman JD. Influence of the digital image display monitor quality on observer performance. *Dentomaxillofacial Radiology* 1999; 28:203-7.

38. Shulman JD, Niessen LC, Kress GC, DeSpain B, Duffy R. Dental public health for the 21st century: Implications for specialty education and practice. *J Public Health Dent* 1998; 58 (Suppl 1):75-83.

39. Cederberg RA, Fredricksen NL, Benson BW, Shulman JD. Effect of different lighting conditions on diagnostic performance of digital film images. *Dentomaxillofacial Radiology* 1998; 27:293-97.

40. Shulman JD, Lewis DL, Carpenter WM. The prevalence of chapped lips during an Army hot weather exercise. *Milit Med* 1997; 162:817-19.

41. Shulman JD, Wells LM. Acute toxicity due to ethanol ingestion from mouthrinses in children less than six years of age. *Pediatr Dent* 1997; 19(6):404-8.

42. Kress G, Shulman JD. Consumer satisfaction with dental care: where have we been, where are we going? *J Am Coll Dent* 1997; 64 (1):9-15.

43. Shulman JD, Wells LM. Acute toxicity in children under the age of six from ingesting home fluoride products: an update. *J Public Health Dent* 1995; 57(3):150-8.

44. McFadyen JA, Seidler KL, Shulman JD, Wells, LM. Provision of free and discounted dental services to selected populations: A survey of attitudes and practices of dentists attending the 1996 Dallas Midwinter Meeting. *Texas Dent J* 1996; 113 (12):10-18.

45. Shulman JD. Potential effects of patient opportunity cost on dental school patients. *J Dent Educ* 1996; 60 (8):693-700.

46. Shulman JD, Lalumandier JA, Grabenstein JD. The average daily dose of fluoride: a model based on fluid consumption. *Pediatr Dent* 1995; 17 (1):13-18.

47. Solomon ES, Hasegawa TK, Shulman JD, Walker PO. An application: the cost of clinic care by dental students and its relationship to clinic fees. *J Dent Educ* 1994; 58 (11-12):832-5.

48. Shulman JD, Williams TR, Lalumandier JA. Treatment needs and treatment time for soldiers in Dental Fitness Class 2. *Milit Med* 159, 2:135-138, 1994.

49. Shulman JD, Williams TR, Tupa JE, Lalumandier JA, Richter NW, Olexa BJ. A comparison of dental fitness classification using different class 3 criteria. *Milit Med* 1994; 159 (1):5-10.

50. Amstutz RD, Shulman JD. Perceived needs for dental continuing education within the Army Dental Care System. *Milit Med* 1994; 159 (1):1-4.

51. Shulman JD, Carpenter WM, Lewis DL. The prevalence of recurrent herpes labialis during an Army hot weather exercise. *J Public Health Dent* 1992; 52 (4):198-203.

52. Brusch WA, Shulman JD, Chandler HT. Survey of Army dental practice. *J Am Coll Dent* 1987; 54 (1):54-63.

53. Lewis DM, Shulman JD, Carpenter WM. The prevalence of acute lip damage during a US Army cold weather exercise. *Milit Med* 1985; 150 (2):87-90.

54. Freund DA, Shulman JD. Regulation of the professions, results from dentistry. In Scheffler, Richard (ed.). *Advances in Health Economics and Health Services Research IV* 1984; 5(1):161-180.

55. Baumgartner JC, Brown CM, Mader CL, Peters DD, Shulman JD. Scanning electron microscopic evaluation of root canal irrigation with saline, sodium hypochlorite, and citric acid. *J Endodon.* 1984; 10 (11):525-531.

## Book Chapters Monographs, and Non-Peer Reviewed Articles

1. Shulman JD. Structural Reform Litigation in Prison Dental Care: The *Perez* Case. *Correctional Law Reporter* 25(2) August-September 2013.

2. Shulman JD, Gonzales CK. Epidemiology of Oral Cancer. In Cappelli DP, Mosley C, eds. Prevention in Clinical Oral Health Care. Elsevier (2008), 27-43.

3. Cappelli DP, Shulman JD. Epidemiology of Periodontal Diseases. In Cappelli DP, Mosley C, eds. Prevention in Clinical Oral Health Care. Elsevier (2008), 14-26.

4. Shulman JD, Cappelli DP. Epidemiology of Dental Caries. In Cappelli DP, Mosley C, eds. Prevention in Clinical Oral Health Care . Elsevier (2008), 2-13.

5. Shulman JD, Heng C. Meth Mouth: What We Know and What We Don't Know. *Fortune News* 2006;52(1):12-13.

## Abstracts Presented (25 since 2003)

1. Yanus M, Rivera-Hidalgo F, Solomon E, Roshan S, Shulman J, Rees TD, Hummel S, Boluri A. Relationship of Candida to Oral Factors in Complete Denture Wearers. *J Dent Res 89* (Special Issue):#4445, 2010.

2. Abraham C, Rivera-Hidalgo F, Kessler H, Rees T, SL Cheng, Y, Shulman J, Solomon E. Inter-Examiner Evaluation of Fluorescence in Oral Lesions. *J Dent Res 89* (Special Issue): #4404, 2010.

3. He J, Solomon E, Shulman J, Rivera-Hidalgo F. Treatment Outcome of Endodontic Therapy with or without Patency Filing. *J Dent Res 89* (Special Issue):#1277, 2010.

4. Harrel SK, Rivera-Hidalgo F, Hamilton K, Shulman JD. Comparison of Ultrasonic Scaling Wear and Roughness Produced In Vitro. *J Dent Res* 87 (Special Issue): # 1018, 2008.

5. Harrel SK, Rivera-Hidalgo F,' Shulman JD. Comparison of Surgical Instrumentation Systems for Minimally Invasive Periodontal Surgery. *J Dent Res* 87 (Special Issue): # 1020, 2008.

6. Shulman JD, Bolin KA. Characterizing Disparities in Root Surface Caries in the US. *J Dent Res* 85 (Special Issue): # 476, 2006.

7. Shulman JD, Bolin KA. Is Root Surface Caries Associated with Xerogenic Medications? *J Dent Res* 85 (Special Issue): # 477, 2006.

8. Shulman JD, Carpenter WM. Risk Factors Associated with Geographic Tongue Among US Children. *J Dent Res* 85 (Special Issue): # 1205, 2006.

9. Shulman JD, Bolin KA, Eden BD. Socio-demographic Factors Associated with Root Surface Caries Prevalence. *J Dent Res* 84 (Special Issue): # 3279, 2005.

10. Shulman JD, Carpenter WM, Rivera-Hidalgo F. Prevalence of Hairy Tongue among US Adults. *J Dent Res* 84 (Special Issue): # 1396, 2005.

11. Eden BD, Shulman JD. Root Caries in the US by Tooth Type and Surface. *J Dent Res* 84 (Special Issue): # 2622, 2005.

12. Mobley CC, Shulman JD. Birth Weight and Caries in the Permanent Dentition of Children. *J Dent Res* 84 (Special Issue): # 86, 2005.

13. Puttaiah R, Shulman JD, Bedi R, Youngblood D, Tse E. Infection Control Profile Scores of Practitioners from Eight Countries. *J Dent Res* 84 (Special Issue): # 1026, 2005.

14. Puttaiah R*, Youngblood D*, Shulman JD*, Bedi R*, Tse E. Infection Control Practice Comparisons between Practitioners from Eight Countries. *J Dent Res* 84 (Special Issue): # 3207, 2005.

15. Foyle DM, Rivera-Hidalgo F, Shulman JD, Williams F, Hallmon W, Taylor S. Effect of Selected Therapies on Healing in Rat Calvarial Defects. *J Dent Res* 84 (Special Issue): # 1172, 2005.

16. Puttaiah R, Lin SM, Svoboda KKH, Cederberg R, Shulman JD. Quantitative Comparison of Scanning Electron and Laser Confocal Microscopy Techniques. *J Dent Res* 84 (Special Issue): # 3425, 2005.

17. Holyfield LJ, Bolin KA, Rankin KV, Shulman JD, Jones DL, Eden BD. Use of computer technology to modify objective structured clinical examinations. *J Dent Educ* 69 (1):147 # 113, 2005.

18. Benson BW, Shulman JD. Effect of antepartum natural background radiation on infant low birth weight: a pilot study. American Academy of Oral & Maxillofacial Radiology; Denver, CO. 11/6/04.

19. Shulman JD, Beach MM, Rivera-Hidalgo F. Risk factors associated with denture stomatitis in U.S. adults. *J Dent Res* 83 (Special Issue): # 422, 2004.

20. Puttaiah R, Shulman JD, Bedi R. A multi-country survey data on dental infection control KAP. *J Dent Res*; 82 (Spec Issue):# 3394, 2003.

21. Eden BD, Shulman JD. Perceived need for denture care and professional assessment of dentures. *J of Dent Res* 83 (Special Issue): # 1604.

22. Benson BW, Shulman JD. Inclusion of tobacco exposure as a predictive factor for decreased bone mineral content. *Oral Surg, Oral Med, Oral Pathol, Oral Radiol & Endo* 97(2*)*: 266-267.

23. Eden BD, Shulman JD. Factors influencing self-perceived need for periodontal therapy: Data from the Third National Health and Nutrition Survey (NHANES III). *J Dent Res* 2003; 82(Spec Issue):#0481.

24. Shulman JD, Beach MM, Rivera-Hidalgo F. The Prevalence of oral mucosal lesions among US adults: Results from the Third National Health and Nutrition Survey. *J Dent Res* 82 (Special Issue A): # 1472, 2003.

25.  Rivera-Hidalgo F, Shulman JD, Beach MM. Recurrence of aphthous ulcerations in adult tobacco smokers. *JDent Res* 82 (Special Issue A): # 0759, 2003.

Plaintiffs' Exhibit 1

# Journal of Correctional Health Care

http://jcx.sagepub.com/

**Treatment of Odontogenic Pain in a Correctional Setting**

Jay D. Shulman and Donald T. Sauter

*J Correct Health Care* 2012 18: 62 originally published online 20 November 2011
DOI: 10.1177/1078345811421754

The online version of this article can be found at:

http://jcx.sagepub.com/content/18/1/62

Published by:

$$SAGE

http://www.sagepublications.com

On behalf of:



National Commission
on Correctional Health Care

National Commission on Correctional Health Care

**Additional services and information for *Journal of Correctional Health Care* can be found at:**

**Email Alerts:** http://jcx.sagepub.com/cgi/alerts

**Subscriptions:** http://jcx.sagepub.com/subscriptions

**Reprints:** http://www.sagepub.com/journalsReprints.nav

**Permissions:** http://www.sagepub.com/journalsPermissions.nav

**Citations:** http://jcx.sagepub.com/content/18/1/62.refs.html

>> Version of Record - Jan 27, 2012

OnlineFirst Version of Record - Nov 20, 2011

What is This?

Plaintiffs' Exhibit 1                                    Page 32

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

Journal of Correctional Health Care
18(1) 62-69
© The Author(s) 2012
Reprints and permission:
sagepub.com/journalsPermissions.nav
DOI: 10.1177/1078345811421754
http://jcx.sagepub.com



# Treatment of Odontogenic Pain in a Correctional Setting

## Jay D. Shulman, DMD, MA, MSPH[1], and Donald T. Sauter, DDS, MPA[2]

## Abstract

Odontogenic pain, or toothache, is highly prevalent in correctional facilities. When there is no dental sick call because the dental clinic is closed or the facility has no dental clinic, it is critical that midlevel providers and physicians triage and manage these patients until a dentist can resolve the problem. This article explores the etiology and diagnosis of toothache, presents the authors' opinion of the standard of care for managing these patients, and makes three recommendations: (a) access to timely and definitive dental treatment should be available to all inmates experiencing dental pain, (b) antibiotic use should be limited to patients with frank infection, and (c) progress of patients awaiting a dental appointment should be monitored with frequency consistent with the differential diagnosis.

## Keywords

toothache, correctional dental care, prison, jail, standard of care

Dental care is one of the most important medical needs of inmates.

—*Ramos v. Lamm*, 10th Circuit Court of Appeals, 1980

## Background

Inmates have a higher prevalence of infectious and chronic diseases than the general population, primarily due to poverty and drug abuse (Greifinger, Bick, & Goldenson, 2007). The picture is no different for dental diseases (Clare, 2002), and it is not surprising given the prevalence of risk factors associated with periodontal disease (tobacco use, poor oral hygiene) and caries (refined carbohydrate-rich diet, drug abuse).

This poses a particular problem for institutions such as jails that have a large number of admissions, since many inmates bring with them the result of years of dental neglect. Ironically, it is often

[1] Adjunct Professor, Department of Periodontics, Baylor College of Dentistry, Dallas, TX, USA
[2] Clinical Professor, Department of Restorative Dentistry, West Virginia University School of Dentistry, Morgantown, WV, USA

**Corresponding Author:**
Jay D. Shulman, DMD, MSPH, Department of Periodontics, Baylor College of Dentistry, 9647 Hilldale Drive, Dallas, TX 75231, USA
Email: jayshulman@sbcglobal.net

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

not until they are incarcerated and are deprived of the drugs and alcohol that modified their threshold for pain that they become aware of their dental problems.

Odontogenic pain (acute dental pain or toothache) is a common complaint of inmates requesting an urgent appointment. In facilities that have a dental service, they are seen through an urgent care system usually labeled sick call or health call. This article presents our approach to the diagnosis and treatment of odontogenic pain by medical staff in a correctional environment.

Access to dental services varies widely in correctional facilities. This can be by intention in shorter-term facilities such as jails and detention centers or the result of staffing vacancies or shortages where dental clinics exist. Thus, it is important that all facilities have a triage protocol for use by nondental clinicians to separate patients who need expedited evaluation by a dentist from those who can be appointed on a routine basis after having been stabilized using analgesics and antibiotics, if appropriate.

## Dentistry in the Correctional Environment

The focus of correctional dentistry is the control of acute and chronic dental pain, stabilization of dental pathology, and maintenance or restoration of function. The scope of care in a correctional institution is narrower than that in a private dental practice, and it is often dependent on the length of an inmate's sentence and the facility mission (Makrides, Costa, Hickey, Woods, & Bajuscak, 2006). Despite variations in the scope of care provided, the requirement to treat odontogenic pain is common to all facilities. Moreover, notwithstanding the limited scope of services, the standard for quality is that of the community (Makrides et al., 2006).

The Supreme Court in *Estelle v. Gamble* (1976) held that health care demonstrating deliberate indifference to serious medical needs violates inmates' rights under the U.S. Constitution's Eighth Amendment, which prohibits ''unnecessary and wanton infliction of pain.'' Whether a particular condition is a ''serious medical need'' is fact-specific and courts consider (a) whether a reasonable clinician or patient would perceive it to require treatment, (b) whether it significantly affects daily activities, (c) the extent to which there is chronic and substantial pain, and (d) whether it is likely to worsen without treatment. While there is room to debate whether a particular dental condition is a serious medical need, many toothaches meet these general criteria.

# Odontogenic Pain

Among the possible nontraumatic causes of tooth pain are (a) tooth fractures (often, a tooth that has been weakened splits in the course of normal chewing), (b) pulpitis, (c) caries (decay) extending through the enamel into dentin, (d) dental (periapical or periodontal) abscess, and (e) cellulitis (a diffuse inflammation of the connective tissue caused by a spreading bacterial infection just below the skin surface).

## Etiology of Odontogenic Pain

Pulpitis is an inflammation of the living tissue within the tooth. Reversible pulpitis will resolve when the source of irritation is treated or removed. Typically, reversible pulpitis is attributed to minor tooth fractures, caries, and occlusal (bite) discrepancies and can be treated with analgesics and a dental procedure. These procedures may include removing decay and inserting a new or replacement filling, adjusting the bite, and applying desensitizing agents.

When the inflamed living tissue inside the tooth (the pulp) swells and circulation is compromised, the pulpitis becomes irreversible. A tooth with irreversible pulpitis has a partially vital pulp with inflammation and degeneration that is not expected to improve. Once pulp death (necrosis) occurs,

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

---

S: "This tooth has been hurting for 3 days. It keeps me up at night."

O: The patient points to Tooth #30 and says it has been constantly painful interfering with sleep. Tooth #30 has a large carious lesion. No visible drainage or swelling and the tooth is not mobile. Percussion tests: #30 ++, #31 −, #29 −, #2 −, #3 −, and #4 −.

A: Preliminary diagnosis: Irreversible pulpitis #30.

P: Prescribed ibuprofen 600 mg × 18; one tablet three to four times per day. Refer to the dentist. Follow up patient in 24 hours. Patient informed of diagnosis and told to return to clinic if pain is not controlled or if swelling develops and/or pain increases.

---

**Figure 1.** Sample S.O.A.P. note for patient complaining of a toothache.

the tissue is vulnerable to attack by bacteria, leading to infection at the apex of the tooth. Eventually this infection spreads by resorbing bone and supporting structures.

Tooth fractures involving the pulp will show symptoms of irreversible pulpitis. Probing the area around the tooth will indicate depth of fracture. If the fracture is below the level of the tissue attachment, it is likely the tooth will require extraction.

Periodontal (gum) infections can also cause a toothache. Acute periodontal infections include gingival abscess, periodontal abscess, necrotizing periodontal disease, herpetic gingivostomatitis, periocoronal abscess (pericoronitis), and combined periodontic–endodontic lesions. Resolution of these painful conditions requires physical removal of infectious material or necrotic tissue by a dentist. Antibiotics are not a substitute for this care but may be a component of the overall treatment (American Academy of Periodontology, 2000).

## Treatment of Odontogenic Infections

*Examination.* Determining the cause of a toothache complaint begins with an examination of the patient by a clinician trained in assessment of oral lesions and infections. If a dentist is not present, the examining clinician must be able to gather and convey to a consulting dentist information necessary in determining a preliminary diagnosis and interim management of the pain until a dental procedure can be performed.

*Documentation.* The standard of care is to use a structured approach to document the oral examination. We recommend the use of the S.O.A.P. (subjective, objective, assessment, plan) format to document the patient's chief complaint and the assessment leading to a diagnosis of the dental condition. The S.O.A.P. format is simple and widely used in medicine and dentistry, especially in urgent care settings.

For the subjective section, the examiner asks patient, "What kind of problem are you having?" The response should be recorded verbatim. It is important from a risk management perspective that if the patient mentions a specific tooth or area with swelling, to have the patient point to it and note this. It is important to have the patient describe the type of pain (sharp or throbbing; intermittent or constant).

The objective section contains the physical findings, pulp and percussion tests, examination, and radiographs taken. Tooth numbers of each tooth assessed with the results of tests for vitality, mobility, caries, discoloration, associated edema or exudate, and pain to percussion should be noted. Teeth adjacent and opposing the tooth or teeth indicated by the patient to be painful should also be tested and results noted.

The assessment section contains a list of likely differential diagnoses, and comprises the treatment plan, medications, follow-up, and patient education (see Figure 1).

Plaintiffs' Exhibit 1                                                         Page 35

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

*Nondentist clinician training.* It is important that any nondentist clinician responsible for examining dental patients receive training by a dentist. This training should include recognition of common oral lesions and infections and methods to assess and isolate the source of the dental pain. A flowchart should be provided to assist the nondentist in pinpointing the physical signs and symptoms so the information can be conveyed to an off-site consulting dentist.

*Differential diagnosis.* Due to the multifactorial etiology of "toothache," a clinician must isolate the cause to administer appropriate treatment. For example, a split tooth may cause severe pain; however, it is not the result of infection and is not infected. The first step toward accurate diagnosis is the history and examination. The examination should include (a) measuring vital signs (Makrides et al., 2006; Peterson, 2002); (b) inspecting and palpating lips and salivary glands, the floor of the mouth, and lymph nodes of the neck; (c) assessing the tooth for percussion tenderness and tooth mobility; and (d) evaluating patient for deep space infection (Friedman, 2003). Although an intraoral radiograph is the standard of care in a dental office, it is generally not available in a facility without a dental clinic or when the dental clinic is closed.

Patients with nondental conditions such as sinusitis, otitis media, pharyngitis, peritonsilar abscess, temporomandibular joint syndrome, trigeminal neuralgia, vascular headache, herpes zoster, and cardiac ischemia may present with dental/jaw pain (Friedman, 2003). Sinusitis should be suspected if many or all maxillary posterior teeth on one side are sensitive to percussion or if the patient reports pain on bending over with the head down (Murchison, 2006).

Often, a patient's first examination is performed by a midlevel provider, such as a registered nurse or physician assistant, who performs an assessment. " . . . [I]n correctional settings, [registered] nurses must be able to assess teeth and gum conditions to evaluate abscesses, trauma, and cavity pain" (Burrow, Knox, & Villanueva, 2006). Performing such an assessment is beyond the scope of practice of licensed practical nurses.

The importance of a proper examination for inmates presenting with odontogenic pain was recognized in a stipulated injunction settling *Fussell v. Wilkinson* (2007), a class-action lawsuit challenging the constitutionality of medical and dental care in the Ohio Department of Corrections and Rehabilitation.

> Inmates whose complaints suggest a dentoalveolar infection (e.g., pain in conjunction with swelling) should be seen by a dentist, physician, or appropriately trained MLP [midlevel provider] within 24 hours. Where the complaint includes difficulty in breathing or swallowing, or purulent discharge into the mouth or nose, the inmate should be seen by a dentist, physician, or appropriately trained MLP immediately. MLPs should have documented training in the identifying and stabilizing dentoalveolar infections with antibiotics and analgesics. (*Fussell v. Wilkinson*, 2007)

A stipulated injunction related to conditions of confinement at the Dallas County Jail arising under the Civil Rights of Institutionalized Persons Act requires inmates to receive timely care consistent with generally accepted professional standards.

> Defendants shall ensure that inmates receive adequate dental care consistent with generally accepted professional standards of care and that such care be provided in a timely manner. Defendants shall ensure that inmates with emergency dental needs shall receive such care immediately. Adequate dentist hours will be provided to avoid unreasonable delays in dental care. (*U.S. v. Dallas County*, 2007)

*Odontogenic infections.* Odontogenic infections range from well-localized infections that are easily manageable to those of the fascial spaces that are life-threatening (Makrides et al., 2006). These

Plaintiffs' Exhibit 1

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

infections normally have two origins. The most common is the pulp of the tooth with a bacterial invasion of tissue surrounding the root tip, or apex, while the other is an infection arising from a periodontal pocket. Most odontogenic infections are mild and require minor therapy (Peterson, 2002).

Appropriate treatment for oral infections varies with the type of infection (chronic or acute), dissemination (localized or spreading), and immunocompetency of the patient (intact vs. compromised defense mechanisms due to underlying disease). In an immunocompetent patient or where a systemic disease is controlled by medication, a chronic or acute localized infection can, and should, be managed without the administration of antibiotics. Surgical treatment consisting of incision and drainage with tooth extraction or endodontic therapy are usually sufficient (Kuriyama et al., 2000).

Best practice for management of odontogenic infections is to remove the source of the infection, which is commonly a necrotic pulp or a deep periodontal pocket. Any successful therapy must include drainage of accumulated pus and necrotic debris (Peterson, 2002). Moreover, the source of the infection should be removed while the patient has a therapeutic blood level of an effective antibiotic (Dirks & Terezhalmy, 2004).

If the tooth is to be salvaged, it should be opened and the pulp removed (establishing drainage through the tooth) and, on occasion, an incision and drainage procedure should be performed. Otherwise, the tooth should be extracted as soon as possible (Peterson, 2002).

*Use of antibiotics.* Antibiotics given to a patient with an odontogenic infection do not resolve the underlying problem (i.e., the infected tooth). Consequently, ''[a]ntibiotic therapy should be used as an adjunct to dental treatment and never used alone as a first line of care'' (Swift & Gulden, 2002). A clear indication for antibiotic use is the presence of fever or extraoral swelling (Macleod, 2003; Makrides et al., 2006). However, dealing with the source of the infection (extraction or root canal therapy) should occur promptly.

Although antibiotics are indicated for the treatment of overt odontogenic infections, it is estimated that antibiotics are used inappropriately in 75% of cases involving dental conditions without signs of infection (Brennan et al., 2006; Peterson, 2002). In fact, antibiotics are not always indicated for a patient presenting dental pain. Antibiotics penetrate poorly or not at all into periapical abscesses or an infected root canal system because of reduced blood supply and necrotic tissue (Slots & Pallasch, 1996).

''The patient's condition should improve rapidly once the source of the infection is eliminated'' (Swift & Gulden, 2002). The use of antibiotics in the management of localized acute apical abscess, over and above establishing drainage of the abscess, is not recommended (Makrides et al., 2006; Matthews, Sutherland, & Basrani, 2003). ''Routine use of antibacterial agents for the management of odontogenic infections has not shown to be effective and the practice should be considered inappropriate'' (Dirks & Terezhalmy, 2004). Extraction of the infected tooth or debridement of the necrotic root canal tissue is the only way to provide reliable stabilization of infection and symptoms. Therefore, antibiotic therapy should be reserved for individuals with spreading infections, cellulitis, a suppressed immune system, fever, malaise, or lymphadenopathy (swollen/enlarged lymph nodes).

The American Association of Endodontists' guidance (2006) is that ''a regimen of antibiotics is not indicated in an otherwise healthy patient for a small localized swelling without systemic signs and symptoms of infection or spread of infection.'' Indications for antibiotic use include fever greater than 100 °F, malaise, lymphadenopathy, trismus (limited jaw opening), increased swelling, cellulitis, osteomyelitis (bone infection), and persistent infection.

Phenoxymethylpenicillin (penicillin V) is the gold standard for treating odontogenic infections with a typical adult regimen of 500 mg every 6 hours for a minimum of 7 days. The antibiotic therapy should last 3 days after the patient's symptoms have resolved (Swift & Gulden, 2002). Where there is a benefit to medication that requires three daily doses (such as minimizing the need for pill

Plaintiffs' Exhibit 1

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

call), amoxicillin 500 mg every 8 hours could be used (Swift & Gulden, 2002). In serious infections, or where penicillin alone has not been effective, metronidazole, 500 mg every 6 hours for 10 days, can be added to the penicillin to ensure coverage against anaerobic bacteria (Jacobsen, 2010; Swift & Gulden, 2002). For patients with a history of penicillin allergy, clindamycin 300 mg every 6 hours for 10 days should be used. Macrolides such as erythromycin are not first-line therapy in treating odontogenic infections (Swift & Gulden, 2002).

Prescribing antibiotics unnecessarily is not a benign practice. Bacterial resistance to antibiotics has been clearly associated with exposure to antibiotics, the inappropriate use and the increased volume of which has elevated bacterial resistance to a major public health concern and has made an increasing number of infectious diseases difficult to treat. Although the problem has been recognized for many years, injudicious use of antibiotics continues to be a major public health problem (Huang et al., 2005).

## Standard of Care

The standard of care for treatment of odontogenic pain requires (a) a competent, well-documented examination of the mouth, (b) a diagnosis and treatment plan based on sufficient clinical data, (c) prompt referral to and treatment by a dentist, and (d) documented follow-up.

While palliative care is appropriate at the time of the initial complaint, the problem will not be resolved without treatment by a dentist. Absent evidence of a wider infection, the appropriate treatment consists of providing an analgesic and making a prompt referral to a dentist. Nondental clinicians should use decision rules to assist them in determining the cause of dental pain and communicate the findings to a consulting dentist. Antibiotic use must be circumspect and the practice of repeated courses of antibiotics should be avoided. Failure to remove the source of the infection promptly leaves the inmate with a chronic infection that can be a continual source of pain and recrudescence.

Patients who have been placed on antibiotics and return before their dental appointment should be seen by a clinician competent to perform an examination or assessment. At this point it is critical to determine whether the infection is progressing to a cellulitis or spreading to fascial spaces. Patients should be referred to an oral surgeon or a hospital if they are having difficulty in breathing or swallowing, cannot open their mouth more than 10 mm, have a fever greater than 101 °F, have an infection that is crossing the midline or is bilateral, or have an infection that is progressing rapidly (Peterson, 2002).

## Conclusions

Non-dentist clinicians are useful first responders to complaints of dental pain and infection; however, their role is to gather information and triage these complaints so timely care can be provided by a dentist. A consulting dentist should be available to assist in the triage when necessary. Most valid complaints of odontogenic pain will be resolved only when a dental procedure is performed to remove the source of the problem. Thus, we conclude the following:

- Patients complaining of a toothache should be examined by a midlevel provider, physician, or dentist within 24 hours of the complaint being received by prison staff.
- Patients complaining of a toothache whose physical examination suggests no infection or a localized infection should not be given antibiotics.
- Patients who have been started on antibiotics for an infection of odontogenic origin should be treated by a dentist while there is a therapeutic blood level of the antibiotic.

**Plaintiffs' Exhibit 1**                                                         **Page 38**

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

- Patients who present after 2 days of antibiotic therapy complaining that their pain and/or swelling has not begun to resolve should be reevaluated immediately by a midlevel provider, physician, or dentist.
- Patients whose pain, in the absence of signs of swelling, fever, drainage, or lymphadenopathy, cannot be controlled by NSAIDS should be reexamined by a dentist within 7 days to determine whether their complaint is related to an acute odontogenic infection.

## Declaration of Conflicting Interests

The authors declared no potential conflicts of interest with respect to the research, authorship, and/or publication of this article. For information about *JCHC*'s disclosure policy, please see the Self-Study Exam.

## Funding

The authors received no financial support for the research, authorship, and/or publication of this article.

## References

American Academy of Periodontology. (2000). Parameter on acute periodontal diseases. *Journal of Periodontology*, *71*, 863-866.

American Association of Endodontists. (2006). *Antibiotics and the treatment of endodontic infections*. Retrieved from http://www.aae.org/uploadedFiles/Publications_and_Research/Endodontics_Colleagues_for_Excellence_Newsletter/summer06ecfe.pdf

Brennan, M. T., Runyon, M. S., Batts, J. J., Fox, P. C., Kent, M. L., Cox,T.L., . . . Lockhart, P. B. (2006). Odontogenic signs and symptoms as predictors of odontogenic infection: A clinical trial. *Journal of the American Dental Association*, *137*, 62-66.

Burrow, G. F., Knox, C. M., & Villanueva, H. (2006). Nursing in the primary care setting. In M. Puisis (Ed.), *Clinical practice in correctional medicine* (2nd ed., p. 445). Philadelphia, PA: Mosby Elsevier.

Clare, J. H. (2002). Dental health status, unmet needs, and utilization of services in a cohort of adult felons at admission and after three years. *Journal of Correctional Health Care*, *9*, 65-76.

Dirks, J. D., & Terezhalmy, G. T. (2004). The patient with an odontogenic infection. *Quintessence International*, *35*, 482-502.

Estelle v. Gamble, 429 U.S. 97, 103. (1976).

Friedman, F. D. (2003). Toothache. In J. J. Schaider, S. R. Hayden, R. E. Wolfe, R. M. Barkin, & P. Rosen (Eds.), *Rosen & Barkin's 5-minute emergency medicine consult* (2nd ed., pp. 1136-1137). Philadelphia, PA: Lippincott Williams & Wilkins.

Fussell v. Wilkinson. Joint Notice of Filing Dental Agreement. US District Court, Southern District of Ohio, Western Division. Case 1:03-cv-00704-SSB Document 181-1 Filed 02/26/2007.

Greifinger, R., Bick, J., & Goldenson, J. (Eds.). (2007). *Public health behind bars: From prisons to communities.* New York, NY: Springer.

Huang, B., Martin, S. J., Bachmann, K. A., He, X., Reese, J. H., Wei, Y., Iwuagwu, C. (2005). A nationwide survey of physician office visits found that inappropriate antibiotic prescriptions were issued for bacterial respiratory tract infections in ambulatory patients. *Journal of Clinical Epidemiology*, *58*, 414-420.

Jacobsen, P. L. (2010). *The little dental drug booklet.* Hudson, OH: Lexi-Comp.

Kuriyama, T., Karasawa, T., Nakagawa, K., Saiki, Y., Yamamoto, E., & Nakamura, S. (2000). Bacteriologic features and antimicrobial susceptibility in isolates from orofacial odontogenic infections. *Oral Surgery, Oral Medicine, Oral Pathology, Oral Radiology, and Endodontics*, *90*, 600-608.

Macleod, D. K. (2003). Common problems of the teeth and oral cavity. In L. R. Barker, J. R. Burton, & P. D. Zieve (Eds.), *Principles of ambulatory medicine* (6th ed.). Philadelphia, PA: Lippincott, Williams & Wilkins.

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

Makrides, N. S., Costa, J. N., Hickey, D. J., Woods, P. D., & Bajuscak, R. (2006). Correctional dental services. In M. Puisis (Ed.), *Clinical practice in correctional medicine* (2nd ed., pp. 556-564). Philadelphia, PA: Mosby Elsevier.

Matthews, D. C., Sutherland, S., & Basrani, B. (2003). Emergency management of acute apical abscesses in the permanent dentition: A systematic review of the literature. *Journal of the Canadian Dental Association*, *69*, 660.

Murchison, D. F. (2006). Dental emergencies. In M. H. Beers, R. S. Porter, T. V. Jones, J. L. Kaplan, & M. Berkwits (Eds.), *The Merck manual of diagnosis and therapy* (18th ed.). Whitehouse Station, NJ: Merck Research Laboratories. Retrieved from http://online.statref.com/document.aspx?fxid=21&docid=382

Peterson, L. J. (2002). Principles of management and prevention of odontogenic infections. In L. J. Peterson, E. Ellis, J. R. Hupp, & M. R. Tucker (Eds.), *Contemporary oral and maxillofacial surgery* (4th ed., pp. 344-366). St. Louis, MO: Mosby.

Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

Slots, J., & Pallasch, T. J. (1996). Dentists' role in halting antimicrobial resistance. *Journal of Dental Research*, *75*, 1338-1341. [Erratum in *75*(10), 1811].

Swift, J. Q., & Gulden, W. S. (2002). Antibiotic therapy—Managing odontogenic infections. *Dental Clinics of North America*, *46*, 623-633.

U.S. v. Dallas County. 2007 U.S. Dist. LEXIS 98386 (N.D. Tex. Nov. 6, 2007).

Downloaded from jcx.sagepub.com at BAYLOR UNIVERSITY MEDICAL CTR on February 19, 2012

**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Smentek, et al, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | No. 09-529 |
| *-vs-* | ) | |
| | ) | *(Judge Lefkow)* |
| Sheriff of Cook County and Cook | ) | |
| County, Illinois | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFFS' THIRD
## SUPPLEMENTAL RULE 26 DISCLOSURES

Plaintiffs hereby serve the following supplemental Rule 26 disclosures:

Kamal Albitar, 2013-0614124, David Myrick, 2013-0424070, and Kenneth Weatherspoon, 2012-0327170, each presently confined at the Cook County Jail, will testify about the matters set forth in their respective declarations, attached hereto

_____
KENNETH N. FLAXMAN
200 S Michigan Ave Ste 201
Chicago, IL 60604-2107
(312) 427-3200
*an attorney for the plaintiff class*

## Declaration of Kamal Albitar

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is Kamal Albitar. I am a detainee at the Cook County Jail, number 2013-0614124.

2. I entered the Jail on June 14, 2013. I told intake personnel that I had a tooth problem (for which I had a scheduled appointment with my dentist) and a back problem (for which I was had been scheduled for surgery in July of 2013).

3. I submitted several request slips in June and July, 2013 to see the dentist. I filed a grievance about this on July 10, 2013. I saw a dentist shortly after I filed the grievance.

4. The dentist said my tooth had to be extracted. He gave me antibiotics and said that he would call me back in seven to ten days.

5. I was not called back to see the dentist. I filed another grievance and saw the dentist on about December 6, 2013. The dentist gave me more antibiotics and told me he would see me

in 7 to 10 days and pull out the tooth.

6. I have not been called back to see the dentist, I continue to be in pains The pain is constant. I have trouble closing my mouth. I have extreme pain when eating unless I puree my food. I have no idea when I will receive dental treatment

Dated: January 19, 2014

Declaration of David Myrick

The undersigned, under penalties of perjury, certifies that the following statements are true:

1. My name is David Myrick. I am a detainee at the Cook County Jail, number 2013-0427070.

2. I have four painful wisdom teeth.

3. I saw a dentist in Division 1 on September 23, 2013. She told me that I needed to see an oral surgeon for my wisdom teeth. I told her that I had been referred to see an oral surgeon in June of 2013.

4. I filed a grievance on September 23, 2013 because of the pain.

5. I saw the dentist again on October 13, 2013. She asked me why I had filed a grievance. She told me that I would have to wait to see the oral surgeon.

6. I saw a male dentist in Division 1 thereafter. He told me that I needed to see an oral surgeon.

7. I filed another grievance on January 8, 2014 because I still haven't seen an oral surgeon and

Supplemental Declaration of
Kenneth Weatherspoon

The undersigned, under penalties
od perjury, certifies that the
following statements are true:

1. My name is Kenneth Weatherspoon
I am a detainee at the Cook
County Jail, number 2012-0327170.

2. I have a painful abscess on
my right upper mouth. I can't sleep
on my right side, I can't eat on
my right side. And I am in pain

3. I have had the abscess
since 2012.

4. I have filed written requests
for dental care and I have seen a
dentist about 3 times in 2013.
Each time, the dentist told me that
she was referring me to see an
oral surgeon.

5. I have filed two grievances
because I have continual pain and I
have not been seen by an oral
surgeon.

Dated: January 19, 2014

Kenneth Weatherspoon

# CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2014 I served a copy of the foregoing by email to Maureen O. Hannon, ASA, 69 W Washington Street, Ste 2030, Chicago, IL 60602 and Michael Gallagher, ASA, 50 W Washington Street, Ste 500, Chicago, IL 60602, with confirmatory copy by first class mail on January 21, 2014.

_____
Kenneth N. Flaxman
200 S Michigan Ave, Ste 201
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January, 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Maureen O. Hannon, ASA, 69 W Washington Street, Ste 2030, Chicago, IL 60602 and Michael Gallagher, ASA, 50 W Washington Street, Ste 500, Chicago, IL 60602 and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/  Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 201
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiffs*