**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN SMENTEK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 09 C 529 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| SHERIFF OF COOK COUNTY and ) | |
| COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

In this class action under 42 U.S.C. § 1983 against the Sheriff of Cook County in his official capacity and Cook County, Illinois,[1] plaintiffs claim that inadequate dental care at Cook County Jail (CCJ) constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Plaintiffs have moved to divide the class which the court certified under Federal Rule of Civil Procedure 23(b)(3) into five subclasses. They also move to allow limited discovery to address claims of detainees arising after the evidentiary hearing was held in this case. For the reasons stated below, plaintiffs' amended motion to divide the (b)(3) class (dkt. 430) is denied. Plaintiffs' motion for additional discovery (dkt. 465) is denied.

## PROCEDURAL BACKGROUND

On November 18, 2010, the court denied certification of a Rule 23(b)(3) class based on collateral estoppel but certified a class under Rule 23(b)(2) for injunctive relief. The class was defined as "[a]ll persons presently confined at the Cook County Jail who are experiencing dental

---

[1] This opinion refers to the Sheriff of Cook County as the defendant, as the County of Cook is only responsible, if at all, as the Sheriff's indemnitor. *See Franklin* v. *Zaruba*, 150 F.3d 682, 686 & n.5 (1998) ("[T]he lack of identity between the county sheriff's department and the general county government indicates that § 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department rather than the county board.").

pain and who have waited more than seven days after making a written request for treatment of that pain without having been examined by a dentist." (Dkt. 68 at 15.) Because of a change in the law, *see Smith* v. *Bayer Corp.*, 564 U.S. 299, 314–316, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011) (holding that an adverse class determination was not binding on putative class members), the court reconsidered its denial of the (b)(3) class and certified a class consisting of "all inmates housed at Cook County Department of Corrections on or after January 1, 2007, who have made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment" (dkt. 93 at 11).[2]

On December 22, 2014, following an evidentiary hearing, the court decertified the (b)(2) class and modified the (b)(3) class to include an end date coinciding with the time period for which the CCJ became adequately staffed. (Dkt. 390 at 23.) Plaintiffs appealed the order decertifying the (b)(2) class. (*See* dkt. 392). The court of appeals affirmed. *Phillips* v. *Sheriff of Cook Cnty.*, --- F.3d ----, 2016 WL 3615761 (7th Cir. July 6, 2016), and its mandate issued on August 11, 2016 (dkt. 461). This leaves the (b)(3) class comprising "all inmates housed at Cook County Department of Corrections on or after January 1, 2007 until [date to be determined], who have made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment." The parties have been unable to agree on the end date.

The issues before the court are whether the proposed subclasses are consistent with the court's previous directions in the case and, if so, whether the requirements of Rule 23(b)(3) are met for each proposed subclass.

---

[2] The opinion is not clear as to why the (b)(3) class definition is different from the (b)(2) class definition, but plaintiffs' motion to certify their proposed (b)(3) class characterized it as "limited" to inmates who requested dental care and suffered "prolonged and unnecessary pain." (Dkt. 82 ¶ 4). In fact, this definition is likely broader than the (b)(2) class.

## ANALYSIS

I.  **Whether the Proposed Subclasses Are Consistent With "the Law of the Case"**

Plaintiffs argue that their proposed subclasses can all be certified under Rule 23(b)(3), which requires that common questions predominate over individual ones and that a class action is the superior method for adjudicating the controversy.[3] Whether the proposed subclasses can be certified, however, must be addressed in the context of the history of this litigation. Previously, with respect to the (b)(3) class, the court found that Rule 23(a)(2)'s commonality and Rule 23(b)(3)'s predominance and superiority requirements were not met absent an end date coinciding with when the CCJ staffing rose to a constitutionally adequate level. (Dkt. 390 at 17–23.) To avoid having to make inferences from the evidence elicited at the preliminary injunction hearing, it urged the parties to agree on an end date such that individual class members could be notified and their claims for damages addressed. Defendant has proposed July 14, 2009, which is the date CCJ exceeded the "pre-cut" staffing and budgetary levels of 2006 (specifically, employing four dentists, which defendant contends, met minimal standards of adequacy under the Constitution).

Rather than proposing a single end date marked by a staffing level, plaintiffs propose to divide the (b)(3) class into five subclasses representing succeeding segments of time up to the present, each describing a type of needed-but-delayed/denied care within specific time frames of residency at CCJ. The five subclasses plaintiffs propose fall into two categories. Subclasses one and two include inmates whose claims arose before the CCJ became staffed at current levels.

---

[3] A class may be divided into subclasses, but each subclass is treated as a class under Rule 23. Fed. R. Civ. P. 23(c)(5); *Johnson* v. *Meriter Health Srvs. Emp. Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012). ("[A]s long as each subclass is homogeneous, in the sense that every member of the subclass wants the same relief, and each subclass otherwise satisfies the requirements for certifying a class, so that each could be the plaintiff in a separate class action, there is no objection to combining them in a single class action.").

Subclasses three, four, and five define subclasses beginning after that point, continuing to entry of judgment, and address what plaintiffs contend is persistent lack of constitutionally adequate dental care even after the adequate staffing level was achieved.

### A. Post-March 12, 2013 Subclasses—Subclasses Three, Four, and Five[4]

Defendant vociferously objects to inclusion of plaintiffs whose claims arose after March 12, 2013, as inconsistent with the court's decision to modify the (b)(3) class by setting an end date for inclusion in the class. Plaintiffs' effort to circumvent that ruling is not accepted. Certainly, a class might be able to proceed on the allegation that, optimal staffing notwithstanding, defendant's practices expose all inmates at CCJ to substantial risk of serious harm even if the harm might be different for different inmates, but such is a case for injunctive relief.[5] The court has already decided that plaintiffs failed to demonstrate that injunctive relief could be granted on the basis that failure to implement procedures was so serious as to support a

---

[4] Plaintiffs' propose the following definitions of these three subclasses:

- Subclass three: "All inmates housed at the Cook County Department of Corrections from March 12, 2013 to the date of entry of judgment who made a written request for dental care because of acute pain and who did not receive a face to face assessment from a registered nurse or higher level practitioner within 24 hours of the complaint." (Dkt. 430 at 1.)

- Subclass four: "All inmates housed at the Cook County Department of Corrections from March 12, 2013 to the date of entry of judgment who, having been prescribed an antibiotic for a dental infection, were not treated by a dentist within 10 days thereafter." (*Id.* at 1–2.)

- Subclass five: "All inmates housed at the Cook County Department of Corrections from March 12, 2013 to the date of entry of judgment who suffered acute pain because the inmate was not treated by an oral surgeon within fourteen days after having been referred to an oral surgeon after a diagnosis of pain or infection." (*Id.* at 2.)

[5] *Cf. Parsons* v. *Ryan*, 754 F.3d 657 (9th Cir. 2014) (affirming (b)(2) class certification where all inmates claimed to suffer the same constitutional injury when exposed to severe understaffing that created a substantial risk of serious future harm, even though the state's maladministration may result in different harm for different inmates).

finding that all detainees are at serious risk of harm. (*See* dkt. 390 at 6 ("Plaintiffs' argument focuses on whether the policies are implemented consistently."); *id.* at 17 ("Although there continue to be access to care issues at CCJ, these questions do not point to the type of 'systemic and gross deficiencies in staff, facilities, equipment, or procedures' that would lead to a finding that all detainees are effectively denied treatment of dental pain.").)

To expand the scope of the class as requested would entail reopening discovery (plaintiffs have moved for additional discovery) and would prolong the litigation, denying already delayed relief to members of this transient class. Inmates who believe they have been denied constitutionally-required dental care after the end date will not be bound by the judgment in this case, but theirs is a different case, based on conditions that are significantly different from those existing when this case was filed years ago or even as of the date of the evidentiary hearing.

Accordingly, the court denies plaintiffs' proposal to create subclasses three, four, and five.

### B. Pre-March 12, 2013 Subclasses—Subclasses One and Two[6]

Subclass one includes inmates housed at CCJ from January 1, 2007 until July 14, 2009 (defendant's proposed end date), who made written requests for dental care because of acute pain but were not examined by a dentist within seven days of that request. The second subclass is the same, but for the period from July 15, 2009 to March 11, 2013. The proposed start and end dates

---

[6] Plaintiffs' propose the following definitions of these two subclasses:

- Subclass one: "All inmates housed at the Cook County Department of Corrections from January 1, 2007 to July 14, 2009 who made a written request for dental care because of acute pain and who were not examined by a dentist within 7 days of that request." (Dkt. 430 at 1.)

- Subclass two: "All inmates housed at the Cook County Department of Corrections from July 15, 2009 to March 11, 2013 who made a written request for dental care because of acute pain and who were not examined by a dentist within 7 days of that request." (*Id.*)

correspond with the following events:

- January 1, 2007: Cermak Health Services (Cermak)[7] reduced the number of dentists it employs to one following the implementation of 2007 budget cuts.[8]

- July 14, 2009: Cermak hired its fourth dentist, thereby restoring dental staffing to its pre-budget cut level.

- March 11, 2013: Cermak hired its seventh dentist, which equals the number of dentists employed when the court denied plaintiffs' motion for a preliminary injunction because staffing had reached constitutionally adequate levels.

(*See* dkt. 421 at 7.)[9] Plaintiffs do not explain why their proposed subclasses are defined more narrowly than the (b)(3) class definition, and the court declines to narrow its earlier definition, making the following subclasses:

**Subclass one:** All inmates housed at Cook County Department of Corrections from January 1, 2007 to July 14, 2009, who made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment.

**Subclass two:** All inmates housed at Cook County Department of Corrections from July 15, 2009 to March 14, 2013, who made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment.[10]

The court previously found that a (b)(3) class of the above definition could be certified so long as accompanied by an end date coinciding with when adequate staffing levels were

---

[7] Cermak is a division of the Cook County Bureau of Health Services and provides medical and dental care to CCJ detainees.

[8] Defendant argues that the appropriate start date for this class should be April 1, 2007, the date the 2007 budget cuts took effect. (*See* dkt. 421 at 7; dkt. 442 at 3 n.4.)

[9] As with subclasses three, four, and five, plaintiffs do not explain the basis for the particular time limit they would impose on defendant for addressing dental pain.

[10] Plaintiffs' class period suggests that the seventh dentist was hired on March 12, 2013. Defendant's briefing actually appears to put this date two days later, on March 14, 2013. (*See* dkt. 421 at 7.) This is an insignificant difference but the court will presume that defendant's information is correct.

instituted. Therefore, only two issues remain: (1) the appropriate end date for the class definition and (2) whether plaintiffs new proposed class representatives meet Rule 23(a)(4)'s adequacy requirement.[11]

### 1. End Date

Initially, plaintiffs argued that the cutoff date should coincide with the hiring of the seventh dentist and defendant argued that staffing levels became constitutionally adequate when a fourth dentist was hired. Plaintiffs advocated for their cutoff date because the court's decertification order was based on a finding that, at the point the seventh dentist was hired, CCJ was adequately staffed. (Dkt. 422 at 1.) True enough, but the court did not explicitly find that staffing was inadequate before that date. Likewise, defendant's position is based on the fact that when a fourth dentist was hired, staffing levels were returned to levels that existed prior to the 2006 budget cuts (dkt. 421 at 2), but defendant has not demonstrated that staffing was constitutionally adequate before the budget cuts.

As such, the court is not persuaded that subclasses one and two advance the resolution of the case. The parties are unable to agree on an end date, so the court will rely on the hearing record to make a finding of when after January 2007 the level of care met Eighth/Fourteenth Amendment standards.

Plaintiffs' expert did not offer an opinion about the adequacy of staffing levels (dkt. 390

---

[11] Plaintiffs also request that the court revisit its previous finding that at least by the time of the preliminary injunction hearing that the CCJ was staffed at a constitutionally adequate level. (Dkt. 411 at 2.) Plaintiffs' argument is principally based on the CRIPA Monitor's February 2, 2015 report, which reported on monitoring conducted during the week of November 3, 2014. (*See* dkt. 411 at Ex. 1 at 1–3.) Despite plaintiffs' assertions to the contrary, the CRIPA Monitor's observations in that report are not materially different from those made in the CRIPA Monitor's May 2014 report, of which this court took judicial notice prior to its decision to decertify the (b)(2) class. (Dkt. 389.) To the extent that there are differences between the two reports, those differences are generally unrelated to the issue of staffing, which is the common question that unites those within the (b)(3) class.

at 9), although he conceded that the current staffing was "within optimal range." (*Id.*)
Defendant's expert testified that acceptable staffing ratios were in the range of one dentist for every 1000 to 1500 detainees. *Id.* at 11, n.16. At the time of the hearing, there were 9,500 detainees in custody at CCJ. *Id.* at 2. If the defense expert is credited, seven to ten dentists would have been required to service that population. As such, the court finds that the date that the seventh dentist was employed (and working) would be the earliest end date. At least one inmate witness, however, testified about delay and denial of dental care after submitting an HSR in October 2013. *Id*. at 8. The record also reflects that until "late 2013," the dental clinics were not able to schedule emergency appointments, which made it difficult to address acute pain cases. *Id.* at 4. After policy was changed to allow the clinics to schedule five emergency appointments per day, the number of grievances fell by fifty-eight percent *Id.* In light of the evidence, then, the court will define the class as follows:

> All inmates housed at Cook County Department of Corrections from January 1, 2007 to October 31, 2013[12] who made a written request for dental care because of acute pain and who suffered prolonged and unnecessary pain because of lack of treatment.

Accordingly, the motion to create subclasses one and two is denied.

### 2. Adequacy of Class Representatives

Because the court declines to create subclasses, there is no need to add, or address the qualifications of, additional class representatives unless the already-approved representatives can no longer serve. (*See* dkt. 68 at 13 (approving Melvin Phillips, Malcolm Patton, and Rodell

---

[12] The date the emergency appointment policy was implemented is not in the record available to the court, but the class should comprise inmates who were resident until the emergency policy was instituted. This can be amended if there is a significant variance from October 31.

Sanders as class representatives)).[13] Therefore, the motion insofar as it seeks to add class representatives is denied without prejudice.

**CONCLUSION AND ORDER**

For the foregoing reasons, plaintiffs' amended motion to divide the class into subclasses (dkt. 430) is denied. Plaintiffs' motion to divide the class into subclasses (dkt. 398) is moot. Plaintiffs' motion to allow limited discovery (dkt. 465) is denied. Plaintiffs' counsel, in cooperation with defendant's counsel, shall prepare a proposed class notice consistent with Rule 23(c)(2)(B) which shall be filed not later than November 3, 2016. The case will be called for status hearing on October 18, 2016 at 10:30 a.m., at which lead counsel for each party shall appear and be prepared to discuss the resolution of this case.

Date: October 13, 2016

_U.S. District Judge Joan H. Lefkow_

---

[13] The record indicates that John Smentek is deceased, although plaintiffs' counsel did not file a suggestion of death on the record as directed on October 7, 2014. (Dkt. 232.) Neither was Smentek's name included in those approved as class representatives in the opinion and order certifying the class. Again, plaintiffs' counsel should update the record as to which representative plaintiffs are still able to serve.

9